UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Eboni SternJohn and Julius SternJohn,

Plaintiffs,

v.

Robert L. Kreisler, Jr., a/k/a Bob Peterson, a/k/a Robert Peterson, d/b/a Kreisler Real Estate Company, d/b/a Whittier Real Estate Company, d/b/a KT Properties Partnership L.P., d/b/a Whittier Community Apartments, d/b/a Bristol Apartments; Solar Partnership, a/k/a Solar Partnership, L.L.P., a/k/a Solar Partnership I, L.L.P., a/k/a Solar Partnership III, L.L.P., a/k/a Solar Partnership IV, L.L.P., d/b/a Solar Corporation; and Larry Hopfenspirger, d/b/a Hopfenspirger Realty, Inc.,

Defendants.

Civil No. 02-842 (MJD/JSM)

**DEFENDANT ROBERT KREISLER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTIONS IN LIMINE TO EXCLUDE CERTAIN EVIDENCE**

**ORAL ARGUMENT REQUESTED**

---

## INTRODUCTION

Plaintiffs Eboni and Julius SternJohn have asserted claims for damages for discrimination in housing against Robert Kreisler. Plaintiffs wish to introduce evidence in this matter in the form of various documents and witnesses that are inadmissible. Defendant Kreisler brings this Motion in Limine to exclude certain evidence from the trial of this matter under the Federal Rules of Evidence and pursuant to applicable law.

## STATEMENT OF FACTS

Plaintiff Julius SternJohn is of African American descent and Eboni SternJohn is of African American and Native American descent. Eboni and Julius SternJohn moved into the apartment at issue, 2421 Pillsbury Avenue, in 1995. At the time they moved into apartment #206 it had old carpet, but it was in fairly good condition according to Eboni SternJohn. (Brandt Aff.,

Ex. A, E. SternJohn Depo. pp. 30-31.) Pursuant to the lease between the SternJohns' and defendant Solar Partnership, LLP ("Solar") and its management company, the SternJohns' rent was due on the first day of each month and there was a two month notice period to terminate the tenancy. After the written lease expired after one (1) year, the SternJohns were in a month-to-month lease. (Brandt Aff., Ex. A, E. SternJohn Depo. p. 45.)

Eboni SternJohn claims that in early October of 1998, before Mr. Kreisler managed the property, she began to ask Vern Hiller to make a number of repairs to her apartment. Eboni SternJohn testified that the building was old, so the carpet, paint, and blinds in the apartment were old and there were other matters to be fixed such as a heat regulator making noise and the refrigerator not working properly. Ms. SternJohn claims that she told Mr. Hiller about these repair issues prior to any involvement by Mr. Kreisler with the subject property. (Brandt Aff., Ex. A, E. SternJohn Depo. pp. 50-54, 70, 75, 87, 90.) Mr. Hiller has averred that Ms. SternJohn was not cooperative in allowing him to make repairs, and in fact wouldn't cooperate to allow repairs on repeated occasions. (Brandt Aff., Ex. C.) Mr. Hiller does not recall Eboni SternJohn's many requests for repairs that she allegedly requested in the Fall of 1998. (Brandt Aff., Ex. B, Hiller Depo. p. 14.)

Robert Kreisler owns and manages his own apartment building properties in Minneapolis. Mr. Kreisler purchases distressed properties which he then, through his active management style, improves through repairs, redecoration, and hands-on management to provide better housing for the citizens of Minneapolis. Mr. Kreisler entered into an Interim Management Agreement with Solar on October 15, 1998 for the management and eventual purchase of two apartment buildings located at 2421 Pillsbury Avenue South and 2500 Blaisdell Avenue South. Mr. Kreisler agreed to manage these properties on behalf of Solar which owned the properties until

the planned closing of the purchase of the properties in January of 1999. The actual closing, however, did not occur until early April of 1999. Pursuant to the Interim Management Agreement, Mr. Kreisler was not to incur repair costs over two hundred dollars ($200.00) unless first approved in writing by Mr. Larry Hopfenspirger, a principal of Solar. (Brandt Aff., Ex. D, Kreisler Depo. pp. 66, 67, Ex. E.) Thus, from mid October of 1998 until early April of 1999, Mr. Kreisler managed the properties but did not own the properties. Mr. Kreisler intended to own the properties, however, and was intent on redecorating and refurbishing the older apartments in the distressed building and on implementing his active management policies.

In late October of 1998 the residents were advised in writing that rent was due on the first of each month and was to be mailed to Kreisler Real Estate Company. A new procedure for repair requests was also implemented, whereby, unless there was an emergency, residents would fill out a card and send it to the Kreisler Real Estate Company. (Brandt Aff., Ex. D, Kreisler Depo. pp. 66-67.)

In November of 1998, the SternJohns admit they did not pay their rent by the first of November. It was therefore received late by Kreisler Real Estate Company. On November 5, 1998, Ms. SternJohn received a rent past due notice under her door from Kreisler. (Brandt Aff., Ex. A, E. SternJohn Depo. pp. 99-100.) On November 9, 1998, there was a hot water problem in the building, and Ms. SternJohn paged the emergency staff to have the hot water problem fixed. She then paged the emergency staff twice on November 10, 1998, and the hot water problem was fixed. In the meantime, however, since the rent had not been received by Mr. Kreisler, Julius SternJohn was served with an Unlawful Detainer Summons and Complaint. Eboni and Julius SternJohn were upset about receiving this Unlawful Detainer Complaint while they were waiting for the hot water to be fixed. (Brandt Aff., Ex. A, E. SternJohn Depo. pp. 108-109.) Eboni

SternJohn admits, that at the time the SternJohns were served with the Unlawful Detainer Complaint, she had no reason to know whether Mr. Kreisler knew their race. (Brandt Aff., Ex. A, E. SternJohn Depo. p. 108.) This receipt of an Unlawful Detainer Complaint while the hot water wasn't working according to the SternJohns' expectations, started a rash of Housing Court litigation initiated by the SternJohns.

The Unlawful Detainer Hearing was to be held on November 20, 1998. By this time, the SternJohns' check had been received by Kreisler Real Estate Company and had been cashed. The Unlawful Detainer action was dismissed. Mr. Kreisler was represented at the Unlawful Detainer Hearing by Asa Voak, who was an independent contractor for Mr. Kreisler and who only did unlawful detainers on behalf of Kreisler. Mr. Voak had no responsibility for determining who was to live at Mr. Kreisler's buildings, or who was to receive repairs. Mr. Voak never determined whether to file an Unlawful Detainer on behalf of Mr. Kreisler. (Brandt Aff., Ex. F.) Mr. Voak is presently residing in Thailand. Id. at ¶ 6. Mr. Voak had other Unlawful Detainers scheduled for the day of the SternJohn Housing Court hearing. The SternJohns recognized Mr. Voak in Housing Court because he had served the unlawful detainer papers upon Julius SternJohn. Nonetheless, they did not ask him what was going on, but rather sat through the entire hearing call in Housing Court. (Brandt Aff., Ex. A, E. SternJohn Depo. pp. 118-119.)

