STATE OF MINNESOTA

# CHARGE OF DISCRIMINATION

Department of Human Rights
Bremer Tower, Fifth Floor
7th Place & Minnesota St.
St. Paul, MN 55101
612/296-5663
Toll-Free 1-800/657-3704
TTY 612/296-1283

Any person claiming to have been discriminated against because of race, color, creed, religion, national origin, sex, sexual orientation, marital status, disability, age, public assistance status or familial status, as provided for in Chapter 363 of the Minnesota Statutes in the areas of employment, real property, public accommodations, public services, education, credit or business contracts may file a charge within one year after the alleged discriminatory act with the Minnesota Department of Human Rights at the above address.

DEPARTMENT OF HUMAN RIGHTS USE ONLY

Case Number: H519940041 AMENDED

Acknowledged by: Darlene M Johnson

Date Filed: 9/22/94

Date Docketed: 4/20/95

1. CHARGING PARTY

Stephanie Ball
2825 Fremont Ave. S. #209
Minneapolis, MN 55408

2. RESPONDENT

Kreisler Realty
P.O. Box 19287
Minneapolis, MN 55419

3. The discrimination was because of:

Race and reprisal

4. The discrimination was in the area of:

Real Property ~~and reprisal~~

5. Describe the discriminatory act, setting forth in statutory language the violation of Minnesota Statutes, Section 363.03:

I am a black female who rented a unit owned by the above-named Respondent from May 1, 1992 to February 13, 1994. The subject property was located at 2432 First Avenue South, Minneapolis, Minnesota.

In December 1993, I notified the Respondent of my intention to vacate my apartment effective February 19, 1994. A short time later, I informed the Respondent's caretaker that I was interested in moving to one of Respondent's two bedroom apartments. On December 22, 1993 the caretaker showed me a vacant two bedroom apartment. When I indicated my interest in renting this apartment, the Respondent informed me that it was already rented. On December 27, 1993, the Respondent owner told me I had to fill out a new rental application in order to be considered for another apartment. The caretaker had previously informed me that a new application was not necessary. I am aware that white tenants were not required to fill out another application to move to another unit on Respondent's property.

Following these events I informed the Respondent owner that I believed I was being treated differently because of my race, and on December 31, 1993 I also sent the owner a letter to this effect.

On January 11, 1994, I was given an eviction notice because Respondent Owner Robert Kreisler claimed that he had not received my rent for January. I had sent the check with a letter on three different occasions but he refused to accept it. I am aware of white tenants who were actually late with their rent, however, Mr. Kreisler did not file an unlawful detainer against them.

2 pages

(continued)

56

Pltfs 000127

I believe my race was a factor in the Respondent's actions. I had rented the unit for approximately two years. My rent was late on only two occasions, and I did pay a late fee per my lease agreement. I was the only minority tenant living at the subject property.

I also believe that the Respondent's actions were a reprisal because I complained of being treated differently on the basis of my race.

I therefore allege that the above-named respondent has discriminated against me in the area of real property on the basis of race in violation of Minnesota Statutes, Section 363.03 Subd. 2(1)(b), and has taken reprisal against me because of my opposition to discriminatory practices, in violation of Minn. Stat. 363.03 Subd. 7 (1).

TB 0794/0395eh

Subscribed and sworn to before me this 27 day of March 1995

C. J. Pierson
Notary Public

I swear or affirm that I have read this charge and that it is true to the best of my knowledge, information, and belief. I understand that the data contained on this form may be made public.

