Only the Westlaw citation is currently available.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Rudolph FRAZIER, Sr., Plaintiff,
v.
INDIANA DEPARTMENT OF LABOR, Defendant.

**No. IP01-0198-C-T/G.**

March 17, 2003.

Tamika Bates, Roberts & Bishop, Indianapolis, IN, for Plaintiff.

Loralei C. Lannan, Office of Attorney General, Indianapolis, IN, for Defendant.

**ENTRY ON DEFENDANT'S MOTION IN LIMINE** [FN1]

FN1. This Entry is a matter of public record and is being made available to the public on the court's web site, but it is not intended for commercial publication either electronically or in paper form. Although the ruling or rulings in this Entry will govern the case presently before this court, this court does not consider the discussion in this Entry to be sufficiently novel or instructive to justify commercial publication or the subsequent citation of it in other proceedings.

JOHN DANIEL TINDER, District Judge.

*1 The Defendant, the Indiana Department of Labor ("DOL"), filed a motion in limine seeking to exclude the following matters from discussion or revelation at trial by the parties, their counsel and their witnesses: (1) any retaliation against the Plaintiff on the part of the Defendant; (2) back pay or front pay of the Plaintiff; (3) any prior investigations, disciplinary actions, counseling, performance evaluations, work improvement plans, or involuntary separation of employment of the Plaintiff's supervisors or fellow employees with the exception of Nancy Jones to the extent she might be considered comparable to the Plaintiff; (4) any medical, psychological or psychiatric condition of the Plaintiff alleged to be proximately caused by any fact or allegation of the Plaintiff until admissible evidence of such condition is presented by an expert witness, except that the Plaintiff may be allowed to testify in lay terms from his personal knowledge as to allegations of mental anguish or emotional distress; (5) any medical, psychological or psychiatric condition of the Plaintiff alleged to be proximately caused by any fact or allegation of the Plaintiff by any lay witness; (6) any expenses incurred for any medical, psychological or psychiatric condition of the Plaintiff alleged to be proximately caused by any fact or allegation of the Plaintiff by the Plaintiff or any witness until an expert witness testifies as to the reasonableness of the cost and necessity of the treatment; (7) any Equal Employment Opportunity Commission ("EEOC") charges, grievances, and administrative or legal claims or causes of action, including the investigations of such charges, grievances, and administrative or legal claims or causes of action of the Plaintiff and other former or current DOL employees including the position statements of the complainants and respondents and the resolution or settlement of any such charges, claims or actions; (8) any subsequent remedial measure to prove any allegation of the Plaintiff; (9) settlement negotiations; and (10) any alleged acts of discrimination not referenced in the charge the Plaintiff filed with the EEOC, alleged acts of retaliation or "whistle blower" claims. Each matter is addressed in turn.

*(1) Retaliation*

The Plaintiff's retaliation claim against the Defendant was dismissed by the court and, thus, any evidence of retaliation against the Plaintiff is irrelevant in the trial of the discrimination claims and inadmissible under Federal Rule of Evidence 402. Even if relevant, such evidence should be excluded under Rule 403 as its probative value would be substantially outweighed by the danger of unfair prejudice to the Defendant and confusion of the issues. Therefore, the Defendant's motion in limine is **GRANTED** as to any retaliation against the Plaintiff on the part of the Defendant.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Exhibit O

*(2) Back Pay/Front Pay*

Back pay and front pay awards under Title VII are equitable issues for the judge's determination rather than the jury's. *See Williams v. Pharmacia, Inc.,* 137 F.3d 944, 951-52 (7th Cir.1998) (holding Title VII authorizes front pay as an equitable remedy); *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1147 (7th Cir.1993) (back pay in age discrimination case); *Price v. Marshall Erdman & Assocs.,* 966 F.2d 320, 324 (7th Cir.1992) (same); *Grayson v. Wickes Corp.,* 607 F.2d 1194, 1195 (7th Cir.1979) (back pay under Equal Pay Act). As a result, the Defendant's motion in limine is **GRANTED** as to back pay and front pay of the Plaintiff. For purposes of this order, back pay is the difference between the past wages and benefits the Plaintiff received in the Field Auditor position and the wages and benefits he would have received had he remained in the Controller position, and front pay means the difference between the future wages and benefits that the Plaintiff will earn in the Field Auditor position and the wages and benefits he would have earned had he remained in the Controller position. Thus, the jury will not be instructed on back or front pay as an element of damages, evidence of compensation matters may not be offered or referred to in the presence of the jury, and no argument about compensation matters is to be made in the presence of the jury.

***2** However, the evidence may show that the pay differential in some way relates to mental anguish or emotional distress damages. That is to say that the court can envision the presentation of evidence to show that the reduction in pay and prestige could have affected the Plaintiff's state of mind. This order in limine, therefore, does not preclude mention or general reference to the existence of a pay differential between the pay the Plaintiff received in the Controller position and the pay he received after being removed from that position and placed in the Field Auditor position, if it is linked by the evidence to a claim for mental anguish or emotion distress. The differential is not be to quantified, as with a claim for front or back pay, but rather, can be mentioned in a general way if it is shown to have a relationship to the matters of damage that are within the jury's province.

