**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Eboni SternJohn and Julius SternJohn,
Plaintiffs,

v.

Robert L. Kreisler, Jr., a/k/a Bob Peterson, a/k/a Robert Peterson, d/b/a Kreisler Real Estate Company, d/b/a Whittier Real Estate Company, d/b/a KT Properties Partnership L.P., d/b/a Whittier Community Apartments, d/b/a Bristol Apartments; Solar Partnership, a/k/a Solar Partnership, L.L.P, a/k/a Solar Partnership I, L.L.P., a/k/a Solar Partnership III, L.L.P., a/k/a Solar Partnership IV, L.L.P., d/b/a Solar Corporation; and Larry Hopfenspirger, d/b/a Hopfenspirger, Realty, Inc.,

Defendants.

Civil No. 02-842 MJD/JSM

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT KREISLER'S MOTION IN LIMINE OF OCTOBER 12, 2004**

**ORAL ARGUMENT REQUESTED**

---

## INTRODUCTION

Eboni and Julius SternJohn bring claims against their former landlord, Defendant Robert Kreisler, for his policy and practice of race discrimination and retaliation in housing.

In this third iteration of his motion in limine, Defendant Kreisler asks the Court to rule on genuine issues of material fact – that is, to decide questions that are clearly within the exclusive province of the jury. In particular, Defendant Kreisler wants the Court to decide fact disputes in his favor and, on that basis, to bar the jury from considering highly probative evidence of his civil rights violations.

Defendant Kreisler's motion is further improper and should be denied in its entirety because admission of the evidence against him will promote clarity and efficiency at trial. Again, the evidence Defendant Kreisler seeks to exclude is directly relevant to the housing-discrimination and retaliation claims against him.

In essence, Defendant Kreisler wants to exclude evidence he cannot rebut. For the foregoing reasons, and as set forth more fully below, the SternJohns oppose Defendant Kreisler's motion in every respect.

## MATERIAL FACTS

Defendant Kreisler has long maintained an anti-black housing policy, and he has been the subject of prior civil rights litigation. Affidavit of Justin D. Cummins, dated September 22, 2003, ("Cummins Aff."), ¶ 7, Exhs. 1-2. Less than one month after becoming manager of 2421 Pillsbury Avenue, Defendant Kreisler began trying to evict black tenants, including the SternJohns, from their homes at the Pillsbury building. Cummins Aff., ¶ 7, Exhs. 3-8.

Defendant Kreisler first tried to evict the SternJohns only days after the Minnesota Department of Human Rights ("MDHR") filed suit against him for housing discrimination against blacks. Cummins Aff., ¶ 7, Exhs. 4, 9. Immediately after the Court dismissed the baseless eviction action against the SternJohns, Defendant Kreisler's representative in court called the SternJohns "niggers." Cummins Aff., ¶ 7, Exh. 10 (pp. 123-26).

In addition to filing groundless eviction actions against the SternJohns and other black tenants, Defendant Kreisler refused to address major repairs for them while promptly doing repairs for white tenants. Cummins Aff., ¶ 7, Exhs. 10 (p. 181), 11-16.

Defendant Kreisler refused to do the SternJohns' repairs even after the Court repeatedly ordered him to do the work. Id. Defendant Kreisler – through his campaign of discrimination, harassment, and retaliation – constructively evicted the SternJohns in July 1999. Cummins Aff., ¶ 7, Exh. 10 (p. 342). Subsequently, he gave the SternJohns a false rental reference that nearly made the SternJohns homeless. Cummins Aff., ¶ 7, Exh. 10 (pp. 255-58).

The SternJohns filed charges of housing discrimination with the MDHR against Defendant Kreisler in July 2000. Cummins Aff., ¶ 7, Exh. 17. In July 2001, the MDHR issued a probable cause determination that Defendant Kreisler discriminated and retaliated against the SternJohns. Cummins Aff., ¶ 7, Exh. 18. The SternJohns filed suit in federal court in April 2002. Cummins Aff., ¶ 7, Exh. 19. The Civil Rights Division of the United States Department of Justice ("DOJ") filed a companion pattern-and-practice lawsuit against Defendant Kreisler in June 2003. In the early stages of discovery in this companion case, the DOJ has identified over 30 other blacks who are aggrieved parties concerning Defendant Kreisler's housing policies and practices.

## ARGUMENT

### I. EVIDENCE OF DEFENDANT KREISLER'S PRIOR DISCRIMINATORY AND RETALIATORY CONDUCT IS HIGHLY PROBATIVE OF DISCRIMINATORY INTENT, SO IT MUST BE ADMITTED INTO EVIDENCE.

The central question for the jury regarding the SternJohns' claims is whether Defendant Kreisler engaged in intentional discrimination.

The Supreme Court has long recognized that past-acts evidence is admissible to prove discrimination because "there will seldom be 'eyewitness' testimony as to the [defendant's] mental processes." United States Postal Serv. Bd. of Governors v. Aikens,

460 U.S. 711, 716 (1983). Likewise, the Eighth Circuit has consistently ruled that "evidence of prior acts of discrimination is relevant to [a defendant's] motive . . . , even where this evidence is not extensive enough to establish discriminatory animus by itself." White v. Honeywell, Inc., 141 F.3d 1270, 1276 (8th Cir. 1998); see also Heyne v. Caruso, 69 F.3d 1475, 1481 (9th Cir. 1995) (holding that the district court abused its discretion when it excluded evidence of the defendant's prior acts of discrimination); Hogan v. Am. Telephone & Telegraph Co., 812 F.2d 409, 410 (8th Cir. 1987) ("Proffered evidence of past acts of racial discrimination may be relevant to prove the defendant's intent or motive in his actions towards the plaintiff.").

Accordingly, the Eighth Circuit has repeatedly ruled that evidence of other discriminatory or retaliatory conduct by a defendant goes to discriminatory intent and "should normally be ***freely admitted at trial***." Hawkins v. Hennepin Technical Ctr., 900 F.2d 153, 155-56 (8th Cir. 1990), cert. denied 498 U.S. 854 (1990) (citing McDonnell Douglas v. Green, 411 U.S. 792, 804-805 (1973); Patterson v. Masem, 774 F.2d 251, 255 (8th Cir. 1985)) (emphasis added); see also Phillip v. ANR Freight Sys., Inc., 945 F.2d 1054, 1056 (8th Cir. 1991), cert. denied 506 U.S. 825 (1992) (accord). Moreover, as set forth more fully below in Part III, the SternJohns are similarly situated for purposes of offering pattern and other circumstantial evidence, so the two cases cited by Defendant Kreisler are entirely inapposite.

