C
Only the Westlaw citation is currently available.

United States District Court, N.D. Indiana, South Bend Division.

Leslie Anne WADE, Plaintiff,
v.
SOUTH BEND PUBLIC TRANSPORTATION CORPORATION, Defendant.

**S86-488.**

May 16, 1989.

Victor McFadden, South Bend, IN, Robert J. Konopa, South Bend, IN, for plaintiff.

Timothy W. Woods, South Bend, IN, for defendant.

*MEMORANDUM AND ORDER*

MILLER, District Judge.

***1** This cause comes before the court on objections by defendant South Bend Public Transportation Corporation ("Transpo") to Magistrate Robin D. Pierce's March 23, 1989 report and recommendation that Transpo's motion for summary judgment be denied. Transpo claims that the magistrate improperly relied upon documents that had not been authenticated or were hearsay statements and that he also relied on inadmissible legal conclusions or assumptions. Transpo also claims that the magistrate erroneously found that plaintiff Leslie Ann Wade had substantially complied with the notice and service requirements of the Indiana Tort Claims Act. IND.CODE 34-4-6.5.

The case arises out of a collision between an automobile owned and operated by Ms. Wade and a Transpo bus on October 8, 1984. It is undisputed that Ms. Wade failed to comply strictly with the Act's notice requirements, but she raises the issue of substantial compliance through contacts with an insurance adjuster who she asserts was handling the claim on behalf of Transpo and its insurer. Under Indiana law, the issue of compliance with the notice of claim requirements of the Tort Claims Act is a procedural precedent which is not a question of fact for the jury, but is to be determined before trial by the court. *Board of Aviation Commissioners of St. Joseph County v. Hestor,* 473 N.E.2d 151, 153 (Ind.App.1985).

*Evidentiary Matters*

Transpo argues that only the letters that Ms. Wade's attorney wrote have been properly authenticated, and correspondence from Mr. Rees (the insurance adjuster) to Ms. Wade's attorney is inadmissible.

After reviewing the correspondence and affidavits, the court agrees with the magistrate that Ms. Wade finally cured her earlier evidentiary deficiencies by providing sufficient authentication for her documentary evidence. *See* 5 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶¶ 901(b)(4)[01]-[05] (1988). Transpo also argues that the letters and police report are inadmissible on the grounds of hearsay because they were offered to show that Ms. Wade had supplied the information contained in them to Transpo. As the magistrate correctly noted, the items were not offered to prove the truth of the matters stated therein. Rather, the items were offered to show that Ms. Wade had substantially complied with the notice requirements by asserting the matters therein.

Transpo objects that the statement attributed to Mr. Rees must not be considered in ruling on Transpo's summary judgment motion because there has been no proof that Mr. Rees was acting as an agent of Transpo. Extrinsic evidence that Mr. Rees made the first contact with the plaintiff, his affidavit indicating that he became involved in the case because Crawford & Company acted as the local

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

adjusting company for Transit Casualty Company which insured Transpo, his continued correspondence and negotiation of the claim, and the continued absence of denial by Transpo that Mr. Rees had authority to negotiate and settle the claim all indicate that the challenged statement that "he was adjusting and negotiating a claim for said TRANSPO arising from said accident of October 8, 1984 ..." is admissible under Fed.R.Evid. 801(d)(2). A court is not bound by the rules of evidence (other than those concerning privilege) in determining preliminary questions concerning the admissibility of evidence. Fed.R.Evid. 104; *Bourjaily v. United States,* 483 U.S. 171 (1987).

*Substantial Compliance*

***2** Transpo objects to the magistrate's finding that Ms. Wade substantially complied with the notice provision of the Tort Claims Act. Transpo argues that Ms. Wade's notice was insufficient because it did not contain all the required elements of IND.CODE 34-4-16.5-9 and was not served on Transpo's Secretary of the Board of Directors. Obviously, substantial compliance means something less than actual compliance. The key to a court's finding of substantial compliance lies in its conviction that despite the plaintiff's failure to notify the proper officials, she nonetheless fulfilled the statute's underlying purpose. *Coghill v. Badger,* 418 N.E.2d 1201, 1205 (Ind.App.1981). As the magistrate correctly noted, the Act's purpose is to inform the political subdivision with reasonable certainty of the acts and surrounding circumstances to allow investigation, determination of liability, and preparation of a defense to a claim. *Scott v. Gatson,* 492 N.E.2d 337, 340 (Ind.App.1986).

