C
Only the Westlaw citation is currently available.

United States District Court, N.D. Ohio, Western Division.

Charles GREEN, Sr., et al., Plaintiffs,
v.
WESTGATE VILLAGE MOBILE HOME PARK, et al., Defendants.

**No. 3:98CV7475.**

May 8, 2000.

C. William Bair and Thomas G. Overley, Wagoner & Steinberg, Holland, OH and Reese M. Wineman, Norwalk, OH, for plaintiffs.

Garth W. Brown, Drake, Phillips, Kuenzli & Clark, Findlay, OH, Cormac B. Delaney, Manahan, Pietrykowski, Bamman & Delaney, Toledo, OH and Steven Michael Powell, Kentris, Brown, Powell & Balega, Findlay, OH, for defendants.

ORDER

CARR.

***1** This is a racial discrimination case in which plaintiffs allege that defendants violated 42 U.S.C. § § 1982 (Civil Rights Act--Property Rights of Citizens), 42 U.S.C. § 3601, *et seq.* (Fair Housing Act), and the Ohio Revised Code §§ 3733.10-3733.13. Pending is defendants' motion for summary judgment. (Doc. 25). For the following reasons, defendants' motion for summary judgment shall be denied in part and granted in part.

BACKGROUND

Plaintiffs are Charles Green, a Caucasian resident of the Westgate Village Mobile Home Park (Westgate Village), and Cheryl Shepherd, an African-American acquaintance of Mr. Green who visited Mr. Green at his home on a regular basis. ( *See* Complaint at ¶¶ 3-5).

Plaintiffs allege that in the late fall or early winter of 1997, Liz Leibengood, the manager of Westgate Village, approached Mr. Green and told him that it was improper for him to be living with a woman, especially a "black whore." (*Id.* at ¶ 6). Prior to this incident, plaintiffs claim that they had no problems with Westgate Village. After the encounter, however, plaintiffs contend that Ms. Leibengood commenced a course of harassing conduct against Mr. Green motivated by racial animus. (*Id.* at ¶ 7).

In particular, plaintiffs allege that defendants interfered with Mr. Green's contract to purchase a trailer (from a seller who happened to be African-American) by requiring unnecessary repairs to the mobile home. (*Id.*). In addition, plaintiffs contend that defendants attempted to evict plaintiffs despite the fact that they paid their rent and maintained their trailers in excellent condition. (*Id.* at ¶ 8). Lastly, plaintiffs claim that defendants adopted and applied park rules in a discriminatory manner. (*Id.* at ¶ 9).

Defendants maintain that the dispute originated when Ms. Leibengood discovered that Mr. Green owned two mobile homes in Westgate Village. (Doc. 28, Affidavit of Ms. Leibengood at ¶ 2). According to defendants, this violated a Westgate Village rule which required all mobile homes within the park to be occupied by their owners. (*Id.*). Because of this alleged infraction, defendants sent Mr. Green two thirty-day notices and a letter requesting that he inform the park of his intentions with respect to the two mobile home. (*Id.* at ¶ 3). In addition, defendants notified Mr. Green that if his current mobile home was going to be sold and remain in the park, he must make certain repairs to the mobile home. (*Id.*).

STANDARD OF REVIEW

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

***2** Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Services, Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## DISCUSSION

### I. Federal Claims

Racial discrimination in the sale or rental of property is barred by 42 U.S.C. §§ 1982 and 3601, *et seq. Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 412, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). A plaintiff need not belong to a protected class to sue under the Fourteenth Amendment or federal civil rights statutes if he claims that he suffered differential treatment because of his association with a member of a protected class. *See, e.g., Maynard v. City of San Jose,* 37 F.3d 1396, 1402-1404 (9th Cir.1994) (affirming jury instructions on § 1983 retaliation claim where district court instructed that, in order to find equal protection violation, jury needed to find that defendants retaliated because white plaintiff offered assistance to an African-American individual); *Littlefield v. McGuffey,* 954 F.2d 1337 (7th Cir.1992) (affirming jury verdict under § 1982 to white plaintiff denied rental housing on basis of boyfriend's race); *Homan v. City of Reading,* 963 F.Supp. 485, 491 (E.D.Pa.1997) (holding that a person need not belong to a protected class to sue under § 1982 if her claim is that she suffered differential treatment because of her association with a member of a protected class).

