**H**
Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

Challenge ASPEN Plaintiff,
v.
KING WORLD PRODUCTIONS CORPORATION, Kids First Marketing, Inc. and Lee G.
Keirsted Defendants.

**No. 00 C 6868.**

Nov. 9, 2001.

MEMORANDUM OPINION AND ORDER

SCHENKIER, Magistrate J.

*1 In this diversity action, plaintiff alleges that the defendants failed to deliver on an alleged agreement to provide certain items for plaintiff to sell at a charity auction. In its amended complaint, plaintiff pleads claims for violation of the Illinois Consumer Fraud Act (Count I) and common law fraud (Count II) against all defendants, and for breach of contract (Count III) and promissory estoppel (Count IV) against defendant King World and Kids First. Plaintiff requests punitive damages on the fraud claims, and in aid of that request, has sought discovery concerning the defendants' net worth. The parties' disagreements concerning the discovery and trial of the punitive damages issue is what leads to the motion presently before the Court.

By an order dated October 31, 2001, this Court rejected the defendants' contention that the plaintiff's request for punitive damages discovery--in substance, a request for a listing and valuation of the assets and liabilities of Kids First and Mr. Keirsted--is vague, over broad, seeks information that is not discoverable, and would be unduly intrusive. However, the Court stayed production of this discovery pending a ruling by the district judge on a motion for bifurcation and a protective order that the defendants Kids First and Mr. Keirsted stated they would file that same day. Making good on their word, Defendants Kids First and Mr. Keirsted (referred to here collectively as "defendants") have moved to bifurcate the trial of punitive damages from the trial of issues of liability and compensatory damages, and for a protective order staying discovery of their financial and net worth status until after the trial of liability and compensatory damages.

That motion now has been fully briefed, and pursuant to a referral by the district judge dated November 6, 2001, has been given to this Court to decide. For the reasons set forth below, the Court (1) denies the motion for bifurcation, and (2) denies the motion for a protective order staying net worth discovery of Kids First and Mr. Keirsted.

I.

We address first the question of bifurcation. Rule 42(b) of the Federal Rules of Civil Procedure provides that a court may order separate trials of claims or issues "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Under Rule 42(b), "district judges have express authority to employ [bifurcation] in appropriate cases, ..." *Hydrite Chemical Co. v. Calumet Lubricants Co.,* 47 F.3d 887, 890 (7th Cir.1995); *see also Matter of Rhone-Poulenc Rorer Inc.,* 51 F.3d 1293, 1302 (7th Cir.1995). The party seeking bifurcation "has the burden to show that it is warranted in that particular case." *Home Elevators, Inc. v. Millar Elevator Service Company,* 933 F.Supp. 1090, 1091 (N.D.Ga.1996). The decision whether to employ bifurcation is committed to the district court's discretion, and is reviewed deferentially. *Matter of Rhone-Poulenc,* 51 F.3d at 1302; *Hydrite Chemical*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

*Co.*, 47 F.3d at 890; *see also THK America, Inc. v. Nippon Seiko K.K.*, 141 F.R .D. 463, 464 (N.D.Ill.1991); *Keyes Fibre Company v. Packaging Corporation of America*, 763 F.Supp. 374, 375 (N.D.Ill.1991).

***2** Defendants suggest that in exercising that discretion, the Court should treat bifurcation as a "preferred method," citing *Smith v. Lightning Bolt Productions Inc.*, 861 F.2d 363 (2d Cir.1988) (Defs.' Mot. at 4), which defendants characterize as "controlling precedent" (Defs.' Reply at 1-2). However, a decision from another circuit is not controlling here. Moreover, to the extent *Smith* is read as creating an across-the-board preference for bifurcation in punitive damages cases, we do not find *Smith* to be persuasive authority. The Advisory Committee Notes to Rule 42 make clear that "separation of issues for trial is not to be routinely ordered," but rather is to be employed in those situations "where experience has demonstrated its worth." Consistent with Advisory Committee Notes, in this Circuit bifurcation is not treated as a "preferred method" of proceeding, but rather is limited to those cases where it is appropriate to further the purposes of Rule 42(b). *Hydrite Chemical Co.*, 47 F.3d at 890 (district courts have authority to use bifurcation in "appropriate cases"); *THK America*, 141 F.R.D. at 464 ("a judge should *not routinely* order separate trials") (emphasis original); *Keyes Fibre Co.*, 763 F.Supp. at 375 ("separation of issues is not the usual course that should be followed") (citations omitted); *see also* 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2388, at 474 (1995 ed.) ("The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course. Thus, Rule 42(b) should be resorted to only in the exercise of informed discretion when the court believes that separation will achieve the purposes of the rule").

