**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Eboni SternJohn and Julius SternJohn, Civil No. 02-842 MJD/JSM

Plaintiffs,

v.

**CONSENT DECREE**

Robert L. Kreisler, Jr., a/k/a Bob Peterson, a/k/a Robert Peterson, d/b/a Kreisler Real Estate Company, d/b/a Whittier Real Estate Company, d/b/a KT Properties Partnership L.P., d/b/a Whittier Community Apartments, d/b/a Bristol Apartments,

Defendants.

---

Plaintiffs Eboni and Julius SternJohn initiated this action on April 22, 2002, pursuant to the federal Fair Housing Act, 42 U.S.C. §§ 3601, et seq., the Civil Rights Act of 1866, 42 U.S.C. § 1982, and the Minnesota Human Rights Act, Minn. Stat. §§ 363.01, et seq. In their lawsuit, Plaintiffs alleged that Defendants intentionally engaged in the following conduct to cause the harm sustained by Plaintiffs:

i. Defendants violated the fair housing laws by discriminating in the terms and conditions of housing and by otherwise denying housing based on race as well as by retaliating against Plaintiffs;

ii. Defendants' unlawful conduct took several forms, including unwarranted eviction actions, retaliation, and threats against Plaintiffs and other African-American tenants. Defendants also failed to complete repairs requested by Plaintiffs while Defendants attended to repairs requested by white tenants;

iii. Due to Defendants' discriminatory, harassing, and retaliatory policies and practices, Plaintiffs were compelled to move from 2421 Pillsbury Avenue in Minneapolis at the end of July 1999;

iv. After Defendants' constructively evicted Plaintiffs, an agent of Defendants gave a false rental reference that resulted in the rejection of Plaintiffs' rental application to live at another apartment complex; and

SCANNED
DEC 10 2004
U.S. DISTRICT COURT MPLS

v. By reason of Defendants' unlawful conduct, Plaintiffs have sustained loss and damage, including, but not limited to, the following: the deprivation of equal housing opportunities as well as emotional distress, mental anguish, personal embarrassment, and humiliation.

See Complaint, ¶¶ 1, 14, 17-18, SternJohn v. Kreisler, et al., Civil No. 02-842 (MJD/JSM). Plaintiffs' lawsuit included the following Causes of Action:

i. First Cause of Action – Eboni SternJohns' terms-and-conditions claim under the Federal Fair Housing Act;
ii. Second Cause of Action – Eboni SternJohn's retaliation claims under the Federal Fair Housing Act;
iii. Third Cause of Action – Eboni SternJohn's denial-of-housing claims under Federal Fair Housing Act;
iv. Fourth Cause of Action – Eboni SternJohn's denial-of-equal-property-rights claims under the Civil Rights Act of 1866;
v. Fifth Cause of Action – Julius SternJohns' terms-and-conditions claim under the Federal Fair Housing Act;
vi. Sixth Cause of Action – Julius SternJohn's retaliation claims under the Federal Fair Housing Act;
vii. Seventh Cause of Action – Julius SternJohn's denial-of-housing claims under Federal Fair Housing Act;
viii. Eighth Cause of Action – Julius SternJohn's denial-of-equal-property-rights claims under the Civil Rights Act of 1866;
ix. Ninth Cause of Action – Eboni SternJohns' terms-and-conditions claim under the Minnesota Human Rights Act;
x. Tenth Cause of Action – Eboni SternJohn's retaliation claims under the Minnesota Human Rights Act;
xi. Eleventh Cause of Action – Eboni SternJohn's denial-of-housing claims under the Minnesota Human Rights Act;
xii. Twelfth Cause of Action – Julius SternJohns' terms-and-conditions claim under the Minnesota Human Rights Act;
xiii. Thirteenth Cause of Action – Julius SternJohn's retaliation claims under the Minnesota Human Rights Act; and
xiv. Fourteenth Cause of Action – Julius SternJohn's denial-of-housing claims under the Minnesota Human Rights Act.

See Complaint, ¶¶ 19-46, SternJohn v. Kreisler, et al., Civil No. 02-842 (MJD/JSM).

