**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Eboni SternJohn and Julius SternJohn,

Plaintiffs,

v.

Robert L. Kreisler, Jr., a/k/a Bob Peterson, a/k/a Robert Peterson, d/b/a Kreisler Real Estate Company, d/b/a Whittier Real Estate Company, d/b/a KT Properties Partnership L.P., d/b/a Whittier Community Apartments, d/b/a Bristol Apartments; Solar Partnership, a/k/a Solar Partnership, L.L.P, a/k/a Solar Partnership I, L.L.P., a/k/a Solar Partnership III, L.L.P., a/k/a Solar Partnership IV, L.L.P., d/b/a Solar Corporation; and Larry Hopfenspirger, d/b/a Hopfenspirger, Realty, Inc.,

Defendants.

Civil No. 02-842 MJD/JSM

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR RELIEF FROM CONTEMPT OF THE GOVERNING CONSENT DECREE**

---

## INTRODUCTION

Plaintiffs Eboni and Julius SternJohn and the independent housing agency designated by the Court to monitor Defendant Robert Kreisler's compliance with the Consent Decree have both incurred costs to enforce the Decree. Defendant's lack of compliance has meant that the requisite fair housing training and testing still has not been done at any properties. Without proper notice or authority,

Defendant also has attempted unilaterally to remove half of the properties subject to the Consent Decree from the Court's jurisdiction.

## I. THE STERNJOHNS AND THE INDEPENDENT MONITORING AGENCY SHOULD BE REIMBURSED FOR THE COSTS OF ENFORCING THE FAIR HOUSING TRAINING AND TESTING REQUIREMENTS OF THE CONSENT DECREE.

The governing Consent Decree, which the Court adopted on December 10, 2004, requires as follows: "***[w]ithin sixty (60) days*** of the full execution of the Consent Decree, Defendants and each and every person who is an employee or otherwise an agent of Defendants regarding tenant issues, ***shall attend*** a comprehensive training on fair housing and a separate comprehensive training on the value of diversity." See Consent Decree, Part VI (emphasis added). The relevant provision of the Consent Decree also mandates that "[a]ll employees and agents . . . ***shall attend annual*** fair housing and diversity trainings during the life of the Consent Decree." Id. (emphasis added). All requisite fair housing trainings must be conducted by the monitoring agency. Id.

After nearly one year without any fair housing training or testing at Defendant's properties, the SternJohns' counsel sent a letter to Defendant's counsel expressing concern about Defendant's compliance with the Consent Decree. *Affidavit of Justin D. Cummins, dated February 14, 2006 ("Cummins Aff."), ¶ 5, Exh. 1.* In response, Defendant blamed the ongoing delays on administrative reasons. *Cummins Aff., ¶ 5, Exh. 2.*

In truth, Defendant's lack of cooperation with the monitoring agency caused the delays. *Affidavit of Cathy Cloud, dated February 9, 2006 ("Cloud Aff."), ¶¶ 3-7, Exhs. 1-5.* Defendant did not identify a management company with which the monitoring agency could work until March 2005, approximately five months after Defendant entered his confession of judgment in the underlying case. *Cloud Aff.,¶ 2.* Defendant further stalled implementation by objecting to the monitoring contract that was to provide for fair housing testing at least once a year at each of the subject properties. *Cloud Aff.,¶ 3.* When Defendant finally agreed to sign the contract with the monitoring agency in June 2005, Defendant did not actually execute the contract until September 6, 2005 – nearly three months later. *Cloud Aff.,¶ 3, Exh. 1.* Throughout this time, Defendant knew that NFHA would not perform its monitoring functions until a contract had been signed by Defendant. *Cloud Aff.,¶ 10, Exh. 7.*

In addition, Defendant and his staff did not make themselves available for fair housing training during this period. *Cloud Aff.,¶¶ 4-7, Exhs.2-5.* The monitoring agency made multiple attempts to schedule and reschedule fair housing trainings during the summer and fall of 2005. *Id.* In the interest of fairness and in conformity with industry custom, the monitoring agency has not done fair housing testing and other monitoring before housing providers have had the benefit of undergoing fair housing training. *Cloud Aff.,¶ 2.* To date, Defendant's

unavailability in this regard has further thwarted implementation of the Consent Decree. *Cloud Aff.,¶ 12.*

Given this history, the SternJohns' counsel continued to seek compliance with the fair housing training and testing provisions before resorting to court action. *Cummins Aff., ¶ 5, Exh. 3.* Defendant's ongoing resistance ultimately required the SternJohns' to seek relief from the Court. *Cloud Aff.,¶ 12; Cummins Aff., ¶ 5, Exh. 4.* In connection with the Court's preliminary hearing on February 8, 2006, Defendant agreed to the extension of the Consent Decree for another year to account for the absence of fair housing training and testing to date. *Cummins Aff., ¶ 3.*

The SternJohns have incurred $576.00 in costs and the monitoring agency has incurred $6,488.00 in costs to enforce the fair housing training and testing components of the Consent Decree. *Cummins Aff., ¶¶ 2, 5, Exh. 14; Cloud Aff.,¶ 9, Exh. 6.* Accordingly, the SternJohns request the reimbursement of $576.00 to them and of $ 6,488.00 to the monitoring agency. See Consent Decree, Part XII.

## II. DEFENDANT VIOLATED THE CONSENT DECREE BY IMPROPERLY REMOVING SUBJECT PROPERTIES FROM COVERAGE AND, IN ANY EVENT, BY FAILING TO PROVIDE THE REQUISITE NOTICE.

