**Consulting Agreement**

This Consulting Agreement (the "Agreement") is entered into by Robert L. Kreisler, a/k/a Bob Peterson, a/k/a Robert Peterson, d/b/a Kreisler Real Estate Company, d/b/a Whittier Real Estate Company, d/b/a KT Properties Partnership L.P., d/b/a Whittier Community Apartments, d/b/a Bristol Apartments (collectively the "Kreisler Companies") and the National Fair Housing Alliance ("NFHA"), as follows:

WHEREAS, the Kreisler Companies entered into a Consent Decree on December 6, 2004 before the United States District Court for the District of Minnesota (the "Court").

WHEREAS, the Consent Decree is in force for a period of five (5) years from the date of execution and applies to each and every one of the Kreisler Companies' Minnesota rental properties during the life of the Consent Decree. At the time of the execution of the Consent Decree and for purposes of this Agreement the rental properties are as follows: 2124 Garfield Avenue, Minneapolis; 424 West 24th Street, Minneapolis; 2421 Pillsbury Avenue, Minneapolis; 2500 Blaisdell Avenue, Minneapolis; 123-131 West 26th Street, Minneapolis; 2530 Blaisdell Avenue, Minneapolis (collectively the "Properties").

WHEREAS, under the Consent Decree, the Court shall oversee the placement of the Consent Decree at the Properties.

WHEREAS, pursuant to the terms of the Consent Decree, Kreisler Companies have retained an independent management company which will hold complete operational authority, including authority for all tenancy related decisions, over the Properties.

WHEREAS, under the terms of the Consent Decree, Kreisler Companies are required to provide fair housing and diversity training, adhere to certain affirmative marketing and submit a written report on a quarterly basis to NFHA for each of the Properties.

WHEREAS, under the terms of the Consent Decree, the NFHA is to provide fair housing testing and Kreisler Companies shall pay all costs associated with the fair housing testing.

WHEREAS, the parties have had full and adequate time to consider their rights under this Agreement, and have chosen to freely and voluntarily enter into this Agreement;

NOW, THEREFORE, in consideration of the mutual agreements contained herein, the parties hereby agree as follows:

1. Independent Contractor. This Agreement shall not render NFHA an employee, partner or joint venturer with the Kreisler Companies for any purpose. NFHA

is and will remain an independent contractor in its relationship to the Company. NFHA is solely responsible for obtaining the necessary government identification and taxation numbers and filing and paying appropriate taxes.

2. Scope of Consulting Services. The scope of services under this Agreement shall be as follows:

(a) Training. NFHA will provide fair housing and diversity training in accordance with the consent decree (each session lasting six (6) hours) on an annual basis for five (5) years at a rate of $1,500 per session for a total of $7,500 over the course of the five years. Travel expenses to Minnesota for the training will amount to approximately $1,000 per session, or $5,000 over the term of the Consent Decree. Only actual expenses are to be reimbursed. Additional training may be provided as necessary to comply with the terms of the Consent Decree, with the cost to be approved in advance and in writing by Kreisler Companies.

(b) Review of Affirmative Marketing. NFHA will review marketing and advertising each quarter for five years. The materials shall be submitted to NFHA by Kreisler Companies in accordance with the scheduled outlined in Section (3). This review shall include copies of all ads as well as a list of when the ads ran in each publication and any known demographic information about the publication's readers and/or subscribers. The quarterly reviews for 5 years will be at a rate of $100 per review for a total of $2,000 over the course of the five years.

(c) Review of Quarterly Reports. NFHA will review records and other compliance reports on a quarterly basis for a period of five years. The materials shall be submitted to NFHA by Kreisler Companies in accordance with the scheduled outlined in Section (3). The reports should include information about applicants, indication of the outcome of the application and the reason for denial. This report should indicate the property, date of availability and size of available units (number of bedrooms), date of application, outcome of application, date action was taken on application, race or national origin of the applicant(s), and reason for denial. The report will also detail information about requests for repairs including last name of person requesting repairs, unit number and property, race or national origin of resident requesting repairs, nature of the repairs requested, date the request was made, date the request was filled, reason for denial if the request was denied, and other information deemed appropriate by the management company. NFHA will also be given access to the feedback from residents solicited by the independent management company. Review of new leases, if deemed necessary, shall be done at the time of the annual fair housing sessions at and shall be reimbursed at a rate of $250 per hour, not to exceed four hours each year. The cost of this service shall be 4 reviews per year for 5 years at $500 per review for a total of $10,000 over the course of the 5 years.

(d) Paired Tests. NFHA will conduct six (6) paired tests each year for a period of five (5) years at a cost of $1,200 per test for a total of $36,000 over the course of the five year period. Should significant violations of fair housing laws be detected in the tests, NFHA will conduct up to two (2) additional tests per year. If the parties disagree on what constitutes a "significant" violation, the matter will be referred to the Court for resolution.

