MILLER O'BRIEN
A Professional Limited Liability Partnership
ATTORNEYS
One Financial Plaza
120 South Sixth Street, Suite 2400
Minneapolis, MN 55402-1809
(612) 333-5831

FAX (612) 342-2613
E-mail: miller-obrien@miller-obrien.com
Web Address: www.miller-obrien.com

Brendan D. Cummins
Justin D. Cummins
Kelly A. Jeanetta
Richard A. Miller
Margaret Luger-Nikolai
M. William O'Brien

Robert J. Alfton
of Counsel

Samual I. Sigal
1905-1995

December 19, 2005

**VIA COURIER**

The Honorable Janie S. Mayeron
United States Magistrate Judge
Warren E. Burger Federal Building
316 North Robert Street, Room 610
St. Paul, MN 55101

Re: SternJohn v. Kreisler, et al.
Court File No.: 02-842 MJD/JSM
Our File No.: 51-4714-01

Dear Judge Mayeron:

I represent the SternJohn family, plaintiffs in the above-referenced matter. Pursuant to Part XIII of the Consent Decree in this case, I am writing about Mr. Robert Kreisler's material non-compliance with the Consent Decree via the following:

(1) Removing properties from coverage under the Consent Decree, in violation of Part II;
(2) Failing to participate in the initial and first annual fair housing and diversity trainings by the National Fair Housing Alliance ("NFHA"), in violation of Part VI;
(3) Failing to provide complete and timely quarterly reports, in violation of Part IX; and
(4) Failing to contract with an independent management company to operate apartment buildings, in violation of Parts IV-V.

## 1. Mr. Kreisler's Improper Restriction Of The Consent Decree's Scope

On November 23, 2005, I learned from the monitoring agency, NFHA, that – nearly two months earlier – Mr. Kreisler severed the management contract required by Parts IV-V of the Consent Decree. See Exh. 1. Given that Mr. Kreisler had not advised NFHA or the Court of this material development, I contacted Mr. Kreisler's counsel to confirm whether Mr. Kreisler was complying fully with the Consent Decree. See Exh. 2.

In responding to my inquiry, Mr. Kreisler's counsel informed me that Mr. Kreisler had conveyed several apartment buildings governed by the Consent Decree to his former wife, Penny Ream. See Exh. 3. Mr. Kreisler also has asserted the Consent Decree does not apply to the properties transferred to Ms. Ream (2124 Garfield Avenue, 424 West 24th Street, and 123-131 West 26th Street) because the divorce decree allegedly requires the conveyance. Id.

EXHIBIT
4

Significantly, Mr. Kreisler continues to refuse to identify the provision(s) of the divorce decree that allegedly require the transfer. See Exh.4. Indeed, the divorce decree appears to mandate the opposite, stating that Mr. Kreisler retains title of the apartment buildings in question and that he shall indemnify Ms. Ream regarding any lawsuits relating to the "past, present or future use of the property." See Exh. 5.

In any event, Part IV of the Consent Decree expressly prohibits Ms. Ream from managing the subject properties: "***Penny Ream[] shall be prohibited*** from making any tenancy-related decisions concerning any Minnesota rental properties, including, but not limited to, whether to approve or reject a tenant application and whether to end or not to end a tenant's lease." Thus, the Consent Decree applies to all properties identified in the Consent Decree – whether or not Mr. Kreisler legitimately transferred them to Ms. Ream.

In short, Mr. Kreisler has unilaterally and improperly removed 2124 Garfield Avenue, 424 West 24th Street, and 123-131 West 26th Street from coverage by the Consent Decree. Each day – and there appear to be many – that Mr. Kreisler has operated under this narrower scope is a separate violation of Part II of the Consent Decree.

## 2. Mr. Kreisler's Failure To Undergo Mandatory Fair Housing And Diversity Training, And His Failure To Ensure That His Staff Undergo The Same

Part VI of the Consent Decree requires as follows: "***[w]ithin sixty (60) days*** of the full execution of the Consent Decree, Defendants and each and every person who is an employee or otherwise an agent of Defendants regarding tenant issues, ***shall*** attend a comprehensive training on fair housing and a separate comprehensive training on the value of diversity." Neither Mr. Kreisler nor his staff has undergone this initial training even though Mr. Kreisler executed the Consent Decree more than one year ago. See Exh. 6.

The relevant provision of the Consent Decree also mandates that "[a]ll employees and agents, identified above in Part VI, ***shall attend annual*** fair housing and diversity trainings during the life of the Consent Decree." Again, neither Mr. Kreisler nor his staff has undergone the first annual training. Id.

Accordingly, Mr. Kreisler's failures to comply with Part VI of the Consent Decree with respect to himself and with respect to his staff constitute four separate violations of the Decree.

## 3. Mr. Kreisler's Failure To Provide Quarterly Reports As Required

Mr. Kreisler has an explicit obligation to produce quarterly reports to the SternJohns' counsel under Part IX of the Consent Decree. Until last week, I had received only one report in the last year. See Exh. 7. Notably, Mr. Kreisler withheld these reports at the time he evidently sought to convey several properties beyond the Consent Decree's reach. See Exh. 3.

