UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Eboni SternJohn and Julius SternJohn,

Plaintiffs,

vs.

Robert L. Kreisler, Jr., a/k/a Bob Peterson a/k/a/ Robert Peterson, d/b/a Kreisler Real Estate Company, d/b/a Whittier Real Estate Company, d/b/a KT Properties Partnership L.P., d/b/a Whittier Community Apartments, d/b/a Bristol Apartments; Solar Partnership, a/k/a Solar Partnership, L.L.P., a/k/a Solar Partnership I, L.L.P., a/k/a Solar Partnership III, L.L.P., a/k/a Solar Partnership IV, L.L.P., d/b/a Solar Corporation; and Larry Hopenfspirger, d/b/a Hopfenspirger Realty, Inc.,

Defendants.

Civil No. 02-842 (MJD/JSM)

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S CONTEMPT MOTION**

---

## I. INTRODUCTION AND FACTUAL BACKGROUND

Pursuant to the Court's request and the parties' agreement of simultaneous filing by today's date, Defendants Robert L. Kreisler, Jr., Kreisler Real Estate Company, Whittier Real Estate Company, and Whittier Community Apartments ("Kreisler Defendants") respectfully submit this Memorandum in Opposition to Plaintiff's Contempt Motion.

The parties entered into a Consent Decree on December 8, 2004, as part of a settlement agreement in the above-entitled matter. (Affidavit of Stephen P. Laitinen

("Laitinen Aff."), Ex. 1.) As this Court is aware, the parties recently agreed to extend the life of the Consent Decree by one year so that it will be effective for a total of six years as opposed to five. The Decree initially applied to the following properties: 2124 Garfield Avenue, Minneapolis; 424 West 24th Street, Minneapolis; 2421 Pillsbury Avenue, Minneapolis; 2500 Blaisdell Avenue, Minneapolis; 123-131 West 26th Street, Minneapolis; and, 2530 Blaisdell Avenue, Minneapolis. According to the terms,

> [d]efendants shall, in connection with the reporting requirements set forth below in Part IX, promptly report any changes in properties covered by the Consent Decree. The Consent Decree does not run with the aforementioned properties; therefore, if Defendants sell or transfer any such property via an arms-length transaction with an unrelated third-party, the Consent Decree will no longer apply to that legitimately sold or transferred property.

(Laitinen Aff., Ex. 1, ¶ II.)

The Scope of the Consent Decree requires, among others, that all agents and employees of the Kreisler Defendants attend fair housing training conducted by the National Fair Housing Alliance ("NFHA"):

> Within sixty (60) days of the full execution of the Consent Decree, Defendants and each and every person who is an employee or otherwise an agent of Defendants regarding tenant issues, shall attend a comprehensive training on fair housing and a separate comprehensive training on the value of diversity. Defendants' new hires shall receive such training within thirty (30) days of hire. All employees and agents, identified above in Part VI, shall attend annual fair housing and diversity trainings during the life of the Consent Decree. The Court, with input from Plaintiffs' counsel, shall approve the fair housing and diversity programs and trainers provided by the National Fair Housing Alliance. Defendants shall pay all costs associated with the trainings.

(Laitinen Aff., Ex. 1, ¶ VI.) The Decree also provides that

> [f]or the life of the Consent Decree, each of Defendants' Minnesota rental properties may be subjected to periodic, undercover fair housing testing by an independent housing agency, the National Fair Housing Alliance. Defendants shall pay all costs associated with the fair housing testing.

(Laitinen Aff., Ex. 1, ¶ XI).

The issues before the Court today involve the above-excerpted Consent Decree provisions. The Court first received notice of a disagreement regarding compliance with the Decree in a December 6, 2005, letter from Ms. Cathy "Cat" Cloud of the NFHA. Although Kreisler Defendants' Attorney Steve Laitinen ("Attorney Laitinen") had been in personal contact with Ms. Cloud for several months, NFHA's December 6, 2005, letter was the first time that he or the Kreisler Defendants learned of many of NFHA's alleged concerns. It is unfortunate that NFHA did not contact the Kreisler Defendants before writing the Court, since many of these issues possibly could have been resolved by clarification and compromise rather than with Court involvement.

Attorney Laitinen responded in a December 16, 2005, letter to the Court clarifying the status of Mr. Kreisler's continued efforts to comply with the Consent Decree. (Laitinen Aff., Ex. 2.) Plaintiffs' attorney Justin Cummins ("Attorney Cummins") responded with a December 19, 2005, letter to the Court, and Attorney Laitinen replied once more to the Court in December 21, 2005, correspondence. (Laitinen Aff., Ex. 3.) On February 8, 2006, the parties and Court discussed these concerns and agreed that the parties would present their respective positions on matters not resolved in the conference call in memoranda filed on today's date.

