# AFFIDAVIT

STATE OF MINNESOTA )
) ss.
COUNTY OF RAMSEY )

Robert L. Kreisler, Jr., having been sworn upon oath, deposes and states as follows:

1. That I am the owner of three rental properties in South Minneapolis: 2421 Pillsbury Avenue, 2500 Blaisdell Avenue, and 2530 Blaisdell Avenue.

2. That in December 2004, a Consent Decree was entered in the Eboni and Julius SternJohn case. I was a defendant in that lawsuit, and I agreed to the terms and conditions in that Consent Decree.

3. In January 2005, I hired Marathon Management Company to act as an independent property manager for my properties that were a part of the SternJohn Consent Decree. Marathon Management does not have any familial relationship to me.

4. In early August 2005, Marathon Management temporarily suspended its management activities due to a dispute that arose between us over the non-payment of invoices. Although Marathon Management and I disagreed on the amounts that I owed to them, I nonetheless made a partial good faith payment to Marathon

Management. My understanding is that upon receiving payment, Marathon Management promptly resumed management work at the properties. My understanding is that there was a temporary hiatus of work by Marathon Management of roughly one week, at some point in early to mid August, 2005. I did not personally visit any of my properties during this time frame, and did not make any tenancy-related decisions whatsoever with respect to the properties, consistent with my obligations under the Consent Decree.

5. Also during this time frame, in early August 2005, I learned that one of Marathon Management's employees working on site at my properties had quit her job with Marathon. During the month of August 2005, the parties discussed the salary requirements that I had the ability to pay for with respect to a new Marathon Management employee. My understanding is that Marathon Management continued to manage my properties with one less staff person during this time frame.

6. Marathon Management and I were unable to resolve our differences regarding the partial non-payment of Marathon's outstanding invoices. To Marathon's credit, they released me from my contractual obligations to them, and the parties agreed to mutually terminate the management contract, effective October 7, 2005.

7. In late September 2005, anticipating that Marathon and I would not be able to salvage our business relationship, I spoke to Mr. Steve Nelson, a person who I believed could act as a property manager on an interim basis until I could find and hire another management company, in the event I was unsuccessful in retaining the services of Marathon Management. Mr. Nelson does not have any familial relationship to me.

8. During our meeting in late September 2005, Mr. Nelson told me that he had the ability and availability to manage my properties on an interim basis, in the event that I needed someone to step in on short notice.

9. After the termination of my relationship with Marathon Management, I contacted Mr. Steve Nelson and asked him to act as an interim independent property manager for my properties. I learned at that time that he was out of town for approximately one week on other business. My understanding is that Mr. Nelson began working in this capacity between November 10 and 12, 2005. Again, I did not personally visit any of my properties during this time frame, and did not make any tenancy-related decisions whatsoever with respect to the properties, consistent with my obligations under the Consent Decree.

10. To the best of my knowledge, Mr. Nelson's last date of interim management at the properties was either November 27 or 28, 2005.

10. In late November 2005, I hired Capital D, LLC to act as the independent property manager for my three remaining properties, 2421 Pillsbury Avenue, 2500 Blaisdell Avenue, and 2530 Blaisdell Avenue. The two partners in Capital D, LLC are Mr. Emmanuel Duerson and Mr. Derrik Dyka. Both Mr. Duerson and Mr. Dyka visited the properties during this time frame, and I gave both gentlemen keys and full access to the properties in late November 2005. Neither Mr. Duerson nor Mr. Dyka, or anyone with Capital D, LLC has any familial relationship to me.

11. The management agreement between me and Capital D, LLC was dated December 1, 2005, and my understanding is that Capital D, LLC started on-site management work at the properties shortly thereafter.

12. Since December 2004, I have not made any tenancy-related decisions concerning any of the six properties listed in the Consent Decree. Since that time, I have not made any decisions regarding the approval or rejection of any tenant applications, or decisions involving the negotiation or termination of any tenant leases

for any of the six properties listed in the Consent Decree. Since that time, I have not hired any new employees.

13. As part of the ongoing process of the Consent Decree, I was informed today that the National Fair Housing Alliance has confirmed with Mr. Duerson and made arrangements to train my employees and Capital D, LLC on February 28, 2006.

Further your affiant sayth not.

Robert L. Kreisler, Jr.

Subscribed and sworn to before me this 15th day of February, 2006.

Notary Public

LAURIE A. SCHARDIN
Notary Public
Minnesota
My Commission Expires January 31, 2010