# EXHIBIT 2

LARSON • KING, LLP

**STEPHEN P. LAITINEN**
Attorney at Law
Direct Dial: (651) 312-6517
E-Mail: *slaitinen@larsonking.com*

December 16, 2005

Honorable Janie S. Mayeron
United States Magistrate Judge
United States District Court
District of Minnesota
316 North Robert Street
Room 610
St. Paul, MN 55101

**Re: <u>SternJohn v. Kreisler, Jr., et al.</u>**
**<u>Civil No. 02-842 MJD/JSM</u>**

Dear Magistrate Judge Mayeron:

We represent Mr. Robert L. Kreisler in the above-entitled matter. We have reviewed the December 6, 2005 letter of Cat Cloud of the National Fair Housing Alliance ("NFHA"). It is unfortunate that NFHA did not contact us in advance to discuss some of its concerns prior to writing the Court. Although I have been in personal contact with Ms. Cloud for several months, NFHA's December 6th letter was the very first time that we learned of many of NFHA's alleged concerns.

I write the Court today to respond to NFHA's recent letter, and clarify the status of Mr. Kreisler's continued efforts to comply with the December 8, 2004 Consent Decree.

To begin, NFHA's letter suggests that there was an improper delay between the entry of the Consent Decree and the first contact between Mr. Kreisler's independent management company, Marathon Management, and NFHA. To the contrary, we agreed with SternJohn's counsel as of February 15, 2005 to use NFHA to oversee the Consent Decree compliance. Marathon Management contacted NFHA shortly thereafter, by NFHA's own admission, in March 2005.

NFHA next asserts that it was prohibited from conducting training because NFHA and Mr. Kreisler had not yet finalized a consulting agreement. This argument is disingenuous. To the contrary, the parties agreed from the outset that training would occur. In fact, NFHA neglects to mention that Marathon Management attended fair

housing training sponsored by NFHA on April 20, 2005 without any signed agreement in place. Moreover, on May 31, 2005, Cat Cloud informed me that employee training could not occur from June through August, 2005, because her calendar was "full." See Exhibit 1. On September 7, 2005, Ms. Cloud informed me that training would not occur until December 2005, because her calendar was "packed." See Exhibit 2.

We agreed on December 7, 2005 as a training date for Mr. Kreisler's employees. On November 23, 2005, NFHA unilaterally canceled the training, because of its view that it had no contract with Mr. Kreisler. See Exhibit 3. On November 28, 2005, I told NFHA that Mr. Kreisler had instructed his employees to be available for training on December 7th, and asked NFHA to hold the training on that date. See Exhibit 4. On December 6, 2005, Ms. Cloud informed me that she had been on vacation, and that the scheduled training would have to be re-scheduled for January or February 2006. Id. Ms. Cloud did not inform me that she had apparently drafted and sent a letter to the Court on the same date.

On December 7, 2005, I asked Ms. Cloud to provide me with available dates for employee training in January or February 2006. See Exhibit 5. Ms. Cloud refused to provide me with dates, and finally admitted on December 8, 2005 that she had sent the Court a letter dated December 6, 2005. See Exhibit 6. I asked that Ms. Cloud fax the letter to me immediately. She did not do so. Id.

NFHA next complains that it was prevented from conducting testing on the Properties. Again, from the beginning of our discussions with NFHA, the parties agreed that at least 4 paired tests would occur each year; the unresolved issue was agreeing on whether 4, 6 or 8 paired tests per year was appropriate, based upon the significant costs involved. We never told NFHA that it could not conduct paired tests. Indeed, Marathon Management informed me several months ago that it believed at least one paired test had already occurred. NFHA should confirm for the Court and Mr. Kreisler whether it has sent paired testers to the properties, and the results of such tests.

NFHA next argues that the 2005 Quarterly Reports submitted to NFHA for the 1st, 2nd, and 3rd Quarters do not contain all of the "required" information. NFHA once again fails to inform the Court that NFHA never contacted me at any time during that time frame to inform us that the Quarterly Reports were somehow "deficient." See 1st Quarter Compliance Report, 2005, Exhibit 7; 2nd Quarter Compliance Report, 2005, Exhibit 8; and 3rd Quarter Compliance Report, 2005, Exhibit 9. On November 3, 2005, for the first time, Ms. Cloud asked me if we could revise our compliance reporting schedule, and also asked us to consider some additional reporting information and reporting forms. We agreed to both the amended reporting schedule and to use the additional reporting forms, which have been incorporated into the 4th Quarter Compliance Report, 2005. See Exhibit 10.

