UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

EBONI STERNJOHN, et al., CIVIL NO. 02-842 (MJD/JSM)

Plaintiff,

v. ORDER

ROBERT L. KREISLER, JR., et al.,

Defendants.

JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came on before the undersigned upon plaintiffs' Motion for Relief from Contempt of the Governing Consent Decree. [Docket No. 167]. Per agreement of the parties, this motion was submitted to the Court in writing. Justin Cummins, Esq. appeared on behalf of plaintiffs; Stephen Laitenen, Esq. appeared on behalf of defendants.

The Court, upon all of the files, records, proceedings herein, and for the reasons stated forth on the record now makes and enters the following Order.

IT IS HEREBY ORDERED that plaintiffs' motion is GRANTED in part and DENIED in part, as follows:

1. The Consent Decree [Docket 160] shall be in force until December 8, 2010.
2. The defendants remain obligated to insure that Penny Ream is not involved in tenant-related decisions with respect to 2124 Garfield Avenue,

Minneapolis; 424 West 24th Street, Minneapolis; and 123-131 West 26th Street, Minneapolis.

3. Defendant Robert Kreisler shall pay to plaintiffs on or before August 7, 2006, the following amounts:

   a. $8104.32 for attorneys fees and costs incurred in enforcing Sections II and VI of the Consent Decree.

   b. $ 5000 as liquidated damages.

Dated: July 7, 2006

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

**Memorandum**

Plaintiffs have brought a motion asking this Court to find the Kreisler defendants[1] in contempt for their violation of certain provisions of the Consent

[1] It is somewhat confusing as to whom the plaintiffs are seeking to find in contempt and from whom they are seeking relief. On the one hand, the named defendants in the caption of the Consent Decree are Robert L. Kreisler, Jr. a/k/a Bob Peterson, a/k/a Robert Peterson, d/b/a Kreisler Real EstateCompany, d/b/a Whittier Real Estate Company, d/b/a KT Properties Community Apartments, d/b/a Whittier Community Apartments, d/b/a Bristol Apartments, and throughout the body of the pleading, they are collectively referred to as "the defendants." On the other hand, the Consent Decree was signed only by Robert Kreisler, and in plaintiffs' moving papers, they only appear to seek relief against Robert Kreisler. However, just as the defendants have assumed in their submission that plaintiffs are seeking relief against all defendants, so too will this Court. Therefore, unless plaintiffs clarify otherwise, this Court's Order will be directed to Robert L. Kreisler, Jr. a/k/a Bob Peterson, a/k/a Robert Peterson, d/b/a Kreisler Real EstateCompany, d/b/a Whittier Real Estate Company, d/b/a KT Properties Community Apartments, d/b/a Whittier Community Apartments, d/b/a Bristol Apartments (collectively referred to as "the Kreisler defendants".)

Decree filed in this matter on December 10, 2004, [Docket No. 160], and to award certain relief to plaintiffs for these violations. Specifically, plaintiffs claim that the Kreisler defendants violated the provisions of the Consent Decree that required fair housing training of all employees and agents of defendants, and periodic undercover testing of the properties covered by the Consent Decree. See Consent Decree, Sections VI, XI. In addition, plaintiffs assert that the Kriesler defendants violated Section II of the Consent Decree by unilaterally removing three properties[2] from the coverage of the Decree, and by failing to provide proper notice of such act. As relief for defendants' violations, plaintiffs seek: (1) an award of $8392.32 for attorneys fees incurred in enforcing their rights under the Consent Decree; (2) $6,488.00 for the costs incurred by National Fair Housing Alliance ("NFHA"), the monitoring agency designated by the Court, for their efforts in enforcing the requirements of the Decree related to training and testing; (3) liquidated damages in the amount of $5,000 for each violation of Section II of the Decree; and (4) an extension of the Consent Decree for an additional year.[3]

The Kreisler defendants have no objection to extending the Consent Decree for an additional year. Thus, the Consent Decree shall be in force for six

---

[2] The three properties which are the subject of the motion are: 2124 Garfield Avenue, Minneapolis; 424 West 24th Street, Minneapolis; and 123-131 West 26th Street, Minneapolis.

