UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Eboni SternJohn and Julius SternJohn,

Plaintiffs,

vs.

Robert L. Kreisler, Jr., a/k/a Bob Peterson a/k/a/ Robert Peterson, d/b/a Kreisler Real Estate Company, d/b/a Whittier Real Estate Company, d/b/a KT Properties Partnership L.L.P., d/b/a Whittier Community Apartments, d/b/a Bristol Apartments; Solar Partnership, a/k/a Solar Partnership, L.L.P., a/k/a Solar Partnership I, L.L.P., a/k/a Solar Partnership III, L.L.P., a/k/a Solar Partnership IV, L.L.P., d/b/a Solar Corporation; and Larry Hopenfspirger, d/b/a Hopfenspirger Realty, Inc.,

Defendants.

Civil No. 02-842 (MJD/JSM)

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR ALTERATION OR AMENDMENT, OR, ALTERNATIVELY, FOR CLARIFICATION OF THE COURT'S JULY 7, 2006 ORDER**

---

## INTRODUCTION

Defendants Robert L. Kreisler, Jr., a/k/a Bob Peterson a/k/a/ Robert Peterson, d/b/a Kreisler Real Estate Company, d/b/a Whittier Real Estate Company, d/b/a KT Properties Partnership L.P., d/b/a Whittier Community Apartments, d/b/a Bristol Apartments ("Kreisler") file this motion with the Court under Federal Rules 52 (b), 59 (e) and 60 (b) (6) to seek an alteration or amendment, or in the alternative, a clarification of the Court's Order dated July 7, 2006.

This matter was initially brought before the Court by Plaintiffs, seeking relief and sanctions under the Consent Decree entered in this matter in December 2004. After two preliminary and procedural telephonic conferences with the Court, the parties consented to the Court's jurisdiction under Federal Rule 73. The parties agreed to present the Plaintiffs' request for relief to the Court via written submissions. On July 7, 2006, the Court issued its Order.

The Court ruled, consistent with Kreisler's prior consent, that the Consent Decree shall be in force until December 8, 2010. (Court's July 7, 2006 Order ("Order") at ¶ 1.) The Court also ordered Kreisler to pay to Plaintiffs, on or before August 7, 2006, $8,104.32 in attorneys fees and costs in enforcing Sections II and VI of the Consent Decree, and $5,000.00 in liquidated damages. (Court's Order at ¶ 3.) Kreisler does not challenge paragraphs 1 or 3 of the Court's Order.

However, Kreisler does take significant issue with paragraph 2 of the Court's Order, wherein the Court ruled:

> *2. The defendants remain obligated to insure that Penny Ream is not involved in tenant-related decisions with respect to 2124 Garfield Avenue, Minneapolis; 424 West 24th Street, Minneapolis; and 123-131 West 26th Street, Minneapolis.*

Three points are in order: (1) Ms. Ream owns the above three properties, not Kriesler, pursuant to a legitimate property transfer; (2) the Consent Decree runs with Mr. Kreisler, and not the properties; and (3) if Ms. Ream is obligated by the Consent Decree, she should be responsible for her own actions. Respectfully, the Court's ruling is contrary to established law and would require Mr. Kreisler,

among other things, to interfere with the property rights of Ms. Ream. Irrespective of the Court's interpretation of the Consent Decree, Mr. Kreisler has neither the legal right nor the practical ability to control what his ex-wife either does or does not do with her three owned properties.

As a preliminary matter, Defendants are concerned about the scope of Kreisler's particular action that the Court has found to be a violation of the Consent Decree. The Order indicates that "Kreisler violated the Consent Decree by conveying the properties to Ream, a person who cannot under any interpretation of the Consent Decree be deemed to be an unrelated third-party." (Order at p. 8). The Court later goes on to assert "while there was nothing to prevent Kreisler subsequent to his divorce in 2004 from transferring these properties, his obligations under the Consent Decree – i.e. to insure that she did not participate in any tenancy-related decisions – did not end by the transfer. He remains liable to this day under the Consent Decree to make sure she makes no tenant-related decisions." (Order at p. 8-9). Kreisler disagrees that he is "liable to this day" for the actions of his ex-spouse, who is unrelated to him as a matter of law, as to legally transferred properties. See Fed. R. Civ. Pro. 73 (c).

It is unclear whether the Court has concluded that the transfer of the properties themselves violated the Consent Decree, or whether the failure to control Ms. Ream's actions with respect to her legally-owned properties is the violation. The Memorandum states: "In Summary, the Court finds that the Kreisler defendants have violated Section II of the Consent Decree." (Order at p.

