**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Eboni SternJohn, *et al,*

Plaintiff,

vs.

Robert L. Kreisler, Jr., *et al*

Defendants.

Civil File No. 82-842 (MJD/JSM)

**MEMORANDUM OF PENNY REAM IN SUPPORT OF MOTION TO MODIFY OR CLARIFY JULY 7, 2006 ORDER**

---

> **"For more than a century, the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'"**
>
> * * *
>
> **"The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking..."**

*Fuentes v. Shevin*, 407 U.S. 67, 80-81, 92 S.Ct. 1983, 1994 (1972).

**MANSFIELD, TANICK & COHEN, P.A.**

By: ______________________________
Marshall H. Tanick (108303)
Stephen H. Parsons (84219)
1700 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402-4511
(612) 339-4295
**ATTORNEYS FOR PENNY REAM**

Dated: August 1, 2006

## I. INTRODUCTION

Penny Ream, the former wife of Defendant Robert Kreisler, Jr., moves the Court to modify or clarify the Order of this Court of July 7, 2006.[1]

In particular, Ms. Ream seeks a clarification of a provision of the ruling that appears to preclude her from managing the real estate that she acquired as a result of her divorce from Kreisler. She asks that the portion of the Court ruling requiring that Kreisler "insure that Penny Ream is not involved in tenant-related decisions with respect to 424 West 24th Street, Minneapolis; 2124 Garfield Avenue, Minneapolis; and 123-131 West 26th Street, Minneapolis" be modified so that it does not impact upon her separate, independent interests. This can be done by changing the language as follows:

A. Paragraph 2 be stricken and the following substituted:

> The defendants may have no involvement in tenant-related decisions with respect to 2124 Garfield Avenue, Minneapolis; 424 West 24th Street, Minneapolis; and 123-131 West 26th Street, Minneapolis.

and

B. That additional paragraphs 4, 5, and 6 be added as follows:

> 4. Whenever Penny Ream advertises for tenants in print or other media, she will run classified advertisements in community newspapers aimed at minority readers, such as the *Twin Cities Courier*, *The Spokesman*, *Asian-American Press*, and *Insight News*, on a rotating basis.

[1] Ream is not a party in this lawsuit. However, since her interests are affected by the Order in so far as it has the effect, as a practical matter, of imposing obligations on her with respect to three real estate properties she owns. Because her interests are affected by this litigation, she is entitled to be heard in it. *See Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970); *Lennox Indus. Inc. v. Caicedo Yusti*, 172 F.R.D. 617 (D.P.R. 1997); *Pacific Mut. Life Ins. Coo. V. American Nat. Bank & Trust Co. of Chicago*, 110 F.R.D. 272 (N.D. Ill. 1986).

5. Ms. Ream, along with all of her current and future employees, will participate in annual anti-bias training sessions that must be conducted by an outside consultant at her expense or that of Defendant Kreisler.

6. Ms. Ream will post the Anti-Discrimination/Anti-Harassment/Anti-Retaliation Policy that is set forth in Attachment A to the SternJohn/Kreisler Consent Decree at the main public entryway to her buildings at 2124 Garfield Avenue, Minneapolis; 424 West 24th Street, Minneapolis; and 123-127-131 West 26th Street, Minneapolis.

and

C. These provisions shall expire on January 1, 2009, unless otherwise ordered by the Court.

## II. FACTUAL BACKGROUND: UNAUTHORIZED USE OF REAM'S NAME

Ms. Ream and Kreisler had a 17-year marriage, running from September 5, 1987 until they were divorced on August 18, 2004. Ms. Ream, a former school teacher, was peripherally involved in Kreisler's business activities as a 12 to 15-hour per week employee, primarily performing administrative, bookkeeping, and office work for his residential rental properties. *Affidavit of Penny Ream*, ¶ 3; *Supplemental Affidavit of Penny Ream*, ¶ 3.

Neither Ream nor any of Kreisler's other employees were named as parties to the above-captioned action. No allegation has been made in the underlying litigation that Ms. Ream ever personally discriminated against anyone because of race or engaged in any culpable or wrongful behavior. In fact, the United States of America, in parallel litigation to this case,

affirmatively told her that it accused her of no wrongdoing.[2] However, after this lawsuit was settled on the eve of trial on October 22, 2004, her name was inexplicably included in Paragraph IV of the resulting Consent Decree, without her authorization, knowledge, or ratification. *Ream Affidavit.*, ¶¶ 4–9; *Affidavit of Marshall Tanick*, ¶ 3. Ms. Ream was not present at the settlement negotiation, did not know about it, was not represented at the proceeding, and did not participate, directly or indirectly, in the settlement negotiations. *Ream Affidavit*, ¶¶ 8-9.

