**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Eboni SternJohn, *et al,*

Plaintiff,

vs.

Robert L. Kreisler, Jr., *et al*

Defendants.

Civil File No. 82-842 (MJD/JSM)

**AFFIDAVIT OF MARSHALL H. TANICK**

---

**STATE OF MINNESOTA** )
) **SS.**
**COUNTY OF HENNEPIN** )

**MARSHALL H. TANICK,** being fully sworn, does state as follows:

1. My name is **Marshall H. Tanick**. I am an attorney duly licensed to practice before this Court, registration number 108303 and represent Penny Ream in this proceeding.

2. I make this Affidavit based upon my own personal knowledge.

3. I was contacted by Ms. Ream in January 2005, after she had learned, for the first time, that her name had been included in a Consent Decree in this case. Ms. Ream stated that did not approve, authorize, consent, or even know that her name had been used in the *SternJohn/Kreisler* Consent Decree until shortly before she saw me, which was approximately 6 weeks after the Consent Decree was entered and approximately three months after the SternJohns and Kreisler had agreed on the terms of the Consent Decree. Ms.

Ream also stated that on August 18, 2004, she completed a dissolution of her marriage to Robert L. Kreisler, Jr. in Hennepin County District Court, and was represented by Ronald Ousky, Esq. in that proceeding.

4. When she consulted with me, Ms. Ream indicated there had been some discussion with her former husband, Robert Kreisler, of conveying three of his rental properties in Minneapolis to her in partial satisfaction of her marital lien against his properties acquired during the marriage. She stated that the reason for these discussions was that Kreisler claimed to have insufficient liquidity to make payments to satisfy her marital liens, the first of which payments was past due, and the next which would be even more substantial and due at the end of 2005.

5. I discussed this matter with her and her divorce attorney, Ronald Ousky, with particular reference to the provision in the Consent Decree that barred her from making any management-related decisions with respect to Kreisler-related properties, since her name had been inserted in the Consent Decree without her knowledge or consent. The issue we discussed was whether the prohibition on Ms. Ream making management-related decisions, which was inserted without her knowledge or consent, would be applicable to her if any of Kreisler's properties were conveyed to her in an effort to satisfy her marital lien. We discussed several considerations, including the provision in the Consent Decree which lifts any restriction on Ms. Ream making tenant-related decisions if the property is conveyed by means of an "arms-length transaction with an unrelated third party." *Consent Decree*, ¶ II.

6. Mr. Ousky and I felt that the restriction on Ms. Ream was of questionable validity because she did not approve, authorize, or otherwise consent to, or even know about the clause in the Consent Decree prior to its entry. We also concurred that the provision probably would not be applicable in the event of Kreisler's conveyance of any properties to her in satisfaction of her marital lien because that would be considered a transfer to an unrelated third party if negotiated at arms length with Mr. Kreisler.

7. In order to allay any concerns, I furnished relevant documents[1] to Gary Weissman, an attorney in Minneapolis who I know does a substantial amount of family law-related work, and asked him to provide a "second opinion" regarding this matter, which actually was a third opinion, because both Mr. Ousky and I felt that the provision would not apply.

8. Mr. Weissman furnished a "second opinion" to me on June 8, 2005, a copy of which is attached hereto as Exhibit 1. In the opinion, he basically states that the provision would not apply to Ms. Ream in the event that she received these properties in an arms-length negotiation in satisfaction of a marital lien. He reasoned that because she was no longer married at the time, she was no longer Mr. Kreisler's spouse, as it referred to in the Consent Decree and, moreover, he reasoned that the restriction would not apply to her

[1] The *SternJohn/Kreisler* Consent Decree, the *Ream/Kreisler* Marital Termination Agreement (short form), the *Ream/Kreisler* Judgment and Decree, the *Ream/Kreisler* Marital Termination Agreement (long form) , and excerpts from the Deposition of Penny Ream in the case titled *United States of America v. Robert L. Kreisler, Jr., et al*, District of Minnesota No. 03-CV-3599 (MJD/JSM).

because she would be considered an "unrelated third party." As Mr. Weissman stated:

> Because Ream was neither a party nor a signatory to the Consent Decree, because it was not binding upon her (despite her having been named in one paragraph), because she is not a relative or Kreisler (nor was she at the time of the execution of the Consent Decree), because she had no role in the discriminatory conduct which the Consent Decree was adopted to remediate, and because any post-decretal transfer to give Ream some of the rental properties in fee simple absolute would be an arms- length transaction, the only provision of the Consent Decree binding upon Ream is the provision binding on any owner of rental property -- she is subject to the Fair Housing Act, the federal Civil Rights Act, and the Minnesota Human Rights Act.

Exhibit 1, p. 8.

9. I also obtained a transcript of the proceeding before Judge Davis on October 22, 2004, in which the terms of the Consent Decree were entered into between the parties. A true and correct copy of that transcript is attached hereto as Exhibit 2. I understand that this proceeding occurred right before the trial was to begin in this case. Ms. Ream did not participate in the case, was not a party to the case, was not represented by counsel, did not participate in the negotiations leading up to the Consent Decree, and was not a participant in, or even aware of, the Consent Decree proceedings.

10. As of the time of the agreement for the Consent Decree, Ms. Ream was divorced from Mr. Kreisler. The marital dissolution proceeding was commenced in approximately January 2003 and concluded with an entry of the Judgment and Decree on August 18, 2004, which was approximately 4 months

before the Consent Decree, and 2 months prior to the agreement for the Consent Decree.

11. In the transcript of the October 22, 2004 proceeding before Judge Davis that led to the Consent Decree, Ms. Ream is not even mentioned by name. Reference is made only to inaccurately referred to the "spouse" of Mr. Kreisler. In the transcript, counsel for Plaintiffs states as follows:

> Number 9. Mr. Kreisler individually *and his spouse* will be removed for the term of the decree from all management related to all of his Minnesota properties relating to tenant matters and decisions, .......
>
> Exhibit 2, p. 6, l. 1-4.
>
> With an off-the-record discussion, let me amend item 9 of the decree. Mr. Kreisler *and his spouse* will be removed from management decisions regarding tenant matters such as acceptance of tenants and rejection of tenants, UDs, and evictions.
>
> *Id.*, p. 6, l. 25 – p. 7, l. 3 *(emphasis added).*

12. Attached as Exhibit 3 are true and correct copies of pages from the transcript of Ms. Ream's deposition in United States of America v. Robert L. Kreisler, Jr., et al., D. Minn. no. 03-CV-3599.

13. The above is true and correct to the best of my knowledge.

Dated: July 31, 2006

By: s/ Marshall H. Tanick
Marshall H. Tanick

Subscribed and sworn to before
me this 31st day of July, 2006.

s/ Nichole L. Bowen
Notary Public
Commission Expires: 1/31/10

420311