UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

---

| | |
|---|---|
| Eboni SternJohn and Julius SternJohn, | File No. CV-02-842 (MJD/JSM) |
| Plaintiffs, | |
| vs. | Minneapolis, Minnesota October 22, 2004 12:00 noon |
| Robert Kreisler, et al., | |
| Defendants. | COPY |

---

BEFORE THE HONORABLE MICHAEL J. DAVIS
UNITED STATES DISTRICT COURT JUDGE
(SETTLEMENT AGREEMENT)

APPEARANCES

For the Plaintiffs: Miller O'Brien
WILLIAM O'BRIEN, ESQ.
120 South Sixth Street, #2400
Minneapolis, Minnesota 55402

For the Defendants: Soucie & Bolt
DAVID BOLT, ESQ.
PAUL KIEFFER, ESQ.
2150 Third Avenue North, #100
Anoka, Minnesota 55303

Larson King
MARK SOLHEIM, ESQ.
ANGELA BRANDT, ESQ.
30 East Seventh Street, #2800
St. Paul, Minnesota 55101

Court Reporter: LORI A. SIMPSON, RMR-CRR
1005 U.S. Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415
(612) 664-5104

Proceedings recorded by mechanical stenography; transcript produced by computer.



EXHIBIT
tabbies
2

THE COURT: Counsel, my understanding is there's an agreement.

MR. O'BRIEN: I believe there is, Your Honor.

~~MR. BOLT: Yes, Your Honor, there is. I am David~~ Bolt from Soucie & Bolt up in Anoka. I am Mr. Kreisler's ~~personal attorney in this matter and we are also prosecuting~~ a declaratory action in a separate venue. I have helped to negotiate this settlement today.

THE COURT: All right. Why don't you all step forward to the podium so you can put it on the record.

MR. O'BRIEN: Your Honor, Bill O'Brien on behalf of Eboni and Julius SternJohn. My only regret is that they are not here today. They had to work today and the short notice of the status conference meant that they couldn't be here. We have obviously been in touch with them throughout the morning.

Your Honor, the settlement that we have reached has two components to it, a monetary component and an injunctive relief component. I think what I should do is itemize the elements of each and then allow counsel to opine whether I have accurately stated the settlement. Your Honor, we have been drafting on the fly here and I think we are on the same wavelength, but since there is some nuance to this, I will state the agreement and then allow them to jump in if I've misstated it.

THE COURT: All right.

MR. O'BRIEN: First, the --

THE COURT: One of the things I guess I want to ~~say is let's be as clear as possible, because what occurs~~ occasionally and more often than I would like is that once ~~we leave the courtroom and then when you start drafting the~~ written documents, everyone wants to put something else in or take something else out or I didn't mean X, Y, or Z and then the agreement falls apart and then it comes back before me whether or not there was an agreement and I have to have a hearing.

And let me tell you, I've got X number of hours for you to try the case. I would rather try the case than to be messing around with X's and O's and crossing the T's and dotting the I's on an agreement that when you walk away and go back to your offices, you dream up some new nuance.

So let's try to be as clear as possible so we don't have that. Because it's one of the things that happens too often when we give oral agreements; that everyone walks back and starts thinking about other things that they should have said or put in the agreement.

Go ahead.

MR. O'BRIEN: We all agree, Your Honor. Lawyers are great about having new, bright ideas.

The monetary component, Your Honor, is this:

Defendants intend to confess judgment in the amount of $1,050,000. If they make payment of $525,000 no later than December 31st, plaintiffs will provide a complete satisfaction of judgment to the defendants for the full amount.

Now the injunctive relief, Your Honor.

MR. BOLT: Can I step in? Since we are at this point, Your Honor, one of the things that we also agreed to is that the confession of judgment will not be filed until after December 31st so as to help Mr. Kreisler to facilitate financing of this.

THE COURT: All right.

MR. O'BRIEN: That's accurate, Your Honor.

The injunctive relief items are these:

First, Kreisler and the Kreisler defendants will be subject to a five-year decree in the nature of a court order.

Item 2. The court order will apply to all of Mr. Kreisler's Minnesota properties.

Number 3. The terms of the decree will be posted at each of the properties for the life of the decree.

Number 4. The defendants will provide diversity and housing law training to all new employees within 60 days of their hire and to all employees annually for the life of the decree. The cost of the diversity and housing law

training that will be provided will be borne by the Kreisler defendants and the plaintiffs' counsel will approve the training entity.

Number 5. The Kreisler defendants will produce a discrimination, retaliation, and harassment policy subject to plaintiffs' counsel approval that will be posted at each floor of all of his Minnesota properties for the life of the decree and will also be attached to the lease of all applicants at each property.

Item 6. The Kreisler defendants will be subject to periodic random and anonymous testing for housing discrimination matters and the testing to be provided by a monitoring agency that is covered later in the decree.

Number 7. The Kreisler defendants will advertise vacancies in the Minnesota properties in the community publications and presses that are referenced in the Stephanie Ball settlement agreement.

