UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

EBONI STERNJOHN, et al., CIVIL NO. 02-842 (MJD/JSM)

Plaintiffs,

v. ORDER

ROBERT L. KREISLER, JR., et al.,

Defendants.

JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came on before the undersigned upon plaintiffs' informal motion that this Court finds defendant Robert Kreisler in violation of the Governing Consent Decree. [Docket No. 160]. Per agreement of the parties, this motion was submitted to the Court in writing. Justin Cummins, Esq. appeared on behalf of plaintiffs; Stephen Laitinen, Esq. appeared on behalf of defendants.

The Court, upon all of the files, records, proceedings herein, and for the reasons stated forth on the record, now makes and enters the following Order.

IT IS HEREBY ORDERED that plaintiffs' motion is GRANTED in part and DENIED in part, as follows:

1. The Consent Decree [Docket 160] shall be in force until December 8, 2011.
2. Defendant Robert Kreisler shall pay to plaintiffs the following amounts on or before **March 1, 2008**:
    a. $7048.25 for attorneys' fees and costs incurred in enforcing Paragraphs VI, VIII, IX, and XI of the Consent Decree.
    b. $25,000 as liquidated damages.

3. Defendant Robert Kreisler shall pay to National Fair Housing Alliance the sum of $13,898.32 on or before **March 1, 2008**.
4. Plaintiffs' request that defendant Robert Kreisler pay National Fair Housing Alliance for monitoring services to be rendered in the future at the beginning of each year is DENIED.
5. Plaintiffs' request that defendant Robert Kreisler pay $5000 in liquidated damages to National Fair Housing Alliance, and an additional $5000 in liquidated damages to plaintiffs, if he fails to pay to National Fair Housing Alliance in full for any future invoices within 60 days of issuance by NHFA is DENIED.

Dated: February 4, 2008

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

**MEMORANDUM**

On December 6, 2004, the Consent Decree [Docket No. 160] was filed in this matter. In September 2005, Robert Kreisler ("Kreisler") entered into a Consulting Agreement with the National Fair Housing Alliance ("NFHA") to perform certain oversight functions contemplated by the Decree, including training of employees, monitoring of Kreisler's affirmative advertising efforts, reviewing of quarterly reports prepared by Kreisler, and performance of fair housing testing at the properties covered by the Decree. See Affidavit of Cathy Cloud dated September 17, 2007 ("Cloud 1st Aff."), Ex. 11, ¶ 2. This Consulting Agreement contemplated that all bills for services performed by NFHA and correspondence by NFHA would be directed to Kreisler's attorney, Stephen Laitinen, at the Larson King law firm. Id., Ex. 11, ¶¶ 5, 6.

Plaintiffs have now asked this Court to find Kreisler in contempt for his violation of certain provisions of the Consent Decree, and to award certain relief for these violations. Specifically, plaintiffs claim that Kreisler violated the provisions of the Consent Decree that required him to use the same advertising content (including rents charged for units) in all publications in which he advertises his rental units, to list vacancies in required publications that serve different racial communities, to periodically provide racial data on rental applicants and tenants, to allow NFHA to conduct testing for discriminatory practices at his properties, to allow NFHA to perform periodic training of Kreisler and his employees, and to pay NFHA for their services and costs incurred to monitor his compliance with the Decree. See Consent Decree, Sections VI, VIII, IX, XI. As relief for Kreisler's alleged violations, plaintiffs seek the following: (1) an award of $7,048.25 for attorneys fees incurred by plaintiffs in enforcing their rights under the Consent Decree; (2) an award of $13,898.32 to NFHA for the costs incurred by it to enforce the requirements of the Decree and related to the services it provided to Kreisler for monitoring, training and testing; (3) an order requiring Kreisler to pay NFHA for monitoring services to be rendered in the future at the beginning of each year; (4) payment of liquidated damages to plaintiffs in the amount of $5,000 for each violation of the Decree; (5) an order requiring Kreisler to pay $5000 in liquidated damages to NFHA and an additional $5000 in liquidated damages to plaintiffs, if he fails to pay to NHFA in full for any future invoices within 60 days of issuance by NHFA; and (6) an extension of the Consent Decree for an additional year.[1]

[1] Pursuant to this Court's Order dated July 7, 2006, the Consent Decree is in force until December 8, 2010. [Docket No. 176].