Plaintiffs claim that the Housing Court Referee did not tell them their case was dismissed and after about three hours in Court, Mr. Voak told the SternJohns that the case against them was dismissed. (Brandt Aff., Ex. A, E. SternJohn Depo. pp. 118-120.) Eboni and Julius SternJohn then confronted Mr. Voak about why he did not tell them that their case had been dismissed earlier. (Brandt Aff., Ex. A, E. SternJohn Depo. p. 122.) Mr. Voak responded that he didn't

know that the SternJohns were the ones who were the parties in that case. Julius SternJohn then accused Mr. Voak of lying because Julius SternJohn claims that Mr. Voak had looked right at the SternJohns when their name was called during the roll call. Mr. Voak allegedly then said that he wasn't going to be called a liar and walked past the SternJohns to leave the courtroom. (Brandt Aff., Ex. A, E. SternJohn Depo. p. 123.) Eboni SternJohn then followed Mr. Voak as he was walking out of the courtroom. Mr. Voak then **allegedly** "muttered" - to himself. that "I am tired of having to deal with niggers." (Brandt Aff., Ex. A, E. SternJohn Depo. p. 126.) According to Eboni SternJohn, Voak said this to himself, "under his breath" as he was walking away from her. According to Ms. SternJohn, Mr. Voak was making this statement to himself as she was walking behind him and Ms. SternJohn then said "What did you say?" (Brandt Aff., Ex. A, E. SternJohn Depo. pp. 127-128.) Mr. Voak then turned around and had a "shocked" look on his face, according to Eboni SternJohn, because he didn't know she was there. (Brandt Aff., Ex. A, E. SternJohn Depo. p. 129.) Mr. Voak then quickly exited the courtroom, according to Eboni SternJohn.

Mr. Kreisler, who has two adopted Asian sons, did not authorize or ratify Mr. Voak's alleged racist statement made to himself. Obviously, Mr. Voak was not authorized by Mr. Kreisler to make racial epithets under his breath or to himself, and Mr. Voak had no responsibilities for management of the buildings owned by Mr. Kreisler — his duties were exclusively limited to processing Unlawful Detainers decided upon entirely by Mr. Kreisler. When Mr. Kreisler later asked Mr. Voak about this alleged statement to himself, Mr. Voak denied making such a statement and Mr. Kreisler does not believe that Mr. Voak would make such a statement. (Brandt Aff., Ex. F.)

On November 30, 1998, Kreisler Real Estate Company, following its policy of terminating the tenancy of tenants against which it filed an Unlawful Detainer action, and furthering its goals to redecorate the apartments after closing on the building, asked the SternJohns to vacate their apartment within sixty (60) days so that it could be redecorated. Ms. SternJohn then called the City Inspector, and began a flurry of housing court litigation. (Brandt Aff., Ex. A, E. SternJohn Depo. p. 146.) As of December 30, 1998, Ms. SternJohn considered her apartment to be livable, but she said it needed to be repaired. (Brandt Aff., Ex. A, E. SternJohn Depo. pp. 153-154.)

On December 30, 1998, Eboni and Julius SternJohn filed a Rent Abatement Action against Kreisler Real Estate Company (who was really not yet the owner of the premises) demanding a number of repairs, and attaching her letter purportedly dated November 1, 1998. Ms. SternJohn estimated the repair costs she needed to be fifteen hundred dollars ($1,500.00) in her Affidavit of Rent Escrow. A hearing was then held, at which Kreisler Real Estate Company did not appear because it was not the owner of the building, and the Housing Court ordered that the rent was to be abated by one hundred fifty dollars ($150.00) for February and that the SternJohns would receive basically free rent for January. The order then stated that future monthly rent is abated by one hundred fifty dollars ($150.00). The Court set a compliance hearing for February 26, 1999. Hence, Ms. SternJohn's successful unopposed Rent Escrow Action basically had her receive two (2) months of free rent. Further rent would be in the amount of two hundred ninety dollars ($290.00) per month rather than the usual four hundred and forty dollars ($440.00), pursuant to the Court's Order. (Brandt Aff., Ex. A, E. SternJohn Depo. pp. 162-164.)

Ms. SternJohn then filed another unopposed Rent Escrow Action in February of 1999 and received additional rent abatements of one hundred fifty dollars ($150.00) per month. She was also allowed an offset from future rents of one hundred dollars ($100.00) a month for food losses as a result of her refrigerator problem because she claimed it was freezing some of her food. After an unopposed hearing held on March 8, 1999, the Housing Court ordered abatement of the rent of three hundred fifty dollars ($350.00), and authorized the SternJohns to make repairs to the premises and deduct the costs from the rent. The SternJohns, however, did not make any repairs, and kept the rent abatements. (Brandt Aff., Ex. A, E. SternJohn Depo. pp. 184-186.) A compliance hearing was then scheduled for April of 1999.

In early April of 1999, the closing of the sale of the properties between Mr. Kreisler and Solar finally occurred, and Mr. Voak appeared at the April 13, 1999 compliance hearing on behalf of Mr. Kreisler.

By the June 16, 1999 hearing, Eboni and Julius SternJohn had attorney Tom White as their counsel. The Court set a hearing date for an evidentiary hearing at the June 16th hearing. On June 29th, the Housing Court finally heard evidence on the status of repairs, and the Court heard the testimony of the SternJohns and Minneapolis Housing Inspector, Debra Nelson. Ms. Nelson unequivocally testified, according to the Court's Order, that all outstanding work orders had been completed. (Brandt Aff., Ex. G.) Ms. SternJohn nonetheless complained about a small rip in her screen as a result of an overextended tree branch. The Court found that all outstanding work orders had been completed, and ordered that all prior orders for rent abatement were terminated effective June 30, 1999. Id.

Although the SternJohns received the Court's order in mid-July stating that rent was no longer abated effective June 30, 1999, the SternJohns did not pay any July rent. After the Court

had determined that all of the repairs had been done, and the rental abatements were over, Eboni and Julius SternJohn skipped the building in late July of 1999 without notice and left for an apartment they rented in Fridley.

On July 27, 1999, just before the SternJohns left the building without notice, Mr. Kreisler initiated an Unlawful Detainer against the SternJohns as a result of non-payment of July rent. When Mr. Kreisler received a requested reference from a housing credit service regarding the SternJohns on July 27, 1999, he accurately advised the service that the SternJohns did not make their payment of July rent and had not given notice that they were leaving. He also truthfully advised the credit service that an Unlawful Detainer had been filed against the SternJohns. (Brandt Aff., Ex. H.)