Stephanie Bell
(Signature of Charging Party)

C. J. PIERSON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES
JANUARY 31, 2000

95 MAR 28 PM 12:30

Minneapolis Department of Civil Rights
Room 239 City Hall
Minneapolis, Minnesota 55415
(612) 673-3012

Charge No: 90216-AA-1F

***** COMPLAINANT *****

Name: Michael J. McGuire
1504 St. Clair Ave. #301
St. Paul, MN 55105

***** RESPONDENT *****

Name: Robert Kreisler
KT Properties
121 West Elmwood Place
Minneapolis, MN 55419

Dat of most recent incident incident of discrimination: August 24, 1989

I. I, Michael J. McGuire, a male, rented an apartment from the above named respondent in August, 1989. At the time I rented, I was approached by the respondent regarding accepting a vacant caretaker's position which, after learning that I would have to reject minority applicants, I turned down. This discussion occurred on or about August 24, 1989.

II. During my discussions with Mr. Kreisler, I was told that I would need to code applications to indicate the "desirability" of tenants and that I was not to rent to African Americans or Native Americans due to the problems he had had with such tenants in the past.

***** STATEMENT OF CHARGE *****

III. I believe the respondent engages in discrimination with regard to the rental of real estate in violation of Chapter 139.40 (e)(1)(2()3) and that I was being requested to aid and abet the respondent in discrimination, in violation of Chapter 139.40 (k)(1)(2) of the Minneapolis Code of Ordinances for the following reasons:

1. The respondent directly informed me that I was not to rent to African Americans or Native Americans.

2. Upon information, I have reason to believe that the individual who accepted the caretaker position I rejected at 2432 First Avenue South was given the same instruction as I. To my knowledge he has shown units to minority applicants.

3. I was informed by Mr. Kreisler that I would have to code tenant applications to indicate my "ranking" of the applicant.

4. To my knowledge, no African American or Native American applicants were knowingly rented apartments at 2432 First Ave. S. during my tenancy.

Exhibit J

MINNEAPOLIS DEPARTMENT OF CIVIL RIGHTS

Room 239, City Hall

Minneapolis, MN 55415

MR. MICHAEL MCGUIRE
Complainant

MDCR File No: 90216-AA-1F

vs.

HUD File No: NA

ROBERT KREISLER
KT Properties
Respondent

TERMS OF AGREEMENT

Micheal McGuire, Complainant ( hereinafter Cp) and Robert Kreisler, Respondent ( hereinafter Rp) have agreed to settle all issues in dispute in the above cited case as follows:

1. Rp agrees to advertise housing vacancies at 2432 1St Avenue South, Mpls. MN in the attached circled minority resource list. Rp agrees to use any other miinority source that he may have knowledge of that is not on said list.

2. The Cp agrees to take no further legal or administrative action with regard to any matters which were or might have been alleged as charges filed with the Department subject to performance by Rp of the promise contained in this agreement.

3. Cp agrees to sign the attached withdrawal form.

4. The agreement shall become effective upon its execution by the Cp and Rp's.

10/29/90
Date

[signature]
Complainant

10/28/90
Date

[signature]
Respondent

DSHUD

CITY OF MINNEAPOLIS
DEPARTMENT OF CIVIL RIGHTS

## REQUEST FOR WITHDRAWAL OF CHARGE OF DISCRIMINATION

You recently indicated a desire to withdraw your charge. In order to initiate such action, please furnish the information below and return the form in the enclosed envelope.

Please note your charge is currently open with each agency for which a case number is listed. Your signature on this request signifies your desire to withdraw your charge from each agency. Since a request for withdrawal of a charge is subject to the approval of the agencies, your request will be considered and acted upon when received. Please note that all agencies are prepared to continue to proceed with your charge should you so desire.

| CHARGING PARTY NAME: | | RESPONDENT NAME: | |
|---|---|---|---|
| Michael McGuire | | Robert Kreisler/KT Properties | |
| MDCR NUMBER: | MDHR NUMBER: | EEOC NUMBER: | DHUD NUMBER: |
| 90216-AA-1F | NA | NA | NA |

COMPLETE THE INFORMATION BELOW

I am aware that Federal, State and Local Anti-discrimination statutes protect my right to file a complaint. I have been advised it is unlawful for any person covered by such statutes and their amendments to threaten, intimidate or harass me because I have filed a complaint. I have carefully considered this request for withdrawal and make such request free from threats of coercion or reprisal. Further, I have not been forced into making this request by any employee or agent of the Minneapolis Department of Civil rights, Minnesota Department of Human Rights, Equal Employment Opportunity Commission or Department of Housing and Urban Development.