*(3) Comparator Evidence*

The Plaintiff has listed on his final exhibit list performance appraisals for Joseph Black, Chris Bryant, David Crall, Brent Cuniffe, Gregory Dewey and Jennifer Hoene, and work improvement plans for Douglas Book, Louise Andreani/Carr, Gary Cahill, Kevin Coleman, Joseph Hilgenberg, James Lamb and Jason Reason. At the final pretrial conference, the Plaintiff indicated his intent to offer evidence at trial that such individuals received performance appraisals or work improvement plans. In the summary judgment entry, see Entry Adopting the Magistrate Judge's Report and Recommendation as Modified Herein, dated October 16, 2002, at pages 3-4, footnote 2, the court anticipated that this issue would need to be addressed in the future and that day has now arrived.

The evidence at issue is intended to support a finding that employees similarly situated to the Plaintiff but not in the protected class were treated more favorably. "A similarly situated employee is one who is 'directly comparable to [the plaintiff] in all material respects.' " *Rogers v. City of Chicago,* No. 02-1211,--F.3d--, 2003 WL 483202, at *6 (7th Cir. Feb. 26, 2003) (quoting *Grayson v. O'Neill,* 308 F.3d 808, 819 (7th Cir.2002)); *see also Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir.2002) (finding plaintiff not comparable to another employee in all material respects where plaintiff and other employee reported to and were evaluated by different supervisors and had different qualifications, experiences and responsibilities). In deciding whether another employee is similarly situated to the Plaintiff, the court must consider "all relevant factors, the number of which depends on the context of the case." *Patterson,* 281 F.3d at 680 (quoting *Radue v. Kimberly Clark Corp.,* 219 F.3d 612, 617 (7th Cir.2000)).

Relevant factors include whether the employee and proffered comparable " 'dealt with the same supervisor' " and were " 'subject to the same standards.' " *Id.* at 680 (quoting *Radue,* 219 F.3d at 617-18); *see also Lim v. Tr. of Ind. Univ.,* 297 F.3d 575, 581 (7th Cir.2002) (holding male professors granted tenure before implementation of higher publishing standards several years before female professor was a tenure candidate were not similarly situated to female professor); *Snipes v. Ill. Dep't of Corr.,* 291 F.2d 460, 463 (7th Cir.2002) (holding district court did not abuse its discretion in concluding that plaintiff was not similarly situated to co-employees who had different supervisors than plaintiff). Commonality of supervisors is important because "[d]ifferent employment decisions, concerning different employees, made by different supervisors ... sufficiently account for any disparity in treatment, thereby preventing an inference of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

discrimination." *Snipes,* 291 F.3d at 463 (quotation omitted); *see also* Radue, 219 F.3d at 618 (explaining when "different decision-makers are involved, two decisions are rarely similarly situated in all respects"). Another relevant factor is whether the employee and proffered comparable held the same or equivalent positions at the time of the challenged employment decision. *See, e.g.,* Patterson, 281 F.3d at 680 (holding plaintiff failed to show coworker was similarly situated where coworker "held an entirely different position in another division of the company"); *Hoffinan Dombrowski v. Arlington Int'l Racecourse, Inc.,* 254 F.3d 644, 651 (7th Cir.2001) (deciding comparator was not similarly situated to plaintiff because they did not hold the same or equivalent positions at the time of the challenged employment decision); *cf.* *Johnson v.. Zema Sys. Corp.,* 170 F.3d 734, 743-44 (7th Cir.1999) (comparing plaintiff to only other employee in same level managerial position as plaintiff).

***3** Considering these relevant factors, the court determines based on the record before it that Black, Bryant, Crall, Cuniffe, Dewey, Hoene, Book, Andreani/Carr, Cahill, Coleman, Hilgenberg, Lamb and Reason are not similarly situated to the Plaintiff. [FN2] Even though these employees were merit employees of the DOL like the Plaintiff and, thus, subject to some of the same standards, including personnel rules, their circumstances are far different from his. These employees did not share the same direct supervisor with the Plaintiff. Commissioner Joyce was not responsible for performing, and did not perform, their appraisals or work improvement plans, but rather, merely signed off on the appraisals or plans for them done by others. This difference in the role Joyce played respecting their appraisals and plans would sufficiently account for any difference in the giving of such appraisals and plans between these employees and the Plaintiff. *See* Radue, 219 F.3d at 618.

FN2. The work improvement plans for Book, Cahill and Reason were not offered by the Plaintiff in opposing the Defendant's summary judgment motion, and the court has been unable to find their plans elsewhere in the record. For purposes of this ruling, it is assumed that these employees, like the others offered by the Plaintiff, did not have Commissioner Joyce as their direct supervisor; Joyce did not conduct their work improvement plans or appraisals, but merely signed off on them; and they held positions different from and not equivalent to that held by the Plaintiff.

In addition, these employees appear to have held positions quite different from and not equivalent to that held by the Plaintiff at the time of his removal, and they presumably had quite different responsibilities. For example, Cuniffe's position was classified on his performance appraisal as "Indst. Hygnst 4" (Pl.'s Br. Opp'n Summ. J., Ex. 10) and Lamb's position was classified as "Constr Insp 4." (*Id.,* Ex. 18). If the Plaintiff were correct in claiming that all merit employees were sufficiently similar to him, then almost every state employee would be a comparator. This cannot be. Being a merit employee subject to the same personnel rules as the Plaintiff may make all merit employees comparable in one material respect to the Plaintiff, but this is just one respect. A similarly situated employee is directly comparable to the Plaintiff "in all material respects." Rogers, 2003 WL 483202 at *6.