This well settled evidentiary standard has long governed fair housing cases like the one against Defendant Kreisler. For example, in Miller v. Poretsky, the African-American plaintiff brought Section 1982 and Fair Housing Act claims against his landlord for racial discrimination. 595 F.2d 780, 782 (D.C. Cir. 1978). The Court of

Appeals reversed the district court's exclusion of the defendant's prior discriminatory conduct. Miller, 595 F.2d at 784-85 (holding that the evidence "was relevant to prove the landlord's motive in his action toward [the plaintiff]"); see also Woods-Drake v. Lundy, 667 F.2d 1198, 1202 n. 7 (5th Cir. 1982) ("In housing cases, a history of not renting to blacks is relevant in proving racial discrimination.").

Like the plaintiffs in Miller, the SternJohns are African American and have brought Section 1982 and Fair Housing Act claims against Defendant Kreisler for racial discrimination. If the exclusion of other-acts evidence was reversible error in Miller, than exclusion of such evidence in this case would be equally erroneous. In fact, the Eighth Circuit has granted plaintiffs a new trial when the district court has excluded evidence of prior complaints of the defendant's discriminatory conduct. See, e.g., Hawkins, 900 F.2d at 155-56; see also Phillip, 945 F.2d at 1056 (reversing the district court for excluding evidence of other discrimination lawsuits filed against the defendant).

Although courts may consider proximity in time when deciding whether to admit evidence under Rule 404(b), "there is no fixed period within which the prior acts must have occurred." U.S. v. Jackson, 278 F.3d 769, 772 (8th Cir. 2002). In fact, the Supreme Court recently held that a nearly 20 year gap between the discriminatory acts did not make the prior-act evidence inadmissible. Miller-El v. Cockrell, 123 S.Ct. 1029, 1045 (2003) (reversing the Court of Appeals and holding that the prior-act evidence was admissible); see also U.S. v. West Peachtree Tenth Corp., 437 F.2d 221, 227 (10th Cir. 1971) (holding that a defendant's actions before passage of the Fair Housing Act was admissible to prove that the defendant's conduct after adoption of the Act was discriminatory).

Similarly, the Eighth Circuit has affirmed the admission of testimony regarding prior illegal acts that occurred between seven and seventeen years earlier, noting that even greater lapses of time "may be reasonable." U.S. v. Baker, 82 F.3d, 273, 276 (8th Cir. 1996) cert. denied, 519 U.S. 1020 (1996); see also U.S. v. Moore, 98 F.3d 347, 350 (8th Cir. 1996) (upholding admission of conduct occurring seven years earlier); U.S. v. Engleman, 648 F.2d 473, 479 (8th Cir. 1981) (admitting evidence despite the thirteen-year gap between illegal acts).

In the case against Defendant Kreisler, far less time has elapsed between the various acts of racial discrimination than in the controlling precedent cited above. Stephanie Ball, who is African American, will testify that the Minnesota Department of Human Rights ("MDHR") filed suit on her behalf against Defendant Kreisler in October 1998 for racially discriminatory housing practices; the MDHR filed suit approximately one week before Defendant Kreisler began trying to evict the SternJohns and the other African-American tenants at 2421 Pillsbury. MDHR commenced litigation based on its probable cause determination concerning Ms. Ball's agency charge, which she filed in 1995. Ms. Ball will further testify that Defendant Kreisler improperly filed two evictions against her in January 1994 and misrepresented the availability of housing to her in December 1993. Melissa Stenberg, who is white, will testify that Defendant Kreisler never evicted her even though she paid her rent late several times in this same time period. Michael McGuire, who also is white, will testify that he took legal action against Defendant Kreisler in 1990, after Defendant Kreisler personally communicated his anti-black housing policy to Mr. McGuire when they discussed the possibility of Mr. McGuire working for Defendant Kreisler. Allen Lindskoog, a caretaker for Defendant Kreisler in

1989, will testify that Defendant Kreisler repeatedly reminded Mr. Lindskoog of his anti-black policy and ordered Mr. Lindskoog to code rental applications based on race.

In sum, the chain of events set forth above is highly probative of Defendant Kreisler's motive and intent, and it is clearly admissible over any remoteness objection. The Eighth Circuit's ruling in Hawkins is instructive here. In that civil rights case, the plaintiff sought to introduce evidence of previous litigation concerning similar allegations of discrimination. Hawkins, 900 F.2d at 155-56. The district court granted the defendant's motion to exclude the evidence as unfairly prejudicial. Id. The Eighth Circuit reversed, reaffirming the importance of such background evidence to the jury's assessment of whether the defendant acted from an unlawful motive. Id.; see also Phillip, 945 F.2d at 1056 (reversing the district court for excluding evidence of other discrimination lawsuits filed against the defendant); Miller, 595 F.2d at 784-85 (reversing the district court for excluding evidence of the defendant's prior acts of discrimination in a fair housing case).

Therefore, Defendant Kreisler's first motion has absolutely no basis in law or fact.

## II. THE MEANING OF THE DECLARATION "I'M TIRED OF HAVING TO DEAL WITH NIGGERS" IS CLEAR AND HIGHLY PROBATIVE OF THE STERNJOHNS' RACE-DISCRIMINATION CLAIMS, SO IT IS PLAINLY ADMISSIBLE.

After the Court dismissed the first discriminatory eviction action filed by Defendant Kreisler against the SternJohns, the individual appearing in Court on behalf of Defendant Kreisler stated, "I'm tired of having to deal with niggers." Cummins Aff., ¶ 7, Exh. 10 (pp. 123-26). Defendant Kreisler's agent, who regularly appeared in Court on

behalf of Defendant Kreisler, made this declaration while in the Courtroom. Cummins Aff., ¶ 7, Exhs. 15-16, 20-24.

Defendant Kreisler seeks to exclude this statement purportedly because the statement was merely "an expression of [his agent's] ***personal frustration which he is setting forth in terms of an epithet.***" See Defendant Robert Kreisler's Memorandum of Law in Support of His Motion in Limine to Exclude Certain Evidence, dated May 29, 2003, ("Defendant Kreisler Memo I"), p. 20 (emphasis added).

Defendant Kreisler further argues that his agent's declaration should be excluded because it is not a statement that is "couched in language reasonably capable, without forced or strained construction, to bear the interpretation sought to be placed on it." See Defendant Kreisler Memo I, p. 20.