Transpo's objection regarding the content of Ms. Wade's notice is without merit. The correspondence between Ms. Wade's attorney and Mr. Rees, together with the accident report supplied by Ms. Wade's attorney, disclosed all the information the notice was required to contain. *Scott v. Gatson,* 492 N.E.2d at 341.

*Waiver and Estoppel*

The only remaining question is whether notice upon Mr. Rees is sufficient to establish waiver or estoppel of the notice requirement. Mr. Rees initiated contact with the plaintiff, claimed he was adjusting and negotiating for Transpo, continued negotiations and correspondence throughout the 180-day notice period, and offered a settlement proposal three days before the statutory period expired. In *Delaware County v. Powell,* 272 Ind. 82, 393 N.E.2d 190, 192 (1979), the Indiana Supreme Court stated: "When acts and conduct of the defendant or his agents have established that the purposes of the statute have been satisfied, these acts and conduct could constitute a waiver of notice or create an estoppel."

These facts suffice to establish that the purpose of the notice statute was fulfilled, and that Transpo is estopped from relying upon the notice of claim provisions of the Indiana Tort Claims Act.

*Conclusion*

Accordingly, the court OVERRULES the defendants' objections to the magistrate's report and recommendation, ADOPTS the magistrate's report and recommendation, and DENIES the defendant's motion for summary judgment.

SO ORDERED.

*REPORT AND RECOMMENDATION*

PIERCE, United States Magistrate Judge.

This is a personal injury and property damage action brought by the plaintiff, Leslie Anne Wade, against defendant, South Bend Public Transportation Corporation (Transpo), arising out of a collision between an automobile owned and operated by Ms. Wade and a Transpo bus on October 8, 1984. Transpo initially moved to dismiss Ms. Wade's action pursuant to Fed.R.Civ.P. 12(b)(1) and (6), based upon her alleged failure to comply with the notice requirements of the Indiana Tort Claims Act, 34-4-16.5-1, *et seq.* The court subsequently notified the parties that it would treat Transpo's motion to dismiss under Rule 12(b)(6) as a motion for summary judgment under Rule 56. The case, accordingly, is now before the court on Transpo's motion for summary judgment. [FN1]

***3** The Indiana Tort Claims act, IND.CODE 34-4-16.5-7, provides:

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Except as provided in section 8 of this chapter [which creates exceptions for incompetence] a claim against a political subdivision is barred unless notice is filed with the governing body of that political subdivision within One Hundred Eighty (180) days after the loss occurs.

Under IND.CODE 34-4-16.5-2(s)(v), a "political subdivision" includes a "[s]eparate municipal corporation." Further, IND.CODE 36-9-4-36 specifically provides:

The board of directors of a public transportation corporation may, in the name of the corporation, sue or be sued in court. Service of process shall be made by service upon the secretary of the board, and notice must be served upon the secretary in the manner and form required by IC 34-4-16.5 [34-4-16.5-1-- 34-4-16.5-18].

The required form of notice is described in IND.CODE 34-4-16.5-9, as follows:

The notice required by sections 6, 7, and 8 [34-4-16.5--34-4-16.5-8] of this chapter shall describe in a short and plain statement the facts on which the claim is based. The statement shall include the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice.

In the present case, there is no question that Transpo is a "political subdivision," as that term is defined in the Act. There is also no question that Ms. Wade did not strictly comply with the notice requirements of the Act, inasmuch as she did not file the prescribed written notice with Transpo's governing body under IND.CODE 34-4-16.5-7 or, specifically, the Secretary of Transpo's Board of Directors, as provided in IND.CODE 36-9-4-36. Ms. Wade argues, nevertheless, that she substantially complied with the statutory notice requirements. More particularly, she contends that the purposes of the Act were satisfied through contacts and correspondence with an insurance adjuster who she asserts was handling the claim on behalf of Transpo and its insurer.

*Preliminary Evidentiary Questions*

The evidence pertinent to Transpo's motion derives exclusively from affidavits and attached documents which have been submitted by the parties. In its order of December 3, 1987, the court pointed out that previous affidavits furnished by the plaintiff and her counsel, Victor McFadden, contained conclusory statements and matters of hearsay which would not be admissible, and thus could not be considered under Fed.R.Civ.P. 56(e). The court also noted that none of the documents which had been attached to the plaintiff's memorandum in opposition to Transpo's motion to dismiss had been properly authenticated by affidavit. *See Martz v. Union Labor Life Insurance Co.*, 757 F.2d 135, 138 (7th Cir.1985).