To prevail under § 1982, a plaintiff must demonstrate that his property rights were interfered with and that the interference was motivated by racial prejudice. *See Shaare Tefila Congregation v. Cobb,* 481 U.S. 615, 616, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987). The plaintiff bears the burden of showing that the defendant interfered with his property rights because of racial animus. If the plaintiff succeeds, the defendant must show that the interference would have occurred in the absence of racial prejudice. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 242-246, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plaintiff must persuade the factfinder that discrimination played a part in the adverse decision, and then, to prevail, defendant must persuade the factfinder that, even if defendant had not taken the impermissible factor into account, it would have come to the same decision); *Bachman v. St. Monica's Congregation,* 902 F.2d 1259, 1262-1263 (7th Cir.1990) ("To be actionable [under § 1982], racial prejudice must be a but-for cause ...") (citing *Price Waterhouse,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268); *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.,* 843 F.Supp. 1284, 1291-1982 (W.D.Wis.1994) (same).

***3** Here, defendants argue that they are entitled to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

summary judgment because plaintiffs cannot meet their burden of showing racial animus. In particular, defendants assert that plaintiffs' evidence of racial prejudice consists of one comment by Ms. Leibengood that Mr. Green should not be living with a "black whore." [FN1] This comment alone, defendants maintain, is not sufficient to demonstrate defendants interfered with plaintiffs' property rights because of racial prejudice.

FN1. Defendants deny that this comment was made. But for the purposes of this motion, I must assume that it was made.

Moreover, defendants claim that even if plaintiffs satisfy their burden, defendants have a legitimate, non-discriminatory reason for their interference with plaintiffs' property rights. Specifically, defendants have an owner-occupier policy which requires mobile homes in Westgate Village to be occupied by their owners. The logic behind the policy, defendants contend, is that owners tend to be more concerned than non-owners about the care and upkeep of their homes. (Affidavit of Ms. Leibengood at ¶ 4). I disagree.

First, the record shows that, in addition to Ms. Leibengood's discriminatory comment, plaintiffs have other evidence of racial animus. For example, plaintiffs have evidence suggesting that defendants allowed at least one other resident of Westgate Village to own two mobile homes within the park despite the owner-occupier policy. (*See* Doc. 57, Ex. 1-3). In addition, plaintiffs have evidence that defendants enforced parking regulations against Mr. Green and his family while not enforcing the same regulations against other Westgate Village residents. (*See* Affidavit of Ms. Green at ¶¶ 9-15).

Moreover, based on Ms. Leibengood's comment alone, I find that plaintiffs have provided enough evidence to survive summary judgment. In making their argument that plaintiffs need more than Ms. Leibengood's one "isolated" comment, defendants rely primarily on cases in which courts have held that isolated remarks in the employment context do not show animus. (*See* Doc. 53 at 5-6). But the effect of an isolated racial slur in the workplace is different than its effect in a case such as this. Employment cases typically involve frequent and consistent contacts among employees. In the fair housing context, however, where the parties do not have such frequent and consistent contacts, a so-called "isolated" remark is more probative of racial animus than it might be in other situations.

*4 Lastly, the record evidence, viewed in a light most favorable to plaintiffs, establishes genuine issues of material fact as to validity of defendants' proffered nondiscriminatory reason. Although defendants assert a bona fide reason for their owner-occupier policy, the record indicates that defendants may not uniformly enforce the policy. Indeed, in at least one other situation, it appears that defendants have allowed a resident of Westgate Village to own two mobile homes within the park without being subject to eviction. (*See* Doc. 57, Ex. 1-3).

Thus, I find that genuine issues of material fact exist with respect to plaintiffs' federal claims and defendants' motion for summary judgment shall be denied.

II. State Law Claims

Plaintiffs also claim that defendants violated Ohio law governing the conduct of mobile home park operators. *See* O.R.C. §§ 3733.10-3733.13. [FN2]

FN2. Plaintiffs' state law claims are separate from their federal claims and are not based on racial discrimination.