In this case, the Court finds that defendants have not shown that bifurcation here would serve any of the purposes of Rule 42(b). Defendants have not even attempted to show that bifurcation would further the interests of "convenience," "expedition" or "economy" in the trial of this matter. Unlike one of the principal authorities cited by defendants, this case is not "complicated in its factual issues and its procedural history." *Scheufler v. General Host Corp.*, 895 F.Supp. 1411, 1415 (D.Kan.1995). To the contrary, the factual issues in this case--although no doubt hotly contested--appear to be relatively straightforward.

Moreover, evidence necessary to establish whether there was fraudulent conduct likely would overlap with evidence that would show whether that conduct would warrant imposition of punitive damages. The only evidence relevant to punitive damages that likely would be entirely separate from liability issues is evidence concerning net worth; but that evidence likely would not be extensive, and thus little in the way of economy would be achieved by severing punitive damages issues. In these circumstances, bifurcation likely would disserve the purposes of Rule 42(b) by injecting potential inefficiencies in the case.

***3** Of course, bifurcation may be granted if it would serve any of the purposes of Rule 42(b), and defendants argue that it would serve a major purpose of Rule 42(b): avoiding prejudice. Defendants argue that they will be prejudiced if a jury considering the issue of liability is "distracted" or "influenced" by evidence of defendants' net worth, and is tempted by that evidence "to search for a 'deep pocket' to compensate a charitable organization for its claimed loss" (Defs.' Mot. at 5-6). But this argument fails on multiple levels.

*First,* because defendants have not yet provided discovery, the Court cannot assess whether net worth evidence would show that any of the defendants in fact has a "deep pocket." Discovery may show that the defendants are in fact of modest means, such that evidence of their net worth would not be "distracting." Thus, defendants have failed to prove an essential predicate of their argument.

*Second,* even assuming that defendants have a net worth that is substantial, defendants have not made the case that any potential prejudice cannot be alleviated by means short of bifurcation. For example, the trial judge in this case can control the timing of evidence offered so that no evidence of net worth is admitted unless and until the judge concludes that enough evidence has been offered to create the possibility of a punitive damages award; that would address the defendants' claim that

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

evidence of net worth should not be given to the jury considering liability because the evidence is thin as to why defendants should be liable at all, much less exposed to a punitive damages claim. [FN1] If net worth evidence if offered, jury instructions can be fashioned to effectively direct the jury as to what use to make of that evidence. Defendants have offered no reason to believe that a jury would not follow such direction.

FN1. We cite this example merely to show that there are means less extreme than bifurcation to deal with the concerns expressed by the defendants. By citing this example, we do not suggest that such a measure should, or should not, be taken.

*Third,* defendants' argument is made at such a level of generality that it could be urged as a basis for bifurcation of punitive damages issues in any case involving a potentially sympathetic plaintiff and wealthy defendants. In substance, defendants' prejudice argument is nothing more than a reformulation of their argument that bifurcation should be a "preferred method" in all punitive damages cases, which we have rejected.

In sum, defendants have not demonstrated that this is an "appropriate case" for bifurcation. Thus, defendants' motion to bifurcate the trial of plaintiff's punitive damages claim is denied.

II.

We now turn to the second part of defendants' motion, that is, their request to defer discovery as to the net worth of the defendants until after the liability and compensatory damages issues are tried. This request must fail in light of the Court's denial of the request for bifurcation. However, we write briefly to explain that even if bifurcation were appropriate here, the Court would not grant a stay of discovery concerning net worth.

Evidence of net worth is admissible in a trial where punitive damages are at issue. *Kay v. First Continental Trading, Inc.,* 95 C 3089, 1997 WL 614378, * 2 (N.D.Ill., Sept. 23, 1997); *Cripe v. Leiter,* 683 N.E.2d 516, 520 (Ill.App.Ct., 3d Dist.1997). Thus, there can be no doubt that net worth is discoverable under Rule 26(b)(1) of the Federal Rules of Civil Procedure, as it regards a matter "that is relevant to the claim" of a party: that is, plaintiff's punitive damages claim.

*4 What's more, in terms of efficient case management, there is good reason in this case to require production of the net worth information sooner rather than later. There have been shifting positions asserted by the defendants as to the ease of assembling and producing net worth information. Requiring the information to be produced promptly will ensure that in the event there are disputes about the adequacy of defendants' responses, those disputes can be resolved well in advance of trial, without requiring the attorneys and the Court to devote time at the eve of trial to discovery motions and last-minute depositions. Production of the net worth information now also may promote settlement: for example, if the net worth is sufficiently low, it may persuade plaintiff that it has no real deep pocket for actual or punitive damages, and that its settlement position should be adjusted accordingly. Whatever its effect on settlement discussions, producing the net worth now will shed light on whether--as defendants have suggested but have not yet substantiated--there is something about the defendants' net worth profiles that indicates that allowing that evidence to go to the jury before a determination of liability and compensatory damages would run a genuine risk of prejudice.