Plaintiffs' lawsuit also sought the following relief:

i. Declaring, adjudging, and decreeing that Defendants have engaged in the violations of law set forth herein;
ii. Granting Plaintiffs temporary and permanent injunctive relief, enjoining Defendants from engaging in such unlawful conduct in the future;

iii. Awarding to Plaintiffs, respectively, compensatory damages in excess of $75,000.00; herein;
iv. Assessing punitive damages regarding each of Plainitffs' respective claims;
v. Awarding to Plaintiffs the cost of their suit;
vi. Awarding to Plaintiffs' attorney's fees;
vii. Awarding to Plaintiffs' the interest on all of the foregoing amounts;
viii. Awarding civil penalties for the violations of law set forth herein; and
ix. Granting to Plaintiffs such other and further relief as the Court may deem just and appropriate.

See Complaint, Prayer for Relief, SternJohn v. Kreisler, et al., Civil No. 02-842 (MJD/JSM).

During her deposition, Mrs. SternJohn testified that she believed Defendants tried to force her and her husband to move because of their complaints about Defendants' agent using racial slurs. See Deposition of Eboni SternJohn , dated August 21, 2002, p. 142-43, 176. She also stated that Defendants constructively evicted her and her husband in July of 1999. Id. at p. 249-50. Mrs. SternJohn further testified that Defendants constructively evicted her and her husband for complaining about the conditions of the apartment rented to them by Defendants. Id. at p. 149-50, 176. In addition, Mrs. SternJohn asserted that the false rental reference issued by Defendants caused the following harm to her:

> [She was] sick and embarrassed by the fact that now [she is] going to have to explain why [she] got this rental reference and show all this documentation saying that because of [their] race, something [they] have no control over and would not want to change even if [they] were being asked to which it seemed that Kreisler wasn't happy with, [they] were being discriminated against and harassed because of it and can you please help [them]. In essence, [she] had to beg for the apartment [in Fridley].

Id. at p. 256-57.

On October 22, 2004, Defendants – on the advice of counsel appointed by American Family Insurance Company and the advice of private counsel – entered a

confession of judgment for $1,050,000.00 in the United States District Court, District of Minnesota, before the Honorable Michael J. Davis. The Court approved the judgment on October 22, 2004 and ordered the full execution of a Consent Decree to enforce said judgment.

Accordingly, it is hereby **ORDERED and DECREED** that the Defendants shall be subject to the Court-enforced Consent Decree, set forth herein:

## I. Life of the Consent Decree

The Consent Decree shall be in force for five years from the date on which it is fully executed.

## II. Scope of the Consent Decree

Each and every provision of the Consent Decree shall apply to each and every one of Defendants' Minnesota rental properties that Defendants' own at any time during the life of the Consent Decree. Defendants warrant that their Minnesota properties, as of the full execution of the Consent Decree, are as follows: 2124 Garfield Avenue, Minneapolis; 424 West 24th Street, Minneapolis; 2421 Pillsbury Avenue, Minneapolis; 2500 Blaisdell Avenue, Minneapolis; 123-131 West 26th Street, Minneapolis; 2530 Blaisdell Avenue, Minneapolis. Defendants shall, in connection with the reporting requirements set forth below in Part IX, promptly report any changes in properties covered by the Consent Decree. The Consent Decree does not run with the aforementioned properties; therefore, if Defendants sell or transfer any such property via an arms-length transaction with an unrelated third-party, the Consent Decree will no longer apply to that legitimately sold or transferred property.

## III. Publication of the Consent Decree

Subject to the provisions set forth above in Part II, the Consent Decree shall be posted in a prominent location at each and every one of Defendants' Minnesota rental properties for the life of the Consent Decree. The Court shall oversee placement of the Consent Decree at Defendants' properties. Defendants shall pay all costs associated with the publication of the Consent Decree.