The Consent Decree applies to 2124 Garfield Avenue, 424 West 24th Street, 2421 Pillsbury Avenue, 2500 Blaisdell Avenue, 123-131 West 26th Street, and 2530 Blaisdell. See Consent Decree, Part II. It also declares that "Defendants

***shall*** . . . ***promptly report*** any changes in properties covered by the Consent Decree." Id. (emphasis added).

The Consent Decree prohibits the transfer of any of these properties except "via an arms-length transaction with an unrelated third-party. . . ." Id. In addition, the Consent Decree also confirms as follows: "***Defendant Robert Kreisler and his spouse, Penny Ream, shall be prohibited*** from making any tenancy-related decisions concerning any Minnesota rental properties, including, but not limited to, whether to approve or reject a tenant application and whether to end or not to end a tenant's lease." See Consent Decree, Part IV (emphasis added).

On December 5, 2005, Defendant's counsel notified the SternJohns' counsel that Defendant was conveying several properties covered by the Consent Decree to Penny Ream. *Cummins Aff., ¶ 5, Exh. 5.* Defendant alleged that the divorce decree required the transfer. *Id.* The SternJohns' counsel asked several times for documentation to support Defendant's position and, subsequently, to identify which provision(s) of the divorce decree mandated the conveyance. *Cummins Aff., ¶¶ 4-5, Exhs. 6-8.* Defendant did not comply with these requests. *Cloud Aff.,¶ 11; Cummins Aff., ¶ 5, Exhs. 6-9.*

In addition to the conduct outlined above in Part I of this Memorandum, several other facts militate against permitting Defendant to remove properties from the scope of the Consent Decree. As a threshold matter, Parts II and IV expressly prohibit Ms. Ream from making any tenancy-related decisions concerning the

properties that have since been transferred to her. In addition, Ms. Ream evidently continued to work with Defendant regarding the subject properties after they co-petitioned for divorce. *Cummins Aff.,¶¶ 4-5, Exh. 6.* Ms. Ream also apparently has spent significant time at Defendant's home, 121 Elmwood Place West, following their divorce; that is where the United States perfected service – approximately seven months after the divorce – on Ms. Ream to appear for her deposition in the government's case against Defendant. *Cummins Aff., ¶ 5, Exhs. 10-11.* In short, Defendant's conveyance of the properties to Ms. Ream is not "an arms-length transaction with an unrelated third-party" within the meaning of Part II of the Consent Decree.

Notably, Defendant transferred the properties to Ms. Ream on October 6, 2005, less than one week after discovery closed in the government's case against Defendant. *Cummins Aff., ¶ 5, Exhs. 12-13.* Defendant's quarterly reports during this time also did not disclose the imminent property conveyance and otherwise omitted necessary data. *Cloud Aff.,¶ 11.* This is striking because the divorce decree that allegedly compelled the transfer was in force on August 12, 2004 – that is, over a year before Defendant notified the SternJohns' counsel of the transfer. *Cummins Aff., ¶ 5, Exhs. 5, 11.*

Defendant's failure to provide prompt notice of the conveyance is unlawful. See Consent Decree, Part II ("Defendants shall . . . promptly report any changes in properties covered by the Consent Decree."). In addition, each day Defendant has

acted on its position that the Consent Decree no longer governs 2124 Garfield Avenue, 424 West 24th Street, and 123-131 West 26th Street is a separate violation. Id. (excluding from coverage only those properties that are transferred "via an arms-length transaction with an unrelated third-party. . . ."). Defendant seems to have acted on this position since at least January 30, 2006, when his counsel produced the Quit Claim Deeds that transferred subject properties to Ms. Ream. *Cummins Aff.*, ¶ *5, Exh. 15.* Each violation requires the imposition of $5,000 in liquidated damages. See Consent Decree, Part XII. In addition, the SternJohns should be reimbursed for the $7,816.32 in costs incurred to enforce Part II of the Consent Decree. Id.; *Cummins Aff.*, ¶¶ *2, 5, Exh. 16.*

## III. THE PARTIES' AGREEMENT TO THE EXTENSION OF THE CONSENT DECREE FOR AN ADDITIONAL YEAR SHOULD BE ENFORCED.

During the preliminary hearing concerning the SternJohns' Contempt action, the parties agreed that the Consent Decree should be extended in all respects for an additional year. *Cummins Aff.*, ¶ *3.* Further, the parties agreed that the initial and first annual fair housing training as well as one fair housing test at each subject property will be conducted before the end of 2006. *Id.* In light of these stipulations, the Court should enter an order accordingly.

**CONCLUSION**

Defendant's failure to comply with clear and mandatory terms of the Consent Decree have caused both the SternJohns and the independent monitoring agency to incur significant and unnecessary costs. For the foregoing reasons, the SternJohns respectfully request the reimbursement of the costs incurred the imposition of liquidated damages for each violation found, the confirmation that the Consent Decree continues to apply to all properties initially identified in it, and the extension of the Consent Decree in full for an additional year.

Dated: February 15, 2006

**MILLER·O'BRIEN, P.L.L.P.**

s/ Justin D. Cummins
M. William O'Brien, # 130229
Justin D. Cummins, # 276248
One Financial Plaza
120 South Sixth Street, Suite 2400
Minneapolis, MN 55402
612-333-5831

**ATTORNEYS FOR PLAINTIFFS**