(e) Annual Meeting. NFHA shall meet with the independent management company and with representative(s) Larson King LLP on an annual basis. NFHA shall be reimbursed $500 per meeting for a total of $2500 over the course of the 5 years.

(f) NFHA Reports. NFHA will provide a written compliance review report to Larson King LLP (on behalf of Kreisler Companies) on a quarterly basis at a cost of $200 per quarter for a total cost of $4,000 over the course of the five year period.

(g) Additional Services. Any deviations from or additions to the scope of services or costs of services set forth above, **must be mutually agreed upon in writing prior to said services being performed.**

3. Timeframe of Services. The start date for purposes of compliance shall be January 1, 2005. Quarterly reports will be due within fifteen (15) days after the first days of March, June September, and December. NFHA will provide its monitoring reports on or before the fifteenth (15th) day of May, August, November and February. These dates shall be adjusted as needed for the first and second reporting periods of 2005.

4. Subcontracting of Services. NFHA shall be permitted to subcontract to a local fair housing organization. NFHA will provide testing and tester training to the local organization, conduct the analysis of the tests, supervise the testing process, and provide reports on the test results. NFHA will provide the testing forms and manuals to the local agency. All costs of training or materials provided to the subcontracting local organization shall be NFHA's responsibility.

5. Billing Procedures for Services. Costs of services shall be billed by NFHA as incurred. Invoices shall be submitted to the attention of Stephen P. Laitinen at Larson King LLP, 2800 Wells Fargo Place, 30 East Seventh Street, St. Paul, MN 55101-4922. Invoices shall be paid within sixty (60) days of receipt.

6. Correspondence and/or Notices. Any and all notices and or other types of correspondence shall be directed as follows:

For the Kreisler Companies:

Stephen P. Laitinen, Esq.
Larson King LLP

2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101-4922

For NFHA:

Cathy Cloud
Vice President
National Fair Housing Alliance
1212 New York Ave, Suite 525
Washington, D.C. 20005

7. Confidentiality. NFHA agrees that it will not disclose any of the Kreisler Companies' confidential information, directly or indirectly, or use any confidential information in any manner, either during the term of this Agreement or at any time thereafter, except as required in the course of this engagement with the Company. Confidential Information and the obligations required under this Agreement will not include information that: (i) has become publicly known through no fault of NFHA; (ii) is received by NFHA properly and lawfully from a third party without knowledge or reasonable suspicion that the third party's disclosure is in breach of any obligations to Kreisler Companies; (iii) has been developed by NFHA completely independently and without the use of any Confidential Information; or (iv) has been approved for public release by prior written authorization of Kreisler Companies.

8. Ownership. NFHA acknowledges that Kreisler Companies will maintain sole and exclusive ownership of (or other rights to) all right, title, and interest in and to Confidential Information, including as between NFHA and Kreisler Companies, ownership of (or other rights to) all information developed by NFHA under this Agreement.

Notwithstanding the foregoing, the parties understand and agree that Kreisler Companies does not claim any copyright or ownership rights in any pre-existing documents ordinarily and customarily used by NFHA in its training manuals, seminars, courses, or education and training programs, or in previously created works, which rights and ownership shall remain with NFHA. Such pre-existing documents include, but are not limited to, training materials, blank forms, maps, charts, outlines, summaries, data (such as HMDA data), etc., that have previously been created and used by NFHA (the "NFHA Works"). The parties understand and agree that the phrase "developed by" in the preceding paragraph is not intended to include such materials, which are proprietary to NFHA and which have not been created specifically for Kreisler Companies or for this Agreement.

9. Miscellaneous. This Agreement constitutes the entire Consulting Agreement among the parties hereto as to the subject matter hereof and supersedes all other previous written or oral notices, agreements or understandings as to such subject

matter. No modification, amendment or change of any kind to this Agreement shall be effective unless it is in writing and signed by both parties.

(a) This Agreement shall be construed and enforced in accordance with, and all questions concerning the construction, validity, interpretation and performance of this Agreement shall be governed by, the laws of the State of Minnesota without giving effect to provisions thereof regarding conflict of laws.

(b) Any disputes arising under this agreement shall be brought before United States Magistrate Judge Janie S. Mayeron for prompt adjudication. Each party shall bear its own legal fees as to these disputes.

(c) The duration and scope of this Agreement shall be consistent with the Life and Scope of the Consent Decree. Specifically, this Agreement does not run with the Kreisler properties that are the subject of this Agreement. Therefore, if Kreisler sells or transfers any such property via an arms-length transaction with an unrelated third-party, this Agreement, consistent with the terms and conditions of the Consent Decree, will no longer apply to that legitimately sold or transferred property.

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of this 6th day of September, 2005.

~~Kreisler Companies~~ WHITTIER REAL ESTATE CO.

By: ________________

Title: ________________

SUZANNE M. LECKIE
Notary Public
Minnesota
My Commission Expires January 31, 2007

National Fair Housing Alliance

By: ________________
Shanna L. Smith
Title: President and Chief Executive Officer