In addition, the substance of the quarterly reports does not comply with the clear requirements of Part IX of the Consent Decree. For example, the Consent Decree mandates that "[t]hese reports ***shall also provide*** . . . complete and accurate repair and renovation records by apartment." Yet Mr. Kreisler has not submitted data on the repair and renovation practices at his buildings since execution of the Consent Decree. This is not a trivial omission because both the SternJohns' and the United States' cases concern Mr. Kreisler's racially discriminatory and retaliatory manner of performing (and not performing) repairs as well as renovations.

In sum, Mr. Kreisler has violated the compliance-reporting provision twice by submitting the reports late on two occasions and further violated the provision an additional three times because each quarterly report omits material data required by the Consent Decree.

**4. Mr. Kreisler's Failure To Contract With An Independent Management Company To Operate Buildings Governed By The Consent Decree**

Parts IV and V of the Consent Decree plainly prohibit Mr. Kreisler and Ms. Ream from participating in the management of any of the apartment buildings covered. Yet Mr. Kreisler severed his management contract with Marathon Management several months ago – without informing NFHA or the Court. See Exhs. 1-2.

When confronted with this evident non-compliance, Mr. Kreisler asserted that he was now using one person to manage his nearly 200 apartment units. See Exh. 8. Recently, Mr. Kreisler alleged he would soon be contracting with another management company. Id.

I have requested authentic documentary evidence of the precise date on which Mr. Kreisler terminated his contract with Marathon Management and the date on which he entered into any subsequent management agreements. See Exh. 9. Mr. Kreisler should have readily provided this information to show he has, in fact, been using an independent management company throughout the life of the Consent Decree.

Nonetheless, Mr. Kreisler still refuses to produce the potentially exculpatory data. See Exh. 10. Mr. Kreisler's recalcitrance on this point, coupled with his testimony during his recent deposition in the United States' case against him, indicate that Mr. Kreisler has been improperly involved in the management of properties governed by the Consent Decree.

Each day that Mr. Kreisler or Ms. Ream has been involved in the management of any apartment building constitutes an additional violation of the Consent Decree. Given that Mr. Kreisler continues to refuse to provide relevant information, it is difficult to state with precision how many times he has violated Parts IV and V of the Consent Decree, but it is clear there are multiple violations.

**5. Relief Requested**

Pursuant to Parts XII-XIII of the Consent Decree – and based on the affidavit of Justin D. Cummins, dated December 19, 2005, and attached exhibits submitted herewith – the SternJohns respectfully request a Court Order setting forth the following:

A. Reaffirmation that all apartment buildings originally identified in the Consent Decree continue to be governed by the Consent Decree;

B. Mr. Kreisler and his staff shall undergo a minimum of three fair housing and diversity trainings conducted by NFHA in 2006 (to make up for the two missed trainings in 2005) and shall comply fully with the training requirements of the Consent Decree going forward;

C. The buildings governed by the Consent Decree shall undergo double the required number of NFHA tests for housing discrimination in 2006 (to make up for the absence of testing in 2005) and shall comply fully with the testing requirements of the Consent Decree going forward;

D. Within 10 (ten) business days of entry of this Order, Mr. Kreisler shall produce to the Court and the SternJohns' counsel authentic documentary evidence of the precise date on which he began to conduct business as if the Consent Decree no longer governed 2124 Garfield Avenue, 424 West 24th Street, and 123-131 West 26th Street;

E. Within 10 (ten) business days of entry of this Order, Mr. Kreisler shall produce to the Court and the SternJohns' counsel authentic documentary evidence of the precise date on which he entered into and terminated any management agreement with management companies and individuals he has used since execution of the Consent Decree;

F. Within 10 (ten) business days of entry of this Order, Mr. Kreisler shall produce to the Court and the SternJohns' counsel authentic documentary evidence that no one affiliated with any of the management companies and individuals used by Mr. Kreisler since execution of the Consent Decree are related to him;

G. The award of $5,000 in liquidated damages to the SternJohns for each of the 9 (nine) violations of the Consent Decree already established plus the additional violations that will become evident when Mr. Kreisler produces data as required by Parts D-F of this Order;

H. The award of the SternJohns' reasonable attorney's fees in securing Mr. Kreisler's full compliance with the Consent Decree;

I. The reimbursement of costs incurred by NFHA and its affiliate due to Mr. Kreisler's material non-compliance; and

J. The extension of the Consent Decree's life for an additional year because of material non-compliance by Mr. Kreisler in 2005.

Along with my affidavit and attached exhibits, I have enclosed a Proposed Order for the Court's review and signature. If the Court would like additional information or to hear argument from counsel, please so advise. Thank you for your prompt attention to these matters.

Sincerely,

MILLER·O'BRIEN

Justin D. Cummins

Enclosures
cc: Mr. Stephen P. Laitenen, Esq.
Angela Beranek Brandt, Esq.
Mrs. Eboni and Mr. Julius SternJohn