The following matters are those at issue in Plaintiff's contempt motion and will be discussed in this memorandum:

- Costs and fees are not warranted because the Kreisler Defendants made reasonable attempts to undergo NFHA training and NFHA could have performed testing at any time.
    - The fact that Kreisler Defendants' employees and agents have not undergone NFHA training is based solely on NFHA's own scheduling conflicts.
    - The Kreisler Defendants have never prohibited the NFHA from conducting testing on the subject properties.
- Mr. Kreisler's transfer of three properties governed by the Consent Decree was proper and did not constitute a unilateral narrowing of the Consent Decree.
- Plaintiffs have agreed to withdraw their contempt request regarding management activities in exchange for Defendant Robert Kreisler's management timeline affidavit.

## II. ARGUMENT

### A. Costs And Fees Are Not Warranted Because The Kreisler Defendants Made Reasonable Attempts To Undergo NFHA Training And NFHA Could Have Performed Testing At Any Time.

#### 1. The Fact That Kreisler Defendants' Employees And Agents Have Not Undergone NFHA Training Is Based Solely On NFHA's Own Scheduling Conflicts.

Pursuant to the Consent Decree, all agents and employees of the Kreisler Defendants must attend fair housing training conducted by NFHA. (Laitinen Aff., Ex. 1, ¶ VI.) NFHA asserts that it has been prohibited from conducting training because NFHA and Mr. Kreisler had not yet finalized a consulting agreement. This argument is disingenuous. To the contrary, the parties agreed from the outset that training would occur. In fact, NFHA neglected to inform the Court that Marathon Management, the

independent management company that was overseeing the subject properties, attended fair housing training sponsored by NFHA on April 20, 2005 without any signed agreement in place.

Moreover, on May 31, 2005, Cat Cloud informed Attorney Laitinen that employee training could not occur from June through August, 2005, because her calendar was "full." (Laitinen Aff., Ex. 4.) On September 6, 2005, Ms. Cloud informed Attorney Laitinen that training would not occur until December 2005, because her calendar was "packed." (Laitinen Aff., Ex. 5.) The Kreisler Defendants and NFHA representative Cat Cloud agreed on December 7, 2005, as a training date for Mr. Kreisler's employees. However, on November 23, 2005, NFHA unilaterally canceled the training because of its view that it had no contract with Mr. Kreisler. (Laitinen Aff., Ex. 6.) On November 28, 2005, Attorney Laitinen told NFHA that Mr. Kreisler had instructed his employees to be available for training on December 7, and asked NFHA to hold the training on that date. (Laitinen Aff., Ex. 7.) On December 6, 2005, Ms. Cloud informed Attorney Laitinen that she had been on vacation, and that the scheduled training would have to be re-scheduled for January or February 2006. (Laitinen Aff., Ex. 8.) Ms. Cloud did not inform Attorney Laitinen on this date she had drafted and sent the letter to the Court raising these training issues, among others.

On December 7, 2005, Attorney Laitinen asked Ms. Cloud to provide him with available dates for employee training in January or February 2006. Id. Ms. Cloud refused to provide Attorney Laitinen with dates, and finally admitted on December 8, 2005 that she had sent the Court the December 6 letter raising the issues that are the

subject of Plaintiff's contempt motion. (Laitinen Aff., Ex. 9.) Attorney Laitinen asked that Ms. Cloud fax the letter to him immediately. She did not do so.

The Kreisler Defendants have already agreed to conduct employee training in January or February 2006, and at this juncture, they understand that NFHA has confirmed with Capital D, LLC that training will occur on February 28, 2006 (Laitinen Aff., Ex. 14.) In light of this, the NFHA is not entitled to reimbursement for "unnecessary" costs because NFHA unilaterally cancelled training sessions after the Kreisler Defendants had informed them that Mr. Kreisler's employees were, in fact, available for training. Had the NFHA simply complied with these requests, employee training could have occurred as previously scheduled on December 7, 2005.

**2. The Kreisler Defendants Have Never Prohibited The NFHA From Conducting Testing On The Subject Properties.**

NFHA next complains that it was prevented from conducting testing on the Properties. From the beginning of discussions with NFHA, the parties agreed that at least four paired tests would occur each year; the unresolved issue was whether four, six, or eight paired tests per year was appropriate in light of the significant costs involved to the Kreisler Defendants. Any NFHA assertion that it could not conduct testing because NFHA and Mr. Kreisler had not yet finalized a consulting agreement is disingenuous because it was up to both parties to agree on the only unresolved issue of number of paired tests. The Kreisler Defendants never told NFHA that it could not conduct such testing. Indeed, Marathon Management informed Attorney Laitinen several months ago that it believed at least one paired test had already occurred. NFHA should confirm for

the Court and Mr. Kreisler whether it has sent paired testers to the properties, and the results of such tests. The Kreisler Defendants welcome any NFHA testing pursuant to the Consent Decree.