During the revised 4th Quarter 2005 reporting period, in the process of settling his divorce, Mr. Kreisler transferred three (3) of his rental properties to his ex-wife, Penny Ream. In October 2005, Mr. Kreisler terminated, by mutual agreement, his business

relationship with Marathon Management; he also hired an independent interim property manager, Steve Nelson; and ultimately hired a new permanent property manager, Capital D, LLC, to act as independent property manager for the three Kreisler-owned properties. Pursuant to the Consent Decree's 90-day reporting cycle, Mr. Kreisler properly reported on and included all of these activities in the 4th Quarter 2005 Compliance Report. See Exhibit 10.

Most important, Mr. Kreisler has confirmed that he has not been involved in making any tenancy-related decisions for his properties since the entry of the Consent Decree in December 2004. See Exhibit 10 (R. Kreisler Affidavit, at ¶ 8). Thus, there is no basis for NFHA's request to extend the life of the Consent Decree by an additional 12 months.

In conclusion, we have already agreed to conduct employee training in January or February 2006. At this juncture, all we ask is that NFHA provide us with available training dates. Mr. Kreisler has properly submitted the required quarterly compliance reports for 2005. We have also provided the Court and NFHA with the additional documentation requested in Ms. Cloud's December 6, 2005 letter.

In our view, NFHA and MMLA are not entitled to reimbursement for "unnecessary" costs, because NFHA and MMLA unilaterally cancelled training sessions after we had informed them that Mr. Kreisler's employees were, in fact, available for training. Had NFHA and MMLA simply complied with our requests, employee training could have occurred as previously scheduled on December 7, 2005.

An award of liquidated damages is equally inappropriate. For the first time, NFHA asserts that Mr. Kreisler has failed to post the Consent Decree and anti-discrimination policy at the Properties. This charge is flatly inaccurate. Both the Consent Decree and the anti-discrimination policy have been posted and available to all tenants at the Properties since March 2005. See Exhibits 7, 8, 9 and 10. If NFHA had a problem with the manner in which these items have been handled, it certainly did not communicate its concerns to us over the last year.

Similarly, Mr. Kreisler has not "unilaterally narrowed" the scope of the Consent Decree. Mr. Kreisler's and Penny Ream's divorce was finalized in Hennepin County District Court in August 2004. Pursuant to that court-approved divorce, Mr. Kreisler and Ms. Ream divided up the couple's assets, and, among other things, Ms. Ream received 3 of the 6 rental properties, or 50%. This law firm did not represent either Mr. Kreisler or Ms. Ream in their divorce and subsequent property and asset settlement.

We greatly appreciate the Court's continued involvement in this matter. We remain at the Court's disposal to discuss these issues in greater detail, as needed.

Respectfully submitted,

**LARSON • KING, LLP**

Stephen P. Laitinen

SPL:las

cc: Cat Cloud, NFHA (w/o enc. exhibits 7-10)
Justin Cummins, Esq. (w/o enc. exhibits 7-10)
Angela Brandt, Esq. (w/o enc.)
Robert Kreisler, Jr. (w/o enc.)

lk#1152764v.3

# EXHIBIT 3

LARSON • KING, LLP

**STEPHEN P. LAITINEN**
Attorney at Law
Direct Dial: (651) 312-6517
E-Mail: *slaitinen@larsonking.com*

December 21, 2005

Honorable Janie S. Mayeron
United States Magistrate Judge
United States District Court
District of Minnesota
316 North Robert Street
Room 610
St. Paul, MN 55101

**Re: SternJohn v. Kreisler, Jr., et al.**
**Civil No. 02-842 MJD/JSM**

Dear Magistrate Judge Mayeron:

We represent Mr. Robert L. Kreisler in the above-entitled matter. We have reviewed the December 19, 2005 letter to the Court from Justin Cummins, Esq., who represents Eboni and Julius SternJohn. On December 16, 2005, I wrote to the Court and supplied several exhibits supporting our position that Mr. Kreisler has complied with the Consent Decree to date. Our brief response to Mr. Cummins' letter follows.

Mr. Cummins' contention that Mr. Kreisler unilaterally "removed" properties in violation of the Consent Decree is misplaced. The Consent Decree, by its express terms, does not run with the six rental properties at issue. See Section II, Consent Decree, Exhibit A. The Consent Decree further provides that "if Defendants sell or transfer any such property via an arms-length transaction with an unrelated third-party, the Consent Decree will no longer apply to that legitimately sold or transferred property." Id. (emphasis added.) Ms. Penny Ream, Mr. Kreisler's ex-wife, was not a defendant in the SternJohn case, and was not named as a defendant for the purposes of the Consent Decree.

Mr. Cummins also contends that Mr. Kreisler was prohibited from reaching a settlement with his ex-wife regarding the division of property assets. This argument ignores the plain language of the divorce decree, which provides that "Husband [Mr. Kreisler] is granted title to all of the rental properties, subject to Wife's [Ms. Ream] lien interests as set forth below." See ¶ 8, Exhibit 5 to Cummins Aff. (emphasis added.) The Decree also provides that Ms. Ream's marital property lien for all six properties "shall be

satisfied upon the sale, refinance, or exchange of said [properties] . . . . " Id. at pp. 13 – 17. Further, the value of Ms. Ream's marital lien was determined as a matter of law to equal one-half, or 50%, of the equity interests in all six properties. Id.