[3] Under Section I of the Consent Decree, the parties agreed that it would be in force for five years from the date on which it was fully executed. As the last person to execute the Consent Decree was the Honorable Michael J. Davis on December 8, 2004, under Section I the Consent Decree is currently in force until December 8, 2009.

years from the date it was fully executed, or until December 8, 2010. However, as to the balance of plaintiffs' motion for contempt, the Kreisler defendants argue that an award of costs and fees are not warranted because they made reasonable attempts to undergo training and NFHA could have performed testing at any time, and Kreisler's transfer of three properties to his ex-wife, Penny Ream, was proper and did not constitute a unilateral narrowing of the Consent Decree.

The relevant terms of the Consent Decree are as follows:

> **II. Scope of the Consent Decree**
>
> Each and every provision of the Consent Decree shall apply to each and every one of Defendants' Minnesota rental properties that Defendants' own at any time during the life of the Consent Decree. Defendants warrant that their Minnesota properties, as of the full execution of the Consent Decree, are as follows: 2124 Garfield Avenue, Minneapolis; 424 West 24th Street, Minneapolis; 2421 Pillsbury Avenue, Minneapolis; 2500 Blaisdell Avenue, Minneapolis; 123-131 West 26th Street, Minneapolis; and 2530 Blaisdell Avenue, Minneapolis. Defendants shall, in connection with the reporting requirements set forth below in Part IX, promptly report any changes in properties covered by the Consent Decree. The Consent Decree does not run with the aforementioned properties; therefore, if Defendants sell or transfer any such property via an arms-length transaction with the unrelated third-party, the Consent Decree will no longer apply to that legitimately sold or transferred property.
>
> **IV. Removal of Operational Authority**
>
> Upon full execution of the Consent Decree and for the life of the same, Defendant Robert Kreisler and his spouse, Penny Ream, shall be prohibited from making any tenancy-related decisions concerning any Minnesota rental properties, including, but not limited to, whether to approve or reject a tenant application and whether to end or not to end a tenant's lease. Defendant Kreisler and Ms. Ream may have continuing involvement in the capital maintenance issues for the properties covered by this Consent

Decree consistent with the management agreement to be executed and subject to Court review and supervision.

## V. Independent Management Company

Within sixty (60) days of full execution of the Consent Decree and for the life of the same, Defendant shall contract with an independent management company to handle tenancy-related decisions concerning all of Defendants' Minnesota rental properties. The independent management company shall have no familial connections whatsoever to Defendant Kreisler. Defendants shall pay all costs associated with the use of an independent management company.

## VI. Fair Housing and Diversity Training

Within sixty (60) days of the full execution of the Consent Decree, Defendants and each and every person who is an employee or otherwise an agent of Defendants regarding tenant issues, shall attend a comprehensive training on fair housing and a separate comprehensive training on the value of diversity. Defendants' new hires shall receive such training within thirty (30) days of hire. All employees and agents, identified above in Part VI, shall attend annual fair housing and diversity trainings during the life of the Consent Decree. The Court, with input from Plaintiffs' counsel, shall approve the fair housing and diversity programs and trainers provided by the National Fair Housing Alliance. Defendants shall pay all costs associated with the trainings.

## IX. Compliance Reporting

For the life of the Consent Decree, and subject to the provisions set forth above in Part II, Defendants shall submit a written report on a quarterly basis to an independent housing agency, the National Fair Housing Alliance, and to Plaintiffs' counsel regarding each and every one of Defendants' Minnesota rental properties. These reports shall identify all properties owned by Defendants as well as provide clear proof of compliance with the publication, management, training, policy, and marketing requirements set forth above in Parts III through VIII of the Consent Decree. These reports shall also provide complete and accurate reporting of the racial background of tenant applicants and tenants, complete and accurate rent rolls, and complete and accurate repair and renovation records by apartment. Defendants shall pay all costs associated with this reporting and monitoring of the same.

**XI. Fair Housing Testing**

> For the life of the Consent Decree, each of Defendants' Minnesota rental properties may be subjected to periodic, undercover fair housing testing by an independent housing agency, the National Fair Housing Alliance. Defendants shall pay all costs associated with the fair housing testing.

**XII. Liquidated Damages**

> For each violation of the Consent Decree, Defendants shall pay $5,000.00 in liquidated damages to Plaintiffs by making payment to Plaintiffs' counsel. Defendants shall pay all costs associated with any actions to enforce the Consent Decree.

Having reviewed the submissions of plaintiffs and the Kreisler defendants, the Court concludes that the Kreisler defendants have violated Sections II and VI of the Consent Decree and are entitled to relief for these violations, but have not violated Section XI of the Decree.