9). However, Section II of the Consent Decree does not require Defendants to do anything; it simply defines the scope of the Decree, with potential contingencies included. Indeed, an equally plausible interpretation of the Consent Decree is that Kreisler is prohibited from making tenant-related decisions over his owned properties, and that he must be certain that his ex-spouse Penny Ream does the same thing with respect to Kreisler's owned properties. In addition, Mr. Kreisler cannot make tenant-related decisions over any Minnesota properties, including Ms. Ream's owned properties. However, the Court has taken this one step further, and in Kreisler's view, impermissibly so.

If the Court views Penny Ream as a person subject to the Consent Decree, then the Court should order her to be responsible for her own actions with respect to her three owned properties. Or, alternatively, the Court can order that Ms. Ream's properties are not subject to the Consent Decree, and that Mr. Kreisler has no obligation to control the actions of his ex-spouse regarding these three properties.

Additionally, there is an inherent conflict between the Court's Order and the supporting Memorandum. While the Order states Defendants remain obligated to insure Penny Ream is not making tenant-related decisions, the Memorandum states that the violation of the Consent Decree "was a one-time occurrence – when the Kreisler defendants transferred the three properties to Ream without placing

any restriction on her ability to make tenant-related decisions."[1] (Order at p. 12-13). If this action is indeed a one-time occurrence, Kreisler should not be exposed to additional liability under the Consent Decree unless additional properties are conveyed to Ms. Ream. Given Plaintiffs' counsel's apparent surprise at the direction the Court took with paragraph 2 of its Order,[2] Mr. Kreisler can not be faulted for believing he had no ongoing obligation with respect to properties he legally transferred to Ms. Ream. Under the Court's current framework, Mr. Kreisler will either be arguably violating Ms. Ream's property rights by preventing her from making tenancy-related decisions, or he will be perpetually exposed to liability under the Consent Decree.[3]

---

[1] Here, the Memorandum refers to the transfer of properties, but cites a violation of Section VI of the Consent Decree. Section VI is the provision for Fair Housing and Diversity Training. Defendants assume the Court actually meant to reference Section IV of the Consent Decree.

[2] When the parties recently discussed the Court's July 7, 2006 Order, Plaintiffs' counsel conceded that Plaintiffs had not requested the relief set forth in Paragraph 2 of the Court's Order.

[3] The Court is reminded that Mr. Kreisler paid the two SternJohn Plaintiffs $525,000.00 to settle this matter, and has settled the companion U.S. v. Kreisler case with the United States Government and the 30 aggrieved parties in that matter for $575,000.00. Krielser is also incurring thousands of dollars in fees annually from the independent management company, and will be required to pay the National Fair Housing Alliance thousands of dollars over the next 5 years to provide training and monitor his actions.

## ARGUMENT

### I. KREISLER SHOULD NOT BE REQUIRED TO MONITOR THE ACTIONS OF PENNY REAM REGARDING PROPERTIES FOR WHICH HE HAS NO LEGAL INTEREST.

#### A. The Transfer of Property to Penny Ream was an Arm's Length Transaction with an Unrelated Third-Party.

Courts have held that transactions between former spouses, pursuant to divorce proceedings, are considered "arm's length transactions." See Meisner v. U.S., 133 F.3d 654, 657 (8th Cir. 1998) (holding that divorce transfers are akin to negotiated arms-length transactions between adversaries, not displays of generosity); Wick v. Wick, 481 P.2d 298, 302 (Ariz. Ct. App. 1971) (where parties are living separately and both sides are representing their own interests, divorce settlement was both legally and literally an 'arms length' transaction) Harding v. IRS, 11 T.C. 1051, 1055 (transfer of money to spouse in exchange for mutual releases of any claim against property of the other was an arm's length transaction). Ms. Ream was represented by her own counsel in the divorce proceedings. The transfer of properties was a negotiated settlement to satisfy Ms. Ream's marital lien. Ms. Ream assumed full responsibility for the capital gains upon the subsequent sale of the properties. There is nothing to indicate the transfer was anything other than an arm's length transaction.

The Memorandum attached to the Court's Order states that Penny Ream "cannot under any interpretation of the Consent Decree be deemed to be an unrelated third-party." The only interpretation offered by the Court is its casual

dismissal of Kreisler's position as lacking merit. (Order at p. 8.) To the contrary, under Minnesota law, Ms. Ream is an unrelated third party.[4] A *relative* is someone interconnected through *blood* or *marriage* with another. Mickelson v. Am. Fam. Mut. Ins. Co., 329 N.W.2d 814, 816 (Minn. 1983). At the time of the transfer of properties, Mr. Kreisler and Ms. Ream were *neither*. The Court apparently concedes that Mr. Kreisler and Ms. Ream were legally divorced at the time of the property transfer, and the Court also accepts that there is no evidence that the three Ream properties are anything other than "legitimately sold or transferred" properties.