The settlement agreement, which was read into the record on October 22, 2004, does not mention Ms. Ream by name, referring only to Kreisler's "spouse." *Tanick Affidavit*, Exhibit 2, pp. 6-7. The Consent Decree, which was derived from the October 22nd agreement, includes Ms. Ream's name without her authorization, consent, or knowledge, stating, in relevant part, that "Defendant Robert Kreisler and his spouse, Penny Ream, shall be prohibited from making any tenancy-related decisions concerning any Minnesota rental properties..."

The Ream-Kreisler divorce had, however, been finalized four months earlier on August 18, 2004. It included a provision that Ms. Ream was owed $500,000 by the end of 2005 ($200,000 of which was due at the end of 2004) to satisfy, in part, her marital lien against the Kreisler properties. *Ream*

---

2 *See* Deposition of Penny Ream in *United States of America v. Robert L. Kreisler, Jr., et al.*, District of Minnesota, No. 03-CV-3599 (MJD/JSM), p. 11, l. 16 – p. 12, l. 1, a copy of which is attached to the *Tanick Affidavit* as Exhibit 3.

*Supplemental Affidavit*, ¶ 5. As of early 2005, Kreisler had not made his $200,000 payment, and stated that he did not have the cash resources for the payment that was required. *Id.*, ¶ 8. Kreisler and Ms. Ream and her attorney, Ronald Ousky, negotiated at arms-length over the means by which Kreisler would satisfy her marital lien. *Id.*, ¶ 9, *Affidavit of Ronald Ousky*, ¶¶ 2, 5, and 8. It was finally agreed that, to pay off the obligation, Kreisler would convey three small apartment buildings to her: 2124 Garfield Avenue, 424 West 24th Street, and 123-131 West 26th Street – all in Minneapolis. The transaction was a product of arm's-length negotiation between Ream, by her attorney Ronald Ousky, and Kreisler. *Ousky Affidavit*, ¶¶ 8-10, and Exhibit 2 thereto.

Before the transaction, Ream sought legal advice whether the transaction was permissible in light of her name being involuntarily inserted in the Consent Decree. Her counsel, prior divorce attorney Ousky, opined that it was permissible. A "second opinion" was then sought from Gary Weissman, an independent attorney who has a substantial family law practice. He reviewed the materials closely and agreed with attorney Ousky, stating that

> Because Ream was neither a party nor a signatory to the Consent Decree, because it was not binding upon her (despite her having been named in one paragraph), because she is not a relative of Kreisler (nor was she at the time of the execution of the Consent Decree), because she had no role in the discriminatory conduct which the Consent Decree was adopted to remediate, and because any post-decretal transfer to give Ream *some* of the rental properties in fee simple absolute would be an arms-length transaction, the only provision of the Consent Decree binding upon Ream is the provision binding on any owner of rental property –

> she is subject to the Fair Housing Act, the federal Civil Rights Act, and the Minnesota Human Rights Act.

*Tanick Affidavit*, ¶ 8 and Exhibit 1 thereto.

Based upon the arm's-length negotiations arising out of the divorce, and the advice of outside counsel, Ms. Ream, in good faith, proceeded with the transaction. She was, at the time, divorced from Kreisler, had no current or prospective familial relationship with him, and did not reside with him. Ms. Ream is still owed money under the divorce. *Ream Supplemental Affidavit*, ¶ 12.

## III. THE COURT'S RULING

The Court, without any input from Ms. Ream, entered an Order dated July 7, 2006, requiring that Kreisler "insure" that Ream not engage in any tenant-related decisions regarding the three properties she now owns. *Memorandum and Order*, p. 1. This ruling stemmed from Ms. Ream's name being inserted, without her authorization, consent, or knowledge in the Consent Decree.

The effect of the ruling may be to eviscerate Ms. Ream's ability to make any kind of living from the properties that she acquired as a result of the divorce. *Ream Affidavit*, ¶ 12. The buildings are marginally profitable now, barely throwing off a positive cash flow. *Id*. The three buildings, containing 51 units, are Ms. Ream's only business and employment. She runs the business by herself as a sole proprietorship, except for assistance from one 12-hour per week maintenance employee. *Ream Supplemental Affidavit*, ¶ 13. If she must step aside and cannot involve herself in management of the properties, it could

cost her several thousand dollars per month to have someone else do the job that she is ready, willing, and able to do. *Ream Affidavit*, ¶12. This would be a bruising outcome. She would not be black-and-blue, but will go from financially in black ink (slightly profitable) to reams of red ink (substantially unprofitable).