Number 8. The Kreisler defendants will have a quarterly reporting obligation on compliance with the terms of the decree. The reporting will be to the designated monitoring housing agency and will relate to compliance with the training, posting, and applicant and tenant flow components of the decree; and they will require the Kreisler defendants to provide data, including rent rolls and repair data.

Number 9. Mr. Kreisler individually and his spouse will be removed for the term of the decree from all management related to all of his Minnesota properties ~~relating to tenant matters and decisions, including but not~~ limited to the decision to accept or reject tenants, the ~~decision to evict or serve unlawful detainers, and the~~ decision to do repairs and other tenant decisions.

Number 10 --

(Discussion off the record.)

MR. O'BRIEN: As a caveat to item 9, we do draw a distinction between Mr. Kreisler's involvement in maintenance of the properties, the physical properties, and tenant decisions; and he may have continuing involvement in the capital maintenance issues related to his properties.

MR. BOLT: I think we are just talking in number 9 about tenant decisions about occupancy, acceptance of occupancy, unlawful detainers, and eviction from occupancy. Am I right on that?

MR. O'BRIEN: Well, it's the decision when and whose apartment he can repair. He can make the decision -- I think we can go off the record on this, perhaps.

(Discussion off the record.)

THE COURT: Let's go back on the record.

MR. O'BRIEN: With an off-the-record discussion, let me amend item 9 of the decree. Mr. Kreisler and his

spouse will be removed from management decisions regarding tenant matters such as acceptance of tenants and rejection of tenants, UDs, and evictions. Information regarding ~~tenant repairs will be part of the quarterly compliance~~ reporting to the monitoring agency.

~~Item 10. Mr. Kreisler will be replaced in his~~ management capacity by an independent management company that will be responsible for making all tenant decisions of the sort covered by number 9 of the decree and the independent management entity cannot have family relations connected to it.

Number 11. There will be a $5,000 liquidated damage sum for each violation of the decree and Mr. Kreisler is responsible for paying the cost of any enforcement actions of the decree.

Number 12. Mr. Kreisler will not disparage in any fashion the character of the plaintiffs. In the event that there is publicity related to this case, Mr. Kreisler may or may not choose to respond to the publicity, but in his response he may not disparage the character of the plaintiffs.

MR. BOLT: If I may step in here? I think we also contemplated not just publicity in the media, but also any publication of comments or characterizations by the plaintiffs or others regarding this agreement. Kreisler may

respond to any claims or allegations that are published in the sense of defamation publications, not just published in the media.

MR. O'BRIEN: That is consistent, Your Honor, with item 13 of the decree, which is that there will be no confidentiality restrictions whatsoever. So either party is free to make public comment with the caveat that Kreisler may not disparage the characters of the plaintiffs.

Number 14. Plaintiffs and their counsel will cooperate, to the extent it's necessary, to establish Mr. Kreisler's potential exposure to plaintiffs' claim for statutory attorney's fees. I am going to let counsel speak to that, but I think that's a long way of saying that we are agreeing to provide fee verification information in connection with the resolution of the dec. or other insurance actions related to this matter.

MR. BOLT: That's accurate. Not just actual fee verification, but also billing verification so we can accurately assess the number of hours and the rate at which those hours were going to be charged and submitted to the court in the event that there was a verdict and a petition for attorney's fees in connection with this matter that we are settling.

MR. O'BRIEN: Number 15. Mr. Kreisler will release the Hopfenspirger and Solar Partnership entities,

the original defendants -- who are among the original defendants, for all claims arising from the facts associated with this case.

MR. BOLT: It's my understanding that in connection with that clause, Your Honor, the plaintiffs are giving a Pierringer release to those defendants in return for a payment that was agreed upon at a mediation recently.

MR. O'BRIEN: That is accurate, Your Honor.

I believe, Your Honor, that that covers the settlement terms. What we would want to do is have the confession of judgment made a matter of record as soon as this court is able to hear that. If we could do that on the record Monday when we are to start the trial -- in lieu of starting the trial, I would propose that unless we can consider this record as, in effect, the confession of judgment.

MR. BOLT: I would prefer to have a document, Your Honor. And I'm not available to attend on Monday, I'm going to be out of the country. So I'm not sure how we can effect that, but I don't see that as being a significant issue or any impediment to getting this done in the fashion we've outlined here.

THE COURT: Well, may I suggest some things?

MR. O'BRIEN: Yes, please.

THE COURT: Hopefully I won't confuse and mess

things up here, but let me go back to some of the agreements that you have entered into. I see they are fraught with some problems that I would want to head off.

One, I would like a buffer between the plaintiff and the defendant, and the buffer being the court in the determination of some of these items.

One of the items -- I am just looking at it quickly here. Let's start with item number 2 -- number 3, dealing with the decree being posted at the properties for the life of the decree. I would like my magistrate judge to be involved in this because I don't want you arguing where they are going to be posted, whether or not they are on the back door or downstairs in the garbage bin or the front.

Two, you say that plaintiffs' counsel will approve the training entity. I see that's fraught with problems. I would prefer the court approve that. You can both make recommendations to that.

MR. O'BRIEN: I'm fine with that.

THE COURT: That's a buffer between both of you. You can make recommendations to the court and the court will decide that issue.