Kreisler admits that he has failed to pay NFHA the invoice dated July 14, 2006 in the amount of $4,919.52 and the invoice January 15, 2007 in the amount of $1,600. However, Kreisler objects to the balance of plaintiffs' motion for contempt and requests for relief.

**1. <u>Fair Housing and Diversity Training</u>**

Paragraph VI of the Consent Decree provides as follows:

> Within sixty (60) days of the full execution of the Consent Decree, Defendants and each and every person who is an employee or otherwise an agent of Defendants regarding tenant issues, shall attend a comprehensive training on fair housing and a separate comprehensive training on the value of diversity. Defendants' new hires shall receive such training within thirty (30) days of hire. All employees and agents, identified above in Part VI, shall attend annual fair housing and diversity trainings during the life of the Consent Decree. The Court, with input from Plaintiffs' counsel, shall approve the fair housing and diversity programs and trainers provided by the National Fair Housing Alliance. Defendants shall pay all costs associated with the trainings.

The undisputed evidence presented by plaintiffs indicates that no training took place in 2007 of Kreisler, his agents and a new employee. It is also undisputed that Kreisler did not pay the July 14, 2006 outstanding invoice, which billed for various items, including training that had taken place on February 28, 2006. <u>See</u> Cloud 1st Aff., ¶¶ 7, 8, Exs. 2, 3, 6, 8-10. Both Kreisler's failure to pay for training and failure to proceed with training in 2007 constitutes violations of Paragraph VI of the Consent Decree.

**2. <u>Affirmative Marketing</u>**

Paragraph VIII of the Consent Decree provides as follows:

> For the life of the Consent Decree, Defendants shall advertise all vacancies in all local publications that serve communities of color, including but not limited to, the following: <u>Insight News</u>, <u>The Minnesota Spokesman-Recorder</u>, <u>The Minnesota Black Pages</u>, <u>The Circle</u>, <u>The Native American Press/Ojibwe News</u>, <u>La Prensa de Minnesota</u>, <u>Gente De Minnesota</u>, <u>La Voz Latina</u>, <u>Asian-American Press</u>, and <u>Asian Pages</u>.

> Defendants shall use substantively the same advertisements for each of these publications as they do for use in other publications. Defendants shall pay all costs associated with the affirmative marketing.

Paragraph VIII requires that Kreisler advertise his properties in certain publications and that he use substantively the same advertisements for each of these publications as he does on other publications (e.g. Star Tribune). Plaintiffs claim that since nearly the inception the Consent Decree, Kreisler has not advertised in all of the required publications and that the content is different among publications in terms of the descriptors used about the apartments and rent advertised for the same units.

In response, Kreisler stated that for 2007 it has been advertising in all listed publications (except The Native American Press/Ojibwe News) and that the content is identical among all publications, including rent, except for The Circle and Craigs List. See Affidavit of Emmanuel Duerson, ¶¶ 2, 5. As to his failure to advertise in The Native American Press/Ojibwe News, Kreisler submitted that it was an inadvertent mistake; he thought he was advertising in this publication throughout 2007. As to The Circle, Kreisler submitted that unintentionally, an outdated ad was used. Id., ¶¶ 8, 9. With respect to Craigs List, Kreisler indicated that there were minor changes in content in this publication that are based upon fluctuating market factors such as economy, the rental market, vacancies and the competition. Id. ¶ 5.

Kreisler did not address any of the deficiencies in advertising raised by plaintiffs for 2005 or 2006, except to generally argue that "the vast majority of Plaintiffs' other argument are directed at alleged misconduct in 2005 and 2006, which this Court already dealt with and disposed of in its July 2006 Order." Letter dated from Steven Laitinen to Court dated October 23, 2007.

As a preliminary matter, this Court finds that Paragraph VIII of the Consent Decree was not addressed, nor were the issues raised by that Paragraph even mentioned, in this Court's Order dated July 7, 2006.