On August 12, 1999, in Housing Court again, the SternJohns and Mr. Kreisler arrived at a Settlement Agreement regarding the Unlawful Detainer and the Court made a finding of fact that Julius and Eboni SternJohn had vacated the premises and that Mr. Kreisler had agreed to dismiss all outstanding eviction actions against them. The Court also found, in its Conclusions of Law, that the landlord Robert Kreisler had a subsisting right of re-entry for non-payment of rent pursuant to Minn. Stat. § 504.02. The Court nonetheless, based upon the parties' agreement, dismissed the eviction action against Julius and Eboni SternJohn and expunged the defendants' names.

In July of 2000, almost a year after they had left apartment #206 at 2421 Pillsbury Avenue, the SternJohns each filed a Complaint with the Minnesota Department of Human Rights. (Brandt Aff., Ex. L, M.) The Minnesota Department of Human Rights talked to a number of people, and based upon the unsworn hearsay statements of some residents of the building, some of whom had their own disputes with Robert Kreisler, issued a finding of

probable cause for discrimination. (Brandt Aff., Ex. N.) As demonstrated herein, that finding is unreliable, legally erroneous, and would add nothing to this case. It should be excluded from evidence.

Previous claims of discrimination have been alleged against Mr. Kreisler. Mr. Kreisler has settled two discrimination claims in the past. In 1994, Ms. Stephanie Ball alleged that she was not allowed to rent another apartment (she was already renting from Mr. Kreisler) on the basis of her race, and that matter was settled for approximately six thousand dollars ($6,000.00). Mr. Kreisler also settled a complaint of discrimination brought in 1989 by Michael McGuire, a white prospective caretaker at another building, who claimed that Mr. Kreisler told him not to rent to undesirable tenants, which McGuire understood to be minorities, and this claim settled for five hundred dollars ($500.00). Mr. Kreisler denies, and denied in the settlements themselves, any liability for these claims of discrimination. Neither of these claims involve any failure to effect repairs or discrimination in repairs as alleged by the SternJohns. (Brandt Aff., Ex. I, J.)

Eboni and Julius SternJohn claim that they were subject to disparate treatment as a result of their race. The SternJohns, cannot, however, lay foundation for their claims of disparate treatment because they cannot establish that those tenants who were allegedly treated differently were in a comparable position to them. For example, Mrs. SternJohn complains that a white neighbor of hers received a new refrigerator after Mrs. SternJohn complained that her refrigerator wasn't working properly, but she didn't know the status of the white tenant's refrigerator whether it completely malfunctioned or just needed defrosting. (Brandt Aff., Ex. A, E. SternJohn Depo. pp. 181-182.) In fact, according to the repairman for the apartments, David Pietrzak, the white tenant's refrigerator completely malfunctioned - making it an emergency to replace it. (Brandt Aff., Ex. K, Pietrzak Depo. pp. 52-53.) The SternJohn's refrigerator just

needed recharging, but it was nonetheless replaced when the SternJohns finally let the repairman in their apartment. Entry was initially denied. (Brandt Aff., Ex. K, Pietrzak Depo. pp. 51-54.) The SternJohns should not be allowed to speculate concerning disparate treatment of others, and they have no admissible evidence of disparate treatment.

Eboni and Julius SternJohn contend that they were "constructively evicted" from the premises, even though at the time that they left the premises all necessary repairs had been completed according to the Housing Court. The alleged racist statement made by Asa Voak to himself is inadmissible hearsay and should not be admitted against Mr. Kreisler. Both Eboni and Julius SternJohn have speculated that their repairs were not completed because they are minorities while other repairs were completed, but they have no admissible evidence to support any comparable repair issues regarding white tenants. Evidence of settlements of other remote and unrelated claims by other individuals should also not be allowed in this action, nor should hearsay statements made by persons who are not present and subject to cross-examination be allowed. The Minnesota Human Rights Department's finding of probable cause should not be used in this case since there is no reason for its use, and it would be highly prejudicial and confusing to the jury. Hence, as is demonstrated below, defendants' motions in limine should be granted.

## ARGUMENT

In light of the requirements of the Federal Rules of Evidence and the applicable law, the Kreisler defendants respectfully request that the Court exclude the following evidence:

(1) evidence of Kreisler's actions outside the relevant time period (1995 to August 1999) and not dealing with the relevant building (2124 Pillsbury Ave.);
(2) allegations of Asa Voak's stray racial comment;
(3) speculation regarding disparate treatment;
(4) past settlements entered into by Kreisler;
(5) evidence of other claims against Kreisler;

(6) all findings and determinations made by the Minnesota Department of Human Rights;
(7) lay testimony regarding causation of plaintiffs' alleged emotional distress;
(8) evidence of plaintiffs' past and future therapy bills;
(9) testimony by witnesses who were late disclosed or whom the defendants were given no opportunity to interview or depose; and
(10) evidence of Kreisler's financials unless a threshold question regarding punitive damages is answered by the jury against Kreisler.

**I. Evidence Should be Limited to the Relevant Building (2124 Pillsbury Ave) and the Relevant Time Period (1995 to August 1999)**

The main factual determination to be made in this case is whether actions taken by the defendants with respect to plaintiffs were undertaken because of racial discrimination. Therefore, any evidence regarding Mr. Kreisler's actions before the plaintiffs moved into the apartment at 2124 Pillsbury Ave. and after they moved out is irrelevant to Mr. Kreisler's treatment of plaintiffs. Fed. R. Evid. 401, 402. Thus, any evidence dating prior to 1995 or after August 1999 is inadmissible.

Also, only evidence regarding the treatment of plaintiffs and those similarly situated to them in all respects (other than race) is relevant, thus information regarding tenants of buildings other than 2124 Pillsbury Ave. is not relevant. See e.g. Gilmore v. AT&T, 319F.3d 1042, 1046 (8th Cir. 2003) (Plaintiff "bears the burden to demonstrate by a preponderance of the evidence that there were individuals *similarly situated in all respects* to her who were treated differently.") (Emphasis added); Scroggins v. University of Minn., 221 F.3d 1042, 1044 (8th Cir. 2000) (plaintiff "'ha[d] the burden of proving that he and the disparately treated whites were *similarly situated in all relevant respects*'") (Emphasis added) (quoting Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994)). Evidence about tenants of buildings other than 2124 Pillsbury are not similarly situated to plaintiffs in all respects, and thus this evidence is irrelevant and should be excluded.

**II. The Alleged Racist Statement By Mr. Voak To Himself Should Not Be Admitted Into Evidence Against Mr. Kreisler.**

Asa Voak's alleged race-related statement, made to himself, and apparently without knowing that the SternJohns would hear the statement, should not be allowed into evidence against Mr. Kreisler. Mr. Voak's statement is hearsay and is certainly not an admission admissible against Mr. Kreisler. This purported statement made by Mr. Voak to himself is also highly prejudicial, and since Mr. Voak no longer resides in the country, Mr. Voak may not even be able to appear to deny this statement.