I request the withdrawal from all agencies in which my case is active because: I have reached a private resolution with the Respondent, Robert Kreisler/KT Properties.

[signature] SIGNATURE 10/29/90 DATE

SEND TO: Minneapolis Department of Civil Rights
Room 239 City Hall
Minneapolis, Minnesota 55415
(612) 348-7736

CR-8800 Rev. 8/87

A. No, sir.

Q. The next item, number five, living room and bedroom to lock properly. Do you recall that being an issue?

A. Yes, sir.

Q. Do you recall approximately how long it took to address that issue after you received -- or after Kreisler Management received this order?

A. No, I couldn't recall how long, no, but it was taken care of.

Q. Okay. Moving to item number seven, the bathroom shower and leaks, do you recall this being an issue in the SternJohn's apartment?

A. Yes, sir.

Q. Do you recall how long it took to address this problem, after the letter dated January 15th was sent?

A. This was issued -- to be honest, I couldn't tell you, but I know it was taken care of. There had to be work done up above, from the apartment up above, so because that was the problem.

Q. Okay. Lastly, item eight regarding the refrigerator, do you recall that being an issue?

A. Yes, sir, I do.

Q. Do you recall approximately how long it took to address that issue after this letter dated January

Exhibit K

15th was sent to Kreisler Management?

A. To be honest, no, I couldn't tell you, but I do recall the incident. We had scheduled a date with her to replace the refrigerator, I had talked to her the following night before and scheduled something for 8:00 in the morning and when I arrived there at 8:00 that morning I do recall not being able to get in to perform the work because her husband supposedly was at home and sleeping, so I was -- I had talked to Eboni about it the night before and that's why we did it early in the morning so I knew I could get in there and not -- so none of their food or anything would spoil. You know, take the stuff out, I'll be there at 8:00 in the morning. So I was not allowed in there until later on that afternoon so. . .

Q. Do you remember when that was, Mr. Pietrzak?

A. To be honest with you, no, what the dates were and that.

Q. Do you recall other tenants at 2421 Pillsbury Avenue having issues or problems with their refrigerator?

A. Yes, sir.

Q. What other tenants had problems with their refrigerator?

A. In fact, I think it was the gal next door of

her, she had a refrigerator problem, too, and we took care of that problem, too.

Q. Do you remember her name?

A. To be honest with you, no, sir.

Q. Do you remember the apartment number?

A. Would that have been --

Q. I don't want you to guess, if you don't know.

A. 204, yes.

Q. You shouldn't guess. If you don't know, that's fine.

A. I know it was next door.

Q. Does the name Muriel Nord sound familiar?

A. Yes, sir.

Q. Is that the person you were referring to?

A. That would be her name, yes, sir.

Q. Do you recall the nature of the problem with her refrigerator?

A. The compressor went out. It was a very -- it was an old refrigerator.

Q. What was the problem with the SternJohn's refrigerator?

A. It probably needed to have recharging done to it. At the time that was something I would -- I'm not qualified to do so we took care of the problem, just got them another refrigerator and brought it up to them so

they wouldn't be inconvenienced.
MR. CUMMINS: I'm sorry, can you read back that last answer.
(Whereupon, the reporter read from the record as requested.)
(Whereupon, Pietrzak Exhibit 9 was marked for identification by the reporter.)
BY MR. CUMMINS:
Q. Please take a moment to review that exhibit, Number 9.
A. Okay.
Q. Deposition Exhibit 9 is a letter from the City of Minneapolis Inspections Division to Robert Kreisler, dated June 22, 1999, concerning repair issues in apartment number 206 and 302.
After reviewing this deposition exhibit, is your memory further refreshed regarding --
A. Uh-huh.
Q. -- repair issues concerning the SternJohn's apartment?
A. Yes, sir.
Q. I'd like to direct your attention to item number three on page one, where it says living room above window wall is cracked and peeling?