The Plaintiff has not demonstrated that Black, Bryant, Crall, Cuniffe, Dewey, Hoene, Book, Andreani/Carr, Cahill, Coleman, Hilgenberg, Lamb, Reason or any person other than Nancy Jones, is directly comparable to the Plaintiff in all material respects. Therefore, the court concludes that no one other than Nancy Jones is sufficiently similarly situated to the Plaintiff as to be considered his comparator. The Defendant's motion in limine is **GRANTED** as to any prior investigations, disciplinary actions, counseling, performance evaluations, work improvement plans, or involuntary separation of employment of the Plaintiff's supervisors or fellow employees with the exception of Nancy Jones.

*(4) Medical, Psychological or Psychiatric Condition*

The Defendant seeks to exclude any reference to or evidence of any medical, psychological or psychiatric condition of the Plaintiff alleged to be proximately caused by any fact or allegation of the Plaintiff until admissible evidence of such condition is presented by an expert witness, except that the Plaintiff may be allowed to testify in lay terms from his personal knowledge as to allegations of mental anguish or emotional distress. The DOL contends that such matters are outside the scope of knowledge of lay persons and require the testimony of any expert under Rules 701, 702 and 703 of the Federal Rules of Evidence. The court agrees.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

***4** Matters regarding the causation of any of the Plaintiff's medical, psychological or psychiatric conditions require expert testimony. *See* Fed.R.Civ.P. 701(c), 702; *DeSanto v. Rowan Univ.*, 224 F.Supp.2d 819, 830 (D.N.J.2002) (granting motion in limine to exclude doctor's testimony that the plaintiff suffered from gastric disorders where doctor had not been identified as an expert witness and concluding that expert testimony was required to establish connection between plaintiff's condition and defendant's allegedly discriminatory conduct); *Ferris v. Pa. Fed'n Bhd. of Maint. of Way Employees*, 153 F.Supp.2d 736, 743-45 (E.D.Pa.2001) (excluding testimony of doctor who was not qualified as an expert as to the causation of the plaintiff's mental conditions). Any specific diagnoses of the plaintiff's condition, likewise, require expert testimony. *See, e.g., DeSanto*, 224 F.Supp.2d at 830; *Ferris*, 153 F.Supp.2d at 746. So, the motion in limine is **GRANTED** as to any medical, psychological or psychiatric condition of the Plaintiff alleged to be proximately caused by any fact or allegation of the Plaintiff until admissible evidence of such condition is presented by an expert witness.

The Plaintiff, however, will be allowed to testify from his personal knowledge as to any emotional distress or mental anguish that he allegedly suffers. *See id.* It bears repeating, however, that the Plaintiff cannot testify about his beliefs as to how this emotional distress or mental anguish was caused, absent expert testimony regarding causation. *See id.*

*(5) Lay Testimony as to Medical, Psychological or Psychiatric Condition*

For the reasons stated above in addressing paragraph (4) of the motion in limine, the motion also will be **GRANTED** as to evidence of any medical, psychological or psychiatric condition of the Plaintiff alleged to be proximately caused by any fact or allegation of the Plaintiff by any lay witness.

*(6) Expenses of Medical, Psychological or Psychiatric Treatment*

Given the court's conclusion that expert testimony is required regarding the causation of any of the Plaintiff's alleged medical, psychological or psychiatric conditions, it follows that to the extent the Plaintiff seeks to recover expenses incurred for treating such a condition, expert testimony also is required to establish the reasonable cost and necessity of treatment for such condition. *See Ferris v. Pa. Fed'n Bhd. of Maint. of Way Employees*, 153 F.Supp.2d 736, 743 (E.D.Pa.2001). Therefore, the Defendant's motion in limine is **GRANTED** as to the Plaintiff's expenses incurred for any medical, psychological or psychiatric condition alleged to be proximately caused by any fact or allegation of the Plaintiff by the Plaintiff or any witness until the reasonableness of cost and necessity of treatment are testified to by an expert witness.

*(7) EEOC Matters*

The Defendant argues that EEOC matters are irrelevant, inadmissible under a Rule 403 balancing test, inadmissible hearsay, and inadmissible under Rule 408. The DOL also contends that admission of evidence of such matters would violate section 706(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(b). Though the court agrees that EEOC charges, grievances, and claims, including the investigations of such charges, grievances, and claims of the Plaintiff and other former or current DOL employees including the position statements of the complainants and the resolution or settlement of any such charges, grievances or claims are inadmissible for a number of reasons, including on the basis of relevance, a Rule 403 balancing test, and hearsay, *see Tulloss v. Near N. Montessori Sch.*, 776 F.2d 150, 154 (7th Cir.1985), the court disagrees with respect to the DOL's position statements in response to any claim, grievance or charge of the Plaintiff.