As a threshold matter, the Eighth Circuit has ruled that district courts abuse their discretion when excluding agent statements, even when they were not direct decision-makers "because such evidence is so highly probative, the potential unfair prejudicial effect . . . is not enough to substantially outweigh its probative value." White v. Honeywell, Inc., 141 F.3d 1270, 1276 (8th Cir. 1998); see also Carter v. University of Toledo, 349 F.3d 269, 275-76 (6th Cir. 2003) (reversing summary judgment for the defendant and ruling that admissions can be made by those who are not direct decision-makers); Stagman v. Ryan, 176 F.3d 986, 996 (7th Cir. 1999), cert. denied 528 U.S. 986 (1999) (ruling that statements of an employee who was not the final decision-maker were party-admissions); Spencer v. Stuart Hall Co., Inc., 173 F.3d 1124, 1131 (8th Cir. 1999) (holding that a stray remark by a non-decision-maker was admissible); Mackey v. Burke, 751 F.2d 322, 326 (10th Cir. 1984) (admitting the agent's statements because he had

apparent authority to speak by virtue of his involvement in the transaction at issue); Rainbow Travel Service v. Hilton Hotels Corp., 896 F.2d 1233, 1242 (10th Cir.1990) (holding that even low-level employees can bind the employer when the employee is used for a certain function and admits to matters concerning that function); Net 2 Press v. 58 Dix Avenue Corp., 266 F.Supp.2d 146, 155-56 (D. Maine 2003) (admitting statements of person acting with apparent authority); Wade v. South Bend Public Transportation Corp., 1989 WL 516281, *5-6 (N.D. Ind. 1989) (estopping the defendant from denying the authority of its agent to speak on a matter when he had apparent authority to do so) (attached hereto).

Particularly in fair housing cases, such as the one against Defendant Kreisler, the use of a racial epithet by a defendant's agent is highly relevant and clearly admissible. Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1312-13 (5th Cir. 1991) (ruling that a non-decisionmaker's use of a racial epithet was probative of the defendants' racially discriminatory intent toward blacks); Phillips v. Hunter Trails Community Association, 685 F.2d 184, 188 (7th Cir. 1982) ("[The Court] was correct in attaching great significance to [the non-decisionmaker's] statement. . . ."); Johnson v. Jerry Pals Real Estate, 485 F.2d 528, 530-31 (7th Cir. 1973) (holding that the Court's exclusion of a discriminatory statement by an agent of the defendant was reversible error); see also Pinchback v. Armistead Homes Corporation, 907 F.2d 1447, 1450 (4th Cir. 1990) (upholding the admission of testimony by former agents that reflected hostility toward blacks).

A recent federal court decision concisely explains why a racial remark by an agent, such as the one made by Defendant Kreisler's representative, is especially relevant in a fair housing case:

> [T]he effect of an isolated racial slur in the workplace is different than its effect in a case such as this. Employment cases typically involve frequent and consistent contacts among employees. ***In the fair housing context, however, where the parties do not have such frequent and consistent contacts, a so-called "isolated" remark is more probative of racial animus*** than it might be in other situations.

Green v. Westgate Village Mobile Home Park, 2000 WL 562331, *3 (N.D. Ohio 2000) (emphasis added) (attached hereto).

In any event, Defendant Kreisler's agent made the racist declaration squarely within the scope of his agency. Meyer v. Holley, 123 S.Ct. 824, 828 (2003) ("[I]t is well established that the [Fair Housing] Act provides for vicarious liability."). This agent routinely represented Defendant Kreisler in court and, during one such appearance, referred to the SternJohns as "niggers" while in the courtroom. Cummins Aff., ¶ 7, Exhs. 10 (pp. 123-26), 15-16, 20-24. Accordingly, the statement is linked to discriminatory conduct at issue, and it is clearly admissible under Fed.R.Evid. 801(d)(2)(D).[1]

Defendant Kreisler does not rely on any fair housing precedent to justify the exclusion of his agent's racist declaration. In fact, the lone fair housing case acknowledged by Defendant Kreisler actually undermines his position. Harris v. Itzhaki,

[1] Mr. Voak's declaration is also admissible as a statement against interest and a statement of a then existing mental condition. The statement that the SternJohns are "niggers" exposes Mr. Voak to civil liability. See 42 U.S.C. § 3604(a)-(c); 42 U.S.C. § 3617. Moreover, Mr. Voak is allegedly in an undisclosed location in Bangkok, Thailand, and he has been inaccessible since the SternJohns filed suit in April 2002 and throughout the pendency of the DOJ's companion suit. Accordingly, Mr. Voak is unavailable for purposes of the Federal Rules of Evidence, and his declaration is clearly a statement against interest. See Fed.R.Evid. 804(b)(3). The declaration of Mr. Voak is also admissible to show the intent, plan, and motive of Mr. Voak and Defendant Kreisler. See Fed.R.Evid. 803(3).

183 F.3d 1043, 1055 (9th Cir. 1999) (reversing the dismissal of a fair housing claim and holding that the agent's statement was admissible).

The words of the Minnesota Supreme Court warrant repeating here: "[w]e cannot regard the use of the term 'nigger' . . . as anything but discrimination . . . based on [a person's] race." City of Minneapolis v. Richardson, 239 N.W.2d 197, 203 (Minn. 1976); see also Bowen v. Missouri Department of Social Services, 311 F.3d 878, 884 (8th Cir. 2002) (reversing the grant of summary judgment because the use of racial epithets by a coworker created an inference of discrimination); Carter v. Chrysler Corp., 173 F.3d 693, 701 (8th Cir. 1999) ("[R]acial epithets are often the basis for racial harassment claims . . . and may likewise create an inference that racial animus motivated other conduct as well."); Baily v. Binyon, 583 F.Supp. 923, 927-28 (N.D. Ill. 1984) (ruling that the use of the word "nigger" is discrimination per se).

In short, the racist declaration is directly relevant to the SternJohns' claims of race discrimination, and it must be admitted into evidence.

## III. THE STERNJOHNS' CIRCUMSTANTIAL EVIDENCE OF DEFENDANT KREISLER'S RACIAL DISCRIMINATION IS HIGHLY PROBATIVE, AND IT CANNOT BE EXCLUDED MERELY BECAUSE IT IS CIRCUMSTANTIAL.

Defendant Kreisler asks this Court to bar the admission of overwhelming evidence of racial discrimination because he disputes the legal claims that flow from this evidence.

In essence, Defendant Kreisler asks the Court to usurp the jury's role by deciding clear fact disputes on a motion in limine. This thinly veiled and untimely summary judgment motion is improper, and Defendant Kreisler's motion should be denied on that basis alone. Mills v. General Motors Corp., 262 F.3d 720, 723 (8th Cir. 2001) (affirming

the denial of a motion in limine and the subsequent admission of evidence because the evidence related to a fact question to be decided by the jury); see also Reimer v. City of Crookston, 326 F.3d 957, 961 (8th Cir. 2003) ("[W]here the existence of a duty turns upon contradicted facts, those facts must be submitted to a jury for resolution prior to the court's legal conclusion on the issue.") (citation omitted); Thorson v. Gemini, Inc., 205 F.3d 370, 377 (8th Cir. 2000) ("It is for the fact-finder to look at the record and decide if the evidence supports the [claim].").