In response to the court's order, Mr. McFadden submitted another affidavit on January 8, 1988. This was met by a motion to strike filed by Transpo on January 19, 1988. The motion to strike asserted that the exhibits which were referred to in Mr. McFadden's affidavit had not been properly authenticated, or otherwise made admissible in evidence; that the affidavit contained inadmissible hearsay statements, legal conclusions or assumptions; and that the affidavit was in violation of the best evidence rule. In addition, the motion specifically asserted that the letters and items of correspondence which were referred to in the affidavit were hearsay. The court subsequently entered a memorandum and order on March 11, 1988, striking substantial portions of Mr. McFadden's affidavit of January 8, 1988, and reserving a ruling on others. The plaintiff was allowed another opportunity to correct deficiencies in her evidence.

***4** Thereafter, on May 6, 1988, Mr. McFadden filed an "Affidavit of Authenticity" which referred to various items of attached correspondence. The correspondence included letters which were apparently sent to the plaintiff or her attorney by Mr. William G. Rees, the manager of Crawford & Company, an insurance adjusting firm. It also included a number of letters sent by Mr. McFadden to Mr. Rees. The plaintiff also submitted an affidavit of Mr. Vic Derdak, a security officer for St. Mary's College. Mr. Derdak's affidavit referred to an attached copy of a police accident report and indicated that he had prepared the report in the usual course of his duties as a campus security

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

officer. It further indicated that Mr. Derdak had personal and first-hand knowledge of all events at the scene of the accident, as well as the information contained in the report.

At this juncture, it is apparent that the plaintiff has cured many of the evidentiary deficiencies noted in the court's earlier memorandum and order. Initially, it is noted that the plaintiff has now provided sufficient authentication, either by direct or circumstantial means, for her documentary evidence. *See* 5 J. Weinstein & M. Berger, Weinstein's Evidence ¶¶ 901(b)(4) [01]-[05] (1988). Further, the court finds that neither the letters attached to Mr. McFadden's affidavit, nor the accident report authenticated by Mr. Derdak, constitute hearsay. Under Fed.R.Evid. 801(c), hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In this case, the items of correspondence and the accident report are not being offered to prove the truth of the matters stated therein. *See* 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(c)[01] (1988). Rather, it is clear from the plaintiff's arguments in opposition to Transpo's motion for summary judgment that all of the plaintiff's documentary evidence has been offered in an attempt to establish substantial compliance with the notice provisions of the Indiana Tort Claims Act. It has not been offered, for example, to prove the amount of the repair estimates or the circumstances surrounding the collision.

The final evidentiary matter which must be addressed concerns the admissibility of a statement attributed to Mr. Rees in paragraph 3A of Mr. McFadden's affidavit of January 8, 1988. According to the affidavit, Mr. Rees advised Mr. McFadden that "he was adjusting and negotiating a claim for said TRANSPO arising from said accident of October 8, 1984...." In its motion to strike, Transpo argued that the offered statement by Mr. Rees constituted inadmissible hearsay. In its subsequent memorandum and order, the court agreed that the statement was made by an out-of-court declarant, and that it appeared to have been offered to prove the truth of the matter asserted--that Mr. Rees was, in fact, adjusting and negotiating a claim for Transpo arising out of the accident of October 8, 1984. However, the court noted that if Mr. Rees was acting as an agent of Transpo and if his statement was made during the existence of that agency relationship, his statement would not be hearsay, but instead, an admission of a party opponent under Fed.R.Evid. 801(d)(2). The court reserved its ruling on the admissibility of the offered statement in order to allow the plaintiff a further opportunity to demonstrate the existence of an agency relationship between Transpo and Mr. Rees, by evidence extrinsic to the statement itself. *See Prudential Ins. Co. v. Curt Bullock Builders, Inc.*, 626 F.Supp 159, 165 (N.D.Ill.1985).

***5** Under Rule 801(d)(2), a statement is not hearsay if it is offered against a party and is ... "(C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the parties' agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship...." The admissibility of statements under Rule 801(d)(2)(C) and (D) is determined by applying principles of agency law. *See* 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(2)(C)[01] (1988). In Restatement (Second) of Agency § 285, it is stated:

> Evidence of a statement by an agent concerning the existence or extent of his authority is not admissible against the principal to prove its existence or extent, *unless it appears by other evidence that the making of such statement was within the authority of the agent or, as to persons dealing with the agent, within the apparent authority or other power of the agent.* (emphasis supplied.)