Ohio Revised Code § 3733.10 provides that, except in emergencies, a park operator must "give the resident reasonable notice of his intent to enter onto the residential premises and enter only a reasonable times." O.R.C. § 3733.10(A)(6).

Plaintiffs suggest that defendants violated O.R.C. § 3733.10(A)(6) when Ms. Adkins conducted a resale inspection of Mr. Green's home. But Ms. Adkins did not enter Mr. Green's home during this inspection. Rather, she visually inspected it from the outside. (Deposition of Ms. Adkins at 22). Therefore, it is clear that defendants did not violate O.R.C. § 3733.10, and I shall grant defendants'

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

motion for summary judgment on that claim.

Next, Ohio Revised Code § 3733.11 requires a park owner to "fully disclose in writing all fees, charges, assessments, including rental fees, and rules prior to a tenant or owner executing a rental agreement and assuming occupancy in the manufactured home park." O.R.C. § 3733.11(B). It is the park owner's duty to promulgate rules governing the rental or occupancy of a lot in a mobile home park. The rules, however, "shall not be unreasonable, arbitrary, or capricious." O.R.C. § 3733.11(C). A park owner cannot require the owner to remove a mobile home from the park solely on the basis of the sale of the home. O.R.C. § 3733.11(H)(2). Nor can a park owner unreasonably refuse to enter into a rental agreement with a purchaser of a home located in the operator's mobile home park, O.R.C. § 3733.11(H)(3), or charge an assessment because of the transfer of ownership unless it represents an actual cost incurred by the park operator. O.R.C. § 3733.11(H)(5).

Plaintiffs contend that the repairs that defendants required be made to Mr. Green's mobile home constitute an unlawful assessment under O.R.C. §§ 3733.11(B) and (H)(5). I disagree.

*5 Defendants' park rules clearly indicate that owners must keep their mobile home in a state of good repair (including the skirt of the trailer) and maintain their assigned lots. (*See* Affidavit of Ms. Leibengood at Ex. A). The park rules also provide that "Park Management will make a yearly inspection and notify tenant in writing of any maintenance that is necessary. Failure to comply will be reason for termination of lease." (*Id.*). Because plaintiffs were aware of these park rules prior to "executing a rental agreement and assuming occupancy in the manufactured home park," O.R.C. § 3733.11(B) has not been violated.

Moreover, plaintiffs have presented no record evidence that defendants charged an assessment *because* Mr. Green acquired a new mobile home or sold his old one. Rather, Mr. Green was required to make necessary repairs to his mobile home. Thus, O.R.C. § 3733.11(H)(5) has not been violated.

In addition, plaintiffs argue that the owner-occupier rule is unreasonable, arbitrary and capricious. Defendants counter that because owners tend to be more concerned than non-owners about the care and upkeep of their homes, (Affidavit of Ms. Leibengood at ¶ 4), [FN3] the owner-occupier rule is not unreasonable, arbitrary or capricious.

FN3. Plaintiffs have offered no evidence to rebut defendants' reasoning.

I agree with defendants. It is not unreasonable for defendants to be concerned with the care and upkeep of mobile homes located within Westgate Village. Thus, I shall grant defendants' motion for summary judgment on plaintiffs' claims under O.R.C. § 3733.11.

Finally, Ohio Revised Code § 3733.13 provides that a park operator may terminate a rental agreement only after the resident has committed two material violations of the park or public health council rules. O.R.C. § 3733.13. Unlike plaintiffs' other state law claims, this claim is tied to the outcome of plaintiffs' federal race discrimination claims. This is because if the finder of fact determines that the decision to evict Mr. Green was race-based, then the jury could reasonably conclude that defendants violated O.R.C. § 3733.13 by threatening to evict defendant absent two material park violations. Accordingly, I shall deny defendants' motion for summary judgment on plaintiffs' claims under O.R.C. § 3733.13.

## CONCLUSION

It is, therefore,

ORDERED THAT defendants' motion for summary judgment is denied in part and granted in part.

So ordered.

2000 WL 562331 (N.D.Ohio)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.