Rule 26(c) authorizes a court to issue a protective order barring or limiting even permissible discovery, where required by justice in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden." Defendants argue that a protective order staying net worth discovery is in order for several reasons, none of which we find persuasive here.

*First,* defendants argue that plaintiff has no evidence to support a punitive damages claim, and thus should not be allowed to discover net worth information (Defs.' Mot. at 8; Defs.' Reply at 4). However, since plaintiff's fraud claims--which are the basis for the punitive damages prayer--have survived a motion to dismiss, we see no good reason to deprive plaintiff of discovery into the liability and damages issues that flow from those

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

claims. And, that includes discovery concerning punitive damages.

*Second,* defendants argue that providing discovery of their assets and liabilities would be "intrusive, humiliating and burdensome" (Defs.' Mot. at 8). To be sure, being a defendant in a lawsuit is typically a burden, but that alone does not absolve a defendant from providing discovery permitted by the rules. Rather, what a defendant must do is to show with some *specificity* precisely why producing the requested discovery would be *unduly* burdensome. The mere fact that the party objecting to discovery "will be required to expend a considerable amount of time, effort, or expense in answering [the discovery] is not a sufficient reason to preclude discovery." *Schaap v. Executive Indus. Inc.,* 130 F.R.D. 384, 387 (N.D.Ill.1990). In this case, defendants have failed to show why producing a listing of their respective assets and liabilities would be unduly burdensome. To the contrary, Kids First says that it has produced most of that information already, albeit in another form (10/31/01 Tr. at 13), and Mr. Keirsted likely will have to produce that type of information in a separate legal proceeding. [FN2]

FN2. During an in-court proceeding on October 31, 2001, counsel for Mr. Keirsted indicated that he would have to disclose that information in a divorce proceeding pending in the Circuit Court of Cook County (10/31/01 Tr. at 16). In the reply brief, counsel backtracked on that assertion and indicated that the information was not required to be disclosed in the divorce proceeding (Defs.' Reply at 4 n. 1). But, during a subsequent in-court proceeding on November 6, 2001, counsel for Mr. Keirsted reversed field again on this point, and indicated that he was not "satisfied" with the categorical assertion in the reply brief. In any event, defense counsel at the proceeding provided the Court with a copy of the relevant state court rule, Rule 13.3.1 of the Rules of the Circuit Court of Cook County, which makes certain financial disclosures *mandatory* in divorce proceedings.

***5** As for the intrusiveness and humiliating nature of the request, that is an argument that pertains more to the request for production from Mr. Keirsted than to Kids First, a corporate entity (10/31/01 Tr. at 7). But as to either, the Court believes that making the net worth information subject to an "attorneys' eyes only" provision that will strictly limit to scope of its dissemination strikes a proper balance between plaintiff's right to discover relevant information and the defendants' confidentiality interests.

*Third,* defendants argue that the net worth discovery is premature as to Mr. Keirsted, because he is currently unemployed and in the midst of a divorce proceeding, and thus his financial situation by the time of trial is likely to be "radically different" (Defs.' Mot. at 8). While this argument is not without some appeal, it is based on speculation. It is not clear that Mr. Keirsted's employment or marital status will have changed by the time of trial, or how substantially those events will change his net worth. In this circumstances, the Court believes that the better course is to provide the information promptly. To the extent there are material changes in his assets and liabilities by the time of trial, it should be a simple to task to identify those changes and provide them to the plaintiff as a supplement to discovery under Federal Rule of Civil Procedure 26(e).

Finally, we have considered the cases cited by defendants in support of delaying discovery of net worth information (Defs.' Mot. at 6-7), but do not find them persuasive here. These cases tend to arise in the context of a case where bifurcation has been ordered, which the Court has declined to do here. Although this Court recognizes it has the discretion to control the timing of discovery to defer net worth discovery until a later time in the case, for the reasons set forth above, the defendants have not demonstrated to the Court that it should exercise this discretion to do so.

CONCLUSION

For the foregoing reasons, the Court DENIES defendants motion to bifurcate and for protective order re: punitive damages. Defendants Kids First and Mr. Keirsted are to produce a listing of their respective assets and liabilities, in line with the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Court's ruling on October 31, 2001. That listing is to be produced by the close of business on November 30, 2001.

2001 WL 1403001 (N.D.Ill.)

Motions, Pleadings and Filings (Back to top)

- 1:00CV06868 (Docket) (Nov. 02, 2000)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.