## IV. Removal of Operational Authority

Upon full execution of the Consent Decree and for the life of the same, Defendant Robert Kreisler and his spouse, Penny Ream, shall be prohibited from making any tenancy-related decisions concerning any Minnesota rental properties, including, but not limited to, whether to approve or reject a tenant application and whether to end or not to end a tenant's lease. Defendant Kreisler and Ms. Ream may have continuing involvement in the capital maintenance issues for the properties covered by this Consent Decree consistent with the management agreement to be executed and subject to Court review and supervision.

## V. Independent Management Company

Within sixty (60) days of full execution of the Consent Decree and for the life of the same, Defendants shall contract with an independent management company to handle tenancy-related decisions concerning all of Defendants' Minnesota rental properties. The independent management company shall have no familial connections whatsoever to Defendant Kreisler. Defendants shall pay all costs associated with the use of an independent management company.

## VI. Fair Housing and Diversity Training

Within sixty (60) days of the full execution of the Consent Decree, Defendants and each and every person who is an employee or otherwise an agent of Defendants regarding tenant issues, shall attend a comprehensive training on fair housing and a separate comprehensive training on the value of diversity. Defendants' new hires shall receive such training within thirty (30) days of hire. All employees and agents, identified above in Part VI, shall attend annual fair housing and diversity trainings during the life of the Consent Decree. The Court, with input from Plaintiffs' counsel, shall approve the fair housing and diversity programs and trainers provided by the National Fair Housing Alliance. Defendants shall pay all costs associated with the trainings.

## VII. Discrimination/Harassment/Retaliation Policy

Subject to the provisions set forth above in Part II, Defendants shall adopt a comprehensive anti-discrimination/anti-harassment/anti-retaliation policy, attached to the Consent Decree as Attachment A. This policy shall provide contact information as follows:

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W.
Northwestern Building, 7th Floor
Washington, D.C. 20530
1-800-896-7743

For the life of the Consent Decree, the policy shall be posted in a prominent location on each floor of all of Defendants' Minnesota properties. This policy shall also be attached to each lease for any Minnesota rental property owned by Defendants for the life of the

Consent Decree. Defendants shall pay all costs associated with the publication of the policy.

**VIII. Affirmative Marketing**

For the life of the Consent Decree, Defendants shall advertise all vacancies in all local publications that serve communities of color, including, but not limited to, the following: Insight News, The Minnesota Spokesman-Recorder, The Minnesota Black Pages, The Circle, The Native American Press/Ojibwe News, La Prensa de Minnesota, Gente de Minnesota, La Voz Latina, Asian-American Press, and Asian Pages. Defendants shall use substantively the same advertisements for each of these publications as they do for use in other publications. Defendants shall pay all costs associated with the affirmative marketing.

**IX. Compliance Reporting**

For the life of the Consent Decree, and subject to the provisions set forth above in Part II, Defendants shall submit a written report on a quarterly basis to an independent housing agency, the National Fair Housing Alliance, and to Plaintiffs' counsel regarding each and every one of Defendants' Minnesota rental properties. These reports shall identify all properties owned by Defendants as well as provide clear proof of compliance with the publication, management, training, policy, and marketing requirements set forth above in Parts III through VIII of the Consent Decree. These reports shall also provide complete and accurate reporting of the racial background of tenant applicants and tenants, complete and accurate rent rolls, and complete and accurate repair and renovation records

by apartment. Defendants shall pay all costs associated with this reporting and monitoring of the same.

## X. Non-Disparagement of Plaintiffs

Defendants shall not disparage the character of Plaintiffs in any manner.

## XI. Fair Housing Testing

For the life of the Consent Decree, each of Defendants' Minnesota rental properties may be subjected to periodic, undercover fair housing testing by an independent housing agency, the National Fair Housing Alliance. Defendants shall pay all costs associated with the fair housing testing.

## XII. Liquidated Damages

For each violation of the Consent Decree, Defendants shall pay $5,000.00 in liquidated damages to Plaintiffs by making payment to Plaintiffs' counsel. Defendants shall pay all costs associated with any actions to enforce the Consent Decree.

## XIII. Ongoing Court Supervision

For the life of the Consent Decree, disputes regarding compliance with the Consent Decree may be brought before United States Magistrate Judge Janie S. Mayeron for prompt adjudication.