**B. Mr. Kreisler's Transfer Of Three Properties Governed By The Consent Decree Was Proper and Did Not Constitute A Unilateral Narrowing Of The Consent Decree.**

During the revised 4th Quarter 2005 reporting period, Mr. Kreisler settled his divorce and transferred three (3) of his rental properties to his ex-wife, Penny Ream. By this action, Mr. Kreisler has not "unilaterally narrowed" the scope of the Consent Decree as Plaintiffs claim.

Mr. Kreisler's and Ms. Ream's divorce was finalized in Hennepin County District Court in August 2004.[1] (Laitinen Aff., Exs. 10, 11.) Pursuant to that court-approved divorce, Mr. Kreisler and Ms. Ream divided up the couple's assets, and, among other things, Ms. Ream received three of the six rental properties that were subject to this consent decree.[2] (Laitinen Aff., Ex. 12.) Attorney Cummins' contention that Mr. Kreisler unilaterally "removed" properties in violation of the Consent Decree is misplaced.

The Consent Decree, by its express terms, does not run with the six rental properties at issue. (Laitinen Aff., Ex. 1, ¶ II.) The Consent Decree further provides that "if Defendants sell or transfer any such property via an arms-length transaction with an

---

[1] This law firm did not represent either Mr. Kreisler or Ms. Ream in their divorce and subsequent property and asset settlement.

[2] Ms. Ream's properties are located at 2124 Garfield Avenue, 424 West 24th Street, and 123-131 West 26th Street, all in Minneapolis, Minnesota.

unrelated third-party, the Consent Decree will no longer apply to that legitimately sold or transferred property." Id. (emphasis added.) Ms. Penny Ream, Mr. Kreisler's ex-wife, was not a defendant in the SternJohn case, and was not named as a defendant for the purposes of the Consent Decree.

Mr. Cummins also contends that Mr. Kreisler was prohibited from reaching a settlement with his ex-wife regarding the division of property assets. This argument ignores the plain language of the divorce decree, which provides that "Husband [Mr. Kreisler] is granted title to all of the rental properties, subject to Wife's [Ms. Ream] lien interests as set forth below." (Laitinen Aff., Ex. 11, ¶ 8.) (Emphasis added.) The Decree also provides that Ms. Ream's marital property lien for all six properties "shall be satisfied upon the sale, refinance, or exchange of said [properties] …" Id. at pp. 13-17. Further, the value of Ms. Ream's marital lien was determined as a matter of law to equal one-half, or 50%, of the equity interests in all six properties. Id.

Under the United States Constitution, Mr. Kreisler remains free to divest himself from ownership of any or all of his properties. The Consent Decree does not conflict with that fundamental concept. Mr. Kreisler and Ms. Ream's divorce was finalized in August 2004. (Laitinen Aff., Exs. 10, 11.) The parties' subsequent settlement and division of property assets in the fall of 2005, in accord with the Hennepin County divorce decree, constituted an arms-length transaction, and Ms. Ream, at the time of that property transfer, was an unrelated third-party. Therefore, Mr. Kreisler did not violate the Consent Decree. Ms. Ream is arguably not even subject to the Consent Decree, given that she is no longer legally married to Mr. Kreisler.

In light of this, the Kreisler Defendants respectfully request that the Court enter an order confirming that the three properties Mr. Kreisler transferred to his ex-wife Penny Ream in order to partially satisfy her valid lien interests in said properties constituted a valid property transfer pursuant to the Hennepin County divorce decree judgment, and that those properties are no longer Mr. Kreisler's responsibility with respect to future Consent Decree compliance.

### C. Plaintiffs Have Agreed To Withdraw Their Contempt Request Regarding Management Activities In Exchange For Defendant Robert Kreisler's Management Timeline Affidavit.

Pursuant to agreement of the parties, the SternJohns have agreed to withdraw all contempt requests for management agreement-related issues in exchange for Mr. Kreisler's compliance with his sworn affidavit. (Affidavit of Robert Kreisler.) Mr. Kreisler has already confirmed under oath that he has had no involvement in tenancy-related decisions at the six properties since the entry of the Consent Decree in December 2004. (Laitinen Aff., Ex. 13, ¶ 8.) He recently agreed to extend the life of the Consent Agreement by one year. It is thus evident that Mr. Kreisler has complied with the requirements of the Consent Decree to date, and will continue to work with both NFHA and Mr. Cummins in the future in the good faith effort to achieve compliance.

## IV. CONCLUSION

For the foregoing reasons, the Kreisler Defendants respectfully request that the Court deny Plaintiff's contempt motion.

Respectfully submitted,

Dated: February 15, 2006

**LARSON • KING, LLP**

By *s/Stephen P. Laitinen*

Stephen P. Laitinen (#239446)
Jennifer G. Daugherty (#0338552)
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618

Attorneys for Defendants
Robert L. Kreisler, Jr.,
Kreisler Real Estate Company,
Whittier Real Estate Company, and
Whittier Community Apartments

1157136