Under the United States Constitution, Mr. Kreisler remains free to divest himself from ownership of any or all of his properties. The Consent Decree does not conflict with that fundamental concept. Mr. Kreisler and Ms. Ream's divorce was finalized in August 2004. See Exhibit 5, J. Cummins Aff. The parties' subsequent settlement and division of property assets in the fall of 2005, in accord with the Hennepin County divorce decree, constituted an arms-length transaction, and Ms. Ream, at the time of that property transfer, was an unrelated third-party. Therefore, Mr. Kreisler did not violate the Consent Decree. Ms. Ream is arguably not even subject to the Consent Decree, given that she is no longer legally married to Mr. Kreisler.

We have previously explained why the initial and first annual trainings did not occur with NFHA, given NFHA scheduling conflicts. Mr. Cummins' charge that Mr. Kreisler did not timely or adequately submit quarterly reports is interesting, given that he never bothered to contact us about not receiving a copy of the 2nd and 3rd Quarter 2005 Compliance Reports, which were submitted to NFHA. Once Mr. Cummins recently brought this oversight to my attention, I promptly sent him copies of the 2nd and 3rd Quarter Reports that had been previously submitted to NFHA. Significantly, Mr. Cummins does not deny that he received the 1st Quarter 2005 Report, and does not explain why he never contacted us at any time in 2005 regarding Mr. Kreisler's alleged non-compliance with the content of that Report. Much like the majority of Ms. Cloud's assertions, Mr. Cummins' December 19th letter was the first time that we learned of his alleged concerns about the content of the 2005 Compliance Reports.

Mr. Cummins' claim that the 2005 Compliance Reports were missing material data is extremely disingenuous. We submitted the 1st, 2nd, and 3rd Quarter 2005 Compliance Reports to NFHA, without any complaint or comment from NFHA until November 3, 2005, when NFHA asked us to include additional reporting information. See Exhibit B. Once again, we agreed to provide such data, and did so, beginning with the 4th Quarter Compliance Report.

Regarding Mr. Cummins' final argument, that Mr. Kreisler failed to hire an independent management company, we have previously provided the Court with the executed management agreement between Mr. Kreisler and Capital D, LLC, the current independent management company, as well as Mr. Kreisler's sworn affidavit. Mr. Kreisler has confirmed that he has no familial connection whatsoever with Marathon Management, Capital D, LLC, or the interim property manager, Steve Nelson, that he hired for some weeks between the tenure of Marathon Management and Capital D, LLC.

Both we and Marathon Management have confirmed for Mr. Cummins that the business relationship between Marathon Management and Mr. Kreisler was terminated on October 7, 2005. See Exhibit 1, J. Cummins Aff.

In conclusion, Mr. Kreisler has complied with the 90-day compliance reporting cycle set forth in the Consent Decree for 2005. We agreed with NFHA as of November 15, 2005 to include additional information to NFHA for future quarterly compliance reports, per NFHA's November 3, 2005 letter. See Exhibit B. We are disappointed that both Mr. Cummins and NFHA have adopted an adversarial stance to what we view as a joint effort to ensure compliance with the Consent Decree.

We respectfully request that the Court enter an order confirming that the three properties that Mr. Kreisler transferred to his ex-wife Penny Ream in order to partially satisfy her valid lien interests in said properties constituted a valid property transfer, pursuant to the Hennepin County divorce decree judgment, and that those properties are no longer Mr. Kreisler's responsibility with respect to future Consent Decree compliance.[1]

We respectfully request that the Court deny Mr. Cummins' and NFHA's request for liquidated damages, fees and costs, which is not warranted. Mr. Kreisler has confirmed under oath that he has had no involvement in tenancy-related decisions at the six properties since the entry of the Consent Decree in December 2004. Mr. Kreisler has complied with the requirements of the Consent Decree to date, and will continue to work with both NFHA and Mr. Cummins in the future in the good faith effort to achieve compliance.

As I stated in my prior letter, we remain at the Court's disposal to discuss these matters further, if the Court deems such discussion necessary.

Respectfully submitted,

**LARSON • KING, LLP**

Stephen P. Laitinen

SPL:las

cc: Cat Cloud, NFHA (w/ enc.)
Justin Cummins, Esq. (w/ enc.)
Angela Brandt, Esq. (w/o enc.)
Robert Kreisler, Jr. (w/o enc.)

lk#1152764v.3

[1] Ms. Ream's properties are located at 2124 Garfield Avenue, 424 West 24th Street, and 123-131 West 26th Street, all in Minneapolis, Minnesota.