## I. Transfer of Properties

In August 2004, Kreisler and his spouse, Penny Ream, were divorced. Pursuant to the Findings of Fact, Conclusions of Law, Order for Judgment, and Judgment and Decree ("Divorce Decree") governing the dissolution, Kreisler was awarded title to six different properties, including 2124 Garfield Avenue, 424 West 24th Street, and 123-131 West 26th Street, and Ream was given a marital lien interest equal to 50% of the equity interest in the properties. Cummins Aff., Ex. 11, at pp. 12-18. The Divorce Decree also required that certain minimum total payments be made to Ream on these marital liens, and required Kreisler to hold Ream harmless and indemnify her from any liability relating to each property, including any lawsuits relating to the past, present or future use of the property. Id.

On December 6, 2004, Kreisler signed the Consent Decree, which governs the six different properties, including 2124 Garfield Avenue, 424 West 24th Street, and 123-131 West 26th Street. The Consent Decree states that the terms of the Decree will continue to be applied to these properties, unless they are transferred "via an arms-length transaction" to an unrelated third-party. See Consent Decree, Section II. In addition, the Consent Decree prohibits Kreisler and his spouse, Penny Ream, from "making any tenancy-related decisions concerning [these] properties," while at the same time, permits them to "have continuing involvement in the capital maintenence issues for the properties." See Consent Decree, Section IV. The Consent Decree also requires defendants to "promptly report any changes in properties covered by the Consent Decree." See Consent Decree, Section II.

In October 2005, pursuant to a Stipulated Order to Amend Findings of Fact, Conclusions of Law, Order for Judgment, and Judgment and Decree ("Amended Divorce Decree") Kreisler transferred to Ream, via quit claim deeds, title to 2124 Garfield Avenue, 424 West 24th Street, and 123-131 West 26th Street to satisfy his obligations to her under the marital liens. See Laitinen Aff., Exs. 10, 12.[4] There is nothing in the quit claim deeds or in the Amended Divorce Decree to suggest that Kreisler placed any restriction on Ream's ability to make tenant-related decisions in connection with these properties, nor have the parties presented any evidence to the Court to suggest that such a restriction was put on

[4] The quit claim deeds included in Laitinen Exhibit 12 were all for the Garfield property. However, based on the cover letter attached to the quit claim deeds, and the representations of the parties, the Court assumes that quit claim deeds were indeed executed for all three properties.

Ream. However, Kreisler did agree to continue to hold Ream harmless and indemnify her from any liabilities arising out of the ownership of these properties, including any liabilities relating to any provisions of the Consent Decree. See Laitinen Aff., Exs. 10, ¶ 4.

On December 5, 2005, defendants' counsel notified plaintiffs' counsel that Kreisler was conveying the three properties to Ream. Cummins Aff., Ex. 5.

The Court finds that Kreisler violated the Consent Decree by conveying the properties to Ream, a person who cannot under any interpretation of the Consent Decree be deemed to be an unrelated third-party, particularly where she, along with Kreisler, is expressly precluded from making any tenancy-related decisions concerning these properties. The Kreisler defendants' argument that Ream, by her status as an ex-spouse, is unrelated third-party is of no avail. See Defs.' Mem. at 7. Ream was already Kreisler's ex-spouse when he signed the Consent Decree and agreed that she would not have any responsibility for making tenancy-related decisions concerning these properties, including whether to approve or reject a tenant applications and whether to end or not to end a tenant's lease. Thus, while there was nothing to prevent Kreisler subsequent to his divorce in 2004 from transferring these properties to Ream in 2005 to satisfy her marital liens on the properties, his obligations under the Consent Decree – i.e. to insure that she did not participate in any tenancy-related decisions – did

not end by the transfer.[5] He remains liable to this day under the Consent Decree to make sure that she makes no tenant-related decisions.[6]

In summary, this Court finds that the Kreisler defendants have violated Section II of the Consent Decree, they remain obligated to insure that Ream is not involved in tenant-related decisions on the three properties, and that plaintiffs are entitled to liquidated damages and the costs of enforcing the Decree. The amount of liquidated damages and costs to be awarded to plaintiffs is addressed in Section IV below.