Mr. Kreisler legally transferred the properties to Ms. Ream to satisfy her marital lien.[5] The parties negotiated this arms-length transaction after the divorce was finalized. The Consent Decree runs with Mr. Kreisler, not with the subject properties. Mr. Kreisler cannot exert any control over an unrelated ex-spouse regarding properties that he has no legal interest in. As such, Kreisler asserts that the Consent Decree requires nothing further of him with respect to the three properties transferred to Ms. Ream. See Section II, Consent Decree.

---

[4] The Consent Decree does not define "unrelated third-party," so the parties and the Court must use the plain meaning of the term.

[5] At page 9, footnote 5 of its Order, the Court posits that Kreisler was not legally "required" to transfer the three Ream properties to her. True enough; but Kreisler was referring to a practical requirement, not necessarily a legal one. Kreisler did not have the liquid assets to fully satisfy Ream's marital lien, and turning over some or all of his properties were his only viable options.

### B. Kreisler Did Not Agree to Indemnify Ream for Her Own Actions After the Transfer of Properties.

The Court mistakenly found that Mr. Kreisler agreed to continue to hold Ms. Ream harmless and indemnify her after the transfer of the properties. The Divorce Decree does indeed contain an indemnify provision. However, the indemnity provision expressly states that "husband shall continue to hold wife harmless and indemnify wife from any liabilities in relation to the ownership of said property, ***up to the time of transfer of these assets***." (Emphasis added.) There certainly was ***no*** agreement that Mr. Kreisler would indemnify and hold Ms. Ream harmless for her own actions following the transfer of the properties, in perpetuity. Any contrary interpretation conflicts with the plain language of the Amended Order, not to mention the spirit and intent of the Divorce Decree.

To date, there has been no ruling by this Court that Penny Ream is bound by the Consent Decree. Mr. Kreisler reads the Consent Decree to preclude him from making any tenant-related decisions at any Minnesota properties that Kreisler owns, and also precludes Ms. Ream from making any tenant-related decisions at properties Kreisler owns. As previously explained, Kreisler cannot control what Ms. Ream does at properties he does not own and for which Mr. Kreisler has no legal interest. Indeed, if the Court is either prohibited from or refuses to enforce the Consent Decree against Ms. Ream, how can Mr. Kreisler be expected to do so?

Kreisler respectfully requests that the Court amend its July 7, 2006 Order to reflect that Defendants will not be held liable for the actions of Penny Ream, or others over whom Mr. Kreisler has no control. See Proposed Order.

## II. IF THE COURT DOES NOT AMEND THE ORDER, IT SHOULD PROVIDE CLARIFICATION REGARDING KREISLER'S ONGOING OBLIGATIONS WITH RESPECT TO REAM AND THE LEGALLY TRANSFERRED PROPERTIES.

Respectfully, Kreisler disagrees with the Court's interpretation of the Consent Decree. In the event the Court does not amend its July 7, 2006 Order, Kreisler is entitled to know exactly what actions need to be taken to "insure that Penny Ream is not involved in tenant-related decisions" at her properties. Mr. Kreisler does not desire, nor should he be required, to guess at what the Court is ordering him to do to comply with the July 7, 2006 Order.[6]

Kreisler cannot envision any legal or practical way to insure that Ms. Ream makes no tenant-related decisions at the three properties, or at least any that are workable and not prohibitively expensive. Even if Mr. Kreisler hired his management company to work at Ms. Ream's properties, Ms. Ream would likely refuse, and she would be equally unlikely and unwilling to pay for her share of this expense, unless ordered to do so. Additionally, if Ms. Ream is intent on making

[6] As stated above, Defense counsel contacted Plaintiffs counsel regarding this issue. Plaintiffs' counsel was initially unable to articulate or define what his clients actually wanted Kreisler to do to comply with this part of the Court's Order. He later called and suggested that Kreisler include a statement in his quarterly reports that Ms. Ream was not making tenant-related decisions. This ignores that practical problem of controlling Ms. Ream's actions, given her apparent desire to exert complete control over her properties.

these types of decisions at her properties, there is nothing Mr. Kreisler can do to stop her.

Mr. Kreisler has no desire, and frankly cannot afford, to continually be found in violation of the Consent Decree. Defendants believe the goal of the Settlement and Consent Decree was to more than adequately compensate the two Plaintiffs, and remove Robert Kreisler and Ms. Ream from making tenant-related decisions at Kreisler-owned properties. These goals have been accomplished. Other than Kreisler's ongoing reporting, training, and testing requirements for his three properties over the next five years, nothing more should be required.

Respectfully submitted,

Dated: July 17, 2006

**LARSON • KING, LLP**

By s/Stephen P. Laitinen

Stephen P. Laitinen (#239446)
Angela Beranek Brandt (#293143)
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618

*Attorneys for Defendants*
*Robert L. Kreisler, Jr.,*
*Kreisler Real Estate Company,*
*Whittier Real Estate Company, and*
*Whittier Community Apartments*