## IV. THE COURT'S RULING SHOULD BE RECONSIDERED AND CLARIFIED

The Court predicated its ruling that Kreisler "insure" that Ream not manage the properties on several postulates. None of them is applicable in this situation.

- As a matter of fundamental fairness, Ms. Ream should not be restricted by provisions to which she never agreed, authorized, consented, knew about, or ratified. Ms. Ream was going through a divorce at the time of the underlying litigation in this case. She was not a party to this case, nor was there any allegation that she personally made any discriminatory decisions regarding Kreisler's tenants. She did not "license" anyone to use her name in the Consent Decree herein. To the extent that the parties did so, it was without her knowledge, approval, or authorization. A party should not be bound by terms she never agreed to, let alone knew about. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70*, 415 U.S. 423, 433, 94 S.Ct. 1113, 1122 (1974) (union could not be held in contempt of temporary restraining order that district court had refused to dissolve, but

had subsequently expired by operation of state law); *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994 (1972); *CIENA Corp. v. Jarrard*, 203 F.3d 312, 319-320 (4th Cir. 2000); *Williams v. McKeithen*, 939 F.2d 1100, 1105 (5th Cir. 1991) (Even assuming that issuance of injunction was properly within district court's authority, the notice requirement of Rule 65(a) of the Federal Rules of Civil Procedure implies hearing in which defendant is given fair opportunity to oppose the application and to prepare for such opposition); *SEC v. Weeks Secs., Inc.*, 678 F.2d 649, 651 (6th Cir. 1982) (district court abused its discretion by issuing preliminary injunction on basis of resolving disputed factual questions on fraud issue in favor of the SEC without first hearing security dealers' live testimony); *Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 58 (2nd Cir. 1981).

- The Consent Decree, to which Ream was not privy, included a provision allowing Kreisler to sell the properties to an “unrelated” third party, provided that it was an arm’s-length transaction. In that event, the Consent Decree’s obligation for the owner to have an outside management company would no longer be in effect. The “arms-length” provision is applicable here. Ms. Ream was, in fact, an “unrelated” third party. Ms. Ream begs to differ with the conclusion that she is “a person who cannot under any interpretation of the Consent Decree be deemed to be an unrelated

third-party." *Order and Memorandum, p. 8*. Since the parties have been divorced, she is no longer related, by consanguinity or otherwise, to Kreisler, and this was her situation two months prior to the settlement that led to the Consent Decree. She does not reside with him, and he has no part in managing the properties that were transferred to her. *Ream Supplemental Affidavit*, ¶ 14. Moreover, the transfer of the properties was done through an arm's-length transaction. *Ousky Affidavit*, ¶¶ 9-10. Therefore, the "unrelated third-party" transaction provision of the Consent Decree was applicable. Consequently, Ms. Ream is not subject to the management restrictions in the Consent Decree, which she never authorized, consented to, knew about, or ratified.

- Plaintiffs' argument that Ms. Ream was properly named in the Consent Decree because she was an agent of the Kreisler defendants contradicts the facts. First, the terms of the Consent Decree apply only to the "Kreisler Defendants," namely the various entities under which Kreisler did business. It does *not* apply to "their agents and employees." The only reference in the Consent Decree to Kreisler's "agents and employees" is in paragraph VI, which requires them to attend fair housing and diversity training on an annual basis.

- The cases cited by Plaintiffs – *Liddell v. Caldwell*, 553 F.2d 557 (8th Cir. 1977) and *Pure Country Inc. v. Sigma Chi Fraternity*, 312

F.3d 952 (8th Cir. 2002) – stand only for the proposition that if a court issues an injunction that applies to a party *and* its agents and employees, it is a proper injunction. But the Consent Decree here didn't do that. It issued only against Kreisler and his entities and then blind-sided Ms. Ream by picking her out, without notice, from all of Kreisler's employees and restricting her future rights.

There is no need to restrict Ms. Ream and force her into an uneconomic form of servitude. The one purpose of the Consent Decree was to impose restrictions on Kreisler from engaging in discriminatory conduct in his rental properties. Ms. Ream, although married to him, was not alleged to have engaged in any misbehavior. In fact, the United States of America, in parallel litigation to this case, affirmatively told her that it accused her of no wrongdoing:

BY MS. SHORE [the Government's attorney]:

Q. Ms. Ream, do you understand that the United States has not alleged that you have violated the Fair Housing Act?

A. Yes.

Q. And that you're not a party to this lawsuit?

A. Yes.

Q. Okay. And that basically you're here today as a potential witness or observer of events that underlied our lawsuit and not because we have alleged wrongdoing on your part; do you understand that?