Dealing with number 5 dealing with the discrimination and retaliation and harassment policy subject to plaintiffs' counsel's approval, add "and the court's approval." Therefore it's a buffer between -- you have an

independent person, the court, being the buffer between the two parties here.

MR. BOLT: So, Your Honor, the court will oversee this and not the plaintiffs' lawyer or there will be --

THE COURT: Yes, that's what I am getting to. This is a major agreement --

MR. BOLT: Indeed.

THE COURT: -- and I think for it to work there has to be an independent person hearing both sides and saying this is what's going to -- if there's any nuances to be decided on the agreement.

Whenever I have an agreement where one party has the say-so over the other, it's fraught with problems. Not that one side is trying to hammer the other side, but just because of the nature of the litigation process it's best, I think, to come back to the court.

Because it is going to be a five-year decree anyway, the court is going to be involved for five years and so we might as well have a mechanism so the court makes these decisions if there's any disputes.

MR. BOLT: As Your Honor knows, there is a Department of Justice action which is also pending. We have spoken with the attorney in charge of that and we have fashioned this injunctive relief after an outline that we were given that will be proposed in that case and we are

trying to resolve that case in connection with this.

THE COURT: That's great.

MR. BOLT: So there may be only one giant injunctive relief and we can come back --

THE COURT: That would be helpful.

MR. BOLT: We want to coordinate all of those so there aren't conflicting provisions.

THE COURT: What I would want to do is to send this back to my magistrate so she can coordinate with all of you and with the Justice Department and maybe have a big hearing and have everyone out there so we can hammer out an agreement. And if you can't do it with her, then you just get in the car and come over here and I think I can do it.

MR. BOLT: I interrupted you. You were just finishing up on point 5.

THE COURT: You understand where I am going on this. I want to make sure that Mr. Kreisler -- that he feels that there's not a hammer, an undue hammer, over his head; that he doesn't have a process that he can be heard if there's some disputes. That's necessary. And the same way for the plaintiffs, that they feel that they have a mechanism of making sure that any disputes with the decree are enforced properly. And so I would prefer to use the court if that's agreeable.

MR. O'BRIEN: I welcome that, Your Honor.

MR. BOLT: Absolutely.

THE COURT: So any other conditions that you want to fashion here?

MR. O'BRIEN: I don't believe so. As to getting this on the record, Your Honor, we are going to be drafting, but the idea is that by putting it on the record here that this is an enforceable agreement hereafter and I think that is important that all the parties acknowledge that --

THE COURT: Exactly.

MR. O'BRIEN: -- going forward here. We will make copies of the injunctive items that we have sketched out here so everyone can take that with them in that level of detail, but it's important that, I think, we all leave here knowing that as of this moment there is an enforceable agreement on the terms that we just itemized for the court.

THE COURT: Let's start with you. Do you have authority from your clients to settle this matter?

MR. O'BRIEN: I do, Your Honor.

THE COURT: And you have spoken to them today?

MR. O'BRIEN: I have, many times.

THE COURT: And you have gone over the details of this agreement with them?

MR. O'BRIEN: I have, Your Honor.

THE COURT: And they are in agreement with it?

MR. O'BRIEN: They are.

MR. BOLT: Likewise, Your Honor, I have Mr. Kreisler's authority. He is sitting right here. We have consulted with him all morning. He has nodded his agreement to the terms and the variation of the terms that we have made up here at the lectern.

THE COURT: Since he is the one that's mostly affected, why doesn't he stand and acknowledge it or come forward. Good afternoon, sir.

MR. KREISLER: Good afternoon, sir. I'm Robert Kreisler.

THE COURT: Yes. And I need you to acknowledge the agreement here.

MR. KREISLER: It has my approval.

THE COURT: Okay. Is that sufficient, counsel?

MR. O'BRIEN: Yes, it is.

THE COURT: Anything else that we need to do today?

MR. BOLT: Only photocopy these three pages.

THE COURT: We can do that for you.

MR. BOLT: Thank you.

THE COURT: How many copies do you need?

MR. BOLT: Let's make three copies, please.

THE COURT: Anything else?

MR. BOLT: Four, please.

THE COURT: Make five.

MR. O'BRIEN: Your Honor, just one comment. This case has taken a couple of years of the court's life and all sorts of time from the court and the court's help, clerks, and we know how hotly contested this was. We just want to thank the court for its involvement, for its direction of this case throughout, and for the court's direction that has contributed to the resolution here. And these facts are not lost on the plaintiff and we want to thank the court for everything it's done in this case.

THE COURT: All right. Anything from the defense?

MR. BOLT: No. Thank you, Your Honor. If we can get a transcript of this, that would help us as well.

THE COURT: Mrs. Simpson is the person you talk to, and she's very efficient. She'll get it to you on payment of the check to her.

MR. BOLT: Tremendous. We can work that out.

THE COURT: Have a good weekend.

(Court adjourned at 1:00 p.m.)

* * *

I, Lori A. Simpson, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Certified by: ______________________
Lori A. Simpson, RMR-CRR

Dated: October 26, 2004