As to the substance of plaintiffs' claims, this Court finds that Kreisler has violated Paragraph VIII in 2005 and 2006 for failure to advertise in all required publications, and for failing to insure that the publications had substantially the same content. This Court also finds that as early as January 13, 2006, Kreisler was fully aware that he was not in compliance with that Paragraph, and yet he not only continued his conduct throughout the year, he also never provided the requested explanation for his failure to advertise in certain publications or for the differing content. See Cloud 1st Aff., ¶¶ 2, 3, Exs. 1, 2, 4 5; Affidavit of Cathy Cloud dated October 3, 2007 ("2d Cloud Aff."), ¶¶ 2, 9-15, Exs. 4-9.

As to 2007, Kreisler has shown in his response to plaintiffs' motion that by-and-large he has been placing virtually the same ads in all required publications through the second quarter of 2007, with the exception of The Circle and The Native American Press/Ojibwe News.[2] With respect to his explanation of The Circle and The Native American Press/Ojibwe News, this Court finds that the errors were unintentional and shall not be deemed a violation of the Consent Decree.

**3. Compliance Reporting**

Paragraph IX of the Consent Decree provides as follows

> For the life of the Consent Decree, and subject to the provisions set forth above in Part II, Defendants shall submit a written report on a quarterly basis to an independent housing agency, the National Fair Housing Alliance, and to Plaintiffs' counsel regarding each and every one of Defendants' Minnesota rental properties. These reports shall identify all

[2] Having determined that Kreisler did not violate Paragraph VIII with respect to his affirmative marketing in 2007, the Court is not prevented from finding that he violated Paragraph IX with respect to compliance reporting for 2007 as it related to his affirmative marketing efforts. See Section 3, infra.

> properties owned by Defendants as well as provide clear proof of compliance with the publication, management, training, policy, and marketing requirements set forth above in Parts III through VIII of the Consent Decree. These reports shall also provide complete and accurate reporting of the racial background of tenant applicants and tenants, complete and accurate rent rolls, and complete and accurate repair and renovation records by apartment. Defendants shall pay all costs associated with this reporting and monitoring of the same.

Plaintiffs claim that Kreisler's reporting was deficient throughout 2005 through the date of their submission of this dispute to the Court. In particular, plaintiffs assert that every report failed to provide the required racial data about some applicants and tenants, and the reports for 2007 failed to attach copies of advertisements placed in the required publications or the paid invoices. In addition, plaintiffs assert that Kreisler has failed to pay for the costs of NFHA's monitoring of Kreisler's compliance with this provision.

This Court finds that Kreisler's reporting for 2007 with respect to its affirmative marketing did not comply with Paragraph IX of the Consent Decree. While Kreisler had agreed to purchase ads for the entire year from all publications and to provide proof of purchase and the copies of the ad contents to NFHA, Kreisler never did that. See 1st Cloud Aff., Ex. 8. The reports submitted by Kreisler to NFHA for 2007 attached only invoices, and no proof of payment, and he never submitted to NFHA copies of the ads so that they could determine if Kreisler was in compliance with Paragraph VIII of the Decree. See 2d Cloud Aff., ¶¶ 15, 16, Ex. 10, 11.

This Court also finds that Kreisler's failure to pay to NFHA the July 2006 and January 2007 invoices violates Paragraph IX's requirement that he pay for all monitoring by NFHA.

As to plaintiffs' claim that every report submitted by Kreisler failed to provide the required racial data about some applicants and tenants as required by Paragraph IX of