According to Eboni SternJohn's testimony, there was a dispute between Julius SternJohn and Mr. Voak after the initial Unlawful Detainer hearing on November 20, 1998. When Julius SternJohn confronted Mr. Voak about why he did not tell the SternJohns that their case had been dismissed, Mr. Voak replied that he did not know that they were the parties in the case, and Julius SternJohn stated that he did not believe that and Mr. Voak became upset at being called a liar. Mr. Voak was then walking out of the courtroom, and did not know that Eboni SternJohn was walking behind him, according to Eboni SternJohn. Mr. Voak then muttered under his breath, according to Eboni SternJohn, the statement that "I am tired of dealing with niggers." Eboni SternJohn testified that she then said "What did you say?" to Mr. Voak, who then turned around with a shocked look on his face, because he did not know that Ms. SternJohn was walking behind him when he made the statement. Mr. Voak then quickly left the courtroom, according to Ms. SternJohn. (B. SternJohn Dep. pp. 128-129 at App. A.)

The SternJohns are apparently attempting to use this statement to prove that Mr. Kreisler made some housing decision against them on the basis of their race. This statement is not an admission of any kind, and is certainly not a statement made within the scope of Mr. Voak's agency, and it proves nothing because Mr. Voak was not involved in decision-making

concerning the SternJohn's housing. See DeRoche v. All American Bottling Corp., 57 F. Supp.2d 791, 797 (D. Minn. 1999) ("'stray remarks, statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process are insufficient to establish a prima facie case'") (quoting Gold Star Taxi and Transp. Service v. Mall of Am. Co., 987 F. Supp. 741, 746 (D. Minn. 1997)). This statement allegedly made by Mr. Voak to himself is not a party admission, is wholly irrelevant, and potentially highly prejudicial in this action. Hence, it should be excluded.

The comment allegedly made by Mr. Voak to himself under his breath, is not even sufficient to constitute a "statement" which is a requisite for an admission. It instead appears to be an expression of his personal frustration which he is setting forth in terms of an epithet. In order to constitute an admission, a statement should be one of fact. See, Albertson v. Chicago M. St. P. & P.R. Co., 64 N.W.2d 175, 182 (Minn. 1954). In order to constitute an admission, a statement must be certain, consistent and definite, and it must be couched in language reasonably capable, without forced or strained construction, to bear the interpretation sought to be placed on it. Statements of conjecture and supposition are excluded. See, Pulver v. Union Inv. Co., 279 F. 699, 705 (8th Cir. 1922). Mr. Voak's statement is not an admission, and it would prove nothing of any relevance in this case.

Mr. Voak is not alleged to have said that Mr. Kreisler is tired of dealing with black people, or that Mr. Kreisler brought the Unlawful Detainer Complaint because the SternJohns were black. Rather, it is alleged by Ms. SternJohn that Mr. Voak made this statement under his breath, to himself, as part of dealing with his own problems or frustration. This is clearly not an admission. See, e.g., Smith v. Stratus Computer Inc., 40 F.3d 11 (1st Cir. 1994) cert. denied, 514 U.S. 1108 (1995) (supervisor's shrug in response to complaint of discrimination is not an

admission); Compare, Harris v. Itzhaki, 183 F.3d 1043 (9th Cir. 1999) (assuming that landlord's assistant was his agent, her alleged statement that the landlord didn't want to rent to blacks was admissible). Mr. Voak's statement to himself, if he made it, has no bearing on Mr. Kreisler's actions or whether they were motivated by race or not. Hence, this statement is hearsay and should be excluded from evidence.

Moreover, it is evident from Ms. SternJohn's testimony that the comment, if made, was clearly not directed at the SternJohns. As she states Mr. Voak was surprised when she overheard him. The law is clear that "occasional or sporadic uses of racial slurs or epithets will not in and of themselves support a claim of racial discrimination." The law is clear that "occasional or sporadic uses of racial slurs or epithets will not in and of themselves support a claim of racial discrimination." Young v. Todd Chevrolet, 1992 WL 189431 at *3 (Minn. Ct. App. Aug. 11, 1992); see also, Cariddi v. Kansas City Chiefs Football Club, Inc., 568 F.2d 87, 88 (8th Cir. 1977) (holding ethnic slurs made in casual conversation did not rise to level of discrimination). Minneapolis Police Dep't v. Minneapolis Comm'n on Civil Rights, 402 N.W.2d 125-151 (Minn. Ct. App. 1987) ("Racial comments that are merely part of casual conversation, are accidental, or are sporadic, do not trigger discrimination sanction"). There is no evidence of any alleged use of racial slurs by Mr. Kreisler or any of his other agents, thus this one alleged, sporadic, accidental use of a racial slur should be excluded.

Even if Mr. Voak's statement to himself under his breath was sufficient to constitute an admission by him, it is not an admission by a party opponent, here, Mr. Kreisler, and it therefore is not admissible pursuant to Rule 80l(d)(2)(E). A party proffering a statement by an agent pursuant to the party admission exception to the hearsay rule must lay a foundation to show that the otherwise excludable statement by the agent relates to a matter within the scope of the

agent's employment. See, Pakizegi v. First Natl. Bank of Boston, 831 F. Supp. 901, 910 (D. Mass. 1993) aff'd. 56 F3d 59 (1st Cir. 1995). Pursuant to the rule, in order to introduce the statement as an admission, the SternJohns would have to establish that Mr. Voak's statement was made within the scope of Mr. Voak's employment and that Mr. Voak was an advisor or other significant participant in the decision-making process that is the subject matter of the statement. See, Evans v. Port Authority of New York and New Jersey, 192 F. Supp.2d 247, 262 (S.D. N.Y. 2002). The SternJohns clearly cannot make such a showing.

Mr. Voak had absolutely no decision-making authority with respect to whether Unlawful Detainer complaints would be brought by Mr. Kreisler – Mr. Kreisler exclusively retained all such authority. (Kreisler Aff. ¶ 4 at App. I.) Mr. Voak had no decision-making authority relating to any repairs at the apartment building or any apartment building belonging to Mr. Kreisler and he had no decision-making authority with respect to whether tenants would be allowed to come or go. These are the decisions which were allegedly wrongfully based on race in this case. Instead, Mr. Voak's authority as an independent contractor for Mr. Kreisler was strictly limited to processing the Unlawful Detainers that Mr. Kreisler had already decided upon. Any statement by Mr. Voak concerning his personal frustration expressed in racist terms was not within the scope of his agency and he had no power to decide anything relevant to the SternJohn' s housing based upon any racist attitude. Hence, Mr. Voak's alleged racist statement cannot be imputed to Mr. Kreisler under the rules of agency as set forth in the Federal Rules of Evidence Rule 801(d)(2)(D).