# CHARGE OF DISCRIMINATION

Department of Human Rights
Army Corps of Engineers Centre
190 E 5th Street, Suite 700
St. Paul, MN 55101
651/296-5663
Toll-Free 1 800/657-3704
TTY 651/296-1283

Any person claiming to have been discriminated against because of race, color, creed, religion, national origin, sex, sexual orientation, marital status, disability, age, public assistance status or familial status, as provided for in Chapter 363 of the Minnesota Statutes in the areas of employment, real property, public accommodations, public services, education, credit or business contracts may file a charge within one year after the alleged discriminatory act with the Minnesota Department of Human Rights at the above address.

DEPARTMENT OF HUMAN RIGHTS USE ONLY

Case Number. 35344

Acknowledged by. [signature]

Date Filed JUL 11 2000

Date Docketed JUL 13 2000

1 CHARGING PARTY

Eboni SternJohn
7895 E River Rd #210
Fridley, MN 55432

2 RESPONDENT

Kriesler Real Estate Co.
P O Box 19287
Minneapolis, MN 55419

3 The discrimination was because of

Race

4. The discrimination was in the area of:

Real Property, Reprisal

5 Describe the discriminatory act, setting forth in statutory language the violation of Minnesota Statutes, Section 363.03.

I am a biracial female (black, Native American) who rented an apartment from the above-named Respondent from October 1998 to August 1999, and who was discriminated against during the same time period The subject property is located at 2421 Pillsbury Avenue Minneapolis Minnesota

In October 1998, my husband and I received a letter from Respondent stating that it had contracted with Owner Solar Partnership, L.L.P. as property managers. From that point forward, Respondent engaged in a continuous and ongoing pattern of discrimination. From November 1998 to August 1999, Respondent continuously refused to make repairs to our apartment, after we left repeated telephone messages and sent numerous letters. In November 1998, after paying our rent Respondent held our check for several weeks, and did not deposit it. We contacted my bank to determine if the check had cleared and it had not. We also did not receive the check by return mail Nevertheless, Respondent deposited our check, then brought an unlawful detainer action against us for failure to pay rent On November 20 1998, we attended the unlawful detainer hearing, where Respondent's unlawful detainer action against us was dismissed. After the hearing, as we were leaving, we were walking behind Respondent's representative Asa Voak, who said he is "tired of having to deal with niggers" When I asked what he said, he turned around with a shocked look on his face and he ran out the door. On December 30, 1998, and again on July 12, 1999, we sent a letter to Owner Larry Hopfensirger, complaining of discriminatory treatment by Respondent I also spoke to him on the telephone about this matter, and he said he would "talk to Respondent about it," but Respondent continued with its discriminatory treatment toward us Throughout the winter of 1998 and 1999, we continued to make repair requests which Respondent ignored. We contacted the Minneapolis Housing Inspection office, who found numerous violations which Respondent also ignored.

Exhibit L

This continued into the spring and summer of 1999. Hennepin County Housing Court found Respondent in violation of the Minneapolis Housing Code, and also found Respondent in contempt for refusing to follow court-ordered repairs. Respondent continued to refuse to make repairs to ours and other minoritys' apartments, but Respondent did make requested repairs to white tenants' apartments. On July 23, 1999, we were again served with an unlawful detainer notice, alleging that we had not paid rent, when in fact we had placed the rent money in escrow because of Respondent's ongoing and continuous refusal to make repairs to our apartment. On July 27, 1999 Respondent falsified information in our rental history report, after we had applied to live in a different apartment. We were denied the apartment because of the falsifications in our rental history. Respondent had previously threatened to have us "live in the street," and Respondent's falsification of our rental history was an effort to do just that. On August 3, 1999, we terminated our lease with Respondent because of the ongoing refusal to make repairs.