***5** An employer's position statement in an EEOC proceeding may be admissible to the extent it constitutes an admission, or to show the employer has given inconsistent statements in justifying its challenged decision, which may tend to prove that its stated reasons are pretexts. *See, e.g., Maschka v. Genuine Parts Co.*, 122 F.3d 566, 570-71 (8th Cir.1997); *Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1476-77 (5th Cir.1992). Further, disclosure of factual information related to the DOL's position on the merits of Mr. Frazier's EEOC Charge is not inadmissible under section 706(b). *See, e.g., Olitsky*, 964 F.2d at 1477. That section precludes admission of anything said or done as part of the informal endeavors by the EEOC to correct the alleged unlawful discrimination by "informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b). A defendant's position statement is not necessarily given as part of such conciliatory endeavors. If, however, the DOL's position paper contains statements relating to compromise, settlement or conciliation, such statements would be inadmissible and should be redacted. *See* 42 U.S.C. § 2000e-5(b); *cf. Brooks v. Grandma's House Day*

Care Ctr., Inc., 227 F.Supp.2d 1041, 1044-45 (E.D.Wis.2002). Accordingly, the Defendant's Motion in Limine is **DENIED** as to the DOL's position statement made in response to Mr. Frazier's charge, but **GRANTED** as to all other matters raised in paragraph (7) of the Defendant's motion in limine. However, before counsel for the Plaintiff makes any reference to the DOL's position statement to the EEOC, a showing must be made outside the presence of the jury of the relevance of the position statement, that is, that it either contains admissions against interest or that it is inconsistent with the DOL's assertions in this litigation.

*(8) Subsequent Remedial Measures*

The Defendant's motion in limine is **GRANTED** as to any subsequent remedial measures taken by the DOL. Evidence of such measures is not admissible to prove negligence or culpable conduct pursuant to Federal Rule of Evidence 407.

*(9) Settlement Negotiations*

The Defendant's motion in limine is **GRANTED** as to settlement negotiations as evidence of the same is inadmissible under Federal Rule of Evidence 408.

*(10) Scope of EEOC Charge*

The Defendant's memorandum supporting its motion in limine addresses under paragraph (10) only matters either outside the scope of the Plaintiff's EEOC charge or alleged acts which occurred outside the limitations period. It is unclear to what matters the Defendant refers to in its motion as "whistle blower" claims, and, thus, the court does not address any such claims to the extent they do not fall within claims that are outside the scope of the EEOC charge or outside the limitations period. Matters of retaliation are covered by paragraph (1) and need not be repeated in connection with paragraph (10).

"Generally a plaintiff may not bring claims under Title VII that were not originally brought among the charges to the EEOC." *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir.2002) (quotation omitted). However, a plaintiff may bring claims not in the EEOC charge if the claim is " 'like or reasonably related' to the EEOC charges, and the claim in the complaint reasonably [could] be expected to grow out of an EEOC investigation of the charge." *Id.* (quotation omitted). Claims are alike or reasonably related if "there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Id.* (quotation omitted).

***6** Allegedly discriminatory acts which occurred more than 300 days before the Plaintiff filed his Charge of Discrimination are not actionable, unless there is a continuing violation. *See Minor v. Ivy Tech State Coll.*, 174 F.3d 855, 857 (7th Cir.1999). The Plaintiff has not shown a continuing violation, and it seems that he could not since he bases his claim on the discrete acts of removing him from the position of Controller and demoting him to the position of Field Auditor. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2072-73 (2002); *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 708 (7th Cir.2002), *petition for cert. filed*, No. 02-1049, 71 U.S.L.W. 3489 (Jan. 8, 2003).

Therefore, the Defendant's motion in limine is **GRANTED** as to any alleged acts of discrimination which occurred more than 300 days before the Plaintiff filed his Charge of Discrimination and as to acts not included in the Plaintiff's Charge; provided, however, that the court will reconsider this latter ruling if and when the Plaintiff makes a sufficient showing that any matters not included in his EEOC Charge are like or reasonably related to his EEOC Charge and reasonably could be expected to grow out of an EEOC investigation of his Charge.

*Conclusion*

The Defendant's Motion in Limine is **GRANTED IN PART** and **DENIED IN PART** as set forth above. With respect to any matters for which the motion is granted, it is **ORDERED** that the parties and their counsel and witnesses shall not mention or refer to such matters in the presence of the jury or offer evidence of such matters to the jury, without counsel first consulting and obtaining express permission from the court outside the presence of the jury. Counsel are **DIRECTED** to inform the parties and all of their witnesses of this order.

2003 WL 21254424 (S.D.Ind.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

**H**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.

Ismelda HAHN, Plaintiff,
v.
MINNESOTA BEEF INDUSTRIES, INC.
Defendant.

**No. Civ.002282(RHK/SRN).**

May 29, 2002.

Leslie L. Lienemann, Lienemann Law Office, Celeste E. Culberth, Culberth Law Office, Burnsville, MN, for Plaintiff.

William John Egan, Egan & Assoc, Edina, MN, for Defendant.

MEMORANDUM OPINION

KYLE, J.

*1 By an Order dated May 24, 2002, the Court ruled on the parties' Motions in Limine, indicating that a Memorandum Opinion would follow. Based on the Defendant's representations, the Court ruled that its Motion in Limine To Exclude the Testimony of Witnesses Not Disclosed During Discovery (Doc. No. 35) was moot. The following are the Court's determinations and conclusions regarding the remaining motions in limine.