Defendant Kreisler's motion also fails because he evidently misapprehends civil rights law. Fair housing claims follow the classic burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See, e.g., U.S. v. Badgett, 976 F.2d 1176, 1178 (8th Cir. 1992); Smith v. Anchor Bldg. Corp., 536 F.2d 231, 233 (8th Cir. 1976); Williams v. Matthews Company, 499 F.2d 819, 825-26 (8th Cir. 1974), cert. denied 419 U.S. 1021 (1974). Thus, once the SternJohns establish a prima facie case of discrimination, the burden shifts to Defendant Kreisler to provide a business justification for his conduct that is both legitimate and non-discriminatory. McDonnell Douglas, 411 U.S. at 802-03; Badgett, 976 F.2d at 1178; Anchor Bldg., 536 F.2d at 233; Williams, 499 F.2d at 825-26.

Contrary to the controlling precedent, Defendant Kreisler apparently would have the Court require the SternJohns to prove first that they and other black tenants were identical in every respect to white tenants before the SternJohns would be allowed to offer evidence in support of their civil rights claims. The Eighth Circuit has explicitly rejected Defendant Kriesler's view of anti-discrimination law:

> [B]y requiring plaintiff to disprove the alleged conduct violations in order to establish his prima facie case, the district court

> essentially required plaintiff, at the outset, to disprove defendant's alleged business reasons for its adverse . . . action—in other words, to prove pretext and the ultimate issue of intentional discrimination. The prima facie burden is not so onerous.

Davenport v. Riverview Gardens School District, 30 F.3d 940, 944 (8th Cir. 1994) (citing Johnson v. Arkansas State Police, 10 F.3d 547, 551 (8th Cir. 1993)). In any event, the SternJohns similarly situated with other tenants because they all have the same right to equal housing opportunities and have dealt with Defendant Kreisler and/or his agents regarding housing opportunities.

Notably federal courts go to great lengths to uphold the controlling legal standard in civil rights cases like this:

> Courts today must be increasingly vigilant in their efforts to ensure that prohibited discrimination is not approved under the auspices of legitimate conduct, and "a plaintiff's ability to prove discrimination indirectly, circumstantially must not be crippled . . . because of crabbed notions of relevance or excessive mistrust of juries."

Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1082 (3rd Cir. 1996) (quoting Riordan v. Kempiners, 831 F.2d 690, 698 (7th Cir. 1987)).

At any rate, the SternJohns can certainly establish a prima facie case. For example, Defendant Kreisler has maintained an anti-black policy and exhibited a pattern of filing discriminatory eviction actions against the SternJohns and other black tenants. Cummins Aff., ¶ 7, Exhs. 4-8. Such evidence is more than sufficient. See, e.g., Pinchback v. Armistead Homes Corporation, 907 F.2d 1447, 1450 (4th Cir. 1990) (upholding the verdict against the defendants because of their anti-black policy); U.S. v. Youritan Construction Co., 370 F.Supp. 643, 650 (N.D. Cal. 1973), aff'd. in relevant part 509 F.2d 623 (9th Cir. 1975) ("Instructions by a resident manager to rental agents to

discriminate in various ways against black[s] . . . constitute a discriminatory course of conduct. . . ."); U.S. v. Reddoch, 467 F.2d 897, 898-99 (5th Cir. 1972) (affirming the verdict against the defendants because the defendant instructed their agents not to rent to blacks).

In addition, as even Defendant Kreisler seems to acknowledge, the SternJohns can produce evidence that he treated the SternJohns and other blacks differently than white tenants regarding terms and conditions of tenancy. See Defendant Kreisler Memo I, p. 24. For example, the SternJohns will offer highly probative evidence at trial that Defendant Kreisler refused to do repairs for black tenants, including the SternJohns, while promptly doing repairs for white tenants. Cummins Aff., ¶ 7, Exhs. 10 (p. 181), 11-16.

Accordingly, the burden will shift at trial to Defendant Kreisler to rebut the evidence that he discriminated against the SternJohns. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Badgett, 976 F.2d at 1178; Anchor Bldg., 536 F.2d at 233; Williams, 499 F.2d at 825-26. Rather than try to address the SternJohns' compelling evidence, Defendant Kreisler simply asks the Court to exclude the SternJohns' proof.

There is no "exclude-what-cannot-be-rebutted" rule in discrimination cases. In fact, the SternJohns retain the ultimate opportunity to provide evidence, assuming Defendant Kreisler could offer a plausible business justification for his conduct. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510, 511 (1993); Badgett, 976 F.2d at 1178; Anchor Bldg., 536 F.2d at 233; Williams, 499 F.2d at 825-26. Otherwise stated, even if Defendant Kreisler could articulate a purportedly legitimate and non-discriminatory

reason for his actions, the SternJohns have the right to show that this reason is actually a cover for discrimination. Id.

In conclusion, Defendant Kreisler has not – and, indeed, he cannot – point to any Federal Rule of Evidence that would justify exclusion of the circumstantial evidence that he discriminated against the SternJohns.

## IV. DEFENDANT KREISLER'S SETTLEMENT OF PRIOR CLAIMS OF HOUSING DISCRIMINATION IS ADMISSIBLE TO DEMONSTRATE HIS KNOWLEDGE OF THE FAIR HOUSING LAWS AND, THEREFORE, THE EXTENT OF PUNITIVE DAMAGES.

It is well settled that "[p]unitive damages are appropriate in a federal civil rights action 'when the defendant's conduct . . . involves reckless or callous indifference to the federally protected rights of others.'" Badami v. Flood, 214 F.3d 994, 997 (8th Cir. 2000) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). That is precisely the case we have here.

Defendant Kreisler has an extensive track record of responding to claims of race discrimination in housing, and he has been the subject of legal action on at least two previous occasions. Cummins Aff., ¶ 7, Exhs. 1-2, 9. This prior litigation includes a government lawsuit brought against Defendant Kreisler only days before he filed his first discriminatory eviction action against the SternJohns. Id.

Defendant Kreisler seeks to exclude evidence of his settlement of these prior claims of race discrimination in housing, arguing that they are "completely unrelated" to the SternJohns' claims of race discrimination in housing. See Defendant Kreisler Memo I, p. 26; Defendant Robert Kreisler's Memorandum of Law in Support of His Motion in Limine to Exclude Certain Evidence, dated October 12, 2004, ("Defendant Kreisler Memo III"), 20.

In truth, the prior litigation involved claims that are highly analogous to those brought by the SternJohns: that Defendant Kreisler has an anti-black policy and has acted on this policy by, among other things, filing discriminatory eviction actions against black tenants and otherwise denying equal housing opportunities to blacks. Cummins Aff., ¶ 7, Exhs. 4-8, 11-16.