In this case, Mr. Rees' statement regarding the existence and nature of his authority would be admissible under Rule 801(d)(2)(C), if it were shown by evidence outside of the statement itself that it was made within his apparent authority or power. The Restatement defines "apparent authority" as

> the power to affect the legal relations of another person by transactions with third persons professedly as agent for the other, arising from and in accordance with others' manifestations to such third persons.

Restatement (Second) of Agency § 8 (1957).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Indiana courts have also defined "apparent authority" as:

> that authority which a third person reasonably believes the agent to possess because of some manifestation from his principal.... Placing the agent in a position to perform acts or make representations which appear reasonable to a third person is sufficient manifestation to endow the agent with apparent authority.

*Warner v. Riddell Nat. Bank,* 482 N.E.2d 772, 775 (Ind.App. 1 Dist.1985). *See Herald Telephone v. Fatouros,* Ind.App., 431 N.E.2d 171, 175 (1982); *Storm v. Marsischke,* 159 Ind.App. 136, 304 N.E.2d 840 (1973).

The evidence outside of the challenged statement shows that Mr. Rees had the apparent authority to make the statement, and that Transpo would be estopped to deny that he had such authority. Mr. Rees' own affidavit indicates that he "became involved in this case because Crawford & Company acted as the local adjusting company for Transit Casualty Company, which had insured South Bend Public Transportation Corporation." [FN2] Aside from Mr. Rees' affidavit (which represents the only evidence submitted by Transpo in support of its motion to dismiss), it is significant that Transpo has, to this day, never disavowed Mr. Rees' authority to negotiate and settle the claim on its behalf. [FN3] From Transpo's apparent acquiesence, it can be inferred that the challenged statement by Mr. Rees was authorized. *See* Restatement (Second) of Agency, § 43(1) (1957).

***6** A further inference can be drawn from the sequence of events which preceded the challenged statement. In this regard, the evidence shows that it was Mr. Rees who initiated the first contact with the plaintiff through his letter of October 11, 1984. That letter, which requested that Ms. Wade complete a report form and send itemized estimates, was written under the letterhead of "Transit Casualty Company." The letter included a claim number, indicated that Transit was the insurer, stated that "South Bend Motor Bus" was the insured, and noted that the date of loss was October 8, 1984. Considering the fact that following the accident Ms. Wade was first contacted by Mr. Rees, an insurance adjuster whose letter implied prior knowledge of the occurrence, it may reasonably be inferred that Mr. Rees' involvement in the case was occasioned by Transpo's referral of the potential accident claim to its insurer, Transit Casualty Company, and that Mr. Rees had apparent authority to negotiate and settle the claim on behalf of Transpo. *Cf. Farm Bureau Mutual Insurance Company v. Coffin,* Ind.App., 186 N.E.2d 180, 183 (1962); *see also Commercial Credit Co. v. Mackt,* 89 Ind.App. 59, 165 N.E. 766 (1929).

In addition, the correspondence between Mr. Rees and Mr. McFadden from October, 1984 to May, 1985 shows that Mr. Rees was, indeed, attempting to negotiate and settle Ms. Wade's claim. In view of the fact that settlement negotiations between Mr. Rees and Mr. McFadden had progressed for several months and had, at least, neared a resolution of the property damage claim, Transpo would be estopped to deny the apparent authority of Mr. Rees to negotiate and settle the claim on its behalf. *See Smedley v. Temple Drilling Co.,* 782 F.2d 1357, 1361 (5th Cir.1986); *Tomar Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa,* 346 F.2d 318, 319 (7th Cir.1965); *State Farm Mut. Auto. Ins. Co. v. Porter,* 186 F.2d 834, 841 (9th Cir.1950); *Bergeron v. Mansour,* 152 F.2d 27, 30 (1st Cir.1945); *Fratto v. Northern Insurance Company of New York,* 242 F.Supp. 262, 269 (W.D.Pa1965); *In re Howe's Estate,* Ohio App., 159 N.E.2d 622, 626 (1958).

In light of the extrinsic evidence demonstrating that Mr. Rees possessed the apparent authority to make the challenged statement (or that Transpo is estopped to deny such authority), the court concludes that the statement is admissible under Rule 801(d)(2)(C) and (D) for purposes of the present motion for summary judgment. *See Mackey v. Burke,* 751 F.2d 322, 326 (10th Cir.1984).