**XIV. Non-Confidentiality**

There are no confidentiality restrictions whatsoever regarding the Consent Decree or Plaintiffs' lawsuit against Defendants, SternJohn v. Kreisler, et al., Civil No. 02-842 (MJD/JSM).

**XV. Release of Larry Hopfenspirger and Solar Partnership**

Defendants and their representatives, assigns, agents, insurers, predecessors, and successors individually and collectively release and forever discharge Larry Hopfenspirger and Solar Partnership regarding any claims, demands, damages, and actions arising or potentially arising under the facts that are the basis of Plaintiffs' lawsuit against Defendants, SternJohn v. Kreisler, et al., Civil No. 02-842 (MJD/JSM).

**XVI. Mutual Release**

Plaintiffs and Defendants and their respective representatives, assigns, agents, insurers, predecessors, and successors individually and collectively release and forever discharge one another mutually regarding any claims, demands, damages, and actions arising or potentially arising prior to the confession of judgment entered by Defendants on October 22, 2002. Plaintiffs and Defendants and their respective representatives, assigns, agents, insurers, predecessors, and successors individually and collectively agree mutually that this release shall not apply to any claims, demands, damages, or actions related to compliance with, or enforcement of, the Consent Decree.

**XVII. Cooperation Regarding Plaintiffs' Attorney's Fees Claim**

Plaintiffs' counsel shall cooperate with Defendants' counsel by providing fee-verification information to the extent necessary to establish Defendants' potential exposure concerning Plaintiffs' statutory claim for attorney's fees. Plaintiffs agree to provide billing-verification information in order to allow Defendants to assess the number of hours and the rate at which those hours were going to be charged and submitted to the Court in the event that there was a verdict and a petition for attorney's fees in connection with Plaintiffs' lawsuit against Defendants, SternJohn v. Kreisler, et al., Civil No. 02-842 (MJD/JSM).

**XVIII. Satisfaction of Judgment by Defendants**

Judgment is entered against Defendants in the amount of $1,050,000.00. Said judgment shall be fully satisfied if Plaintiffs' receive payment of $525,000.00 by the close of business on December 31, 2004. All parties and their respective representatives, assigns, agents, insurers, predecessors, and successors individually and collectively have knowingly and willingly agreed mutually to the terms of the Consent Decree after consulting with counsel.

Let judgment hereby be **ENTERED BY THE COURT**.

Dated: December 8, 2004

The Honorable Michael J. Davis
United States District Court Judge

Dated: December 7, 2004

The Honorable Janie S. Mayeron
United States Magistrate Judge

December 6, 2004

**MILLER·O'BRIEN, P.L.L.P.**

M. William O'Brien, # 130229
Justin D. Cummins, # 276248
Brendan D. Cummins, # 276236
One Financial Plaza
120 South Sixth Street, Suite 2400
Minneapolis, MN 55402
612-333-5831

**ATTORNEYS FOR PLAINTIFFS**

December 6, 2004

**LARSON KING, L.L.P.**

Mark S. Solheim, # 213226
David M. Wilk, # 222860
Angela Beranek Brandt, # 293143
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
651-312-6500

**ATTORNEYS FOR AMERICAN FAMILY INSURANCE COMPANY AND DEFENDANTS**

December 6, 2004

**SOUCIE & BOLT, P.A.**

David Bolt, # 149044
Paul Kieffer, # 244326
2150 Third Avenue North, Suite 100
Anoka, MN 55303
763-427-8888

**ATTORNEYS FOR DEFENDANTS**

Dated: December 6, 2004

Robert L. Kreisler, Jr.
Defendant

# ATTACHMENT A

## ANTI-DISCRIMINATION/ANTI-HARASSMENT/ANTI-RETALIATION POLICY

**(1) Discrimination Is Strictly Prohibited**

It is the policy of the owners and managers of this building not to discriminate against anyone because of race, color, creed, religion, national origin, sex, being unmarried, being a recipient of public assistance, disability, sexual orientation, or having children.