## II. <u>Training</u>

Section VI of the Consent Decree required that within sixty days of its execution, every employee or agent of the Kreisler defendants must undergo comprehensive training on fair housing and on the value of diversity. In addition,

---

[5] The Kreisler defendants also appear to argue that somehow the Divorce Decree <u>required</u> Kreisler to transfer the properties to Ream to satisfy his obligations on the marital lien. Having reviewed both the Divorce Decree (Cummins Aff., Ex. 11) and the Amended Divorce Decree (Laitinen Aff., Ex. 10), this Court finds there is nothing in either document which mandated the transfer of the three properties to Ream. Rather, the Amended Divorce Decree makes clear that the parties voluntarily agreed to amend the Divorce Decree to "allow Husband to transfer title to [the] properties in satisfaction of the marital liens and satisfaction of the minimal payments required by the Decree." Laitinen Aff., Ex. 10, at 2.

[6] Plaintiffs also argued that defendants violated the Consent Decree by not promptly reporting the transfer of title to these properties to Ream. <u>See</u> Plts.' Mem. at 6. This claim is rejected. Pursuant to Sections II and IX, the Kreisler defendants were required to report any changes in the properties covered by the Consent Decree in their quarterly compliance reports. The actual transfer of the properties from Kreisler to Ream took place on October 6, 2005. Laitinen Aff., Ex. 10. Thus, defendants were obligated to include the transfer of the properties in their December 2005 quarterly report. As plaintiffs were notified of the transfer of the properties on December 5, 2005, (<u>see</u> Cummins Aff., Ex. 5), this Court finds that there was no violation of the Consent Decree.

all new hires of the Kreisler defendants were required to receive such training within thirty days of hire, and all Kreisler employees and agents were required to attend annual fair housing and diversity trainings during the life of the Consent Decree. As of the date of the submission of this motion for contempt to the Court, no training of any sort of defendants' employees had taken place.[7]

The parties offered a variety of explanations as to why no training of defendants' employees had taken place. For example, plaintiffs state that it was defendants' failure to enter into a contract until September 2005 with NFHA, the agency responsible for training and testing, along with defendants' refusal to make their employees available for training, that caused the delay in training. See Plts.' Mem. at 3-4. In response, the Kreisler defendants contend that the training did not occur because of NFHA's own scheduling conflicts.[8] See Defs.' Mem. at 4-6. However, what is not disputed is that no training of any sort of defendants' employees had occurred by February 10, 2005, as dictated by the Consent Decree.

The Consent Decree is clear. Training of defendants' employees was to have taken place by February 8, 2005. Commencement of training was not contingent on execution of a contract with NFHA, or the finalization of schedules

---

[7] The fact that training of the employees of the independent management company had occurred in April 2005, is of no consequence. See Defs.' Mem. at 4-5. The issue presented by plaintiffs' motion for contempt is whether the employees of the Kreisler defendants were trained as required by the Consent Decree.

[8] The Court notes that the Kreisler defendants outlined various scheduling issues that NFHA had from May 2005 through early December 2005. See Defs.' Mem. at 5-6. However, defendants offered no explanation as to why no training had taken place prior to February 8, 2005, as dictated by the Consent Decree.

between the Kreisler defendants and NFHA. It was up to the Kreisler defendants to comply with Section VI, or to seek a modification of the provision if they were having difficulty meeting its requirements. Having failed to comply with Section VI, pursuant to Section XII, plaintiffs are entitled to the costs incurred in enforcing the terms of the Decree.[9] The amount of costs to be awarded to plaintiffs is addressed in Section IV below.

## III. Periodic Testing

Section XI of the Consent Decree requires that each of the Kreisler defendants' properties undergo periodic undercover fair housing testing by NFHA. The Consent Decree did not state how often this testing should occur.

According to plaintiffs, the testing did not take place because the Kreisler defendants stalled in signing a contract with NFHA until September 2005. See Plts.' Mem. at 3. In opposition, the Kreisler defendants contend that the parties had agreed that at least four paired tests would take place each year; the unresolved issue was whether there should be more tests (six or eight). Defs.' Mem. at 6. In addition, defendants argue that nothing prevented the NFHA from conducting the testing while the parties were reaching an agreement on the total number of tests to be conducted on a yearly basis. Id.

The Court concludes that there has been no violation of Section XI of the Consent Decree. Like training, commencement of the testing was not contingent on execution of a contract with NFHA. While it was understandable that NFHA would have liked to have had a contract in place before it commenced any

---

9 Plaintiffs did not seek liquidated damages for violation of Section VI.

testing, the fact is that with or without a contract, NFHA could have conducted testing without the Kreisler defendants' consent or participation, and pursuant to the Consent Decree, billed defendants for the costs associated with the testing. See Consent Decree, Section XI. Thus, the Court concludes that the testing required by the Consent Decree did not occur because of the conduct of the Kreisler defendants.