A. Yes.

Deposition of Penny Ream in *United States of America v. Robert L. Kreisler, Jr., et al.*, District of Minnesota, No. 03-CV-3599 (MJD/JSM), p. 11, l. 16 – p. 12, l. 1. (Exhibit 2 to *Tanick Affidavit.*

Imposing restrictions on her management of her own property, resulting in significant economic loss to her, makes her the equivalent of an innocent victim of a drive by shooting. Even worse, after the strafing, she ends up bleeding red ink.

## V. A COMPROMISE PROPOSAL

There is, however, an alternative way to resolve this matter in a fair and equitable way. While Ms. Ream maintains that she should not be restrained in the ownership of her own property, she would, as a compromise, propose the following:

- Whenever Ms. Ream advertises for tenants in print or other media, she will run classified advertisements in community newspapers that serve minority readers, such as *The Minnesota Spokesman-Recorder, The Minnesota Black Pages, Asian-American Press,* and *Insight News*, on a rotating basis.
- Ms. Ream, along with all of her current and future employees, will participate in annual anti-bias training sessions that must be conducted by an outside consultant at her expense or that of Defendant Kreisler.
- She will post the Anti-Discrimination/Anti-Harassment/Anti-Retaliation Policy that is included in the *SternJohn/Kreisler*

Consent Decree at the main public entryway to her buildings at 2124 Garfield Avenue, Minneapolis; 424 West 24th Street, Minneapolis; and 123-131 West 26th Street, Minneapolis.

While Ms. Ream does not feel that she is obligated, as a matter of law, to follow this regimen, she is willing to do so as a gesture of good faith to resolve this matter and minimize further time-consuming use of legal and judicial resources. These steps would be followed for a period of 2 and 1/2 years, through the end of 2008.[3]

This case deserves closure, rather than continued carping. The Plaintiffs (and their attorneys) have made lots of money from this case. The Kreisler-related Defendants have paid lots of money and undertaken substantial obligations. Ms. Ream, for her part, has been ensnared in litigation not of her making and is simply trying to get on with her life, rather than spending enormous amounts of time and money fighting the battles of others. This proposal makes sense and saves lots of cents. It enhances anti-discrimination practices for the benefit of minority tenants and, for that matter, the community at large. It also allows Ms. Ream to continue to manage the properties she owns and make a modest living at it. It also holds out the prospect that everyone can get on with their business so that this case does not go on to be a lifetime litigation legacy.

In sum, Ms. Ream asks that the Order of July 7, 2006 be modified as follows:

A. That paragraph 2 be stricken and the following language be substituted:

> The defendants may have no involvement in tenant-related decisions with respect to 2124 Garfield Avenue, Minneapolis; 424 West 24th Street, Minneapolis; and 123-131 West 26th Street, Minneapolis.

and

B. That additional paragraphs 4, 5, and 6 be added as follows:

> 4. Whenever Penny Ream advertises for tenants in print or other media, she will run classified advertisements in community newspapers aimed at minority readers, such as the *Twin Cities Courier*, *The Spokesman*, *Asian-American Press*, and *Insight News*, on a rotating basis.
>
> 5. Ms. Ream, along with all of her current and future employees, will participate in annual anti-bias training sessions that must be conducted by an outside consultant at her expense or that of Defendant Kreisler.
>
> 6. Ms. Ream will post the Anti-Discrimination/Anti-Harassment/Anti-Retaliation Policy that is set forth in Attachment A to the SternJohn/Kreisler Consent Decree at the main public entryway to her buildings at 2124 Garfield Avenue, Minneapolis; 424 West 24th Street, Minneapolis; and 123-131 West 26th Street, Minneapolis.

and

C. The obligations on the part of Ms. Ream will expire on January 1, 2009 unless otherwise ordered by this Court.

---

[3] The original Consent Decree ran through December 6, 2009, but was extended to December 2010.

## VI. CONCLUSION

For the above reasons, the Order of July 7, 2006 should be modified as set forth above.

**MANSFIELD, TANICK & COHEN, P.A.**

Dated: August 1, 2006

By: s/ Marshall H. Tanick

Marshall H. Tanick (108303)
Stephen H. Parsons (84219)
1700 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402-4511
(612) 339-4295

**ATTORNEYS FOR PENNY REAM**

419996