the Decree, plaintiffs point to each report (with the exception of the report for January – June, 2005, and September – November 2006 (see 2d Cloud Aff., Exs. 4, 9)) where Kreisler failed to identify the race of one or more tenants for each building. Kreisler's response was that plaintiffs did not seem to understand that tenants were not required to report race, and that the affiant responding on behalf of Kreisler (Duerson) does not know all of the tenants. See Duerson Aff., ¶ 11. Kreisler's response misses the point. The Decree requires Kreisler to report the racial makeup of his buildings on a quarterly basis. Notwithstanding this requirement, NFHA recognized that tenants may choose not to provide answer questions about their race or national origin. Under those circumstances, all that it asked was that Kreisler state in his report that the tenant refused to provide that information, rather than leaving the information blank. See e.g. 1st Cloud Aff., Ex. 1, 8. In fact, most of the reports provided by Kreisler provided a column for Kreisler to indicate that the tenant "chose not to answer" with respect to race, and some reports did indeed indicate for certain tenants that they chose not to answer. See 2d Cloud Aff., Exs. 5-11. Yet, notwithstanding the provision on each report for Kreisler to indicate that a tenant did not want to provide race information, and NFHA's request that Kreisler so indicate, every report left the race columns blank for some number of tenants. Either Kreisler was intentionally refusing to provide this information or he was sloppy in his reporting as to these tenants. In any event, his reports were not compliant with Paragraph IX.

As to the January – June, 2005 and September – November 2006 reports (see 2d Cloud Aff., Exs. 4, 9)), they are completely deficient. The 2005 report contains no race data; the September – November 2006 report has so many blanks about race (and for tenants that Kreisler had provided race data in previous reports), that the Court

concludes that no effort was made at all to obey the dictates of Paragraph IX of the Decree.

For all of these reasons, this Court finds that Kreisler violated Paragraph IX.

**4. Fair Housing Testing**

Paragraph XI of the Consent Decree provides as follows:

> For the life of the Consent Decree, each of Defendants' Minnesota rental properties may be subjected to periodic, undercover fair housing testing by an independent housing agency, the National Fair Housing Alliance. Defendants shall pay all costs associated with the fair housing testing.

The Court finds that Kreisler has violated Paragraph XI. No testing has taken place for the simple reason that Kreisler has not paid NFHA for any of its services to date. NFHA notified Kreisler on numerous occasions that it would not provide any further services him until he paid the outstanding invoices. See Ist Cloud Aff., Exs. 6, 8-10. It is Kreisler who is obligated by the Decree to insure that fair housing testing takes place; not NFHA.[3]

**5. Award of Liquidated Damages and Costs of Enforcement**

Paragraph XII of the Decree provides for liquidated damages and costs of enforcement, as follows:

> For each violation of the Consent Decree, Defendants shall pay $5,000.00 in liquidated damages to Plaintiffs by making payment to Plaintiffs' counsel. Defendants shall pay all costs associated with any actions to enforce the Consent Decree.

[3] Last time, the Court found that the testing did not occur because of the conduct of the Kreisler defendants – that is, while no contract had been signed by Kreisler and NFHA, under the Consent Decree, a contract was not a prerequisite for NFHA going forward with testing. NFHA could have proceeded with testing with or without a contract, and pursuant to the Decree, could have billed Kreisler for its services. This time, the testing has not occurred solely because of the conduct of Kreisler. This Court will not require NFHA to keep providing services when Kreisler has failed to pay them for its past services, as mandated by the Decree.

Having reviewed the submissions of plaintiffs and Kreisler, the Court concludes that Kreisler has violated Paragraphs VI, VIII, IX and XI of the Consent Decree and are entitled to relief for these violations  Consequently, pursuant to Paragraph XII, plaintiffs are entitled to an award of liquidated damages for Kreisler's violations of these sections, and the costs associated with their actions to enforce these provisions.

In support of their claim for reimbursement of costs associated with enforcement of the Consent Decree, plaintiffs seek (1) an award of $7,048.25 for attorneys' fees incurred by them for enforcing their rights under the Consent Decree; (2) an award of $13,898.32 to NFHA for the costs incurred by it to enforce the requirements of the Decree and for the services it has rendered to date for monitoring, training and testing; and (3) payment of liquidated damages to plaintiffs in the amount of $5,000 for each violation of the Decree.

Having reviewed the submission of plaintiffs' counsel in connection with the services they have rendered to enforce the Consent Decree and the fees charged to plaintiffs for these services, the Court finds that plaintiffs' request for reimbursement of its attorneys' fees in the amount of $7,048.25 is appropriate and reasonable, and orders Kreisler to pay to plaintiffs this sum.