A trial court properly refuses to admit hearsay statements offered as admissions of a defendant's agents where the plaintiff showed neither that the declarants were agents of the defendant as opposed to independent contractors, nor that their statements concerned matters

within the scope of their agency. See, Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1440 (9th Cir. 1990). For an agent's statement to qualify in a discrimination action as a party admission under the exception to the hearsay rule for statements by a party's agent on a matter within the scope of the agent's employment, the declarant must have actually been involved in the decision to hire or fire the person bringing the discrimination charge. See, Goss v. George Washington University, 942 F. Supp. 659, 662 (D. D.C. 1996). Mr. Voak was certainly not an advisor or even a participant in the decision-making process as to whether the SternJohns would receive an Unlawful Detainer action, would have repairs made on their apartment, or any other issue in this case.

Clearly, not everything that relates to one's job falls within the scope of one's agency or employment for the purposes of Rule 801(d)(2)(D). See Stagman v. Ryan, 176 F.3d 986, 997 (7th Cir. 1999). At best, Mr. Voak's statement, if he made it, should be treated as a stray remark, insufficient to even try to prove discrimination because the remark is unrelated to the decisional process. See, Merrick v. Farmers Ins. Group, 892 F.2d at 1438; Smith v. Firestone Tire and Rubber Co., 875 F.2d 1325, 1330 (7th Cir. 1989). Mr. Voak was certainly not authorized to make any statements concerning the race of tenants or to express his personal frustration under his breath in muttered comments that might offend someone. All that he was authorized to do was to process Unlawful Detainer complaints and related housing court matters on behalf of Mr. Kreisler. Mr. Voak had no influence in the decision-making process as to whether to bring Unlawful Detainer complaints, who stayed at Mr. Kreisler's properties or who left, or who received repairs and who did not. Hence, Mr. Voak's alleged statement to himself under his breath should not be admitted in evidence in this case.

**III. The SternJohns Should Not Be Allowed To Speculate Regarding Their Claims Of Disparate Treatment.**

Throughout discovery in this action, the SternJohns have asserted, without support, that they were treated differently as a result of their race and that other minority tenants were treated differently as a result of their race by Mr. Kreisler. In fact, however, Mr. Kreisler did not apportion repairs according to race, and did not evict tenants based on their race, but rather evicted tenants who were late in paying their rent. Nonetheless, it appears that the SternJohns and some of their witnesses will seek to opine that minority tenants were treated differently than white tenants in terms of repairs and eviction actions. Such evidence, if it existed, would be proper to show disparate treatment, but only if foundation were laid regarding the similarity of the conditions of the white tenants, which the SternJohns and their witnesses cannot establish in this case. Hence, as is demonstrated below, any evidence of disparate treatment which does not meet the requisites for admissibility of evidence should be excluded.

A federal housing discrimination claim may be established by proving disparate treatment and discriminatory intent. See, Larkin v. State of Michigan Dept. of Social Services, 89 F.3d 285, 289 (6th Cir. 1996). A *prima facie* disparate treatment claim requires plaintiffs to establish that they are members of a protected class, they applied for and were qualified to receive the housing benefit, that they were refused the housing benefit, and that the benefit remained available to others. See Noland v. Commerce Mortgage Corp., 122 F.3d 551, 553 (8th Cir. 1997). In a disparate treatment case, the plaintiff has the burden of showing that he or she was treated differently from persons similarly situated in all relevant aspects. See e.g. Gilmore, 319 F.3d at 1046 (Plaintiff "bears the burden to demonstrate by a preponderance of the evidence that there were individuals *similarly situated in all respects* to her who were treated differently.") (Emphasis added); Scroggins, 221 F.3d at 1044 (plaintiff "'ha[d] the burden of proving that he

and the disparately treated whites were *similarly situated in all relevant respects*'") (Emphasis added). Thus, to be deemed "similarly situated" the individuals with whom the plaintiff seeks to compare his or her treatment must have dealt with the same decision-maker, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the decision-maker's treatment of them for it. See, Marbly v. Home Properties of New York, 205 F. Supp.2d 736, 744-45 (E. D. Mich. 2002). Thus, in order to prove disparate treatment, the SternJohns must establish that the white tenants that they claimed received better housing conditions were in comparable situations in all respects.

The SternJohns will be unable to lay any such foundation for their conclusory allegations of disparate treatment. The only example that they have provided in their depositions was that a white neighbor received a new refrigerator, while Eboni SternJohn had complained that hers was malfunctioning. In fact, however, as set forth above, the white tenant's refrigerator had completely failed to function, while Ms. SternJohn's refrigerator simply needed to be recharged and still worked. Ms. SternJohn eventually received a new refrigerator by the end of April of 1999. The white tenant whose refrigerator completely failed is not a similarly situated tenant. Thus, the refrigerator issue does not establish disparate treatment.

The SternJohns have also complained that all of the tenants "knew" that minority tenants were being evicted from the premises or were leaving the premises, but they do not and have not established that the white tenants who were in similar circumstances were not also being evicted or leaving. They have not shown and will not be able to show that Mr. Kreisler was evicting only black tenants for late payment of rent when in fact all tenants who were late in payment of rent were being evicted. Also conclusory opinions from lay persons regarding whether they

believe the defendants engaged in discrimination is not helpful to the fact finder, and is prejudicial, thus should be inadmissible. See Hogan v. American Telephone & Telegraph Co., 812 F.2d 409, 411-12 (8th Cir. 1987) ("stating opinion testimony is not helpful to the fact finder if it is couched as a legal conclusion; but finding harmless error in admitting such evidence in a bench trial). Fed. R. Evid. 701.

The SternJohn's have the burden to establish disparate treatment, and reliance on speculation and conclusory allegations is insufficient. See, Noland, 122 F.3d at 553 (bare assertion without more is not evidence that those not in the protected class were treated more favorably); Marbly, 205 F. Supp.2d at 744-45. (Plaintiff's conclusory attestation that he would see the cleaning lady clean all other buildings and skip his is inadmissible on summary judgment motion). In order to establish disparate treatment, the SternJohns are required to show that the comparables are similarly situated in all respects. The SternJohns will not be able to establish this based on the evidence to date, and therefore any such evidence of disparate treatment should be closely scrutinized by the Court and excluded to the extent it does not meet the prerequisites for admissibility.