I believe my race and reprisal are factors in Respondent's actions. Respondent repeatedly and continuously refused to make repairs to our apartment, but Respondent made repairs to white tenants' apartments. Respondent has also evicted minority tenants at a much higher rate than white tenants. Respondent's representative Asa Voak also made a racial epithet after its unlawful detainer action against us was dismissed. In addition, I am aware that Respondent has been charged with race discrimination in the past. One charging party, a tenant, alleged that Respondent discriminated against her based on race. This charge was settled, with an agreement that Respondent would cease its racially discriminatory practices. However, Respondent has not ceased its racially discriminatory practices. Another charging party, a caretaker, alleged that Respondent told him to not rent to black applicants. This case was ~~also~~ settled, and part of the settlement was that Respondent would advertise in black newspapers. However, Respondent did not do this. I also actually heard Respondent Robert Kriesler tell black and Hispanic applicants there were no apartments available, when in fact they there were. I believe that Respondent's continuous and ongoing refusal to make repairs in our apartment constitutes an ongoing violation of the Minnesota Human Rights Act. I also believe that because of Respondent's refusal to make necessary repairs, the conditions in our apartment made it intolerable to live in and that as a result, we were constructively evicted. Finally, I believe that Respondent retaliated against me by filing an unlawful detainer action against us in July of 1999, and by falsifying information in our rental report because of our complaints to the owner about Respondent's discriminatory treatment toward me.

I therefore allege that the above-named Respondent has discriminated against me in the area of real property on the basis of race and in the area of reprisal in violation of Minnesota Statutes, Section 363.03 Subd. 2(1)(b) and Subd. 7(1)

DLC 0700

Subscribed and sworn to before me this 11 day of July 2000

Laura L. Van Klei
Notary Public

LAURA L. VAN KLEI
Notary Public
Minnesota
[illegible] Expires Jan. 31, 2005

I swear or affirm that I have read this charge and that it is true to the best of my knowledge, information, and belief. I understand that the data contained on this form may be made public.

[signature]
(Signature of Charging Party)

00 JUL 11 AM 10: 39

# Minnesota Department Of Human Rights

## CONSENT TO RELEASE INFORMATION

Eboni SternJohn
vs.
Kriesler Real Estate Co.

I understand that the Minnesota Department of Human Rights is asking me to agree to the release of certain private information held by others for the Department's use in its investigation of my discrimination charge. By signing this form I am giving my permission for the release of the requested information to the Department.

This release authorizes representatives of the Minnesota Department of Human Rights to examine and obtain copies of all records or reports concerning the Charging Party in the above-captioned case.

A photocopy of this signed release shall be as valid, and may be used and relied upon as having the same force and effect as the original

7/10/00
DATE

SIGNATURE

# CHARGE OF DISCRIMINATION

Department of Human Rights
Army Corps of Engineers Centre
190 E. 5th Street, Suite 700
St Paul, MN 55101
651/296-5663
Toll-Free 1-800/657-3704
TTY 651/296-1283

Any person claiming to have been discriminated against because of race, color, creed, religion, national origin, sex, sexual orientation, marital status, disability, age, public assistance status or familial status, as provided for in Chapter 363 of the Minnesota Statutes in the areas of employment, real property, public accommodations, public services, education, credit or business contracts may file a charge within one year after the alleged discriminatory act with the Minnesota Department of Human Rights at the above address.

DEPARTMENT OF HUMAN RIGHTS USE ONLY

Case Number 35346

Acknowledged by.