I. Plaintiff's Motions in Limine

Hahn brings Motions in Limine to exclude two categories of evidence. The first category she described as evidence relating to her "illegal status." The second category related to a loan made by William Gilger, CEO of Minnesota Beef, to Hahn's mother and stepfather to pay for an immigration attorney to contest Hahn's potential deportation.

With respect to the first category, Defendant argues that the evidence at issue establishes that Hahn was untruthful on her job application materials-- she affirmatively misrepresented to Minnesota Beef that she was either a United States citizen or a foreigner authorized to work in the United States. Hahn contends that the evidence is irrelevant and will only serve to prejudice the jury against her. The Court concludes that evidence that Hahn represented that she was lawfully entitled to work in the United States when she was not is relevant to her character for truthfulness or untruthfulness and admissible, subject to the provisions of Rule 608(b).

The Defendant argues that the evidence of Gilger's loan to Hahn's parents is relevant to establish that Minnesota Beef and its agents harbored no bias against Mexican workers and "actually gave Ismelda Hahn preferential treatment as recent[ly] as 1997." Plaintiff argues that this evidence of specific acts of conduct is not admissible to prove a "good character." Furthermore, Plaintiff's contend, Gilger's acts as an individual may not properly be imputed to the company and its other agents. The Court agrees on both accounts and concludes that evidence of Gilger's loan is irrelevant under Rules 401 and 402, and is an improper attempt to prove character by specific acts of conduct, which is prohibited by Rule 404(b).

II. Defendant's Motions in Limine

*A. Motion in Limine Regarding Summaries*

The Defendant acknowledges that it has produced voluminous records relating to pay rates for employees at its plant. The Defendant anticipates that the Plaintiff will produce evidence purportedly showing pay discrimination for employees on the basis of race, national origin, and/or pregnancy in the form of charts, summaries, or calculations. The Defendant moves the Court for an order requiring the individual who prepared the summaries or calculations to appear for testimony and cross-examination and produce in court the data on which the summaries or calculations are based. The Court will not direct the Plaintiff to produce in court the data on which any summaries or charts are based. Nothing in this ruling, however, excuses the Plaintiff from laying an adequate foundation for the admission of any chart, summary, or calculation created

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Exhibit P

pursuant to Rule 1006 of the Federal Rules of Evidence.

*B. Motion in Limine To Exclude Inaccurate Data Regarding Rates of Pay and to Admit Evidence Reflecting Actual Rates of Pay of Employees*

***2** The problems in this case relating to the Defendant's production of weekly pay rate data for employees in the Boning Room and the Quality Assurance area are significant and longstanding. These problems arose when the Defendant disclosed, shortly before this case's original trial date of March 1, that the electronic reports and electronic data produced to Plaintiff for the years 1997 and 1998 contained inaccurate information concerning the individual employees' rates of pay. The Defendant also disclosed that some employees may have been improperly classified on the payroll system because their job codes had not been updated when they changed jobs within the plant. Less than one month later, Plaintiff's counsel advised the Defendant that there were errors in the payroll transaction files for 1998, 1999, 2000, 2001, and 2002. On March 8, 2002, the Court issued an Order imposing discovery sanctions and stating that "justice would be better served if the trial were postponed until the accurate information can be created and produced by Defendant and Plaintiff is given a full and fair opportunity to review and consider it." The March 8, 2002 Order followed the briefing on the Defendant's motion in limine and, as of the Court's May 24, 2002 Order deciding the Motions in Limine, the Court had received no correspondence or memoranda from either party regarding the continued necessity of this motion. In light of the procedural posture of discovery in this case, the Court concludes that this motion is moot and will therefore be stricken.

*C. Motion In Limine Regarding Evidence of Emotional Distress and Expert Testimony Regarding Emotional Distress*

The Defendant has moved to exclude testimony and other evidence that Hahn has suffered from depression and hair loss as a result of her experiences at Minnesota Beef, including testimony from her expert witness that Hahn's present emotional difficulties are caused by her employment at Minnesota Beef. Specifically, the Defendant challenges whether the opinion testimony of Hahn's expert--her treating psychologist--meets the requirements of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny.

Rule 702 and the *Daubert* line of cases are designed to ensure that expert testimony is reliable and relevant before being admitted into evidence. The expert opinions of a healthcare provider who is treating the plaintiff are subject to the same standards of reliability and relevance as the opinions of a healthcare provider who has been retained solely for purposes of litigation. *See Turner v. Iowa Fire Equipment Company*, 229 F.3d 1202, 1207 (8th Cir.2000) (holding that expert opinion of treating physician is subject to *Daubert* analysis). Hahn has disclosed the basis for her treating psychologist's opinion as consisting of three reports from her file: an initial evaluation and two progress notes. Based on the initial session with Hahn in July 2001, the psychologist recorded that Hahn was "experiencing nightmares around her treatment at the job at Minnesota Beef" and was "quite distraught over her overall treatment in that setting." The psychologist's diagnostic impressions and formulations were as follows:

> ***3** This young woman currently appears to be experiencing a depressive episode of moderate severity. She is having numerous symptoms consistent with depression, specifically sleep disturbance, social isolation, decreased energy, labile mood, poor concentration, sad affect and tearfulness. She does have some anxiety associated with her employment situation at Minnesota Beef. I do believe that she does warrant a diagnosis associated with anxiety as she continues to have nightmares related to returning to work, and has described episodes of trembling. I will diagnose anxiety disorder NOS [not otherwise specified] in addition to depression. Consideration was given to adjustment disorder. This was not chosen based on the severity of the patient's symptoms and the duration.