Moreover, the SternJohns offer evidence of Defendant Kreisler's settlements in accordance with Fed.R.Evid. 408. The Eighth Circuit has set forth the governing standard under Fed.R.Evid. 408: "[t]o the extent that the evidence is offered for another purpose [besides to prove liability] . . . the evidence is admissible." Vulcan Hart Corporation v. NLRB, 718 F.2d 269, 277 (8th Cir. 1983); see also Bradbury v. Phillips Petroleum Co., 815 F.2d 1356, 1364 (10th Cir. 1987) (holding that evidence of the settlement of similar claims is admissible); Bhandari v. First Nat. Bank of Commerce, 808 F.2d 1082, 1103 (5th Cir. 1987) (upholding the admission of evidence of settlement negotiations); Brocklesby v. U.S., 767 F.2d 1288, 1292-93 (9th Cir. 1985) (upholding the admission of a prior settlement); Breuer Electric Manufacturing Co. v. Tornado Systems of America, Inc., 687 F.2d 182, 185 (7th Cir. 1982) ("Defendant's argument that the trial court's consideration of the prior settlement negotiations violated Rule 408, Fed.R.Evid., is ridiculous."); John McShain, Inc. v. Cessna Aircraft, 563 F.2d 632, 635 (3rd Cir. 1977) (upholding the admission of a prior settlement).

The SternJohns do not submit evidence of Defendant Kreisler's settlements to prove liability, so the cases cited by Defendant Kreisler are readily distinguishable. The SternJohns offer the evidence, instead, to show Defendant Kreisler's knowledge of his

duties under the fair housing laws and, thus, the extent of the punitive damages here. See, e.g., Smith, 461 U.S. at 56; Badami, 214 F.3d at 997.

Significantly, the settlements Defendant Kreisler now seeks to cloak in secrecy are "official records" under Minn. Stat. § 15.17, Subd. 1. Cummins Aff., ¶ 7, Exhs. 25-26. Such data is public, pursuant to Minn. Stat. § 13.03. Notably, Defendant Kreisler did not include a non-admissibility provision, a confidentiality provision, or any other such terms in these settlements that would suggest the settlements should now be withdrawn from the public sphere. Id.

In addition, a quick review of the facts confirms that Defendant Kreisler's settlements are not remote in time and are not otherwise barred by Fed.R.Evid. 402 and 403. The SternJohns filed their agency charge against Defendant Kreisler in July 2000 – the same year that Defendant Kreisler settled the MDHR lawsuit against him. Cummins Aff., ¶ 7, Exhs. 17, 25. Significantly, the MDHR lawsuit commenced only days before Defendant Kreisler first sought to evict the SternJohns. Cummins Aff., ¶ 7, Exhs. 4, 9. Clearly this settlement is not remote in time.

The other settlement concerned claims arising approximately three years before the claims underlying the MDHR's lawsuit. Cummins Aff., ¶ 7, Exhs. 1, 26. Rather than being remote in time, these settlements are part of a compelling chain of events. See U.S. v. Sheet Metal Workers, 416 F.2d 123, 127-28 (8th Cir. 1969) (ruling that a defendant's conduct before enactment of a civil rights law is admissible in a case regarding that defendant's conduct after enactment of the law); see also Miller-El v. Cockrell, 123 S.Ct. 1029, 1045 (2003) (reversing the Court of Appeals and holding that a racially biased statement contained in an official manual was probative of the racial bias underlying

conduct nearly 20 years after the statement); U.S. v. West Peachtree Tenth Corp., 437 F.2d 221, 227 (10th Cir. 1971) (holding that a defendant's actions before passage of the Fair Housing Act is admissible concerning actions after adoption of the Act).

The United States Supreme Court's expansive application of the fair housing laws also counsels against excluding the evidence. Trafficante v. Metropolitan Life Ins., 409 U.S. 205, 211, 212 (1972) (observing that the Fair Housing Act embodies "a policy that Congress considered to be of the highest priority" and that the courts "can give vitality to the Act only by a generous construction."); Jones v. Alfred H. Mayer Co., 392 U.S. 409, 441 (1968) (observing that Congress enacted the Fair Housing Act, pursuant to the Thirteenth Amendment, to root out "the badges and incidents of slavery.").

Defendant Kreisler cites a handful of district court opinions from other Circuits to support his theory. In the face of the Supreme Court and Eighth Circuit precedent set forth above, Defendant Kreisler's argument cannot withstand scrutiny; the evidence of Defendant Kreisler's settlement of other fair housing cases is admissible to illustrate Defendant Kreisler's knowledge of the fair housing laws and the extent of the punitive damages in this case.

**V. EVIDENCE OF DEFENDANT KREISLER'S PATTERN OF DISCRIMINATORY CONDUCT AT THE TIME THE STERNJOHNS ALSO EXPERIENCED DISCRIMINATION IS DIRECTLY RELEVANT TO DISCRIMINATION, SO IT CANNOT PROPERLY BE EXCLUDED.**

As discussed more fully above in Part I, other-acts evidence is critical to the question of whether a defendant discriminated against a plaintiff. In fact, the Eighth Circuit has reversed the district court when it excluded other-acts evidence in discrimination cases. Hawkins v. Hennepin Technical Ctr., 900 F.2d 153, 155-56 (8th Cir. 1990), cert. denied 498 U.S. 854 (1990); Phillip v. ANR Freight Sys., Inc., 945 F.2d

1054, 1056 (8th Cir. 1991), cert. denied 506 U.S. 825 (1992); see also Heyne v. Caruso, 69 F.3d 1475, 1481 (9th Cir. 1995) (holding that the district court abused its discretion when it excluded evidence of the defendant's past discrimination); Miller v. Poretsky, 595 F.2d 780, 784-85 (D.C. Cir. 1978) (reversing the district court for excluding prior acts evidence in a fair housing case).

Nonetheless, Defendant Kreisler seeks to exclude the fact that over 30 other blacks have asserted Defendant Kreisler discriminated against them during ***the same time period*** that the SternJohns testified Defendant Kreisler discriminated against them. These complaints are contemporaneous with the SternJohns' factually similar claims, so – pursuant to Eighth Circuit precedent – they are even more probative of Defendant Kreisler's motive and intent. Phillip, 945 F.2d at 1056 (ruling that the district court's exclusion of other "discrimination lawsuits filed against [the defendant]" was reversible error); see also Estes v. Dick Smith Ford, Inc., 856 F.2d 1097 (8th Cir. 1988) (finding error and reversing the district court for excluding evidence of contemporaneous acts of alleged discrimination), superseded on other grounds in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), as stated in Foster v. University of Ark., 938 F.2d 111, 115 (8th Cir.1991); Marquez v. Omaha Dist. Sales Office, 440 F.2d 1157, 1160-61 (8th Cir. 1971) (relying on evidence of discrimination that allegedly occurred in the same time period as when the plaintiff allegedly experienced discrimination and reversing the district court's dismissal of the case).