*The Evidence*

The evidence properly before the court shows that on October 8, 1984, a collision took place on the campus of St. Mary's College between an automobile owned and operated by the plaintiff and a Transpo bus operated by Zenon H. Dyszkiwicz. As a result of the collision, Ms. Wade suffered personal injuries, as well as property damage to her automobile. Within a few days after the accident, she received a letter from Mr. William G. Rees, the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

manager of Crawford & Company, an independent adjusting firm located in South Bend. Crawford was acting as the local adjusting company for Transit Casualty Company, Transpo's insurer, and Mr. Rees was attempting to negotiate Ms. Wade's claim on behalf of Transpo. As noted previously, Mr. Rees' letter, which was dated October 11, 1984, asked Ms. Wade to complete a report form and furnish estimates.

*7 After receiving the letter from Mr. Rees, Ms. Wade retained Mr. McFadden, who sent a letter to Mr. Rees dated October 15, 1984, stating as follows:

> Please be advised that the undersigned has been retained to represent Leslie Ann Wade in matters arising out of an accident of October 8, 1984, on the campus of St. Mary's College, involving a Transpo bus operated by Zenon H. Dyszkiwicz.
> Please refer all matters relating to the above claim to the undersigned.

Subsequently, by letter dated October 24, 1984, Mr. McFadden sent a copy of the accident report to Mr. Rees. The letter stated:

> Please find enclosed herewith an accident report with regard to the above referred matter.
> I trust you will forward property damage estimates at your earliest convenience if your [sic] are authorized to do so.

The accident report which Mr. McFadden furnished noted the date, time, and location of the accident, a description of the vehicles and parts damaged, the addresses of the drivers, and a statement that the bus driven by Mr. Dyszkiwicz was owned by "South Bend Public Transpo," 901 East Northside Blvd., and was insured by Transit Casualty Company.

In a letter to Mr. McFadden dated November 5, 1984, Mr. Rees advised:

> This will acknowledge your correspondence confirming your representation of Ms. Wade.
> We will await hearing from you further when you receive some medical information. We had asked about the estimates on your client's vehicle, but although we had written her, we received no response nor any requested estimates. The insurance carrier did have an appraisal made, indicating that the vehicle is a total loss and that its value was $2,250.00. However, since the company states that they must pay for this appraisal, they have requested that, if you desire an actual appraisal, that your pay for same and we would have to send you a billing. We presume by now, however, that the property damage claim has been taken care of under the Wade's own policy.

Mr. McFadden later forwarded damage estimates for Ms. Wade's automobile. Thereafter, he sent a letter to Mr. Rees, dated February 1, 1985, which stated:

> Miss Leslie Ann Wade is still doctoring with Dr. Robert Denham who is to furnish the undersigned with an up-to-date report in the near future. Dr. Denham believes that Miss Wade's progress with respect to her neck problem has been good, but he feels that knee surgery may be indicated.
> I will forward to you medical reports as they become available. I am enclosing a copy of Dr. Denham's report of November 13, 1984, because I am not sure such was forwarded to you earlier.

A subsequent letter by Mr. McFadden to Mr. Rees dated February 4, 1985 further stated: "Enclosed herewith an up-to-date medical report and bill with regard to the above referred matter received this date from Robert H. Denham, Jr., M.D." In a letter dated March 12, 1985, Mr. McFadden advised Mr. Rees as follows:

> I am enclosing [a] copy of a letter I have received from Robert H. Denham, Jr., M.D., regarding Leslie Anne Wade.
> *8 She underwent arthroscopic surgery this morning and I trust a report will be forthcoming as soon as Earl J. Heller, M.D. is able to evaluate the surgery and provide a prognosis.
> I have not heard from your regarding the property damage matter. I would like to know not only what your company is interested in doing about that, but also whether or not negotiations regarding settlement may be worthwhile at this juncture.
> Please advise regarding the foregoing at your earliest convenience.

Mr. Rees responded to Mr. McFadden in a letter dated April 3, 1985:

> This will acknowledge our past discussions with you and acknowledge receipt of the medical

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

> information you had sent along in regard to Ms. Wade.
>
> You had asked about the Wade vehicle and we refer you to previous discussions and correspondence in regard to this. We discussed the matter with our primary and they, of course, agree as you did with our appraiser that the value of your client's vehicle was $2,322.00. However, there is a fair salvage value which we estimate at $250.00. The reasonable storage amount would be no more than $50.00. Therefore, the full amount of the property damage claim would be $2,122.00. Please advise if this amount is agreeable with our client.