This policy means, among other things, that all agents or employees of the owners and managers who show, rent, repair, or operate any housing unit(s) must do the following:

(i) Treat all applicants to be tenants equally regardless of race, color, creed, religion, national origin, sex, being unmarried, being a recipient of public assistance, disability, sexual orientation, or having children; and

(ii) Treat all tenants equally regardless of race, color, creed, religion, national origin, sex, being unmarried, being a recipient of public assistance, disability, sexual orientation, or having children.

Therefore, a person's application cannot be rejected, repairs for a tenant cannot be unreasonably delayed or refused, and a tenant's lease cannot be terminated because of race, color, creed, religion, national origin, sex, being unmarried, being a recipient of public assistance, disability, sexual orientation, or having children.

**(2) Harassment Is Strictly Prohibited**

It is also the policy of the owners and managers of this building not to harass anyone because of race, color, creed, religion, national origin, sex, being unmarried, being a recipient of public assistance, disability, sexual orientation, or having children. This policy means, among other things, that all agents or employees of the owners and managers who show, rent, repair, or operate any housing unit(s) must not make any statements or take any actions that could create an objectively and subjectively hostile environment based on race, color, creed, religion, national origin, sex, being unmarried, being a recipient of public assistance, disability, sexual orientation, or having children.

Therefore, this policy prohibits, for example, negative comments and insulting behavior related to race, color, creed, religion, national origin, sex, being unmarried, being a recipient of public assistance, disability, sexual orientation, or having children.

**(3) Retaliation Is Strictly Prohibited**

It is further the policy of the owners and managers of this building not to retaliate against anyone for opposing discrimination or harassment or for otherwise trying to exercise their rights under the fair housing laws. This policy means, among other things, that all agents or employees of the owners and managers who show, rent, repair, or operate any housing unit(s) must not take any negative action against a person for exercising or trying to exercise his or her rights.

This policy means, for example, that a person's application cannot be rejected, repairs for a tenant cannot be unreasonably delayed or refused, and a tenant's lease

cannot be terminated because a person complained about potential discrimination or harassment.

**(4) Protection Of Your Rights**

Any employee or agent of the owners and managers who does not follow any part of the policy summarized above will be subject to disciplinary action, termination of employment, and/or federal court sanctions.

If you believe that this policy has been violated, you may contact a lawyer at the Department of Justice:

***United States Department of Justice***
***Civil Rights Division***
***Housing and Civil Enforcement Section***
***950 Pennsylvania Avenue, N.W.***
***Northwestern Building, 7th Floor***
***Washington, D.C. 20530***
***1-800-896-7743***

MILLER·O'BRIEN
A Professional Limited Liability Partnership
ATTORNEYS
One Financial Plaza
120 South Sixth Street, Suite 2400
Minneapolis, MN 55402-1809
(612) 333-5831

FAX (612) 342-2613
E-mail: miller-obrien@miller-obrien.com
Web Address: www.miller-obrien.com

Brendan D. Cummins
Justin D. Cummins
Kelly A. Jeanetta
Richard A. Miller
M. William O'Brien

Robert J. Alfton
of Counsel

Samual I. Sigal
1905-1995

PARALEGAL:
Beth M. Clark

RECEIVED DEC 07 2004

December 7, 2003

DEC 08 2004

**VIA COURIER**

The Honorable Janie S. Mayeron
United States Magistrate Judge
Warren E. Burger Federal Building
316 North Robert Street, Room 610
St. Paul, MN 55101

Re: SternJohn v. Kreisler, et al.
Court File No.: 02-842 MJD/JSM
Our File No.: 51-4714-01

Dear Judge Mayeron:

In accordance with your Order, please find enclosed the Consent Decree that the parties have executed and jointly submit. On page eleven (11) is a place for your and Judge Michael J. Davis respective signatures. If you would like the parties to take any further action in this regard, please so advise. Thank you for your attention to this matter.

Sincerely,

MILLER·O'BRIEN

Justin D. Cummins

Enclosure
cc: Angela Beranek Brandt, Esq.
Paul Kieffer, Esq.
Eboni and Julius SternJohn