## IV. Award of Liquidated Damages and Costs of Enforcement

This Court has determined that the Kreisler defendants have violated Sections II and VI of the Consent Decree. Consequently, pursuant to Section XII, plaintiffs are entitled to an award of liquidated damages for defendants' violation of Section II and the costs associated with their actions to enforce Sections II and VI of the Consent Decree.

In support of their claim for liquidated damages, plaintiffs assert that they are entitled to an award of $5000 for each day that the Kreisler defendants have acted on their position that the Consent Decree no longer governs the three properties transferred to Ream. See Pltfs.' Mem. at 4-5. This Court disagrees. While plaintiffs are entitled to an award of liquidated damages for their violation Section VI of the Consent Decree, the Court finds that the violation was a one-time occurrence – when the Kreisler defendants transferred the three properties to Ream without placing any restriction on her ability to make tenant-related

decisions. Thus, this Court will award $5000 to plaintiff as liquidated damages for the Kreisler defendants' violation of Section VI of the Consent Decree.[10]

In support of their claim for reimbursement of costs associated with enforcement of the Consent Decree, plaintiffs sought an award of $576.00 for the attorney fees and costs expended to enforce the training and testing provisions of the Decree, $6,488.00 for the costs incurred by NFHA for their efforts to enforce the requirements of training and testing, and $7,816.32 for attorneys fees incurred in enforcing Section II of the Consent Decree.

As plaintiffs were successful in enforcing the training provision of the Consent Decree, but were not victorious in enforcing the testing provisions of the Decree, this Court will award plaintiffs half of their request, i.e. $288, for the attorney fees and costs incurred in connection with their enforcement of the training provision of the Consent Decree. In addition, this Court will award plaintiffs $7,816.32 for the attorneys fees and costs they incurred in connection with their successful enforcement of Section II of the Consent Decree. In making this award of attorney fees and costs, this Court finds that the services provided and attorney fees and costs charged by plaintiffs' counsel were appropriate and reasonable.

As for plaintiffs' request that this Court award $6,488.00 to NFHA for their efforts in enforcing the Decree's requirements related to training and testing, that request is denied. First, it is denied because the request seeks reimbursement

---

[10] This determination on liquidated damages does not preclude plaintiffs from seeking additional relief from the Court to enforce the Kreisler defendants' continued obligation to comply with Section VI of the Consent Decree with respect to the three properties transferred to Ream.

for costs related to the testing provision of the Consent Decree, which this Court has determined was not violated by the Kreisler defendants. Second, the request for reimbursement by NFHA is denied because it was not supported by the evidence presented to this Court.

In support of NFHA's request, plaintiffs submitted the Affidavit of Cathy Cloud, Vice President of NFHA. In that Affidavit, Cloud stated:

> Because of the delays [in signing contract, training and testing], I had to cancel two training sessions with the subcontracting fair housing organization in Minnesota, the Housing Discrimination Law Project, which was to conduct testing for fair housing violations at the subject properties. Because of multiple cancellations and rescheduling, NFHA had incurred approximately $6,488.00 in unnecessary costs. Attached as Exhibit 6 is a true and correct copy of NFHA's accounting of costs.

Cloud Aff., ¶ 9. As evident from this paragraph, to the extent that NFHA was seeking reimbursement for costs associated with the canceling of the training sessions of the organization that was to conduct the testing, NFHA is not entitled to an award of these costs because this Court has determined that NFHA could have gone forward with testing and billed the Kreisler defendants for these costs.

More critically, while this Court does not doubt that NFHA expended time and effort in setting up training, Exhibit 6 to the Cloud Affidavit – which appears to be a listing of various overhead expenses incurred by NFHA as of September and December 2005 – simply does not provide this Court with adequate information to make an independent assessment as to the propriety and reasonableness of the expenses incurred. For example, this Court has no way of evaluating whether NFHA's claim for "employee benefits," "overhead" or "G & A" are appropriate or reasonable, much less how they are related to enforcement of

Section VI of the Consent Decree or even the cancellation and rescheduling of training sessions.

In conclusion, as a consequence of their violation of the Consent Decree, the Kreisler defendants shall pay the following to plaintiffs: $8104.32 for attorneys fees and costs incurred in enforcing Sections II and VI of the Consent Decree, and $5000 as liquidated damages.

J.S.M.