Further, having reviewed the submissions of NFHA, including past unpaid invoices, services rendered to prepare for testing that has yet to take place because of Kreisler's violation of the Consent Decree, and services performed to enforce the Decree, and the fees and costs incurred for these various services, the Court finds that an award of $13,898.32 to NFHA is appropriate and reasonable, and orders Kreisler to pay to Kreisler this sum.

As for liquidated damages, this Court orders Kreisler to pay the sum of $25,000 to plaintiffs. The Court arrived at this figure as follows:

> $5000 for violation of the substantive requirements of Paragraph VI of the Consent Decree.
>
> $5000 for violation of the substantive requirements of Paragraph VIII of the Consent Decree.
>
> $5000 for violation of the substantive requirements of Paragraph IX of the Consent Decree.
>
> $5000 for violation of the substantive requirements of Paragraph XI of the Consent Decree.
>
> $5000 for failure to pay NFHA for the services they performed in connection with Paragraphs VI, VIII, IX and XI of the Consent Decree.

In conclusion, as a consequence of his violation of the Consent Decree, Kreisler shall pay the following to plaintiffs: $7,048.25 for attorneys' fees and costs incurred in enforcing the Consent Decree, and $25,000 as liquidated damages. In addition, Kreisler shall pay to NFHA $13,898.32.

**5. <u>Extension of the Consent Decree</u>**

Plaintiffs have asked this Court to extend the period of the Consent Decree for another year due to Kreisler's failure to comply with the terms of the Decree. The Court finds that this request is both reasonable and supported by the record. While Kreisler argues that he has complied with the two main objectives of the Consent Decree, which he describes as ensuring the properties are racially diverse, and that he plays no role in the management and oversight of the properties, Kreisler has ignored the most fundamental component to ensuring that those objectives are indeed being met – NFHA's role in providing training and undercover fair housing testing, and monitoring of affirmative marketing and reporting. Through Kreisler's failure to pay NFHA for its services and to timely and appropriately respond to their periodic inquiries, he has

stymied the effective performance of the Consent Decree, if not made a mockery of it. As this Court has no confidence that the terms of the Consent Decree have been met to date, it finds that an extension for another year is an absolute necessity.

**6. Miscellaneous Requests**

Plaintiffs requested that Kreisler pay NFHA for monitoring services to be rendered in the future at the beginning of each year, and that he pay $5000 in liquidated damages to NFHA and an additional $5000 in liquidated damages to plaintiffs, if he fails to pay to NFHA in full for any future invoices within 60 days of issuance by NHFA. This request is denied for two reasons: First, it amounts to a modification of the Consent Decree, which the Court will not do. Second, the Court will not order the payment of liquidated damages for violations that have not yet occurred, and without giving Kreisler the opportunity to respond to any alleged violation. In the event that Kreisler fails to pay NFHA for its services as contemplated by the Consent Decree and Consulting Agreement, plaintiffs' recourse is to move for a finding of contempt and relief, as they have done here.[4]

Kreisler has asked that it be permitted to retain a local monitoring agency to perform the oversight functions contemplated that NFHA would provide in the Decree, including training of employees, monitoring of Kreisler's affirmative advertising efforts, reviewing of quarterly reports prepared by Kreisler, and performance of fair housing testing at the properties covered by the Decree. This request is also denied. Again, this Court will not modify the Consent Decree. Further, the Court is satisfied that Kreisler's failure to comply with the mandates of the Consent Decree is not due to NFHA's conduct; it is due to his own. Finally, Kreisler has given this Court no reason to

---

[4] In this regard, the Court would suggest that plaintiffs move immediately for relief and not wait to see if Kreisler will comply down the road.

believe that he would act any differently – i.e. pay bills, attend training, respond to inquiries, place correct advertising with the required publications, and perform adequate reporting – if he were dealing with a local organization.

In conclusion, this Court encourages Kreisler to take his duties under the Consent Decree to heart and to adhere to its requirements. To date, he has not and the results are costly. So long as he continues to ignore its mandates, the costs and adverse consequences will persist and escalate.

J.S.M.