## IV. Evidence Of Prior Remote Settlements Of Discrimination Claims Should Be Excluded From The Trial Of This Action.

In 1989, ten years before the alleged discriminatory action in this case, a Mr. Michael McGuire made a charge of discrimination in the Minneapolis Department of Civil Rights alleging that Mr. McGuire, a prospective employee of Mr. Robert Kreisler, was told by Mr. Kreisler that he would need to code applications to indicate the desirability of tenants and that he was not to rent to African Americans or Native Americans. This charge was settled for $500.00 and it was withdrawn pursuant to the terms of the Settlement Agreement. Mr. Kreisler denies making any such statements to Mr. McGuire. (Kreisler Dep. pp. 244-245 at App. B.)

In 1994, some five (5) years before the issues in this case arose, Ms. Stephanie Ball made a charge of discrimination in the Minnesota Department of Human Rights. Ms. Ball was already renting an apartment from Mr. Kreisler, but she wanted to move to a different apartment, and claimed that it was discriminatory to require her to fill out a new application for a separate apartment. (Ball Complaint at App. BB.) Ms. Ball's complaint was also settled for the sum of $6,000.00 and Mr. Kreisler's agreement to do various matters, such as advertise in minority newspapers, which he has. Mr. Kreisler denied any discrimination in 1994 in the settlement agreement.

These two settlements are completely unrelated to the failure to repair or disparate treatment charges made in this case, and the fact of the settlements of these claims, which are remote in time from the claims at issue herein and potentially highly prejudicial, should not be allowed into evidence in this case pursuant to Rule 408 and Rule 403 of the Federal Rules of Evidence.

In both prior remote settlements, Kreisler denied the allegations and entered into the settlements with no admission of fault. Evidence regarding these settlements must be excluded. Rule 408 prohibits using evidence of settlements to prove liability. Fed.R.Evid. 408. Moreover, evidence of settlements is irrelevant, and therefore inadmissible. Scaramuzzo v. Glanmoe Distilleries, Co., 501 F. Supp. 727, 733 (N.D. Ill. 1980) ("An offer of settlement can be of no legal relevance as to the offeror's liability"); see also Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 977 (8th Cir. 1995) (finding refusal to introduce evidence regarding settlement amount was not an abuse of discretion).

In addition, allowing evidence regarding settlements "undermines the public policy favoring out-of-court settlement." LaDolce v. Bank Admin. Inst., 585 F. Supp. 975, 977 (N.D.

Ill. 1984) (holding evidence of settlement of a discrimination claims with another party "must be excluded").

The Court in Scaramuzzo held that it was against public policy to subject a person who has compromised a claim to the hazard of having that settlement raised in a subsequent lawsuit by another person asserting a similar cause of action. Hence, the Court excluded evidence of other settlements and evidence that other charges had been filed by persons other than the plaintiff in the action at issue.[1] Scaramuzzo, 501 F. Supp. at 733.

Similarly, in Doe v. Aramark Educational Resources Inc., 206 F.R.D. 459 (N.D. Tenn. 2002), the Court excluded, even from discovery, evidence of settlements by the defendant of other sexual abuse claims against the defendant. The plaintiff was seeking to discover the nature of the settlements of other sexual abuse claims because the plaintiff wished to put into evidence the settlements to establish liability and purportedly to negate claims of mistake or lack of knowledge. The Court excluded such evidence of these settlements even at the discovery stage. The Court found that the purpose of Rule 408 recognizes that disputes are often settled for reasons having nothing to do with the merits of a claim. The Court reasoned that a potential defendant may settle from a simple desire for peace, judging that the expense and inconvenience of litigation are worth paying a certain sum to avoid. This being so, evidence of a settlement may have little relevance to the validity of the claim and may subvert the truth-finding goal of the trial. Doe, 206 F.R.D. at 463-64; See also, Williams v. Fermenta Animal Health Co., 984 F.2d 261 (8th Cir. 1993) (it was not error to exclude evidence of settlement of prior discrimination law suit against employer's predecessor). The fact that Mr. Kreisler settled these two claims does not evidence anything except that the claims were brought and resolved.

---

[1] *The Court distinguished between evidence of other discriminatory practices and evidence that claims have been filed and settlements.*

Here, the SternJohns apparently wish to offer evidence that Mr. Kreisler had settled two previous claims of discrimination, one in 1989, and one in 1994, for the purpose of showing that Mr. Kreisler discriminated against these other people. This is clearly an improper use of the settlement offers and the settlements themselves. The Court should not discourage settlements of discrimination claims by allowing another plaintiff to use the evidence of these settlements as evidence of discrimination. Instead, should the plaintiffs wish to prove the actual facts underlying these claims, and should the Court determine that they are not too remote to establish any issue in this case, then those former complainants should come to the Court and prove their claims of discrimination rather than the plaintiffs here relying on old settlements as some type of admission, which they are not pursuant to Rule 408.

These two settlements of discrimination claims occurring in 1989 with Mr. McGuire and 1994 with Ms. Ball are irrelevant to the issues in this case. It would essentially require a separate trial of those claims if they were admitted into evidence in this case. Furthermore, the reasonableness of the settlements would have to be explored. All of this would unduly prejudice Mr. Kreisler, frustrate the purposes of Rule 408, and would add nothing to the facts at issue in this case. Hence, evidence of the filing of previous claims of discrimination and the settlements of those claims should be excluded pursuant to Rules 408, 402, and 403 of the Federal Rules of Evidence.

**V. Evidence of Other Claims Against Kreisler Are Inadmissible.**

Evidence of other charges or claims brought against Kreisler must be excluded because the probative value of such evidence of outweighed by the undue prejudice to Kreisler. The fact that persons other than the plaintiffs have made claims is of little probative value, and the likelihood that evidence of other claims will lead to potentially damaging inferences against

Kreisler that are not supported by the mere fact that other claims have been made is great. See e.g., Scaramuzzo, 501 F. Supp. at 733 (holding that the undue prejudice of evidence of that a "charge" was filed against defendant outweighs any probative value of the evidence).

Thus any reference or evidence of the U.S. v. Kreisler litigation should be excluded. This Court has held that these cases must be heard separately, and it would be inconsistent to now allow the United States' case to be mentioned and/or the submissions in that case to be used against Kreisler in this one.

## VI. The Minnesota Department of Human Rights Conclusory Determination Of Probable Cause Should Be Excluded As Untrustworthy And Unduly Prejudicial.

The Minnesota Department of Human Rights issued probable cause determinations in both the Eboni SternJohn and Julius SternJohn charges of discrimination. These determinations of probable cause rely upon hearsay, are unreliable, and appear to be based upon completely erroneous interpretations of the law. Obviously, in this jury trial, these determinations of probable cause would be unduly prejudicial because they cannot be cross-examined and will impart the view of whoever wrote these findings at the Department of Human Rights as an expert witness in this litigation. Hence, as is demonstrated below, these findings should be excluded.