Date Filed. JUL 1 1 2000

Date Docketed JUL 1 3 2000

1. CHARGING PARTY

Julius SternJohn
7895 E River Rd #210
Fridley, MN 55432

2. RESPONDENT

Kriesler Real Estate Co.
P.O. Box 19287
Minneapolis, MN 55419

3. The discrimination was because of

Race

4. The discrimination was in the area of

Real Property, Reprisal

Describe the discriminatory act, setting forth in statutory language the violation of Minnesota Statutes, Section 363.03.

I am a black male who rented an apartment from the above-named Respondent from October 1998 to August 1999, and who was discriminated against during the same time period. The subject property is located at 2421 Pillsbury Avenue, Minneapolis Minnesota

In October 1998, my wife and I received a letter from Respondent stating that it had contracted with Owner Solar Partnership, L.L.P. as property managers. From that point forward, Respondent engaged in a continuous and ongoing pattern of discrimination. From November 1998 to August 1999, Respondent continuously refused to make repairs to our apartment, after we left repeated telephone messages and sent numerous letters. In November 1998, after paying our rent, Respondent held our check for several weeks, and did not deposit it. We contacted our bank to determine if the check had cleared and it had not. We also did not receive the check by return mail. Nevertheless, Respondent deposited our check, then brought an unlawful detainer action against us for failure to pay rent. On November 20, 1998, we attended the unlawful detainer hearing, where Respondent's unlawful detainer action against us was dismissed. After the hearing, as we were leaving, we were walking behind Respondent's representative Asa Voak, who said he is "tired of having to deal with niggers." When my wife asked what he said, he turned around with a shocked look on his face and he ran out the door. On December 30, 1998, and again on July 12, 1999, we sent a letter to Owner Larry Hopfenspirger, complaining of discriminatory treatment by Respondent. My wife also spoke to him on the telephone about this matter, and he said he would "talk to Respondent about it" but Respondent continued with its discriminatory treatment toward us. Throughout the winter of 1998 and 1999, we continued to make repair requests which Respondent ignored. We contacted the Minneapolis Housing Inspection office, who found numerous violations which Respondent also ignored. This continued into the spring and summer of 1999. Hennepin County

Exhibit M

Housing Court found Respondent in violation of the Minneapolis Housing Code, and also found Respondent in contempt for refusing to follow court-ordered repairs. Respondent continued to refuse to make repairs to ours and other minoritys' apartments, but Respondent did make requested repairs to white tenants' apartments. On July 23, 1999 we were again served with an unlawful detainer notice, alleging that we had not paid rent, when in fact we had placed the rent money in escrow because of Respondent's ongoing and continuous refusal to make repairs to our apartment. On July 27, 1999 Respondent falsified information in our rental history report, after we had applied to live in a different apartment. We were denied the apartment because of the falsifications in our rental history. Respondent had previously threatened to have us "live in the street." and Respondent's falsification of our rental history was an effort to do just that. On July 31, 1999, we terminated our lease with Respondent because of the ongoing refusal to make repairs.

I believe my race and reprisal are factors in Respondent's actions. Respondent repeatedly and continuously refused to make repairs to our apartment, but Respondent made repairs to white tenants' apartments. Respondent has also evicted minority tenants at a much higher rate than white tenants. Respondent's representative Asa Voak also made a racial epithet after its unlawful detainer action against us was dismissed. In addition, I am aware that Respondent has been charged with race discrimination in the past. One charging party, a tenant, alleged that Respondent discriminated against her based on race. This charge was settled, with an agreement that Respondent would cease its racially discriminatory practices. However, Respondent has not ceased its racially discriminatory practices. Another charging party, a caretaker, alleged that Respondent told him to not rent to black applicants. This case was also settled, and part of the settlement was that Respondent would advertise in black newspapers. However, Respondent did not do this. My wife also actually heard Respondent Robert Kriesler tell black and Hispanic applicants there were no apartments available, when in fact there were. I believe that Respondent's continuous and ongoing refusal to make repairs in our apartment constitutes an ongoing violation of the Minnesota Human Rights Act. I also believe that because of Respondent's refusal to make necessary repairs, the conditions in our apartment made it intolerable to live in, and that as a result, we were constructively evicted. Finally, I believe that Respondent retaliated against me by filing an unlawful detainer action against us in July of 1999, and by falsifying information in our rental report because of our complaints to the owner about Respondent's discriminatory treatment toward us.