Accordingly, the psychologist diagnosed Hahn as suffering from "major depression, single episode, moderate severity" and "anxiety disorder, NOS." The psychologist also noted that Hahn suffered from thyroid problems, about which the psychologist indicated she would defer to Hahn's medical doctors.

The Defendant argues that Hahn's psychologist made no assessment of the cause of Hahn's depression in July of 2001. Having reviewed the documents that Hahn contends substantiate her treating psychologist's proposed opinions, it appears that the Defendant is correct. In the first evaluation, the psychologist focused on identifying Hahn's mental condition at the time, not determining the cause or

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

causes for that condition. *See* Turner, 229 F.3d at 1208. Although the psychologist's notes indicate that Hahn reported having nightmares *about* her work at Minnesota Beef, she does not opine that the nightmares were *caused by* her former work at Minnesota Beef. Similarly, the psychologist notes that *Hahn* attributed her lack of confidence in returning to work largely to Minnesota Beef's treatment of her. The psychologist does not, however, expressly endorse Hahn's assessment. In fact, the psychologist reports that Hahn also felt that her ability to look for work was being negatively impacted by her inability to write in English and that she very much wanted to learn how to write in English. With respect to Hahn's complaints regarding hair loss, the psychologist indicates that Hahn was also suffering from thyroid problems; the psychologist does not evaluate, however, whether Hahn's thyroid condition contributed in any way to her hair loss.

Depression and anxiety disorder are complex injuries, requiring *expert* (as opposed to lay) testimony regarding diagnosis and causation. *Ferris v. Pennsylvania Fed'n Bhd. of Maintenance of Way Employees*, 153 F.Supp.2d 736, 746 (E.D.Pa.2001). The Plaintiff has not established an adequate basis for her expert's proposed testimony about the cause of Hahn's depression and anxiety disorder. Given the complexities of the mental conditions at issue in this case, neither Hahn nor her husband nor any other lay witness may testify about their beliefs as to how Hahn's alleged emotional distress injuries were caused. Because the Plaintiff's proposed expert testimony about causation is not admissible under Rule 702, Hahn cannot establish an essential element of her claim for emotional distress damages, and the Court will exclude all evidence of Hahn's alleged emotional distress from the jury.

*D. Motion in Limine Regarding Incidents and Information Arising More than 300 Days Prior to Plaintiff's Filing of Her Charge of Discrimination*

***4** The Defendant seeks to exclude all evidence concerning incidents at Minnesota Beef arising more than 300 days prior to when Plaintiff filed her EEOC charge of discrimination in August of 1999. The Defendant offers two grounds for this motion. First, it points out that Hahn quit working at Minnesota Beef in April of 1998 and voluntarily returned in mid-September of that same year. Therefore, any alleged discrimination that Hahn experienced prior to her voluntary return to the company should not be admitted. Second, the defendant contends that evidence relating to claims of discrimination by other former employees, including specifically Juan Olivarez, Laura Campos, and Sheila Guralski Kutz, should be excluded as irrelevant and unfairly prejudicial because those employees left Minnesota Beef in 1997, long before the 300-day window at issue in this case.

Even where a plaintiff presents an individual disparate treatment case, as opposed to a disparate impact case, background evidence about the defendant's workforce, such as events occurring prior to the window of the EEOC charge, can be relevant to deciding whether disparate treatment occurred during the charge period and, hence, can be admissible. *See* *Summit v. S-B Power Tool*, 121 F.3d 416, 422 (8th Cir.1997) (discussing Eighth Circuit precedent). Given the difficulties inherent in trying to prove that an employer acted with a discriminatory animus, the Eighth Circuit has observed that a "blanket evidentiary exclusion" of such background information can be "especially damaging in employment discrimination cases." *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1103 (8th Cir.1988), *superseded on other grounds by* *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), *as stated in* *Foster v. University of Ark.*, 938 F.2d 111, 115 (8th Cir.1991). Therefore, the Court has directed the Plaintiff to prepare a written offer of proof that (a) identifies each witness who will testify about incidents occurring more than 300 days before she filed her Charge of Discrimination; (b) describes in reasonable detail the substance of that witness's testimony; and (c) identifies the managers or co-employees of Minnesota Beef Industries who were involved in the incident(s) about which the witness proposes to testify. The Court will rule on this motion at the final pre-trial hearing on Friday, May 31, 2002.

*E. Motion in Limine Regarding a Taped Conversation Between Sheila Guralski and Charles McCarthy*

The Defendant seeks to exclude a tape of a conversation between Charles McCarthy, the co-owner of Minnesota Beef who allegedly committed a battery against Hahn by improperly touching her buttocks, and Sheila Guralski Kutz, a former employee of Minnesota Beef who has alleged that she was sexually harassed at Minnesota Beef and paid less as a female supervisor than her male counterparts. On the tape, McCarthy purportedly threatens to "kick [Kutz's] ass" and "put [his] number 9 shoe up [Kutz's] ass." Hahn argues that the tape is

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

relevant because she expects the Defendant's owners to portray themselves as "nice, well-behaved, benevolent employers." Hahn contends that the tape proves that they are none of these things and can be offered to "impeach" their characterization of themselves.