Defendant Kreisler cites one district court case from another Circuit to support his theory of exclusion, and that case actually undercuts his argument. In Scaramuzzo v. Glenmore Distilleries, 501 F.Supp. 727, 733 (N.D. Ill. 1980), the court ruled that

evidence of the conduct underlying the charge of discrimination was admissible to support the inference that discrimination was an ongoing phenomenon. Moreover, it is inaccurate to give a single agency charge filed by one individual the same weight as a pattern-and-practice lawsuit prosecuted by the DOJ on behalf of over 30 aggrieved parties. See, e.g., Phillip, 945 F.2d at 1056 (allowing evidence of other discrimination lawsuits into evidence).

Accordingly, the fact of the DOJ's companion pattern-and-practice case and the number of aggrieved parties identified therein are certainly admissible.

## VI. THE GOVERNMENT AGENCY'S PROBABLE-CAUSE DETERMINATION THAT DEFENDANT KREISLER DISCRIMINATED AND RETALIATED AGAINST THE STERNJOHNS IS TRUSTWORTHY AND ADMISSIBLE.

It is well settled that "[a]dministrative findings made with respect to claims of racial discrimination are admissible under Fed.R.Evid. 803(8)(C). . . ." Johnson v. Yellow Freight System, Inc., 734 F.2d 1304, 1309 (8th Cir. 1984), cert. denied 469 U.S. 1041 (1984) (citation omitted); see also Williams v. Fermenta Animal Health Co., 984 F.2d 261, 265 (8th Cir. 1993) (upholding the admission of the agency determination).

Defendant Kreisler first argues that the determination by the MDHR is inadmissible because it relies on hearsay. As even Defendant Kreisler acknowledges, however, the SternJohns offer the Minnesota Department of Human Rights ("MDHR") report pursuant to Fed.R.Evid. 803(8)(C) – which is an express exception to the hearsay rule. See Bradford Trust Co. v. Merrill Lynch, 805 F.2d 49, 55 (2nd Cir. 1986) ("Ignoring [the agency report] on this ground [of hearsay] is inconsistent with the notion of having exceptions to the hearsay rule.").

At any rate, government agencies, such as the MDHR in this case, often rely on hearsay in making their determinations. Accordingly, reliance on hearsay is a "common occurrence[] in difficult investigations and do[es] not mean the preparation of the report was untrustworthy." Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1309 (5th Cir. 1991) (reversing the district court's exclusion of the agency's determination in a fair housing case). The investigation of the SternJohns' case – with multiple parties, multiple witnesses, multiple apartment buildings, and multiple claims – was likewise difficult, and the MDHR's probable-cause determination should not be excluded on hearsay grounds.

Moreover, Defendant Kreisler's "reliability" argument is essentially a dispute about the MDHR's credibility. For example, Defendant Kreisler contests the MDHR's finding that Defendant Kreisler retaliated against the SternJohns by filing his second baseless eviction action against them shortly after they complained about their treatment. Defendant Kreisler disagrees that the SternJohns' complaint concerned discriminatory treatment. Instead, Defendant Kreisler asserts that the SternJohns' complaint related only to repair issues – even though the SternJohns had previously notified him that his refusal to do their repairs appeared discriminatory. Cummins Aff., ¶ 7, Exh. 10 (p. 181).

In other words, Defendant Kreisler attempts to question the cogency of the MDHR's report. This simply cannot be a basis for excluding the MDHR's determination. Union Pacific Railroad Co. v. Kirby Inland Marine, Inc., 296 F.3d 671, 679 (8th Cir. 2002) ("When considering whether a report is trustworthy, the court should not consider whether the report is credible. . . .") (citation omitted); see also McClure v. Mexia Ind. Sch. Dist., 750 F.2d 3926, 400 (5th Cir. 1985) ("[T]he defendant is free to present evidence refuting the findings of the [agency] or point out deficiencies in the

same, with regard to the weight, if any, to be given by the trier of fact the [agency] determination.") (citation omitted); Plummer v. Western International Hotels Co., Inc., 656 F.2d 502, 505 n. 9 (9th Cir. 1981) ("The defendant, of course, is free to present evidence refuting the findings of the [agency] and may point out deficiencies in the [agency] determination on remand. Such evidence would go to the weight given by the trier of fact to the [agency] determination."); Rosario v. Amalgamated Ladies Garmet Cutters' Union, 605 F.2d 1228, 1251 (2nd Cir. 1979), cert. denied 446 U.S. 919 (1980) ("The weight and credibility extended to government reports admitted as exceptions to the hearsay rule are to be determined by the trier of fact.").

Defendant Kreisler's final argument, that the MDHR used the wrong legal standard, also fails. As set forth more fully above in Part III, Defendant Kreisler evidently misunderstands the applicable analysis under the fair housing laws. Defendant Kreisler's argument turns on his view that the MDHR allegedly did not identify any clearly "comparable" whites that were treated better than the SternJohns. Again, Defendant Kreisler apparently would have this Court require the SternJohns to prove first that they and other black tenants were identical in every respect to white tenants before the SternJohns would be allowed to offer evidence in support of their civil rights claims. The Eighth Circuit has consistently rejected this characterization of anti-discrimination law. See, e.g., Davenport v. Riverview Gardens School District, 30 F.3d 940, 944 (8th Cir. 1994); Johnson v. Arkansas State Police, 10 F.3d 547, 551 (8th Cir. 1993).

Contrary to Defendant Kreisler's opinion, a fair housing violation can be established in several ways, including by producing admissions that Defendant Kreisler maintained an anti-black policy, by demonstrating that black tenants' repairs went

unaddressed while white tenants received prompt assistance, or by showing that there was a pattern or practice of forcing black tenants to vacate their apartments. See, e.g., Pinchback v. Armistead Homes Corporation, 907 F.2d 1447, 1450 (4th Cir. 1990); U.S. v. Youritan Construction Co., 370 F.Supp. 643, 650 (N.D. Cal. 1973), aff'd. in relevant part 509 F.2d 623 (9th Cir. 1975); U.S. v. Reddoch, 467 F.2d 897, 898-99 (5th Cir. 1972).

Rather than try to rebut the evidence that he racially discriminated against the SternJohns, Defendant Kreisler tries to exclude the MDHR report. There is no "exclude-what-cannot-be-rebutted" rule. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510, 511 (1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); U.S. v. Badgett, 976 F.2d 1176, 1178 (8th Cir. 1992); Smith v. Anchor Bldg. Corp., 536 F.2d 231, 233 (8th Cir. 1976); Williams v. Matthews Company, 499 F.2d 819, 825-26 (8th Cir. 1974), cert. denied 419 U.S. 1021 (1974).

Furthermore, the MDHR probable-cause determination will provide clarity and promote efficiency rather than cause confusion and time-wasting, so Fed.R.Evid. 403 does not bar admissibility here. See Ellis v. Int'l. Playtex, Inc., 745 F.2d 292, 304-5 (4th Cir. 1984) (holding that an agency report was admissible over Fed.R.Evid. 403 objections); see also Hodge v. Seiler, 558 F.2d 284, 288 (5th Cir. 1977) (holding that the agency report was admissible in a fair housing case).