In a final letter addressed to Mr. Rees dated May 2, 1985, Mr. McFadden stated:

> I am enclosing Dr. Heller's report regarding the arthroscopic surgery performed on Leslie Wade, together with copies of medical expenses in excess of $2,100.00 I have discussed property damage claim with both Miss Wade and her father, and have contacted someone familiar with Volkswagens who may be interested in at least making an evaluation as to the salvage value. I hope to hear from that party yet this week. Your salvage appraisal is certainly within a range suggested by a local salvage company, however, I would prefer to get the results of a first-hand inspection before making a final decision as to the salvage aspects of the property damage claim.
>
> I would suggest, however, that the $50.00 allowance for storage is not acceptable and not consistent with storage rates over a reasonable period of time any such vehicle may be off the road.
>
> Miss Wade's parents intend to be in this area somewhere after the middle of May, and I would suggest that if there is any opportunity to settle this matter without litigation, perhaps their presence may be of some benefit to both of us.
>
> If you have any questions with regard to the foregoing, please advise.

*Compliance With Notice Requirements*

The notice requirements of the Indiana Tort Claims Act are cast in mandatory language. However, Indiana courts have held that substantial compliance with the statutory notice requirements is sufficient when the purpose of the notice requirements has been satisfied. *Indiana State Highway Com'n v. Morris,* 528 N.E.2d 468 (Ind.1988); *Galbreath v. City of Indianapolis,* 253 Ind. 472, 255 N.E.2d 225 (1970). "The purpose of the notice statute is to inform a political subdivision with reasonable certainty of the acts and surrounding circumstances to allow investigation, determination of liability and preparation of a defense to the claim." *Scott v. Gatson,* 492 N.E.2d 337, 340 (Ind.App. 3 Dist.1986); *Geyer v. City of Logansport,* 267 Ind. 334, 370 N.E.2d 333 (1977); *Burggrabe v. Board of Public Works,* 469 N.E.2d 1233, 1235-36 (Ind.App. 1 Dist.1984); *Mills v. American Playground Device, Co.,* Ind.App., 405 N.E.2d 621 (1980). It is well-established that actual knowledge of an accident on the part of a political subdivision does not relieve a claimant of the duty to provide the required notice of claim. *Govern. Interinsurance Exch. v. Khayyata,* 526 N.E.2d 745, 746 (Ind.App. 1 Dist.1988); *Bd. of Aviation Com'rs v. Hestor,* Ind.App., 473 N.E.2d 151 (1985). Although actual knowledge or routine investigation by the political subdivision will not suffice, Indiana courts have held that the notice requirement can be waived or substantial compliance proved. *Delaware County v. Powell,* Ind., 393 N.E.2d 190 (1979); *Scott v. Gatson,* 492 N.E.2d at 340; *Lawrence County Com'rs. v. Chorely,* Ind.App., 398 N.E.2d 694, 696 (1979).

***9** In *Delaware County v. Powell,* for example, the plaintiff was a passenger in a vehicle which was struck by a county highway truck. The county's insurance carrier contacted the plaintiff and made payments to her totalling approximately $19,000. The carrier also advised the plaintiff, who was not then represented by counsel, to make final settlement because the two year statute of limitations would soon expire. After consulting with an attorney, the plaintiff filed a written notice of claim with the county commissioners approximately one and one-half years after the accident. The Indiana Court of Appeals held that the trial court had erred in denying the county's motion for summary judgment; however, the Supreme Court granted transfer, vacated the decision of the Court of Appeals, and upheld the decision of the trial court which found that material issues of fact regarding substantial compliance and waiver of the notice requirements precluded summary judgment. In discussing substantial

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

compliance, the Indiana Supreme Court stated:

> [I]t appears that acts or conduct of the defendant or his agent as well as the acts of the plaintiff could establish that the purposes of the statute were satisfied, that is, that the city was advised of the accident and that it promptly investigated the surrounding circumstances to determine its possible liability and to prepare a defense. Other facts proving preparation of a defense or admissions of liability; letters or writings involving descriptions of the incident, causes and conditions thereof or the nature and extent of injuries; promises; payments; settlements or other conduct or acts of the defendant or his agents or of the plaintiff, could be offered to prove that the purposes of the statute have been satisfied. When the purposes of the statute are fully satisfied, it is clear that the result is substantial compliance of the statute. When acts and conduct of the defendant or his agents have established that the purposes of the statute have been satisfied, these acts and conduct could constitute a waiver of notice or create an estoppel.