Administrative findings made with respect to claims of racial discrimination are sometimes admissible under Fed. R. Evid. 803(8)(C) if circumstances do not indicate they are untrustworthy. The Court of Appeals in Johnson v. Yellow Freight System. Inc., 734 F.2d 1304, 1309-10 (8th Cir. 1984), addressed the issue of the admissibility of administrative findings with respect to claims of racial discrimination. There, the Court found that although such reports may contain information that would be useful to the jury, their probative value may be outweighed by problems that would result from their admission. The Court found that EEOC determinations are not homogeneous products; they vary greatly in quality and factual detail. The Court found that

particularly in a jury case, where undue prejudice may result from the admission of the findings, the admissibility of administrative findings such as an EEOC reasonable cause determination is best left to the sound discretion of the trial judge. The Court of Appeals noted, that in the exercise of its discretion, the trial court may consider whether substantial evidence was presented to the jury on the matters summarized in the report, and if there is, there is little probative value in the conclusory agency statements regarding the same evidence. To admit the report under these circumstances, the Court held, would amount to admitting the opinion of an expert witness as to what conclusions the jury should draw, even though the jury has the opportunity and the ability to draw its own conclusions from the evidence presented. Furthermore, the Court should consider whether the admission of the determination would necessitate the taking of additional evidence, and other matters pursuant to Rule 403 of the Federal Rules of Evidence.

In accordance with the Johnson decision, many Courts have upheld a trial judge's determination not to allow the admission of administrative findings regarding discrimination. See, e.g., Paolitto v. John Brown E. & C.. Inc., 151 F.3d 60, 64-65 (2nd Cir. 1998); Walker v. NationsBank of Florida NA, 53 F.3d 1548 (11th Cir. 1995); Lee v. Executive Airlines, Inc., 31 F. Supp.2d 1355 (S.D. Fla. 1998). And at least one Court held that an EEOC determination letter should have been excluded. Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1105-1106 (8th Cir. 1988) (reversed on other grounds). Hence, this Court has discretion to determine whether the Minnesota Department of Human Rights probable cause determination should be admitted in this case or excluded pursuant to Rule 803(8)(C) as untrustworthy or pursuant to Rule 403 of the Federal Rules of Evidence because it is unduly prejudicial. Furthermore, where, as here, the Department's determinations are based upon erroneous determinations of law or erroneous legal

conclusions that do not reference any specific evidentiary basis, they should not be admitted because they are unfairly prejudicial. See, Lee, 31 F. Supp.2d at 1357-58.

In this case, the probable cause determinations are conclusory, do not reference the specific evidence in issue, and appear to apply rules of law that do not exist. Paragraph 1 of the MHRA Memorandum simply summarizes the charges made by the SternJohns. (Memorandums at App. HH and II.) Paragraph 2 of the probable cause determination summarizes Mr. Kreisler's response - that the Interim Management Agreement prohibited him from undertaking major improvements and repairs in excess of $200.00. Apparently relying upon the fact that Mr. Kreisler wished to redecorate the SternJohns' apartment and asked them to leave as of December 30, 1998, the probable cause determination states that "on the one hand it [Kreisler] cannot effect minor repairs because of the agreement while on the other hand the agreement allows it to evict tenants for major redecorating work." This simply ignores the fact that Mr. Kreisler was supposed to close upon the property on January 1, 1999, and thus he had every incentive to begin redecorating on that date. The statement "it seems respondent is using the interim agreement for its convenience" is thus argumentative, false and erroneous. The Memorandum then goes on to state in Paragraph 3 that the charging party identified a white neighbor who had a refrigerator replaced two (2) days after it broke down while respondent ignored a month old Court Order to fix or replace charging party's refrigerator that broke down prior to the white neighbors. For the reasons discussed supra regarding the refrigerator issue and disparate treatment, these were not comparable "refrigerator issues," and the Department of Human Rights apparently did not fully investigate the "refrigerator issue." The statement that "witness statements" showed that respondents more readily responded to white tenants requests for repairs than those of black tenants certainly does not prove any type of discrimination seeing

as it is admittedly based upon mere hearsay. All that the investigator apparently did was summarize the conclusory hearsay statements of those persons that the MHRA chose to interview.

In Paragraph 4 of the Memorandum, it states that investigation found substantial and credible evidence to believe the allegation that respondent evicted minority tenants at a much higher rate than white tenants. There are no references to evidence or other statements contained in the Memorandum that show the minority tenants and white tenants being compared were similarly situated in terms of paying rent. All of the tenants that were evicted, were evicted for late payment or non-payment of rent. White tenants were also evicted when they failed to pay rent. The MHRA determination merely relies on numbers without any inquiry as to whether the tenants' situations were comparable, which is clearly a requisite for a disparate treatment analysis. Paragraph 4 goes on to relate in summary the hearsay statements of several witnesses who "observed" that generally black tenants were the ones evicted. Again, there is no analysis of whether these tenants were similarly situated. There is no finding or even investigation as to whether the black and white tenants that were evicted paid their rent on time. The probable cause determination's conclusion that people who lived in the building "observed" that, "generally" black tenants were being evicted would be inadmissible under any circumstances under the Rules of Evidence. See, Fed. R. Evid., Rule 701.

Incredibly, the Memorandum goes on to state that one witness stated that when he was considered for a caretaker position with "respondent" he was told not to rent to blacks or Native Americans. This can only have been Mr. Michael McGuire, who was never considered for a caretaker position at the relevant building. According to his claim, this "instruction" occurred at

a completely different building in 1989, years before the SternJohns became tenants of Kreisler and nearly ten (10) years before the Department's Memorandum was created.

The Memorandum goes on to state "there is clear and convincing evidence that respondent systematically evicted black tenants, thereby engaging in a pattern and practice of discriminatory treatment against blacks and other minorities." Now the Department of Human Rights has determined that there is "clear and convincing evidence" of a systematic eviction of blacks and other minorities without asking or determining whether the evicted tenants were paying rent on time or whether the evictions were appropriate. In Paragraph 6 of the Memorandum, it is stated that Ms. SternJohn sent a letter while the Housing Court's Order of July 14 was pending regarding a leak in the bedroom ceiling and her intercom not working. Thus, the Department of Human Rights finds, that the July 21 Unlawful Detainer against the SternJohns must have been retaliatory, ignoring the fact that the Court's Order found no rent abatements necessary. The Department of Human Rights even finds that the eviction w the result of a complaint of race discrimination but no complaint of race discrimination had even been made by Ms. SternJohn at that time, and while it could have been arguably retaliatory in terms of a request for repairs, there was absolutely no allegation or complaint of racial discrimination at that time by Eboni or Julius SternJohn.