I therefore allege that the above-named Respondent has discriminated against me in the area of real property on the basis of race and in the area of reprisal in violation of Minnesota Statutes, Section 363.03 Subd. 2(1)(b) and Subd. 7(1).

DLC 0700

Subscribed and sworn to before me this

11 day of July 2000

[signature]

Notary Public

RYAN J. GULAN
Notary Public
Minnesota
My Commission Expires Jan. 31, 2005

I swear or affirm that I have read this charge and that it is true to the best of my knowledge, information, and belief. I understand that the data contained on this form may be made public.

[signature]

(Signature of Charging Party)

00 JUL 11 AM 10:40

# Minnesota Department of Human Rights

July 16, 2001

Ref: 35344
Eboni SternJohn
vs.
Kreisler Real Estate Co

Eboni SternJohn
7895 E River Rd #210
Fridley, MN 55432

Dear Eboni SternJohn:

The Department of Human Rights has completed its investigation of the above-referenced charge with a determination that probable cause exists to believe that an unfair discriminatory practice was committed.

In accordance with Minnesota Rule 5000.0800 (Conciliation and Settlement), when the Commissioner has determined after investigation that there is probable cause to believe that the Respondent has engaged in an unfair discriminatory practice, the Commissioner shall serve upon the Respondent, by registered or certified mail, a written notice of such determination. The notice contains a written invitation to participate in a conciliation conference for the purpose of attempting to eliminate the unfair discriminatory practice by informal means.

If the Respondent accepts the invitation to conciliate, we will need your participation. The Department has referred your case to the agency's attorneys in the Office of the Attorney General for conciliation or possible litigation. After this case has been assigned to an attorney from that office, he or she will communicate with you. In the meantime, if you have any questions, you may call **Assistant Attorney General Erica Jacobson, Human Rights Division, Minnesota Attorney General's Office. Her telephone number is (651) 296-3546**.

Sincerely,

Janeen E. Rosas

Janeen E. Rosas
Commissioner

**Exhibit N**

Enclosures

CERTIFIED MAIL

Pltfs 000603

pc1-c
3/01

REF: 35344

MEMORANDUM

The Minnesota Department of Human Rights has completed its investigation of the above-entitled matter. Based upon the results of that investigation, the Commissioner makes the determination that there is **PROBABLE CAUSE** to credit Charging Party's allegation of an unfair discriminatory practice by Respondent in violation of Minnesota Statutes, Section 363.03, Subd. 2(1)(b) and Subd. 7(1).

1. Charging Party, formerly a tenant of Respondent, alleged discrimination in real property on the basis of race (biracial—black and Native American), in that Respondent engaged in a continuous and ongoing pattern of discrimination against black/minority tenants. Charging Party alleged that Respondent continuously refused to make repairs to her apartment whereas it made repairs to white tenants' apartments, and that Respondent evicted minority tenants at a much higher rate than white tenants. Additionally, Charging Party alleged that Respondent, in reprisal, filed an Unlawful Detainer ("UD") action against her and falsified information in her rental history for her complaints of discriminatory treatment.