***5** As a threshold matter, the Court notes that, under Rule 404(b) of the Federal Rules of Evidence, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Thus, the Defendant's representatives--Gilger and McCarthy--will not be allowed to prove their "benevolence" or "character for fairness" through evidence of acts of benevolence or fair treatment of their employees. (*See, supra,* part I (excluding evidence of Gilger's loan to Hahn's parents)). As for Hahn's proposed "impeachment," Rule 608(b) strictly limits the manner in which a party can attack a witness's credibility. That rule provides that "[s]pecific instances of the conduct of a witness, for purposes of attacking or supporting the witness' credibility ... may not be proved by extrinsic evidence." The tape is plainly extrinsic evidence and inadmissible. Finally, the Court concludes that evidence that McCarthy was verbally abusive to Kutz does not tend to make it either more or less likely that he battered Hahn or discriminated against her on the basis of national origin or her pregnancy. Even if such evidence had some marginal relevance to the Plaintiff's claims, the dangers of unfair prejudice and jury distraction far outweigh any probative value.

2002 WL 32658476 (D.Minn.)

Motions, Pleadings and Filings (Back to top)

- 0:00CV02282 (Docket) (Oct. 10, 2000)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

**H**

Only the Westlaw citation is currently available.

NOTICE: THIS OPINION IS DESIGNATED AS UNPUBLISHED AND MAY NOT BE CITED EXCEPT AS PROVIDED BY MINN. ST. SEC. 480A.08(3).

Court of Appeals of Minnesota.

Rickey YOUNG, Appellant,
v.
TODD CHEVROLET, Garry Smith, Respondents.

**No. CX-92-44.**

Aug. 11, 1992.
Review Denied Oct. 20, 1992.

Appeal from District Court, Dakota County; Patrice K. Sutherland, Judge.

Roger C. Justin, Rinke-Noonan, St. Cloud, for appellant.

Mary A. Rice, David J. Hoekstra, Jardine, Logan & O'Brien, St. Paul, for Todd Chevrolet.

William K. Strifert, Minneapolis, for Garry Smith.

Considered and decided by HUSPENI, P.J., and PETERSON and FOLEY [FN*], JJ.

UNPUBLISHED OPINION

PETERSON, Judge.

***1** Appellant Rickey Young commenced this lawsuit against respondents Garry Smith and Todd Chevrolet, alleging he was constructively discharged from his employment at Todd Chevrolet in violation of the Minnesota Human Rights Act. The trial court granted summary judgment in favor of respondents. We affirm.

FACTS

Respondent Todd Chevrolet is an automobile dealership owned by Jeff Belzer, who serves as its general manager, and Jeff Krapu, who serves as its sales manager. Appellant Rickey Young was employed by Todd Chevrolet from January 1985 until February 11, 1989. For the first six months of his employment, Young served as a parts runner. For the remainder of the time, he was a salesperson. During his employment, Young was the only African-American employed at Todd Chevrolet.

Respondent Garry Smith was employed by Todd Chevrolet as a sales closer. Smith described his position as being between the sales people and managers. Smith testified that as a sales closer, he worked with the sales personnel in the following roles: training, evaluating their sales techniques, working to close their car deals, signing offers, following up with customers on their car purchases, setting vehicle sales goals, and sometimes arranging work schedules. Smith stated he did not have authority to hire, fire, or discipline any sales personnel. He sometimes talked to potential employees before they were interviewed by Krapu or Belzer. He discussed discipline with Krapu if he noticed a problem. Krapu and Belzer testified they had supervisory authority over Young and Smith. They acknowledged Smith had authority to sign purchase orders, although all sales had to be approved by a "sales manager."

Young and other salespeople were present when Smith made a comment regarding slaves. Smith admitted he made a statement to the effect that he wished he had lived back in the 1800's so he would not have had to work. He did not recall whether he said he wanted to own people. Young remembered Smith stating he wished he owned slaves. Smith stated the comment was made in the context of a conversation about plantations and Young being from Alabama. He stated there was no negative response to the comment, and the salespeople continued to laugh and talk. Young stated that after Smith made the comment, no one laughed. Young also stated he said nothing and walked away embarrassed. Young did not notify Todd Chevrolet's management about this comment.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Exhibit Q

Approximately one month later, in February 1989, Smith and a salesperson were watching Young move some cars so the dealership's lot could be plowed. Smith testified he believed Young was improperly trying to move an expensive car, causing its wheels to spin on the ice, and he referred to Young as "that dumb nigger." The salesperson told Young about Smith's comment.

Young testified that after he learned about the comment, he complained to Krapu. Krapu stated he told Young he would talk to Belzer and they would do anything possible to correct the situation. Krapu testified that after Young told him about Smith's comment, he went to the other salesperson to verify what Smith had said. Krapu believed he then directed Smith to apologize to Young. Young similarly testified that after his conversation with Krapu, Krapu talked to Smith and Smith came to speak to Young. Young acknowledged Smith apologized, saying he had meant the comment as a joke. Young declined when Smith asked if he wanted to hit him. Smith testified Young told him not to worry about it and Young seemed to be alright after the apology. Smith testified he apologized again during a drive in the afternoon.