Significantly, the Court need not take additional evidence from Defendant Kreisler at trial if the Court admits the MDHR's determination. When the MDHR began to investigate the SternJohns' claims, Defendant Kreisler was already intimately familiar with how the administrative process worked -- and how best to defend against the SternJohns' fair housing claims -- because he had been the subject of two prior

administrative charges involving virtually the same claims. Cummins Aff., ¶ 7, Exhs. 1-2. In addition, Defendant Kreisler retained counsel who specializes in anti-discrimination law to represent him throughout the MDHR's investigation of the SternJohns' claims. Cummins Aff., ¶ 7, Exh. 27. Clearly, Defendant Kreisler had ample opportunity and capacity to provide countervailing evidence, if he had any, during the lengthy MDHR process.

Finally, the cases in Defendant Kreisler's brief do not support the exclusion of the MDHR's report. The Eighth Circuit case on which Defendant Kreisler heavily relies actually admitted the agency determination with respect to the Title VII claims. Johnson, 734 F.2d at 1309 n.1. The Court only excluded the agency report for the Section 1981 claims because the report was "supported factually by only two highly conclusory sentences. . . ." Id. at 1309. Another case cited by Defendant Kreisler, Lee v. Executive Airlines, Inc., 31 F.Supp.2d 1355, 1357 (S.D. Fla. 1998), also excluded an agency determination for want of supporting evidence in the agency's final report. In stark contrast, the MDHR supported its determination with a detailed recitation of the extensive evidence of discrimination and retaliation by Defendant Kreisler. Cummins Aff., ¶ 7, Exh. 18.

Paolitto v. John Brown E & C, Inc., 151 F.3d 60, 64-66 (2nd Cir. 1998), another case on which Defendant Kreisler relies, also is readily distinguishable. There, the Court excluded the agency determination of "no-cause" because the evidence at trial contradicted this determination and established that the defendant, in fact, discriminated against the plaintiff. In the SternJohns' case, the evidence at trial will be consistent with, not contradict, the MDHR's determination of probable cause that Defendant Kreisler

discriminated and retaliated against the SternJohns. Thus, there is no danger of jury confusion here. There was, however, such danger in the final case cited by Defendant Kreisler: Walker v. NationsBank of Florida, N.A., 53 F.3d 1548, 1555 (11th Cir. 1995). In that case, the excluded report contained conflicting findings of two agency officials who reviewed the same facts. Id. Clearly that is not the situation with SternJohns' charges against Defendant Kreisler.

In short, Defendant Kreisler cannot carry his heavy burden of establishing that the MDHR's probable-cause determination is untrustworthy. The agency's report must be admitted because it is directly relevant to the SternJohns' civil rights claims.

## VII. THE STERNJOHNS HAVE THE RIGHT TO PROVIDE TESTIMONY AND OTHER EVIDENCE TO SUPPORT THEIR CLAIMS THAT DEFENDANT KREISLER'S DISCRMINATION AND RETALIATION HARMED THEM.

This motion is another attempt to litigate the merits of the SternJohns claims on a motion in limine. This is clearly improper because it is for the jury to decide whether the SternJohns suffered emotional and other injuries in connection with Defendant Kreisler's conduct. Mills v. General Motors Corp., 262 F.3d 720, 723 (8th Cir. 2001) (affirming the denial of a motion in limine and the subsequent admission of evidence because the evidence related to a fact question to be decided by the jury); see also Reimer v. City of Crookston, 326 F.3d 957, 961 (8th Cir. 2003) ("[W]here the existence of a duty turns upon contradicted facts, those facts must be submitted to a jury for resolution prior to the court's legal conclusion on the issue.") (citation omitted); Thorson v. Gemini, Inc., 205 F.3d 370, 377 (8th Cir. 2000) ("It is for the fact-finder to look at the record and decide if the evidence supports the [claim].").

Eighth Circuit precedent, which Defendant Kreisler ignores in arguing his motion papers, recognizes that medical testimony is not needed to put evidence to the jury about the emotional injuries suffered by a plaintiff. See, e.g., Hammond v. Northland Counseling Center, Inc., 219 F.3d 886, 893 (8th Cir. 2000) ("A plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard.") (citing Kim v. Nash Finch Co., 123 F.3d 1046, 1065 (8th Cir.1997)); see also Price v. City of Charlotte, 93 F.3d 1241, 1251 (4th Cir. 1996), cert. denied 520 U.S. 1116 (1997) (surveying cases from many Circuits and reaffirming that a plaintiff's testimony alone can support a claim of emotional distress); Miner v. City of Glens Falls, 999 F.2d 655, 663 (2nd Cir. 1993) ("[A] prescription for medicine or a visit to a doctor can lend support to a claim for emotional distress; however, such evidence is neither required for necessarily probative. . . .").

This point of law is particularly well established in fair housing cases like the one against Defendant Kreisler. See, e.g., Johnson v. Hale, 940 F.2d 1192, 1193-94 (9th Cir. 1991) (reaffirming that medical testimony is not needed to establish emotional distress damages); Seaton v. Sky Realty Company, Inc., 491 F.2d 634, 636 (7th Cir. 1974) (In cases of race discrimination, "[h]umiliation can be inferred from the circumstances as well as established by the testimony."); Broome v. Biondi, 17 F.Supp.2d 211, 225 (S.D.N.Y. 1997) ("[L]arge awards [in race discrimination cases] have been upheld without signs of tangible harm or medical testimony."). Thus, Defendant Kreisler's seventh motion fails as a matter of law.

## VIII. THE JURY MUST BE ALLOWED TO DECIDE FACT QUESTIONS ABOUT THE REASONABLENESS OF THE COSTS INCURRED BY THE STERNJOHNS IN SEEKING TO REMEDY THE HARM THEY HAVE SUSTAINED.

Defendant Kreisler's eighth motion is very similar to its seventh, and the SternJohns' response is essentially the same. Just as the SternJohns have a right to testify about the impact of Defendant Kreisler's discrimination and retaliation, they also have a right to address the corollary: the costs of seeking relief for the adverse impact, such as that of finding alternative housing and seeking counseling. It is for the jury at trial, not the Court on a motion in limine, to decide the reasonableness of the SternJohns' testimony in this regard. See, e.g., Reimer v. City of Crookston, 326 F.3d 957, 961 (8th Cir. 2003).

The lone case cited by Defendant Kreisler, an unpublished district court opinion from another Circuit, turns on the argument that the SternJohns need to produce a medical expert before they can testify about how they have been harmed. As set forth more fully above in Part VII, this argument has no merit.