393 N.E.2d at 192.

Decisions following *Powell* have clarified, to some extent, the position of Indiana courts on the subject of substantial compliance. In *Lawrence County Com'rs. v. Chorely,* Ind.App., 398 N.E.2d 694 (1979), the evidence disclosed that the plaintiff's automobile had been damaged by stones which had fallen from a county truck. On the day of the accident, the plaintiff telephoned one of the county commissioners and told him about the accident. The commissioner informed the plaintiff that he had already been apprised of the accident by the driver of the truck. He advised the plaintiff that the claim would be settled, that she should obtain and provide him with estimates, and that he would turn them over to an insurance adjuster. The plaintiff subsequently delivered the estimates to the Assistant Highway Superintendent's office for forwarding to the insurance company. When the plaintiff later contacted the commissioner, he told her that the insurance company would get in touch with her. After the plaintiff discovered that the estimates had been lost, she provided new estimates directly to the insurance company. An insurance agent subsequently contacted the plaintiff and advised her to sue. The Indiana Court of Appeals, relying upon *Delaware County v. Powell,* held that a question of fact was presented as to whether the acts and conduct of the defendant board and its insurer created a waiver of notice, or an estoppel, or constituted substantial compliance with the statute.

***10** Later, in *Coghill v. Badger,* Ind.App., 418 N.E.2d 1201 (1981), the evidence showed that the plaintiff sustained injuries when the bus in which she was a passenger struck the rear of another vehicle. Following the accident, the plaintiff's attorney telephoned a claims adjuster for the municipal bus company, indicated that he represented the plaintiff in her claim against the company, and referred to the date, time, place, conditions, and cause of the accident, as well as the nature and extent of the plaintiff's injuries. The attorney subsequently sent a brief letter to the bus company's claim department advising that he was representing the plaintiff in her claim for injuries arising out of the accident. He later forwarded the plaintiff's medical reports and bills to the claims adjuster along with the copy of the plaintiff's intended complaint. According to the attorney, this was followed by a telephone discussion between he and the claims adjuster regarding the damages aspect of the case. The trial court subsequently granted summary judgment in favor of the defendants. On appeal, the *Coghill* court distinguished *Powell,* in which the county's insurer initiated contact with the plaintiff, admitted the county's liability, promised to "take care of everything," and made substantial payments in satisfaction of the plaintiff's claim. The court in *Coghill* pointed out that unlike the circumstances presented in *Powell,* contact with the governmental entity had been initiated by Coghill's attorney, and that the adjuster's only affirmative acts were to write a memo acknowledging receipt of the attorney's letter of representation and inviting him to contact the adjuster later, and to telephone the attorney, at the attorney's request, in order to discuss the damages aspect of the case. The court found that "[t]hese acts--as distinguished from the acts which gave rise to legitimate claims of waiver and estoppel in *Powell*--failed to show satisfaction of the purpose of the notice statute." *Coghill,* 418 N.E.2d at 1208. The *Coghill* court further distinguished between the concepts of estoppel and waiver, but suggested that neither estoppel nor waiver could properly be invoked, because Coghill

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

did not claim, and could not claim, that his attorney was without knowledge or reasonable means of knowing that further notice to the governmental entity was necessary. *Id.* at 1209.

In *Larr v. Wolf,* 451 N.E.2d 664 (Ind.App. 3 Dist 1983), the Court of Appeals rejected an argument by the plaintiff that she substantially complied with the statutory notice provisions through her dealings with the defendants' insurance company. The court noted that other than the county's routine investigation, the only discussions between the plaintiff and the county's insurance company appeared to revolve around the issue of a rental car. The court further pointed out that the plaintiff had been given a verbal denial of any liability less than one month after the accident, and well within the 180 day period for submitting a notice of claim.