The Minnesota Department of Human Rights did not analyze disparate treatment in terms of comparing similarly situated tenants in making its findings. The Minnesota Department of Human Rights appears not to have applied an appropriate analysis of the law, but simply relied upon what its "witnesses" stated, without even determining whether those witnesses ever resided (as in the case of Mr. McGuire) at the relevant building. Hence, the Department of Human

Rights findings are unreliable, based entirely on hearsay and highly prejudicial and should be excluded under the Federal Rules of Evidence.

Any admissible evidence relied upon by the Minnesota Department of Human Rights may be presented at trial by the SternJohns. Hence, as the Court in Johnson found, there is no reason to admit the probable cause determination essentially making the MDHR an expert witness in this case - without cross-examination. All of the evidence can instead be evaluated by this Court and by a jury under the applicable Rules of Evidence and subject to this Court's rulings of law. Hence, the Minnesota Department of Human Rights Memorandum finding probable cause for discrimination should be excluded from the trial of this case pursuant to Rules 803(8)(C) and Rule 403 of the Federal Rules of Evidence.

**VII. Lay Testimony Regarding Causation of Plaintiffs' Alleged Emotional Distress Should be Excluded.**

Plaintiffs have not disclosed any medical experts as witnesses in this matter. Plaintiffs do, however, allege emotional distress and mental anguish. To the extent that plaintiffs intend to show that as part of their alleged emotional distress and mental anguish they suffered from any medical, psychological or psychiatric condition, they must present admissible expert testimony. See Fed.R.Civ.P. 701(c), 702.

Plaintiffs have not identified any experts to prove any specific diagnosis or causation. DeSanto v. Rowan Univ., 224 F. Supp.2d 819, 830 (D.N.J. 2002) (excluding testimony of doctor who was not identified as an expert witness). Although plaintiffs can testify based on their personal knowledge about any emotional distress or mental anguish they allegedly suffer, absent expert testimony, plaintiffs and other lay witnesses cannot testify to their beliefs regarding any diagnosis or how any alleged emotional distress or mental anguish was caused. See Frazier v. Indiana Dep't of Labor, 2003 WL 21254424 at *3-4 (S.D.Ind. March 17, 2003) (granting

motions in limine excluding "evidence of any medical psychological or psychiatric condition of the Plaintiff alleged to be proximately caused by any fact or allegation of the plaintiff by any lay witness"); see also Hahn v. Minnesota Beef Indus., Inc., 2002 WL 32658476 at *3 (D.Minn. May 29, 2002) ("Given the complexities of the mental conditions at issue in this case [depression and anxiety disorder], neither [Plaintiff] nor her husband nor any other lay witness may testify about their beliefs as to how [Plaintiff's] alleged emotional distress injuries were caused.").

**VIII. Evidence Regarding Plaintiffs' Therapy or Other Medical Bills Must be Excluded.**

Again, plaintiffs have not identified any medical expert witnesses, so they cannot enter into evidence their bills for therapy other medical treatment they allege arose from defendants' actions. In a similar case, the Court granted defendants motion in limine seeking exclusion of evidence of expenses of medical, psychological or psychiatric treatment:

> Given the court's conclusion that expert testimony is required regarding the causation of any of the Plaintiff's alleged medical psychological or psychiatric conditions, it follows that to the extent the Plaintiff seeks to recover expenses incurred for treating such a condition, expert testimony also is required to establish the reasonable cost and necessity of treatment for such condition.

Frazier, 2003 WL 21254424 at *4 (citing Ferris v. Pennsylvania Fed'n Bhd. Of Maint. Of Way Employees, 153 F. Supp.2d 736, 743 (E.D. Pa. 2001)).

Because plaintiffs do not have any expert testimony regarding the reasonable cost and necessity of any treatment or therapy, the Court should exclude any evidence of the plaintiffs' therapy or other medical bills.

**IX. Testimony by Late Disclosed Witnesses Should Be Excluded.**

"It is a well-established rule in this circuit that district courts have broad discretion to exclude the testimony of a witness who was not disclosed prior to trial." United States v. Big D Enterprises, Inc., 184 F.3d 924, 935 (8th Cir. 1999); see also Life Plus Int'l v. Brown, 317 F.3d 799, 803 (8th Cir. 2003) ("'we start with the premise that a district court may exclude from

evidence at trial any matter which was not properly disclosed in compliance with the Court's pretrial order.'" (quoting Dabney v. Montgomery Ward & Co., 692 F.2d 49, 51 (8th Cir. 1982). Plaintiffs are attempting to call a number of witnesses that were never disclosed during discovery. Plaintiffs should not be allowed to present any testimony by any witness not previously disclosed. The testimony of these witnesses should be excluded to avoid prejudice to the defendants because they were not allowed to depose or conduct discovery regarding the witnesses. Additionally, many of these witnesses are "aggrieved parties" in the U.S. v. Kreisler case and cannot be contacted without a U.S. Attorney present. This makes it impossible for defendants to determine what their testimony will be at this trial.

**X. The Punitive Damages Aspect of the Trial Should Be Bifurcated and Evidence of Kreisler's Financials Should Be Excluded Unless the Jury Finds Against Kreisler.**

It is clearly within the Court's discretion to bifurcate the punitive damages portion of the trial and exclude evidence regarding Kreisler's financial information unless the jury finds against Kreisler on liability. Thorne v. Welk Investment, Inc., 197 F.3d 1205, 1213-14 (8th Cir. 1999) ("The decision of whether to isolate the punitive damages phase of the trial is within the sound discretion of the trial court.") The trial of this matter should be bifurcated, and punitive damages and evidence relevant only to the punitive damages issues should only be addresses if the jury finds liability and indicates on the Special Verdict Form that plaintiffs are entitled to punitive damages.

The trial should be bifurcated to avoid the inefficiency of presenting evidence regarding the punitive damages aspect of the case when the jury's findings may preclude any need for it. Also, bifurcation avoids unnecessary disclosure of Kreisler's financial information, which is irrelevant absent a jury finding of liability. Therefore, the Court should bifurcate the trial and deal with the punitive damages phase only if necessary.

## CONCLUSION

This case should not be litigated based on speculation, inadmissible evidence or the unreliable conclusions of a state agency. Rather, this case should be tried based upon the evidence that is admissible before the Court and jury and the applicable law. For all the foregoing reasons, defendant Robert Kreisler respectfully requests that this Court enter an order granting defendant's Motions in Limine.

Dated: October 12, 2004___________

LARSON • KING, LLP

By: s/ Angela Beranek Brandt
Mark S. Solheim (#213226)
David M. Wilk (#222860)
Angela Beranek Brandt (#293143)
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, Minnesota 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618

Attorneys for Defendants
Robert L. Kreisler, Jr., d/b/a
Kreisler Real Estate Company, d/b/a
Whittier Real Estate Company, d/b/a
KT Properties Partnership L.P.,
Whittier Community Apartments,
d/b/a, Bristol Apartments