2. There is strong evidence to support Charging Party's claim that Respondent continuously refused to make repairs in her apartment while white tenants' requests for repairs were taken care of. Respondent contended that "There was no racial motive behind any refusal or failure to perform repairs on the [Charging Party's] or any other resident's apartment." To support its contention, Respondent referred to an interim management agreement between it and the previous property owner as prohibiting it from undertaking major improvements and repairs in excess of the amount of $200. While relying on the interim agreement as an impediment to doing significant repairs, Respondent contradicted itself stating that "All redecorating work done during the interim management period (10/15/98 – 3/29/99) was at [its] expense and risk. It could not be charged back against the [previous landlord]." Respondent continued, "Because [it] was at risk for the money spent on redecorating during the winter of 1998 – 1999, we wanted to be thorough, rather than piecemeal, in our approach, hence our desire to have units vacated for purposes of redecorating work." It seems Respondent is using the interim agreement for its convenience. On one hand it cannot effect minor repairs because of the agreement while on the other hand the agreement allows it to evict tenants for major redecorating work.

3. Charging Party disputed Respondent's claim that it responded to "all" tenants' requests for repairs as being false. Charging Party identified a white neighbor who had her refrigerator replaced two days after it broke down while Respondent ignored a month old court order to fix or replace Charging Party's refrigerator that broke down prior to the white neighbor's. Furthermore, witness statements

showed that Respondent more readily responded to white tenants' requests for repairs than those of black tenants.

4. Investigation found substantial and credible evidence to believe the allegation that Respondent evicted minority tenants at a much higher rate than white tenants. According to Respondent, when (as of October 1, 1998) it assumed management of the property, "10 of the 24 units were occupied by whites and 14 were occupied by racial minorities." Respondent's documentation as of August of 2000 showed of 34 tenants currently in the apartment building, 29 were whites, one black, three tenants of color and one tenant of unknown race. The documentation showed that since Respondent completed its purchase of the apartment building on March 29, 1999, it had only rented to one person of color, and had not rented to a black person. In addition, several witnesses observed that generally black tenants were the ones evicted. One witness stated that while being considered for a caretaker position with Respondent, he was told not to rent to blacks or Native Americans. Thus, there is clear and convincing evidence that Respondent systematically evicted black tenants, thereby engaging in a pattern and practice of discriminatory treatment against blacks and other minorities.

5. Minnesota Statutes, section 363.03, subd. 7(1), in relevant part states the following:

> "It is an unfair discriminatory practice for any individual who participated in the alleged discrimination as a perpetrator, employer, labor organization, employment agency, public accommodation, public service, educational institution, or owner, lessor, lessee, sublessee, assignee or managing agent of any real property, or any real estate broker, real estate salesperson, or employee or agent thereof to intentionally engage in any reprisal against any person because that person: (1) Opposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter..." A reprisal includes, but is not limited to, any form of intimidation, retaliation, or harassment..."

The Minnesota Supreme Court set forth the elements of a prima facie case of reprisal:

a. The person's conduct must be protected under the statute;

b. Adverse action by the Respondent occurred against the person;

c. A "causal relationship" must exist between the Charging Party's conduct and the adverse action taken by the Respondent. Hubbard vs. United Press International, 330 N.W. 2d 428 (Minn. 1983), cited in Sigurdson vs. Isanti County, App. 1987, 408 N.W. 2d 654, appeal after remand 433 N.W. 2d 910, affirmed 448 N.W. 2d 62.

6. A court order was issued on July 14, 1999, notifying Respondent and Charging Party that the rent abatement or rent escrow that was in effect due to Respondent's failure to effect repairs in Charging Party's apartment was effectively terminated on June 30. On July 21, Respondent filed an UD against Charging Party because it had not received Charging Party's July rent. Charging Party provided documentation that while the court order of July 14 was pending, she sent a letter (dated July 11) to Respondent regarding a leak in the bedroom ceiling and the intercom not working. On July 27, in response to a Request For Verification of Residence from a prospective landlord, Respondent informed the landlord that Charging Party owed $632 in rent for the month of July. The timing of the July UD shortly after the court order resolving a previously filed rent escrow suggests that Respondent intent was to evict Charging Party because of her complaints stemming from illegal discrimination. Thus, Respondent's action to evict Charging Party and Charging Party's complaint of race based discriminatory practice are clearly causally related.