***2** According to Krapu, he spoke to Belzer on the following Monday when Belzer returned to the office. Belzer was upset because Krapu had not called him on Saturday after Young reported the incident. Belzer testified he spoke to Young on the telephone on Monday and in person on Tuesday. Young stated Belzer did not offer to talk to all of the employees about discrimination and he does not know whether Belzer did so.

Belzer told Young that racial and prejudicial comments would not be tolerated at the dealership and that he would talk to Smith and Krapu. Belzer testified he asked Young if it would help if he fired Smith, but Young replied no. Belzer believed Young said no because he felt Belzer was serious about putting an immediate stop to such behavior. Young stated he said no because firing Smith would have been inadequate.

Belzer then met with and reprimanded Smith for making the comment and told him he would be fired if he ever made another comment like that. Belzer did not otherwise discipline Smith for the comment. He directed Smith to prepare a written statement acknowledging the content of their conversation, including the fact he would be fired if he ever made another discriminatory comment. Belzer informed Young about his warning to Smith.

Belzer stated Young came back to work Wednesday and Thursday. Young believed he only worked on the following Saturday. Young quit on Saturday, February 11, 1989.

DECISION

On appeal from summary judgment, an appellate court must review the evidence in a light most favorable to the party against whom the motion was granted to determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *State by Cooper v. Hennepin County,* 441 N.W.2d 106, 109 (Minn.1989).

> [S]ummary judgment is proper when the nonmoving party fails to provide the court with specific facts indicating that there is a genuine issue of fact. In order to successfully oppose a motion for summary judgment, a party cannot rely upon mere general statements of fact but rather must demonstrate at the time the motion is made that specific facts are in existence which create a genuine issue for trial.

*Erickson v. General United Life Ins. Co.,* 256 N.W.2d 255, 258 (Minn.1977).

This court may affirm a summary judgment if there are no genuine issues of material fact and the decision is correct on other grounds than those cited by the trial court. *Northway v. Whiting,* 436 N.W.2d 796, 798 (Minn.App.1989) (summary judgment based on failure to satisfy statute of frauds affirmed on basis that parties failed to meet condition precedent).

Young argues he has established a prima facie case of constructive discharge due to illegal discrimination based on the Minnesota Human Rights Act, Minn.Stat. § 363.03, subd. 1(2)(b) (1990). We disagree.

The trial court determined that to prove a prima facie case where the claim is one of race discrimination by a co-employee, the complainant must show not only discriminatory treatment but also the employer's failure to take prompt action when it knew or should have known of the employee's conduct. Because respondent took immediate action to discipline Smith and to prevent discriminatory behavior in the future, the trial court concluded that Young did not prove a prima facie case. The trial court did not determine

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

whether Smith's comments constituted illegal discrimination.

***3** Appellant argues the trial court's analysis rests upon an impermissible finding of fact that Young and Smith were co-workers. We first note that the trial court's findings of fact and conclusions of law were unnecessary in this summary judgment decision. *See* Minn.R.Civ.P. 52.01. Moreover, Young set forth sufficient evidence to create a question of fact regarding Smith's supervisory status. It was improper for the trial court to resolve this question of fact on a summary judgment motion. *See Murphy v. Country House, Inc.*, 307 Minn. 344, 351, 240 N.W.2d 507, 512 (1976) (trial court may not weigh evidence on motion for summary judgment). Whether Smith is a supervisor, however, is not a material fact.

> A constructive discharge occurs when an employee resigns in order to escape intolerable working conditions caused by illegal discrimination.

*Continental Can Co. v. State*, 297 N.W.2d 241, 251 (Minn.1980). To prove his claim of constructive discharge due to illegal discrimination Young must demonstrate there was illegal discrimination at Todd Chevrolet.

The issue presented by this case is not whether Todd Chevrolet can be held liable for the discriminatory conduct of a supervisory employee. The issue is whether Smith's conduct constituted actionable discrimination under Minn.Stat. § 363.03, subd. 1(2)(b)-(c).

Young alleged he was discriminated against because racially derogatory comments were a term and condition of his employment. However, occasional or sporadic uses of racial slurs or epithets will not in and of themselves support a claim of racial discrimination. *See Minneapolis Police Dep't v. Minneapolis Comm'n on Civil Rights*, 402 N.W.2d 125, 131 (Minn.App.1987) ( "Racial comments that are merely part of casual conversation, are accidental, or are sporadic, do not trigger discrimination sanction."), *aff'd*, 425 N.W.2d 235 (Minn.1988).

Sporadic racial slurs do not become actionable discrimination because they were uttered by a supervisory employee. *See Cariddi v. Kansas City Chiefs Football Club, Inc.*, 568 F.2d 87, 88 (8th Cir.1977) (ethnic slurs made by employee's superior were part of casual conversation and did not rise to level necessary to constitute a violation of Title VII). Even if Smith was Young's supervisor, his remarks, although undoubtedly racial slurs, were sporadic and alone do not support a claim of racial discrimination.

Because Young did not establish a claim of illegal discrimination he did not establish a prima facie case of constructive discharge due to illegal discrimination.

Affirmed.

FN* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI, section 2.

1992 WL 189431 (Minn.App.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.