## IX. DEFENDANT KREISLER'S FAILURE TO SEEK DISCOVERY DOES NOT JUSTIFY EXCLUSION OF THE HIGHLY PROBATIVE TESTIMONY OF WITNESSES THAT HAVE BEEN PREVIOUSLY DISCLOSED AND WERE ALREADY KNOWN TO HIM.

In their Rule 26 Initial Disclosures, the SternJohns disclosed nearly 40 witnesses who have knowledge about the SternJohns' civil rights claims. Cummins Aff., ¶ 7, Exh. 31. Through discovery of Defendant Kreisler's own documents, the SternJohns identified a few additional witnesses over the next year. Cummins Aff., ¶ 2. Since the parties filed their trial submissions in September 2003, the SternJohns identified five

more witnesses in connection with the companion pattern-and-practice case against Defendant Kreisler that the DOJ has been prosecuting since June 2003.

In contrast, Defendant Kreisler chose not to serve any interrogatories on the SternJohns and otherwise not to seek discovery regarding witnesses. Id. Defendant Kreisler also chose not to depose any of the witnesses identified in the SternJohns' Initial Disclosures (except for Defendant Kreisler's own employee, Vern Hiller, and the SternJohns). Id. Defendant Kreisler also elected not to depose the witnesses to which he now objects in connection with the DOJ's companion case – even though all of those witnesses have been identified in that case.

Moreover, Tojbana Dore, Ibrahim Sow, Amadi Karekezi, Jean-Pierre Karekezi, Lorelie Smith, Elizabeth Helmes, Andy Evuleocha, Clarence Wright, Mildred Freeman, Dawn Olmstead, Krista Schindler, Ralph Michalsky are former tenants of Defendant Kreisler. Cummins Aff., ¶ 3. Perhaps more salient, many of these witnesses will testify that they were targets of, or observed, Defendant Kreisler's race discrimination and retaliation. Id. These are grounds for inclusion, not exclusion. See Fed.R.Evid. 402.

Defendant Kreisler also seeks to bar the testimony of Shawn Swinson-Stafford, David Castledine, Jaime Pedraza, and Beth Clark. Like the former tenants named above, Mr. Swinson-Stafford, Mr. Castledine, Ms. Pedraza, and Ms. Clark also are known by Defendant Kreisler. Mr. Swinson-Stafford gave an affidavit in this litigation; Mr. Castledine and Ms. Pedraza are agency officials who investigated the SternJohns' civil rights claims against Defendant Kreisler; and Ms. Clark is a paralegal for the SternJohns' counsel. Cummins Aff., ¶¶ 4, 7, Exh. 32. Put simply, Defendant Kreisler's apparent

unwillingness to confer about admissibility of trial exhibits necessitates their testimony to establish the chain of custody of key documents in this case. Id.

Defendant Kreisler demands the exclusion of Mrs. SternJohn's mother, Carolyn Holford. Defendant Kreisler has had further knowledge of Mrs. Holford, both through the SternJohns' document production and the deposition of Mrs. SternJohn. Cummins Aff., ¶ 7, Exh. 33 (pp. 370-71). Mrs. Holford has personal knowledge of the manifestations of the emotional distress caused by Defendant Kreisler's conduct, and she should be allowed to testify. Cummins Aff., ¶ 5.

Defendant Kreisler's argument for exclusion of the above witnesses is, at best, disingenuous. His own Trial Witness List includes numerous individuals who were not identified in his Initial Disclosures – including two purported experts who have been disclosed for the first time approximately one week before trial. Cummins Aff., ¶ 7, Exh. 34. Moreover, Defendant Kreisler did not specifically identify additional witnesses in response to the SternJohns' discovery requests and requests for supplementation. Cummins Aff., ¶¶ 6-7, Exhs. 35-36. Defendant Kreisler further failed to disclose witnesses after the SternJohns successfully brought two motions to compel. Cummins Aff., ¶¶ 6-7, Exhs. 37-38.

In sum, Defendant Kreisler should not be allowed to exclude witnesses that were previously known to him, who he had ample time to depose, and who will give highly probative testimony at trial.

## X. DEFENDANT KREISLER HAS NOT ALLEGED, MUCH LESS SHOWN, ANY PREJUDICE, AND BIFURCATION WOULD BE INEFFICIENT AND INCONVENIENT FOR THE COURT AND THE PARTIES.

In order to obtain a bifurcated trial, Defendant Kreisler must prove actual prejudice. If he cannot, there should be no bifurcation. E.E.O.C. v. HBE Corp., 135 F.3d 543, 551 (8th Cir. 1998) (affirming the trial judge's denial of a motion to bifurcate liability and punitive damages issues because there were common questions of fact to both); see also Athey v. Farmers Ins. Exch., 234 F.3d 357, 362 (8th Cir.2000) (finding that the district court did not abuse its discretion in refusing to bifurcate when defendant failed to show prejudice); U.S. v. Beaudet, 2004 WL 1635853, *2 (D.Minn. 2004) (denying the motion to bifurcate) (attached hereto); 8 Moore's Federal Practice, ¶ 42.20[4][c] at 42-46 (2004).

Defendant Kreisler does not even attempt to establish prejudice, so his tenth motion fails on that basis alone.

Moreover, Defendant Kreisler's argument for bifurcation turns principally on his notion of efficiency. In truth, it would be more efficient and convenient not to bifurcate. Because of the Court's heavy caseload, this case has been placed on two separate trial blocks and assigned three date certains since the parties have been trial ready in June 2003. There is also extensive overlap between the evidence of liability and the evidence of punitive damages here. Given the Court's crowded docket and the scope and nature of the evidence in this case, judicial economy is best served by not bifurcating. See, e.g., Fuji Mach. Mfg., Ltd. v. Hover-Davis, Inc., 982 F.Supp. 923, 924-25 (W.D.N.Y. 1997) (rejecting the defendant's motion on the grounds that bifurcation would cause delay and inconvenience); see also Aspen v. King World Productions Corp., 2001 WL 1403001, *3-

5 (N.D.Ill. 2001) (attached hereto) (denying defendants' motion for bifurcation based upon defendants' bare assertion that they would be prejudiced if the jury was aware of their net worth, and noting that there are less extreme ways to minimize any potential prejudice). Therefore, this final motion must be denied.

## CONCLUSION

The SternJohns respectfully ask the Court to deny Defendant Kreisler's motion in limine in its entirety for the following reasons: (1) the evidence is highly probative of the SternJohns' race discrimination and retaliation claims, (2) the evidence will promote clarity and efficiency at trial, and (3) the evidence concerns genuine issues of material fact that are within the exclusive province of the jury to decide.

Dated: October 14, 2004

**MILLER·O'BRIEN**

M. William O'Brien, # 130229
Justin D. Cummins, # 276248
One Financial Plaza
120 South Sixth Street, Suite 2400
Minneapolis, MN 55402
612-333-5831

**ATTORNEYS FOR PLAINTIFFS**