***11** Finally, in the case of *Scott v. Gatson,* the evidence disclosed that the plaintiff's car was rear-ended by a bus owned by the Gary Public Transportation Corporation (GPTC). The plaintiff's vehicle sustained minimal damage, but the plaintiff received a back injury which required treatment for some months afterward. Eleven days after the accident, the plaintiff's attorney sent a letter to GPTC stating that he was representing the plaintiff, indicating that the plaintiff had sustained personal injuries in an accident with a GPTC bus, noting the date, time, and location of the accident, accusing GPTC's driver of negligence, and stating: "If you are covered by liability insurance, please forward this letter to your insurance carrier and have them contact me. If you are self-insured, please contact me directly so this matter can be settled without the necessity of a lawsuit." The letter was sent by regular mail and was the only written notice which the plaintiff claimed to have provided. The plaintiff's attorney subsequently received a reply letter from a claims adjuster indicating that the attorney's previous letter had been referred to the adjuster "for reply and attention." The adjuster's letter noted that he represented the insurer for GPTC and that he was in the process of investigating the matter. He further requested any medical reports or special damages incurred by the plaintiff and stated that he would be happy to discuss the matter with the attorney after receiving the reports. Apparently, there were further communications between the plaintiff's attorney and the claims adjuster before the plaintiff filed suit, but the nature of the communications was not disclosed. In affirming the trial court's denial of the defendant's motion for summary judgment, the Court of Appeals held that the notice had been properly directed to GPTC, and that the content of the notice was sufficient to establish substantial compliance with the statutory requirements. The court's decision, however, was not based upon principles of waiver or estoppel.

Although relied upon by Ms. Wade, the *Scott* case does not appear to be applicable in this instance because the *Scott* court only considered the adequacy of the plaintiff's written notice, and did not consider any claim of waiver or estoppel. Nevertheless, the evidence here presents a much stronger case for invoking waiver or estoppel than did the circumstances presented in *Coghill.* In this case, contact with the plaintiff was initiated by the insurance adjuster. Discussions and correspondence between Mr. McFadden and Mr. Rees progressed throughout the 180 day period following the accident, and Mr. Rees' last letter which included a settlement proposal for Ms. Wade's property damage claim, was dated April 3, 1985, some 177 days after the accident and 3 days short of the expiration of the statutory period for providing notice. It is also clear from the evidence in this case that all of the information which the notice would be required to contain was disclosed in Mr. McFadden's correspondence with Mr. Rees and in the accident report which Mr. McFadden supplied. The present circumstances are, therefore, more similar to those described in *Delaware County v. Powell,* in which the Indiana Supreme Court found that substantial compliance had been established through waiver or estoppel. Accordingly, the court concludes that the evidence in this instance is sufficient to establish Transpo's waiver of the statutory notice requirement, or that Transpo is estopped from relying upon the notice of claim provisions of the Indiana Tort Claims Act.

***12** Accordingly, it is recommended that Transpo's motion for summary judgment be DENIED.

ANY OBJECTIONS to this report and recommendation must be filed with the Clerk of courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Page 11 of 11



waives the right to appeal the district court's order. See *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Lockert v. Faulkner,* 843 F.2d 1015 (7th Cir.1988); *Video Views, Inc. v. Studio 21 Ltd.,* 797 F.2d 538 (7th Cir.1986).

Dated this 23rd day of March, 1989.

FN1. The court need not address Transpo's motion to dismiss under Fed.R.Civ.P. 12(b)(1), for lack of jurisdiction over the subject matter. While compliance with the notice provisions of the Indiana Tort Claims Act has been regarded as jurisdictional by Indiana state courts, *see Rodgers v. Martinsville School Corp.* 521 N.E.2d 1322, 1325 (Ind.App. 1 Dist.1988), it would not affect the subject matter jurisdiction of a federal court sitting in diversity. *See Woods v. Interstate Realty Co.,* 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1073 (194); *Beach v. Owens-Corning Fiberglas Corp.,* 728 F.2d 407, 409 (7th Cir.1984); *Begay v. Kerr-McGee Corp.,* 682 F.2d 1311, 1315-16 (9th Cir.1982).

FN2. Although it is true that neither the existence nor the scope of an agency can be proven by the admissions, representations or acts of a person assuming to be the representative of another, it is also clear that '[a] person may properly testify as to the facts which it is alleged constitute his authority, and his testimony can be introduced ... against the alleged principal.' Restatement (Second) of Agency § 285, comment a (1957). *See Slotkin v. Citizens Cas. Co. of Ne York,* 614 F.2d 301, 316-17 (2d Cir.1979); *Julien J. Studley, Inc. v. Gulf Oil Corporation,* 386 F.2d 161, 165 (2d Cir.1967).

FN3. Mr. Rees' affidavit indicates only that he was not employed by Transpo and was not authorized to accept service of process or tort claims notices on behalf of Transpo.

1989 WL 516281 (N.D.Ind.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.